# Exhibit 8

D. Maimon Kirschenbaum
Denise A. Schulman
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiffs, proposed FLSA*
*Collective Plaintiffs, and proposed Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
**CHRISTIAN ZAMBRANO, LUZ**
**DURANGO, MOIRA RIVEROS, and**
**RIGOBERTO ROMERO, on behalf of**
**themselves and all others similarly situated,**          **CASE NO. 15 CV 08410 (ER)**

                              **Plaintiffs,**

         **v.**                                            **FIRST AMENDED COMPLAINT**

**STRATEGIC DELIVERY SOLUTIONS,**                          **FLSA COLLECTIVE ACTION AND**
**LLC., DAVID KRONICK, and MIKE**                          **RULE 23 CLASS ACTION**
**RUCCIO,**
                                                           **DEMAND FOR JURY TRIAL**
                              **Defendants.**
--------------------------------------------------------x

        Plaintiffs Christian Zambrano, Luz Durango, Moira Riveros, and Rigoberto Romero, on

behalf of themselves and on behalf of all others similarly situated, by and through their

undersigned counsel, allege as follows:

<u>**JURISDICTION AND VENUE**</u>

        1.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331

because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

("FLSA").  This Court has supplemental jurisdiction over the New York state law claims, as they

are so related to the claims in this action within the Court's original jurisdiction that they form

part of the same case or controversy under Article III of the United States Constitution.

2.      Defendants are subject to personal jurisdiction in New York.

3.      Venue is proper in this District because Defendants conduct business in this

District, and a substantial part of the acts and/or omissions giving rise to the claims herein

alleged took place in this District.

## PARTIES

### *Defendants*

4.      Defendant Strategic Delivery Services, LLC. ("SDS") is a limited liability

company organized and existing under the laws of New York.

5.      Upon information and belief, SDS's gross revenue each year exceeds $500,000.

6.      SDS is an employer within the meaning of the FLSA.

7.      Defendant David Kronick is an owner and Chief Executive Officer of SDS.

8.      Upon information and belief, Defendant Kronick exercises sufficient control of

SDS's day to day operations to be considered an employer of Plaintiffs and those similarly

situated under the FLSA.

9.      Upon information and belief, Defendant Kronick was responsible for soliciting

business for SDS, which directly impacted driver compensation.  To be sure, Defendant Kronick

is listed as SDS's primary contact on promotional websites.

10.     Defendant Kronick entered into contracts on behalf of SDS, including contracts

with Plaintiffs that purport to set the terms of the relationship between Plaintiffs and SDS.

11.     Defendant Mike Ruccio is the Chief Operating Officer of SDS.

2

12.     Upon information and belief, Defendant Ruccio exercises sufficient control of SDS' day to day operations to be considered an employer of Plaintiffs and those similarly situated under the FLSA.

13.     Defendant Ruccio had the authority to discipline and terminate drivers.  For example, he suspended Plaintiff Christian Zambrano.  Defendant Ruccio also sent a letter to Plaintiff Moira Riveros after she failed to complete a delivery route that stated that any subsequent failure would result in the termination of her relationship with Defendants. Defendant Ruccio also reprimanded Plaintiff Riveros for her work attire.

14.     Defendant Ruccio interviewed and hired managers.

15.     Defendant Ruccio had the authority to change drivers' pay.  For example, at one point he made the decision to reduce driver pay for routes by 6%.

16.     Defendant Ruccio was involved in assigning routes to drivers.

***Plaintiff Christian Zambrano***

17.     Plaintiff Christian Zambrano has worked for SDS as a delivery driver since October 2013.

18.     Prior to April 2015, Zambrano regularly worked 70 hours or more per week for Defendants.

19.     Zambrano currently regularly works 50 hours or more per week for Defendants.

20.     Defendants require Zambrano to be "on call" on certain weekends, during which time he works thirteen (13) hours per day both weekend days.

21.     Defendants do not pay Zambrano an overtime premium when he works in excess of 40 hours in a workweek.

22.     Zambrano has made deliveries for SDS in this District.  For example, for at least

3

six months of his employment with SDS, he made deliveries in each of New York, Bronx, Westchester, Orange, and Dutchess Counties multiple times per week.

23.    Defendants require Zambrano to maintain a high level of vehicle insurance coverage and to use and maintain his own vehicle to make deliveries.

24.    Defendants require Zambrano to pay for his own auto maintenance, gasoline, and toll fees and do not reimburse him for those expenses.

25.    Defendants deduct a rental fee for a scanner from Zambrano's paycheck.

26.    Defendants deduct an "administrative fee" and a variety of other fees each week from Zambrano's paychecks.

27.    Defendants require Zambrano to wear an SDS uniform.

28.    Zambrano will be able to state his compensation, hours worked, and deductions from his paycheck with more specificity after reviewing the records Defendants were required to keep under New York and federal law.

***Plaintiff Moira Riveros***

29.    Plaintiff Moira Riveros has worked as a delivery driver for SDS since 2014.

30.    Riveros regularly works in excess of 50 hours or more per week for SDS.

31.    Defendants require Riveros to be "on call" on certain weekends.

32.    Defendants do not pay Riveros an overtime premium when she works in excess of 40 hours in a workweek.

33.    Riveros makes deliveries for SDS in this District.  For example, she makes deliveries in New York County multiple times a week.  She also regularly makes deliveries in Bronx and Westchester Counties.

34.    Defendants require Riveros to maintain a high level of vehicle insurance coverage

4

and to use and maintain her own vehicle to make deliveries.

35.     Defendants require Riveros to pay for her own auto maintenance, gasoline, and toll fees and do not reimburse her for those expenses.

36.     Defendants deduct a rental fee for a scanner from Riveros' paycheck.

37.     Defendants deduct an "administrative fee" and a variety of other fees each week from Riveros' paychecks.

38.     Defendants require Riveros to wear an SDS uniform.

39.     Riveros will be able to state her compensation, hours worked, and deductions from her paycheck with more specificity after reviewing the records Defendants were required to keep under New York and federal law.

***Plaintiff Luz Durango***

40.     Plaintiff Luz Durango has worked as a delivery driver for SDS for approximately five (5) years.

41.     Durango regularly works between 75 and 85 hours per week for SDS.

42.     Defendants require Durango to be "on call" on certain weekends.

43.     Defendants do not pay Durango an overtime premium when she works in excess of 40 hours in a workweek.

44.     Durango has made deliveries for SDS in this District.  For example, for much of her employment with SDS she made deliveries in Bronx and Westchester Counties on a daily basis.

45.     Defendants require Durango to maintain a high level of vehicle insurance coverage and to use and maintain her own vehicle to make deliveries.

46.     Defendants require Durango to pay for her own auto maintenance, gasoline, and

toll fees and do not reimburse her for those expenses.

47.    Defendants deduct a rental fee for a scanner from Durango's paycheck.

48.    Defendants deduct an "administrative fee" and a variety of other fees each week from Durango's paychecks.

49.    Defendants require Durango to wear an SDS uniform.

50.    Durango will be able to state her compensation, hours worked, and deductions from her paycheck with more specificity after reviewing the records Defendants were required to keep under New York and federal law.

***Plaintiff Rigoberto Romero***

51.    Plaintiff Rigoberto Romero worked for SDS as a delivery driver in 2014 and 2015.

52.    Prior to March 18, 2015, Romero worked approximately 70 hours per week.

53.    Defendants required Romero to be "on call" on certain weekends, working from Friday night through Monday morning in addition to his regular schedule.

54.    Defendants did not pay Romero an overtime premium when he works in excess of 40 hours in a workweek.

55.    Romero has made deliveries for SDS in this District.  For example, for over a year of his employment, he made deliveries to Bronx County approximately twice a month.

56.    Defendants required Romero to maintain a high level of vehicle insurance coverage and to use and maintain his own vehicle to make deliveries.

57.    Defendants required Romero to pay for his own auto maintenance, gasoline, and toll fees and do not reimburse him for those expenses.

58.    Defendants deducted a rental fee for a scanner from Romero's paycheck.

6

59.     Defendants deducted an "administrative fee" and a variety of other fees each week from Romero's paychecks.

60.     Defendants required Romero to wear an SDS uniform.

61.     Romero will be able to state his compensation, hours worked, and deductions from her paycheck with more specificity after reviewing the records Defendants were required to keep under New York and federal law.

**CLASS AND COLLECTIVE ALLEGATIONS**

*Collective Action Allegations*

62.     Plaintiffs sue on behalf of themselves and all other SDS drivers, couriers and delivery drivers (or in comparable roles with different titles) employed within the last three years (the "FLSA Collective").  This is an appropriate collective or representative action under 29 U.S.C. § 216(b).

63.     Plaintiffs and the other drivers, couriers and delivery drivers are similarly situated in that they are all subject to Defendants' common plan or practice of designating them as independent contractors (when in fact their work and the extent of control SDS exerted over them rendered them employees), failing to pay them overtime compensation, requiring them to provide and maintain their own vehicles and fuel, and making unlawful deductions from their paychecks.

*The Class*

64.     Plaintiffs bring the state law causes of action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all persons who work or have worked for SDS as drivers, couriers or delivery drivers (or in comparable roles with different titles) in New York state between the date that is six years before the date this Complaint is filed and the date of final

judgment in this matter (the "Class").

65.     The persons in the Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is not known to the Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

66.     Upon information and belief, the size of the Class is at least 100 workers.

67.     Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

68.     The state law causes of action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).  There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

(a)  whether Defendants employed Plaintiffs and the Class Members under the New York Labor Law ("NYLL");

(b)  whether Defendants violated New York Labor Law ("NYLL"), Articles 6 and 19, and the supporting New York State Department of Labor regulations;

(c)  whether Defendants refused to pay Plaintiffs and the Class members overtime pay for hours worked in excess of 40 hours per workweek;

(d)  whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Class members, and other records required by the NYLL;

(e)  whether it was Defendants' policy or practice to make unlawful deductions from the

8

wages of Plaintiffs and the Class;

(f)   whether it was Defendants' policy or practice to fail to furnish Plaintiffs and the Class

with an accurate statement of wages, hours worked, rates paid, and gross wages as

required by the NYLL;

(g)   whether Defendants' policy of failing to pay workers in accordance with New York

law was instituted willfully or with reckless disregard of the law; and

(h)   the nature and extent of class-wide injury and the measure of damages for those

injuries.

69.    Plaintiffs' claims are typical of the claims of the Class.

70.    Plaintiffs and the members of the Class work or have worked for Defendants and

have been subjected to their policy and pattern or practice of misclassifying them as independent

contractors and failing to pay overtime wages for hours worked in excess of 40 hours per week.

71.    Plaintiffs and the members of the Class have been subject to Defendants' policy

and pattern or practice of failing to pay them overtime and making unlawful deductions to their

pay.

72.    Plaintiffs and the Class members enjoy the same statutory rights under the NYLL

to be paid for all hours worked, and to be paid overtime wages.

73.    Plaintiffs and the members of the Class all have sustained similar types of

damages as a result of Defendants' failure to comply with the NYLL.

74.    Plaintiffs and the members of the Class all have been injured in that they have

been uncompensated or under-compensated due to Defendants' common policies, practices, and

patterns.

75.    Defendants acted and refused to act on grounds generally applicable to the Class,

9

thereby making declaratory relief with respect to the Class appropriate.

76.     Plaintiffs will fairly and adequately represent and protect the interests of the Class.

77.     Plaintiffs understand that, as the class representatives, they assume a fiduciary responsibility to the Class to represent its interests fairly and adequately.

78.     Plaintiffs recognize that as the class representatives, they must represent and consider the interests of the Class just as they would represent and consider their own interests.

79.     Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor they own interests over those of the Class.

80.     Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class.

81.     Plaintiffs understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

82.     Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

83.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

84.     The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.

85.     Although the relative damages suffered by individual members of the Class are

10

not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.

86.     In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## **FACTS**

87.     Plaintiffs, FLSA Collective Plaintiffs and the NYLL Class Members share common job duties – making deliveries for SDS's customers.

88.     Defendants designated Plaintiffs, FLSA Collective Plaintiffs and the NYLL Class Members as independent contractors.

89.     The decision to classify Plaintiffs, FLSA Collective Plaintiffs and NYLL Class Members as independent contractors was a central company policy and did not vary on a person-by-person basis.

90.     Defendants pay Plaintiffs, FLSA Collective Plaintiffs and NYLL Class Members a flat rate for some delivery routes and a per-stop rate for other routes.

91.     Defendants require each driver to sign an "Independent Vendor Agreement for Transportation Services" ("Vendor Agreement"), which designates him or her as an independent contractor or "Vendor."

92.     However, Defendants exercise comprehensive control over the manner, means, details and methods by which over Plaintiffs, FLSA Collective Plaintiffs and NYLL Class Members perform services for Defendants.

93.     Defendants require Plaintiffs, FLSA Collective Plaintiffs and NYLL Class Members to be at a designated location to pick up items for delivery at a fixed time.

94.     Defendants require Plaintiffs, FLSA Collective Plaintiffs and NYLL Class

11

Members to adhere to a particular delivery schedule and arrive at each stop on the route by a particular time.

95.     Defendants use GPS technology to track Plaintiffs, FLSA Collective Plaintiffs and NYLL Class members on their routes and admonished them for running behind schedule.

96.     Defendants have taken routes away from Plaintiffs and, upon information and belief, FLSA Collective Plaintiffs and NYLL Class members who declined to accept an assignment and threatened such employees with termination.

97.     Defendants require Plaintiffs, FLSA Collective Plaintiffs and NYLL Class Members to take turns being "on call" for specific weekend shifts.

98.     Defendants specified the equipment Plaintiffs, FLSA Collective Plaintiffs and NYLL Class members had to furnish and maintain and required them to rent such equipment from SDS.

99.     Defendants specified minimum levels of automobile insurance Plaintiffs, FLSA Collective Plaintiffs and NYLL Class Members were required to carry.

100.     Defendants required Plaintiffs, FLSA Collective Plaintiffs and NYLL Class to wear SDS logo uniforms and specified the color of shoes and pants to be worn with the uniforms.

101.     Defendants required Plaintiffs, FLSA Collective Plaintiffs and NYLL Class Members to seek permission to assign their routes to substitute drivers while on vacation and frequently denied such requests.

102.     Plaintiffs, FLSA Collective Members, and the Class members were not in an independently established trade, occupation, profession or business.

103.     Plaintiffs, FLSA Collective Plaintiffs and NYLL Class members were not in business for themselves, but rather depended on Defendants' business for the opportunity to

render services to the long-term customers of Defendants.

104.    Defendants directed Plaintiffs and, upon information and belief, FLSA Collective Plaintiffs and NYLL Class members, to register an independent business as a condition of employment and set a deadline for employees to do so.

105.    None of the "independent businesses" owned by Plaintiffs, and, upon information and belief, few if any of the "independent businesses" owned by FLSA Collective Plaintiffs and NYLL Class members existed prior to the owner's affiliation with SDS.

106.    Plaintiffs and, upon information and belief, FLSA Collective Plaintiffs and NYLL Class members had no employees working under them and were not permitted to hire employees.

107.    Plaintiffs, FLSA Collective Plaintiffs, and the Class members had no opportunity for profit or loss without Defendants.

108.    Plaintiffs, FLSA Collective Plaintiffs, and the Class members could not deal directly with Defendants' customers to offer their delivery services.

109.    Plaintiffs, FLSA Collective Plaintiffs, and the Class members were required to work for Defendants to provide this service.

110.    Plaintiffs', FLSA Collective Plaintiffs', and the Class members' relationship with Defendants was neither temporary nor sporadic.

111.    Upon information and belief, Defendants did not record the amount of hours spent by Plaintiffs, FLSA Collective Plaintiffs and NYLL Class Members performing deliveries.

112.    Plaintiffs and, upon information and belief, the FLSA Collective Members and Class members, worked full-time.

113.    Plaintiffs, FLSA Collective Plaintiffs and NYLL Class Members frequently work

13

in excess of forty (40) hours per workweek.

114.    Defendants have unlawfully failed to pay Plaintiffs and the other FLSA Collective Plaintiffs and NYLL Class Members one-and-one-half times their regular rate of pay for hours that they worked in excess of forty (40) per workweek.

115.    Defendants deduct the cost of workers' compensation insurance from Plaintiffs', FLSA Collective Plaintiffs' and NYLL Class members' paychecks.

116.    Plaintiffs, FLSA Collective Plaintiffs, and the Class members are not reimbursed for maintaining their vehicles, for most of their gasoline expenses or for the purchases of their scanners.

117.    Defendants require Plaintiffs, FLSA Collective Plaintiffs, and Class members to use a specialized scanner, which they are required to rent from SDS and are not permitted to purchase.

118.    Defendants deduct rental fees for the scanners from the paychecks of Plaintiffs, FLSA Collective Plaintiffs and Class members.

119.    Defendants deduct administrative fees, "waiver deductions", "paperwork fees", and other unlawful deductions from the paychecks of Plaintiffs, FLSA Collective Plaintiffs and Class members.

120.    Defendants' manager Cesar Mateo requires SDS's drivers to pay him to obtain and keep their routes.   For example, Mateo has regularly required Plaintiffs Zambrano and Riveros to pay him between $100 and $300 per week to keep their routes.

121.    Defendants do not provide Plaintiffs and NYLL Class members with the notices required by NYLL § 195.

122.    Defendants' violations have been willful and intentional in that they have known

all along that Plaintiffs and other drivers, couriers and delivery drivers were employees, worked

more than forty hours per week, and the requirements of the law.

**FIRST CAUSE OF ACTION**
**FLSA Overtime Violations, 29 U.S.C. §§ 201 *et seq.*
(On behalf of Plaintiffs and the FLSA Collective)**

123.    Plaintiffs re-allege and incorporate by reference the previous paragraphs as if they

were set forth again herein.

124.    Defendants have engaged in a widespread pattern, policy, and practice of violating

the FLSA, as detailed in this Complaint.

125.    At all times relevant, Plaintiffs and the FLSA Collective members were employed

by an entity engaged in commerce and/or the production or sale of goods for commerce within

the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a), and/or they were engaged in commerce

and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e),

(m), and 206(a).

126.    At all times relevant, Plaintiffs and the FLSA Collective members were or have

been employees within the meaning of 29 U.S.C. §§ 203(e), (m) and 206(a).

127.    At all times relevant, Defendants have been employers of Plaintiffs and the FLSA

Collective members, engaged in commerce and/or the production of goods for commerce within

the meaning of 29 U.S.C. §§ 203(e) and 206(a).

128.    Defendants have failed to pay Plaintiffs and the FLSA Collective members

overtime wages for hours that they worked in excess of 40 hours in a workweek.

129.    Based on the foregoing, Defendants' conduct in this regard was a willful violation

of the Fair Labor Standards Act and entitles Plaintiffs and all other similarly situated drivers,

couriers, and delivery drivers (or those in comparable roles with different titles) who opt into this

15

litigation to compensation for all overtime hours worked, liquidated damages, attorneys' fees and court costs.

**SECOND CAUSE OF ACTION**
**New York State Overtime Violations, N.Y. Lab. L. §§ 650 *et seq.*,**
**N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2**
**(On behalf of Plaintiffs and the Class)**

130.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

131.    At all relevant times, Defendants have been, and continue to be, employers of Plaintiffs and the NYLL Class members, and Plaintiffs and the Class members have been employees of Defendants, within the meaning of the NYLL §§ 190, 651(5), 652 and supporting New York State Department of Labor ("NYSDOL") regulations.

132.     Plaintiffs and the NYLL Class members were and are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked under the NYLL and supporting regulations.

133.    Defendants have failed to pay Plaintiffs and the Class members overtime wages for hours that they worked in excess of 40 hours in a workweek.

134.    Through their knowing and intentional failure to pay Plaintiffs and the members of the Class overtime for hours worked in excess of 40 in a workweek, Defendants have willfully violated the NYLL Article 19, §§ 650 *et seq.*, and supporting NYSDOL regulations.

135.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and the Class members have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendants in an amount to be established at trial, liquidated damages, prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

16

### THIRD CAUSE OF ACTION
**New York Notice Violations, NYLL §§ 195, 198**
**(On behalf of Plaintiffs and the Class)**

136.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

137.     Defendants did not provide Plaintiffs and the Class members with the notices required by NYLL § 195.

138.     As a result of Defendants' unlawful conduct, Plaintiffs and the Class members are entitled to an award of damages pursuant to NYLL § 198, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

### FOURTH CAUSE OF ACTION
**New York Unlawful Deductions and**
**Untimely Payment of Wages, NYLL §§ 191, 193**
**(On behalf of Plaintiffs and the Class)**

139.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

140.     Defendants have willfully reduced the wages of Plaintiffs and the members of the Class by making unlawful deductions from their wages.

141.     In addition, Defendants have required Plaintiffs and the Class to incur expenses for Defendants' benefit without reimbursement.  The required and unreimbursed expenses incurred by Plaintiffs and the members of the Class for the benefit of Defendants were unlawful deductions from the wages of Plaintiffs and the Class members, in violation of NYLL Article 6, § 193.

142.     Defendants willfully failed to pay Plaintiffs and the Class all compensation owed them in a timely manner, in violation of NYLL § 191.

17

143.    Due to these violations, Plaintiffs and the members of the Class are entitled to recover from Defendants deductions from their wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

a.    Designation of this action as a collective action pursuant to the FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

b.    Certification of the state law claims in this action as a class action pursuant to Federal Rule of Civil Procedure 23;

c.    Designation of Plaintiffs as Class Representatives;

d.    A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

e.    An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

f.    Penalties available under applicable law;

g.    Restitution;

h.    Pre-Judgment and Post-Judgment interest, as provided by law;

i.    Costs of action incurred herein, including expert fees;

j.    Attorneys' fees including fees pursuant to 29 U.S.C. § 216,  N.Y. Lab. L. § 663 and other applicable statutes; and

k.    Such other injunctive and equitable relief as the Court may deem just and proper.

18

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to a jury trial.


Dated: _____, 2016
      New York, NY

**JOSEPH & KIRSCHENBAUM LLP**


_____
D. Maimon Kirschenbaum
Denise A. Schulman
32 Broadway, Suite 601
New York, NY 10004
Telephone: (212) 688-5640
Facsimile: (212) 688-2548

*Attorneys for the Named Plaintiffs, proposed*
*FLSA Collective Plaintiffs, and proposed Class*

19