UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 9/22/2016

CHRISTIAN ZAMBRANO, LUZ DURANGO,
MOIRA RIVEROS, and RIGOBERTO ROMERO,
*on behalf of themselves and all others similarly
situated*,

Plaintiffs,

-against-

STRATEGIC DELIVERY SOLUTIONS, LLC,
DAVID KRONICK, ANDREW KRONICK, and
MIKE RUCCIO,

Defendants.

**OPINION AND ORDER**

15 Civ. 8410 (ER)

Ramos, D.J.:

Christian Zambrano, Luz Durango, Moira Riveros, and Rigoberto Romero ("Plaintiffs")

bring this putative collective and class action against Strategic Delivery Solutions, LLC ("SDS"),

David Kronick, and Mike Ruccio ("Defendants"),[1] alleging that Defendants improperly

classified them as independent contractors and denied them wages in violation of the Fair Labor

Standards Act ("FLSA") and the New York Labor Law ("NYLL").  Before the Court is

Defendants' motion to dismiss the Complaint and to compel arbitration.  For the reasons stated

below, Defendants' motion is GRANTED in part and DENIED in part, and this action is

STAYED pending arbitration.

---

[1] Plaintiffs agreed to voluntarily dismiss without prejudice their claims against Andrew Kronick.  Plaintiffs'
Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint and Compel Arbitration ("Pls.'
Opp'n Mem.") (Doc. 27) at 23 n.14.

## I. BACKGROUND

On October 26, 2015, Plaintiffs instituted this action, on behalf of themselves and all others similarly situated, against Defendants, their purported employers.  Complaint (Doc. 1).[2] Plaintiffs allege that they worked for Defendants as drivers delivering pharmaceutical products, *id.* ¶¶ 13, 27, 39, 51, and that Defendants violated the FLSA and NYLL by, among other things, failing to pay them overtime wages, making unlawful deductions from their wages, and requiring them to incur expenses for Defendants' benefit without reimbursement, *id.* ¶¶ 130, 135, 142, 143.

Defendants contend that Plaintiffs must submit their claims to arbitration pursuant to the Independent Vendor Agreement for Transportation Services ("Vendor Agreement") they each executed with SDS.  Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint and to Compel Arbitration ("Defs.' Mem.") (Doc. 22) at 1.[3]  Namely, each Vendor Agreement contains an arbitration provision that provides:

> <u>Agreement to Arbitrate</u>.  The parties agree to comply and be bound by The Federal Arbitration Act.  The parties agree that any dispute, difference, question, or claim arising out of or in any way relating to this Agreement or the transportation services provided hereunder shall be subject to binding arbitration in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA") in effect at the time such arbitration is initiated. The parties agree that the issue of arbitrability shall be determined by the arbitrator applying the law of the state of residence of the Vendor.[4]  The parties shall bear their own costs including, without limitation, attorneys' fees, and shall each bear one half (1/2) of the fees and costs of the arbitrator.  Any arbitration

---

[2] Since this action was filed, twenty-three individuals have filed consents to join.  *See* Docs. 36–60.

[3] Although Plaintiff Zambrano did not execute a Vendor Agreement, Plaintiffs concede that, if enforceable, the arbitration provision would cover his claims.  Pls.' Opp'n Mem. at 3 n.2, 7 n.5.  Similarly, although the individual Defendants are not signatories to the Vendor Agreements, Plaintiffs concede that they are intended third party beneficiaries of the agreements and, thus, the arbitration provision contained therein.  *Id.* at 3 n.2; *see* Defs.' Mem. at 17.  Because the Court finds the arbitration provision enforceable, the Court need not decide whether, absent Plaintiffs' concessions, it would compel arbitration of these claims.

[4] The Court understands the parties to have waived their ostensible agreement that "the issue of arbitrability shall be determined by the arbitrator," since neither side contends that an arbitrator, rather than this Court, should decide this threshold question.  *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.").

shall be conducted before a single arbitrator selected from a list of potential arbitrators provided by the AAA.  The arbitrator shall be a former judge or have at least ten (10) years experience in either commercial business legal practice or representation of clients in the transportation industry.  The hearing shall be conducted in the city in or closest to the location where the Vendor performs its transportation services under this Agreement, unless both parties consent to a different location.  Nothing in this Agreement shall be construed as limiting or precluding the parties from bringing any action in any court of competent jurisdiction for injunctive or other extraordinary relief, in the event the arbitrator determines that it does not have jurisdiction to order such relief.  The parties shall have the immediate right to seek such injunctive or other extraordinary relief at any time, including, without limitation, during the pendency of arbitration or other proceeding.

Declaration of Kimberly Edick in Support of Defendants' Motion to Dismiss the Complaint and to Compel Arbitration ("Edick Decl.") (Doc. 24), Exs. A–C ¶ 20(a).  Defendants also contend that Plaintiffs must pursue their claims on an individual basis, citing a class waiver provision in the Vendor Agreement that provides:

> Voluntary Waiver to Join a Class.  Vendor hereby agrees that any arbitration, suit, action or other legal proceeding arising out of or in any way relating to this Agreement or the services provided hereunder shall be conducted and resolved on an individual basis only and not on a class-wide, multiple plaintiff, collective or similar basis unless mutually agreed to in writing by all interested parties.  Vendor hereby voluntarily expressly waives any right it may have to join any suit, action, arbitration, or other legal proceeding arising out of or in any way relating to this Agreement or the services provided hereunder on a class-wide, multiple plaintiff, collective or similar basis.

*Id.* ¶ 20(b).  Plaintiffs oppose Defendants' motion and seek to proceed with their claims collectively in this Court, notwithstanding the foregoing provisions.

## II. DISCUSSION

### A. Applicability of the FAA

Defendants move to compel arbitration pursuant to Section 4 of the Federal Arbitration Act ("FAA") or, alternatively, New York law.  Defs.' Mem. at 5, 12–13.  Section 4 of the FAA provides that any party "aggrieved by the alleged failure, neglect, or refusal of another to

arbitrate under a written agreement for arbitration may petition any United States district court . .

. for an order directing that such arbitration proceed in the manner provided for in such

agreement," and that "upon being satisfied that the making of the agreement for arbitration or the

failure to comply therewith is not in issue, the court shall make an order directing the parties to

proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  Plaintiffs

argue that the Court lacks authority to compel arbitration under the FAA, because the statute

does not apply to "contracts of employment" of "transportation workers engaged in interstate

commerce."  Pls.' Opp'n Mem. at 3–8; *see Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119

(2001) ("Section 1 exempts from the FAA only contracts of employment of transportation

workers.").

Defendants do not dispute that Plaintiffs are transportation workers engaged in interstate

commerce.  Indeed, Plaintiffs satisfy this portion of the exemption, since they are drivers who

allege to have moved goods (pharmaceutical products) through interstate commerce.  *See*

*Kowalewski v. Samandarov*, 590 F. Supp. 2d 477, 481–85 (S.D.N.Y. 2008) ("[T]he handful of

cases in this Circuit that have found that a worker falls under the residuary exemption . . . all

involve workers who either physically move goods through interstate commerce, such as truck

drivers, or workers who are closely tied to this movement of interstate goods, such as air cargo

agents."); *Valdes v. Swift Transp. Co.*, 292 F. Supp. 2d 524, 528 (S.D.N.Y. 2003) (holding that the

FAA did not apply to the employment contract of a driver for an interstate motor carrier).

Defendants contend, however, that Plaintiffs do not qualify for the transportation worker

exemption because they are characterized as "independent contractors" in the Vendor

Agreements and therefore had no "contracts of employment" within the meaning of the FAA.

Defs.' Mem. at 12–13.[5]  Plaintiffs concede that the exemption does not extend to independent contractors[6] but argue that Defendants' reliance on the bare terms of the agreements unduly places form over substance.  Pls.' Opp'n Mem. at 6–7.

Plaintiffs instead argue that the question of whether the Vendor Agreements are "contracts of employment" for purposes of the FAA turns on the realities of the parties' working relationship, and Plaintiffs contend that they have presented sufficient evidence to conclude they are employees.  *Id.* at 7.  Specifically, Plaintiffs point to their allegations that they worked full time and exclusively for Defendants and that SDS:

> (1) required drivers to wear uniforms; (2) dictated the times they were to arrive at its facility each day; (3) required drivers to follow set delivery schedules and tracked them via GPS while on their routes; (4) had authority to unilaterally remove routes and stops from drivers; (5) could, and did, punish drivers by suspending them from their routes; (6) required drivers to be "on call" during specific weekends; (7) required drivers to purchase or rent scanners used for pickup and delivery of its merchandise; (8) mandated that drivers carry minimum levels of insurance on their vehicles; (9) required drivers to obtain its approval before taking vacations; and (10) prohibited drivers from dealing directly with its customers.

*Id.* at 7–8; *see also, e.g.*, Compl. ¶¶ 94–103; Declaration of Luz Durango ("Durango Decl.") (Doc. 29) ¶¶ 4–15; Declaration of Moira Riveros ("Riveros Decl.") (Doc. 30) ¶¶ 4–14; Declaration of Christian Zambrano ("Zambrano Decl.") (Doc. 32) ¶¶ 4–15.[7]  Alternatively, Plaintiffs argue that in the event they have not yet presented sufficient evidence to conclude they

---

[5] Each Vendor Agreement provides that "the relationship of Vendor with SDS hereunder is that of an independent contractor," that "Vendor shall in no way and for no purpose hereunder be considered an agent, servant, employee, partner or co-venturer of SDS or be deemed to hold any relationship with SDS other than that of an independent contractor," and that "Vendor and SDS acknowledge and agree that SDS shall have no right to direct or control the manner, means, details or methods by which Vendor provides its services hereunder."  Edick Decl., Exs. A–C ¶ 1.

[6] Although neither the Supreme Court nor the Second Circuit has directly addressed the issue, "courts generally agree that the § 1 exemption does not extend to independent contractors."  *Oliveira v. New Prime, Inc.*, 141 F. Supp. 3d 125, 130 (D. Mass. 2015) (collecting cases), *appeal filed*, No. 15-2364 (1st Cir. Nov. 19, 2015).

[7] Plaintiffs also point to *In re Gill*, 134 A.D.3d 1362 (3d Dep't 2015), which affirmed rulings of the Unemployment Insurance Appeal Board that couriers engaged by SDS were actually its employees.  Doc. 33.

fall within the exemption, the Court should order limited discovery and resolve this factual

dispute before deciding whether to compel arbitration.  Pls.' Opp'n Mem. at 8.

Defendants cite no authority for the proposition that the Vendor Agreement's

characterization of the parties' relationship governs whether Plaintiffs are properly considered

independent contractors for purposes of the FAA exemption.  *See* Defs.' Mem. at 12–13;

Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint and to

Compel Arbitration ("Defs.' Reply Mem.") (Doc. 34) at 2–3.  Plaintiffs, on the other hand, point

to a number of cases from other Circuits that have looked beyond the characterization itself, to

varying degrees.  *See Oliveira v. New Prime, Inc.*, 141 F. Supp. 3d 125, 135 (D. Mass. 2015)

(allowing the parties to conduct fact discovery on the question of plaintiff's status as an

employee or independent contractor), *appeal filed*, No. 15-2364 (1st Cir. Nov. 19, 2015); *Doe v.

Swift Transp. Co.*, No. 10 Civ. 899 (JWS), 2015 WL 274092, at *3 (D. Ariz. Jan. 22, 2015)

(holding that the issue of whether plaintiffs entered into "contracts of employment" for purposes

of the FAA is no different from the issue of whether plaintiffs were employees and providing

plaintiffs an opportunity to discover evidence that would affect the court's analysis of this

"highly factual" issue);[8] *Bell v. Atl. Trucking Co.*, No. 09 Civ. 406 (TJC), 2009 WL 4730564, at

---

[8] In *Doe v. Swift*, the district court issued a case management order that included a discovery schedule and motion deadlines and set a potential trial date with respect to the issue of plaintiffs' employment status.  The defendant thereafter filed an interlocutory appeal, which the Ninth Circuit dismissed for lack of jurisdiction.  *Van Dusen v. Swift Transp. Co.*, No. 15-15257, 2016 WL 3997257 (9th Cir. July 26, 2016).  The defendant also sought a writ of mandamus ordering the district court to vacate its case management order and decide the petition to compel arbitration without discovery or trial.  *In re Swift Transp. Co.*, No. 15-70592, 2016 WL 4010054 (9th Cir. July 26, 2016).  In denying the request, the Ninth Circuit held that the district court did not commit clear error when it issued its case management order, since the Circuit's prior opinions did not instruct the district court to make the exemption determination in a certain way, and they did not direct the district court to decide the issue on briefing alone.  *Id.* at *3.

Dissenting from the per curiam decision, Judge Sandra Ikuta noted that the district court's approach had the potential to undermine the polices of the FAA:  "[B]y requiring the parties to litigate the underlying substance of [plaintiff's] claim—whether the economic realities of [plaintiff's] work for [defendant] made [plaintiff] an employee for purposes of the FLSA—the district court risk[ed] depriving [defendant] of the benefits of its contract."  *Id.* at *7 (Ikuta, J., dissenting).  Sharing Judge Ikuta's concern, some courts have held that "unless the party can affirmatively establish that the FAA does not apply, the court should apply the characterization of the employment relationship

*5–6 (M.D. Fla. Dec. 7, 2009) (concluding, based on the terms of the agreement and plaintiff's allegations, that plaintiff entered into a "contract of employment" within the meaning of the FAA), *aff'd*, 405 F. App'x 370 (11th Cir. 2010); *Owner-Operator Indep. Drivers Ass'n v. C.R. Eng., Inc.*, 325 F. Supp. 2d 1252, 1258 (D. Utah 2004) (concluding, based solely on the terms of the agreements, that the agreements were "contracts of employment" within the meaning of the FAA).

The Second Circuit has not yet provided guidance on the question of what constitutes a "contract of employment" for purposes of the FAA exemption.  Since Plaintiffs filed their opposition brief, however, one of our sister courts in this Circuit has had occasion to confront the issue.  In *Diaz v. Michigan Logistics Inc.*, the Eastern District of New York considered whether the plaintiffs—incidentally, delivery drivers alleging FLSA and NYLL claims—qualified for the exemption even though the parties' agreements labeled them "independent contractors."  No. 15 Civ. 1415 (LDW), 2016 WL 866330, at *4 (E.D.N.Y. Mar. 1, 2016), *appeal filed*, No. 16-1006 (2d Cir. Apr. 4, 2016).  The court rejected the defendants' argument that the characterization in the parties' agreement controlled, explaining that "the economic reality of the parties' relationship—a highly factual question—determines employment status, not a contractual label." *Id.*  The court noted that "[d]iscovery and a fact-intensive analysis is required for a determination of whether Plaintiffs were 'independent contractors,' rather than 'employees,' subject to a 'contract of employment' for purposes of the FAA."  *Id.* (citing *Oliveira*, 2015 WL 6472248, at *8).  However, the court found that it did not need to make that determination, since the

---

described in the contract." *Port Drivers Fed'n 18, Inc. v. All Saints*, 757 F. Supp. 2d 463, 472 (D.N.J. 2011) (collecting cases).

plaintiffs' claims would be subject to mandatory arbitration under New York law, even if they qualified as exempt from the FAA.  *Id.* (citing *Valdes*, 292 F. Supp. 2d at 527).

Here, as explained below, the Court similarly finds that regardless of whether Plaintiffs' claims are exempt from the FAA, Plaintiffs must proceed by way of arbitration.  Thus, as in *Diaz*, this Court need not determine whether the Vendor Agreements are "contracts of employment" for purposes of the FAA.[9]

### B.  Arbitrability of Plaintiffs' Claims

#### 1.  Applying the FAA

In deciding a motion to compel arbitration under the FAA, the Court must resolve four issues:  (1) it must determine whether the parties agreed to arbitration; (2) it must determine the scope of that agreement; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the case are arbitrable, it must determine whether to stay the balance of the proceedings pending arbitration.  *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987); *see also Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015) (same).[10]  Because Plaintiffs seek to avoid arbitration, they bear the burden of showing the arbitration agreement is unenforceable.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000); *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010).

Plaintiffs do not dispute—indeed, it is apparent—that the parties agreed to arbitration, that the scope of that agreement covers the claims at issue in this case, and that there is no indication Congress intended FLSA claims to be nonarbitrable.  *See* Edick Decl., Exs. A–C

---

[9] Although it reaches the same result, the Court expresses no opinion regarding *Diaz*'s assertion that discovery and a fact-intensive analysis is required to decide whether the FAA applies in a case of this kind.

[10] Since all of Plaintiffs' claims are arbitrable, the Court need not reach the fourth *Genesco* question.

¶ 20(a) (agreeing to submit "any dispute, difference, question, or claim arising out of or in any way relating to [the Vendor Agreement] or the transportation services provided [t]hereunder" to binding arbitration); *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12 Civ. 5651 (AJN), 2014 WL 1172581, at *2 (S.D.N.Y. Mar. 21, 2014) (finding that a similar provision covered claims for unpaid wages); *Patterson*, 96 F. Supp. 3d at 78 ("[T]here is no indication that Congress intended Plaintiff's FLSA claims to be nonarbitrable.").

Instead, Plaintiffs argue that the arbitration provision in the Vendor Agreement cannot be enforced because its terms prevent Plaintiffs from effectively vindicating their rights.  Pls.' Opp'n Mem. at 3, 11–19.  The "effective vindication" exception invoked by Plaintiffs "finds its origin in the desire to prevent 'prospective waiver of a party's right to pursue statutory remedies.'"  *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)) (emphasis omitted).  The Supreme Court has enumerated two instances in which the exception might apply, both of which Plaintiffs maintain befit this case.  First, the exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights."  *Id.*; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.") (quoting *Mitsubishi*, 473 U.S. at 628).  Second, the exception "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable."  *Italian Colors*, 133 S. Ct. at 2310–11; *see also Green Tree*, 531 U.S. at 90 ("It may well be that the existence of large arbitration costs could preclude a litigant . . . from

effectively vindicating her federal statutory rights in the arbitral forum."). The Court addresses each of these arguments in turn.

### a. Plaintiffs' Ability to Assert Their Statutory Rights

The arbitration provision at issue requires Plaintiffs to "bear their own costs including, without limitation, attorneys' fees," even if they ultimately prevail in arbitration. Edick Decl., Exs. A–C ¶ 20(a). But the FLSA compels an award of reasonable attorney's fees and costs to a prevailing plaintiff. 29 U.S.C. § 216(b) ("The court in such action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added). Plaintiffs thus maintain that the arbitration provision is unenforceable because it impermissibly restricts their ability to pursue in arbitration the full panoply of their statutory remedies. Pls.' Opp'n Mem. at 12–16.

The Court agrees with Plaintiffs that the arbitration provision cannot preclude them from recovering their reasonable attorney's fees and costs should they prevail on their claims. "[T]he FLSA is a uniquely protective statute," *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016), and its purposes "require that it be applied even to those who would decline its protections," *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985). By awarding reasonable fees and costs to prevailing FLSA litigants, "Congress intended to encourage private citizen enforcement of the [statute]." *Soler v. G & U, Inc.*, 658 F. Supp. 1093, 1097 (S.D.N.Y. 1987). Indeed, "Plaintiffs' counsel's role as private attorneys general is key to the effective enforcement of these statutes." *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094 (PAE), 2014 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014). Accordingly, courts have deemed bear-your-own-cost provisions like the one at issue in this case unenforceable as applied to FLSA claims. *See Quilloin v. Tenet HealthSystem Phila.,*

*Inc.*, 673 F.3d 221, 230–31 (3d Cir. 2012) ("Provisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy."); *Ouedraogo*, 2014 WL 1172581, at *4 (agreement that would preclude FLSA plaintiff from recovering attorney's fees would be unenforceable);[11] *c.f. Cheeks*, 796 F.3d at 203 (employees may not waive the right to recover liquidated damages due under the FLSA).

Plaintiffs are incorrect, however, that this problematic aspect of the arbitration provision renders the provision entirely invalid.  Each Vendor Agreement contains a severability clause that permits striking any portion that is "invalid, illegal or unenforceable."  Edick Decl., Exs. A–C ¶ 24.  Such a clause "gives the arbitrator the authority to modify the agreement and interpret it in a lawful, enforceable manner," and the cost-shifting issue thus does not preclude arbitration of Plaintiffs' claims.  *Ouedraogo*, 2014 WL 1172581, at *4; *see also Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 124–25 (2d Cir. 2010) (the appropriate remedy is to "sever the improper provision of the arbitration agreement, rather than void the entire agreement").[12]

### b.  Plaintiffs' Ability to Access the Arbitral Forum

Plaintiffs next argue that the arbitration provision cannot be enforced because it requires them to pay exorbitant fees in arbitration, rendering the arbitral forum inaccessible.  Pls.' Opp'n

---

[11] In *Ouedraogo*, the defendants conceded that to the extent the underlying agreement would preclude the plaintiff from recovering attorney's fees, the agreement would be unenforceable (and the Court agreed).  2014 WL 1172581, at *4.  Here, Defendants have made no such concession.  Defendants state that in a telephone conversation with counsel for Plaintiffs, they offered to proceed to arbitration with the proviso that Plaintiffs could seek to recover their reasonable attorney's fees and costs should they prevail.  Defs.' Reply Mem. at 9–10; Declaration of Peter P. Perla, Jr., Esq. in Further Support of Defendants' Motion to Dismiss the Complaint and to Compel Arbitration ("Perla Decl.") (Doc. 35) ¶¶ 8–9.  However, Defendants do not indicate whether that offer is still on the table and note that they made the offer without "conceding the issue."  Perla Decl. ¶ 9.

[12] Plaintiffs argue that because Defendants rebuffed their offer to proceed to arbitration if the attorney fee provision were severed or waived, Defendants should not be entitled to now invoke the severability clause.  Pls.' Opp'n Mem. at 15–16.  Defendants' position during settlement negotiations does not warrant such a severe sanction, especially considering Plaintiffs did not offer to proceed on an individual basis, as Defendants maintain they must.

Mem. at 16–19.  Specifically, the Vendor Agreement requires each party to not only bear its own

costs but also "one half (1/2) of the fees and costs of the arbitrator."  Edick Decl., Exs. A–C

¶ 20(a).  Because the AAA's administrative fees are calculated based on the value of the claim,

and the arbitrator's compensation is typically based on an hourly rate, the cost to proceed in

arbitration will vary per case.  Declaration of Denise A. Schulman ("Schulman Decl.") (Doc. 28)

¶¶ 19–36.  Plaintiffs estimate that if they are required to arbitrate on an individual basis and

shoulder one half of the costs, the total cost of arbitration for each Plaintiff will be as follows:

$10,200 to $17,400 for Plaintiff Zambrano; $10,200 to $17,400 for Plaintiff Riveros; $8,750 to

$15,950 for Plaintiff Romero; and $11,850 to $19,050 for Plaintiff Durango.  *Id.*[13]  Plaintiffs

declare that they cannot afford to pay these costs and, in support, provide detail regarding their

respective financial positions.  Durango Decl. ¶¶ 16–20; Riveros Decl. ¶¶ 15–21; Zambrano

Decl. ¶¶ 16–22; Declaration of Rigoberto Romero ("Romero Decl.") (Doc. 31) ¶¶ 4–8.[14]

---

[13] In approximating the cost of arbitrating their claims, Plaintiffs refer the Court to the AAA's Commercial Arbitration Rules and Mediation Procedures ("AAA Rules"), the AAA's Commercial Arbitration Fee Schedule ("AAA Fee Schedule"), the AAA's guidelines concerning administrative fee waivers and pro bono arbitrators ("AAA Guidelines"), various AAA arbitrator resumes, and a decision and final award of an AAA arbitrator in a similar case. Schulman Decl. ¶¶ 5–9, 19–36 & Exs. 1–5.  In response, Defendants accuse Plaintiffs of "widely speculating" as to these costs, though they present no competing approximation.  Defs.' Reply Mem. at 9.

[14] Plaintiff Romero is single and provides the primary financial support for one child who lives with him; his net income is less than $1,000 per week; his major expenses (including rent, food, phone, utilities, car payments, car insurance, and health insurance) total approximately $4,000 per month; he does not have any savings; and he is falling behind on his car payments.  Romero Decl. ¶¶ 4–7.  Plaintiff Durango is separated and provides the primary financial support for one child who lives with her; she has two other children who she helps financially; her net income is approximately $850 per week; her major expenses (including rent, food, phones, car insurance, and car payments) total approximately $2,100 per month; and she does not have any savings or investments.  Durango Decl. ¶¶ 16–19.  Plaintiffs Zambrano and Riveros, who live together, have four dependent children; they share major expenses (including rent, food, phones, car insurance, and day care) of approximately $4,450 per month; and they have limited savings of approximately $120.  Zambrano Decl. ¶¶ 16, 18–19, 21; Riveros Decl. ¶¶ 15, 17–18, 20. Plaintiff Zambrano's net income is approximately $740 per week; and he pays approximately $250 per month for gas and an additional $200 per month for car insurance.  Zambrano Decl. ¶¶ 17, 20.  Plaintiff Riveros's net income is approximately $950 per week; she occasionally performs extra work for SDS for which she earns approximately $700 per week; and she pays approximately $440 per month for gas, $380 per month for additional car insurance, and $760 per month for car payments.  Riveros Decl. ¶¶ 16, 19.

Plaintiffs argue that the cost of arbitration is thus prohibitively expensive, especially as compared to the $455 federal district court filing fee.  Pls.' Opp'n Mem. at 18.

Neither the Supreme Court nor the Second Circuit has elucidated how detailed a showing of prohibitive fees must be to invalidate an arbitration agreement.  *See Reynolds v. de Silva*, No. 09 Civ. 9218 (CM), 2010 WL 743510, at *6 (S.D.N.Y. Feb. 24, 2010), *abrogated on other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015); *Green Tree*, 531 U.S. at 92 (sidestepping the issue because there was no showing at all on the point).[15]  It is well established, however, that "a party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs," *Green Tree*, 531 U.S. at 92, and that "the 'mere risk of prohibitive costs is too speculative to justify invalidating an arbitration clause,'" *Reynolds*, 2010 WL 743510, at *6 (quoting *Barbieri v. K-Sea Transp. Corp.*, 566 F. Supp. 2d 187, 194–95 (E.D.N.Y. 2008)).

Even if Plaintiffs have correctly approximated the costs of arbitration and even if those costs would indeed be prohibitive, Plaintiffs have not met their burden of showing the likelihood

---

[15] In lieu of guidance from the Supreme Court, most courts, including most district courts in this Circuit, follow the test set forth by the Fourth Circuit in *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549, 556 (4th Cir. 2001), and perform a "case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *See, e.g.*, *Reynolds*, 2010 WL 743510, at *6; *Moss v. Rent-A-Center, Inc.*, No. 06 Civ. 3312 (SLT), 2007 WL 2362207, at *7 (E.D.N.Y. Aug. 15, 2007); *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 293 (S.D.N.Y. 2002) (deeming *Bradford* "meticulously reasoned"); *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 411 (S.D.N.Y. 2003) (agreeing with *Stewart*).  Some courts instead analyze the issue without respect to the individual financial circumstances of the plaintiff.  *See, e.g.*, *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 663–65 (6th Cir. 2003) (setting forth a test that involves considering whether "the cost-splitting provision would deter a substantial number of similarly situated potential litigants" and looking to "average or typical arbitration costs" as opposed to "concrete estimates"); *Ball v. SFX Broad., Inc.*, 165 F. Supp. 2d 230, 239–40 (N.D.N.Y. 2001) (finding it "not at all clear" that *Green Tree* requires courts "to consider the particular financial position of the plaintiff in evaluating the burden imposed by an arbitration agreement" and deeming it "sufficient for an employee seeking to avoid arbitration to show a likelihood that he or she will be responsible for significant arbitrators' fees, or other costs which would not be incurred in a judicial forum"); *E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 463 (E.D.N.Y. 2006) (agreeing with the approaches taken in *Morrison* and *Ball*).  Plaintiffs argue that they have met their burden under either approach.  Pls.' Opp'n Mem. at 17 n.10.

of incurring those costs.  The AAA's Commercial Arbitration Rules and Mediation Procedures ("AAA Rules") provide that "[t]he AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees."  Schulman Decl., Ex. 1 at 29.  Moreover, the AAA's guidelines concerning administrative fee waivers and pro bono arbitrators ("AAA Guidelines") state that "[t]he AAA will attempt to appoint a pro bono arbitrator to serve for a one day hearing on a case where the AAA has granted a waiver or deferral hardship provision . . . and where the inability of one party to pay the arbitrator may prevent the case from going forward," and that "[e]ven if no waiver or deferral of administrative fees has been granted or requested, a party may make a request for a pro bono or reduced rate arbitrator at the time of the filing of the case or at any time up to the point that an arbitrator is appointed."  *Id.*, Ex. 3.  Courts in this District generally agree that hardship rules such as these "weigh[] against invalidating an arbitration provision on the basis of potentially high costs."  *Reynolds*, 2010 WL 743510, at *6 (citing *Valdes*, 292 F. Supp. 2d at 534; and *Rajjak v. McFrank & Williams*, No. 01 Civ. 493 (LAP), 2001 WL 799766, at *4 (S.D.N.Y. July 13, 2001)).

Plaintiffs argue that they would not be eligible for consideration for a hardship provision, and thus the likelihood of having to incur prohibitive costs is not speculative.  Pls.' Opp'n Mem. at 18–19.  Plaintiffs point to a term in the AAA Guidelines providing that "parties are eligible for consideration for a waiver or deferral of the administration fee if their annual gross income falls below 200% of the federal poverty guidelines," Schulman Decl., Ex. 3, and note that none of Plaintiffs' incomes fall below that level.  Pls.' Opp'n Mem. at 18–19.  It is not apparent on the record, however, whether demonstrating such an income is a necessary or sufficient condition for eligibility.  Moreover, the AAA Guidelines go on to state that "the AAA reserves the right to deny or grant any request based on the information given by the requesting party," Schulman

Decl., Ex. 3, and there is no indication that Plaintiffs have been denied such a request, as to either administrative fees or arbitrator costs.  It is thus too speculative at this time to conclude that Plaintiffs would be unable to reduce their expected arbitration costs.

Plaintiffs alternatively argue that even if they were eligible for a reduction in costs, "relying on such hypothetical relief to justify possibly forcing Plaintiffs to expend tens of thousands of dollars just to obtain a decision on their FLSA claims would completely undercut the concerns expressed by the Second Circuit in *Cheeks*."  Pls.' Opp'n Mem. at 19 (citing *Nesbitt v. FCNH, Inc.*, 811 F.3d 371 (10th Cir. 2016); and *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003)).[16]  The weight of authority in this Circuit, however, indicates that the Court should consider the possibility of such relief.  In so doing, the Court finds Plaintiffs' claims of prohibitive costs too speculative at this time.

* * *

As Plaintiffs have not satisfied their burden of showing the arbitration agreement is unenforceable, the FAA compels the Court to direct Plaintiffs to proceed in that forum.

## 2.  Applying New York Law

Even if the arbitration provision were entirely exempt from the FAA, such inapplicability would not preclude enforcing the agreement under state law.  *Valdes*, 292 F. Supp. 2d at 528–29; *see also Brady v. Williams Capital Grp., L.P.*, 14 N.Y.3d 459, 467 (2010) (acknowledging the "strong state policy favoring arbitration agreements").  Under New York law, the Court addresses

---

[16] In *Nesbitt*, the Tenth Circuit held that the plaintiff met her burden on the effective vindication issue even though she had not pursued the possibility of deferred or reduced arbitration fees, reasoning that "being at the mercy of the arbitrator's discretion as to whether to defer or reduce her share of the arbitration fees is not the same as the protections of the FLSA."  811 F.3d at 378 (internal quotation marks omitted).  In *Morrison*, the Sixth Circuit instructed lower courts to "discount the possibilities that the plaintiff will not be required to pay costs or arbitral fees," deeming important "whether other similarly situated individuals would be deterred by [the] risks [of incurring substantial costs]," and reasoning that "[i]f we do not know who will prevail on the ultimate cost-splitting question until the end, we know who has lost from the beginning:  those whom the cost-splitting provision deterred from initiating their claims at all."  317 F.3d at 661–64.

three threshold questions in deciding a motion to compel arbitration: (1) whether the parties made a valid agreement to arbitrate; (2) if so, whether the agreement has been complied with; and (3) whether the claim sought to be arbitrated would be time-barred if it were asserted in state court. *Smith Barney, Harris Upham & Co. v. Luckie*, 85 N.Y.2d 193, 201–02 (1995); *see also Valdes*, 292 F. Supp. 2d at 530 (same). The Court has already rejected Plaintiffs' validity challenges, Plaintiffs do not allege that the arbitration agreement has not been complied with, and Defendants do not contend that the claims sought to be arbitrated would be barred if filed in state court.

Plaintiffs argue, however, that the Court cannot enforce the arbitration agreement because their claims are not arbitrable under New York law. Pls.' Opp'n Mem. at 9–11. Specifically, Plaintiffs contend that New York prohibits the arbitration of claims brought under statutes that "represent[] public policy of the first magnitude," and that the FLSA and NYLL are two such statutes.[17] *Id.* at 9 (quoting *Aimcee Wholesale Corp. v. Tomar Prods., Inc.*, 21 N.Y.2d 621, 625 (1968)). Even if such a public policy exception survived the developments in arbitration law since *Aimcee* was decided, none of the cases to which Plaintiffs cite for support involved claims under the FLSA or NYLL.[18] And contrary to Plaintiffs' argument, courts in this District have consistently found FLSA and NYLL claims to be arbitrable. *See Reynolds*, 2010 WL 743510, at *5 (collecting cases); *see also Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 334

---

[17] Plaintiffs do not argue that, as a matter of state law, the cost-splitting terms of the arbitration provision render the provision unenforceable. In any event, New York courts follow the same "case-by-case, fact-specific approach employed by the federal courts, as well as the principles set forth in *Gilmer* and *Green Tree*." *Brady*, 14 N.Y.3d at 467 (citations omitted); *see also Valdes*, 292 F. Supp. 2d at 534 (compelling arbitration under New York law where plaintiff failed to establish the likelihood that she would have to pay any fees).

[18] *See* Pls.' Opp'n Mem. at 9–11 & n.6 (citing *Aimcee*, 21 N.Y.2d 621 (antitrust); *Wertheim & Co. v. Halpert*, 48 N.Y.2d 681 (1979) (discrimination), *abrogated by Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623 (1993); *Crespo v. 160 W. End Ave. Owners Corp.*, 253 A.D.2d 28 (1st Dep't 1999) (discrimination); *Weiner v. Weiner*, 88 Misc. 2d 920 (Sup. Ct. N.Y. Cnty. 1976) (utilization of name of professional corporation); and *Toffler v. Pokorny*, 157 Misc. 2d 703 (Sup. Ct. Nassau Cnty. 1993) (splitting of professional fees)).

(S.D.N.Y. 2003) (compelling arbitration of FLSA and NYLL claims and specifically noting that nothing "indicate[s] that the state legislature intended to preclude compulsory arbitration" of NYLL claims).  Accordingly, the Court finds that New York law also compels arbitration of Plaintiffs' claims.

### C.  Enforceability of the Class Waiver Provision

Aside from their challenges to the arbitration provision, Plaintiffs argue that the class waiver provision of the Vendor Agreement cannot be enforced as to their FLSA and NYLL claims because it violates their right to participate in concerted legal action under the National Labor Relations Act ("NLRA") and the Norris-LaGuardia Act ("NLGA").  Pls.' Opp'n Mem. at 3, 20–23.  Because the Court finds the arbitration provision enforceable, it is up to the arbitrator to determine the enforceability of the class waiver provision.  *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("[A] party's challenge to another provision of the contract . . . does not prevent a court from enforcing a specific agreement to arbitrate."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("[A] federal court [deciding a motion to compel arbitration] may consider only issues relating to the making and performance of the agreement to arbitrate.").[19]  The Court notes, however, that the Second Circuit has recently addressed the question raised by Plaintiffs and rejected Plaintiffs' position.  *See Patterson v. Raymours Furniture Co.*, No 15-2820, 2016 WL 4598542 (2d Cir. Sept. 2, 2016) (summary order) (relying on *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297 n.8 (2d Cir. 2013)), *aff'g* 96 F. Supp. 3d 71 (S.D.N.Y. 2015).

---

[19] For the same reason, it is for the arbitrator, and not this Court, to decide whether Plaintiffs have adequately pleaded claims against the individual Defendants, Defs.' Mem. at 15–17, and whether Plaintiff Zambrano has standing to sue, *id.* at 11.

17

### D.  Staying This Case Pending Arbitration

New York law mandates a stay when a motion to compel arbitration is granted.  N.Y.

C.P.L.R. § 7503(a) ("If the application [for an order compelling arbitration] is granted, the order

shall operate to stay a pending or subsequent action, or so much of it as is referable to

arbitration."); *see Matter of Princeton Info., Ltd.*, 235 A.D.2d 234, 234 (1st Dep't 1997) ("[I]t

was error to dismiss the proceeding, rather than stay it, since a judicial action may be required

after the arbitration.").  The FAA also mandates a stay of proceedings, but only "when all of the

claims in an action have been referred to arbitration *and* a stay requested."  *Katz*, 794 F.3d at 347

(emphasis added); *see* 9 U.S.C. § 3.  Here, because Defendants seek dismissal rather than a stay,

Defs.' Mem. at 5–6, this Court has discretion whether to stay or dismiss Plaintiffs' action under

the FAA.  *Katz*, 794 F.3d at 347 ("[A]bsent a statute or rule to the contrary, federal district courts

possess the inherent power to stay pending litigation when the efficacious management of court

dockets reasonably requires such intervention.") (quoting *Marquis v. F.D.I.C.*, 965 F.2d 1148,

1154 (1st Cir. 1992)); *see also Benzemann v. Citibank N.A.*, 622 F. App'x 16, 18 (2d Cir. 2015)

(summary order) (concluding that dismissal was not error where no party requested a stay).

As the Second Circuit has observed, a stay permits the parties to move their dispute "out

of court and into arbitration as quickly and easily as possible."  *Katz*, 794 F.3d at 346.  A stay

would also allow the Court, at a later stage, to address any claim by Plaintiffs that they were not

able to vindicate all their statutory rights due to costs or fees imposed on them in arbitration.  *In*

*re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 413 (S.D.N.Y. 2003); *see also*

*Gilmer*, 500 U.S. at 32 n.4; *Rajjak*, 2001 WL 799766, at *4.  Accordingly, the Court stays the

action pending arbitration of Plaintiffs' claims.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint and to compel arbitration is GRANTED in part and DENIED in part, and this action is STAYED pending arbitration. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 21.

It is SO ORDERED.

Dated:      September 22, 2016
            New York, New York

                                        _____
                                        Edgardo Ramos, U.S.D.J.