UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTIAN ZAMBRANO, LUZ DURANGO, MOIRA RIVEROS, and RIGOBERTO ROMERO, *on behalf of themselves and all others similarly situated*,

                    Plaintiffs,

-against-

STRATEGIC DELIVERY SOLUTIONS, LLC, DAVID KRONICK, ANDREW KRONICK, and MIKE RUCCIO,

                    Defendants.

**OPINION AND ORDER**

15 Civ. 8410 (ER)

Ramos, D.J.:

    On October 26, 2015, Christian Zambrano, Luz Durango, Moira Riveros, and Rigoberto Romero ("Plaintiffs") brought this putative collective and class action against Strategic Delivery Solutions, LLC, David Kronick, and Mike Ruccio ("Defendants"), alleging that Defendants improperly classified them as independent contractors and denied them wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). On April 5, 2016, Martin Forero ("Forero") filed his consent to sue under the FLSA. Doc. 49. On September 22, 2016, the Court granted Defendants' motion to compel arbitration and stayed the case. Doc. 64. Defendants now move to confirm the award Strategic Delivery Solutions, LLC ("SDS") won in one such arbitration against Forero. Doc. 79. For the reasons stated below, that motion is DENIED.

**I. BACKGROUND**

    In their complaint, Plaintiffs alleged that they worked for Defendants as drivers delivering pharmaceutical products, *see* Compl. (Doc. 1) ¶¶ 13, 27, 39, 51, and that Defendants

violated the FLSA and NYLL by, among other things, failing to pay them overtime wages, making unlawful deductions from their wages, and requiring them to incur expenses for Defendants' benefit without reimbursement, *id.* ¶¶ 130, 135, 142, 143.

Defendants moved to dismiss Plaintiffs' claims and to compel arbitration. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint and to Compel Arbitration ("Mot. to Compel Mem.") (Doc. 22). When Luz Durango ("Durango"), Rigoberto Romero ("Romero"), and Moira Riveros ("Riveros") began working with SDS, they executed Independent Vendor Agreements for Transportation Services. Declaration of Kimberly Edick in Support of Defendants' Motion to Dismiss the Complaint and to Compel Arbitration ("Edick Decl.") (Doc. 24), Exs. A–C ¶ 20(a). The Agreements signed by Durango, Romero, and Riveros contained the following arbitration provision:

> Agreement to Arbitrate. The parties agree to comply and be bound by The Federal Arbitration Act. The parties agree that any dispute, difference, question, or claim arising out of or in any way relating to this Agreement or the transportation services provided hereunder shall be subject to binding arbitration in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA") in effect at the time such arbitration is initiated. The parties agree that the issue of arbitrability shall be determined by the arbitrator applying the law of the state of residence of the Vendor. The parties shall bear their own costs including, without limitation, attorneys' fees, and shall each bear one half (1/2) of the fees and costs of the arbitrator. Any arbitration shall be conducted before a single arbitrator selected from a list of potential arbitrators provided by the AAA.

*Id.*

Defendants invoked this provision and section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, to compel Durango, Romero, and Riveros to arbitrate their claims. Mot. to Compel Mem. 8. In opposing the motion to compel arbitration, Plaintiffs argued, among other things, that the arbitration agreement prevented them from effectively vindicating their rights. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint and to

Compel Arbitration ("Mot. to Compel Opp'n.") (Doc. 27) at 3, 11–19. Specifically, Plaintiffs' primary argument was that the provision requiring both parties to share in the administrative costs of arbitration would make proceeding in an arbitral forum cost prohibitive for them. Mot. to Compel Opp'n at 16–19. Shortly after Plaintiffs and Defendants finished briefing, Forero filed a consent to become a party plaintiff and alleged that Defendants had also failed to pay him in accordance with the FLSA. Doc. 49.

Notwithstanding Plaintiffs' concerns, the Court granted Defendants' motion to compel arbitration on September 22, 2016, finding that, because of hardship rules in the American Arbitration Association ("AAA") rules, Plaintiffs' cost estimates for arbitration were speculative. *See Zambrano v. Strategic Delivery Sol'ns, LLC*, No. 15 Civ. 8410 (ER), 2016 WL 5339552, at *8 (S.D.N.Y. Sep. 22, 2016). Moreover, because the Court stayed the case pending arbitration, it noted that it could, at a later date, "address any claim by Plaintiffs that they were not able to vindicate all their statutory rights due to costs or fees imposed on them in arbitration." *Id.* at *10.

Following the Court's decision, SDS brought a Demand for Arbitration against Forero and sought declaratory relief. *See* Declaration of Peter P. Perla ("Perla Decl.") (Doc. 81) Ex. A ("Arbitration Op."), at 1. On November 30, 2016, Michele Gomez ("Gomez"), the manager of alternative dispute resolution ("ADR") services for the American Arbitration Association ("AAA"), sent Forero's counsel, Christopher Van De Water ("Van De Water"), an invoice for $600, informing him that the "established rate for the first day of hearing of $1,200.00 applies as compensation in expedited cases." *See* Declaration of Christopher L. Van De Water ("Van De Water Decl.") (Doc. 83) Ex. 1. On April 21, 2017, Van de Water received another invoice from

3

Gomez, this time for $11,900. Van De Water Decl. Ex 1. In response, Van De Water wrote to Gomez, informing her that:

> I am writing to follow up upon my phone call and email of today inquiring about the fees being invoiced in this matter. Today we received an invoice totaling $11,900.00 that sets forth Respondent Forero's deposit to cover the arbitrator's anticipated compensation for this matter. We have spoken with our client, Mr. Forero, who is financially unable to afford said deposit, and who has directed us not to proceed forward given the hardship this would encompass. In your letter dated November 30, 2016, you provided our office with an invoice for $600.00, while stating "[a]n established rate for the first day of hearing of $1,200.00 applies as compensation on Expedited cases." Respondent Forero is willing and able to proceed with a one day arbitration that follows those terms. Please advise so that we may be guided accordingly.

*Id.* Van De Water thus made clear that Forero would only be willing to proceed to arbitration if his case remained "expedited" and his costs limited to $600. *Id.* The records is silent as to whether Gomez responded to Van De Water. Just over a month later, on May 23, 2017, Van De Water wrote to Defendants' counsel and the selected arbitrator, Judge Albert M. Rosenblatt, in advance of the arbitration scheduled for the next day. *See* Van De Water Decl. Ex. 3.[1] He explained that Forero no longer contested any of Defendants' contentions:

> This shall serve to memorialize our recent communications wherein we have confirmed the following as they pertain to the pending individual arbitration against Martin Forero presently scheduled to be held on Wednesday, May 24, 2017: Mr. Forero does not contest your assertions that (1) he is an independent contractor, (2) the waiver of class certification shall apply to him; and (3) declaratory relief in the amount sought ($0) is appropriate. As previously offered. Mr. Forero is willing to stipulate to the above. Based upon those conceded issues, as well as the recent conference call with the arbitrator Judge Rosenblatt, it is our position that no arbitrable issues exist for purposes of tomorrow's hearing. For that reason neither our office nor Mr. Forero will be making an appearance at the scheduled hearing.

---

[1] The record is silent as to when the arbitrator was selected and how far in advance the hearing was scheduled. As the letter suggests and as counsel confirmed at oral argument held on this matter on December 12, 2017, the letter followed a conference call between the parties and the arbitrator, at which Van De Water told the participants that Forero would not be going forward because of costs.

4

*Id.* However, despite Forero now having told Defendants three times that he would walk away from his claim because he could not afford the cost of arbitration, SDS "insisted on going forward with the hearing." Arbitration Op. at 2. Nearly a month after the hearing, which proceeded without Forero or his counsel, Judge Rosenblatt issued, on June 23, 2017 a written opinion determining: (1) that Forero was an independent contractor, and (2) that in signing the vendor agreement, he waived his right to proceed in a class or collective action against Defendants. *Id.* at 7. He also awarded SDS $7,010.00 as reimbursement for Forero's half of the arbitration fees.[2] Defendants now seek an order confirming the arbitrator's award in SDS's favor. *See* Doc. 79.

## II. LEGAL STANDARD

The Court decides Defendants' Motion to Confirm an Arbitration Award "as akin to a motion for summary judgment based on the movant's submissions." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of proof at trial would fall on the movant, that party's "own submissions in support of the

---

[2] AAA charges $2,050.00 as administrative fees. The Arbitrator's compensation was $11,970.00. Arbitration Op. at 2.

motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998). Conversely, "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322–23). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp.*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)) (internal quotation marks omitted).

### III. DISCUSSION

Pursuant to 9 U.S.C. § 9, confirmation of an arbitral award normally takes the form of a summary proceeding that converts a final arbitration award into a judgment of the court. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d at 110 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). However, "Arbitration under the [Federal Arbitration] Act is a matter of consent, not coercion," *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989), and, as a result, a party may only apply for an order confirming an arbitration award "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . ." 9 U.S.C. § 9. Therefore,

the Court must first decide "whether there is a written agreement to arbitrate the controversy in question." *MCI Telecomms. Corp. v. Exalon Indus., Inc.*, 138 F.3d 426, 429 (1st Cir. 1998).[3]

In accordance with the Independent Vendor Agreements signed by Plaintiffs and Forero, SDS and Forero agreed to arbitrate "any dispute, difference, question, or claim arising out of or in any way relating to this Agreement or the transportation services provided hereunder." Declaration of David F. Jasinski in Support of Defendants' Motion to Confirm Arbitration Award ("Jasinski Decl.") (Doc. 85), Ex. B ¶ 20(a). However, as Forero argues, "[a] complete lack of any arbitrable issue" prevents this Court from confirming the award. Memorandum of Law in Opposition to Defendants' Motion to Confirm the Arbitral Award ("Pl.'s Mem.") (Doc. 82).

The issue before the arbitrator has not qualified as a "dispute, difference, question, or claim" since April 21, 2017, at the earliest, or May 23, 2017, at the latest. SDS filed a Demand for Arbitration to seek a declaration that "Respondent was properly classified as an independent contractor" and that "the class action waiver provision in the Vendor Agreement is enforceable against Respondent." Arbitration Op. at 1–2. On April 21, 2017, Forero's lawyer explained to Defendants and to Judge Rosenblatt that Forero had "directed us not to proceed forward." Van De Water Decl. Ex 1. A little over a month later, on May 23, 2017, Forero's lawyer notified Defendants and Judge Rosenblatt that "no arbitrable issues exist" because "Mr. Forero does not contest [Defendants'] assertions that ( 1) he is an independent contractor, (2) the waiver of class certification shall apply to him; and (3) declaratory relief in the amount sought ($0) is appropriate." Van De Water Decl. Ex. 3. In light of these representations to Defendants and to

---

[3] As the Court noted in a previous decision in this case, "The Court understands the parties to have waived their ostensible agreement that 'the issue of arbitrability shall be determined by the arbitrator,' since neither side contends that an arbitrator, rather than this Court, should decide this threshold question." *Zambrano v. Strategic Delivery Sols., LLC*, No. 15 CIV. 8410 (ER), 2016 WL 5339552, at *2 n. 4 (S.D.N.Y. Sept. 22, 2016).

7

Judge Rosenblatt, the declaratory relief that Defendants sought has not qualified as a dispute, difference, question, or claim since April 21, 2017, at the earliest, or May 23, 2017, at the latest.

Because Forero had only agreed to submit actual disputes or claims to the arbitrator, and because he clearly and explicitly conceded all contested issues with SDS prior to the May 24, 2017 hearing, there was simply nothing for Judge Rosenblatt to decide. Accordingly, the declaratory relief that Defendants sought essentially amounted to a request for an advisory opinion which Forero did not "agree" to arbitrate, and certainly did not agree to fund. In this regard, it is important to note that at a Court hearing on December 12, 2017, Defendants' counsel, David F. Jasinski, stated that he insisted on going forward with the hearing for the purpose of obtaining a finding by the arbitrator on these issues. Given the absence of an agreement to arbitrate the conceded issues, the Court declines to confirm the Award of Arbitrator.

Defendants argue that the arbitration award must be confirmed because Forero has not made a timely motion to challenge it. Memorandum of Law in Support of Defendants' Motion to Confirm the Arbitral Award ("Defs.' Mem.") (Doc. 80), at 3–4 (citing *Scandinavian Reins. Co. v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60, 78 (2d Cir. 2012)). To some extent, this argument tracks the FAA's text: Section 9 of the FAA provides that a party to an arbitration agreement may move a court to confirm an arbitration award and that "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. Pursuant to section 12 of the FAA, motions filed under sections 10 or 11 "must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Furthermore, the Second Circuit has interpreted these provisions and concluded that "a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period has run, even when raised as a defense to a motion

8

to confirm." *Florasynth, Inc.*, 750 F.2d at 175. Defendants read this statutory and decisional law to mean that, in the absence of a timely motion to vacate, modify, or correct an arbitration award, the Court must confirm any arbitration award. Defs.' Mem. at 3–4.

The Court does not find Defendants's argument persuasive because it ignores the fundamental issue: "Arbitration under the [Federal Arbitration] Act is a matter of consent, not coercion," *Volt Info. Scis., Inc.*, 489 U.S. at 479, and a party may only apply for an order confirming an arbitration award "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . ." 9 U.S.C. § 9. Here, the parties did not agree to proceed to arbitration, as Forero specifically disclaimed any relief to which he might have been entitled. As a result, none of the FAA's procedures, let alone the time limits in section 12, applies.

The Second Circuit has not ruled on this issue. Two other courts, however, have come to similar conclusions. The first case is *Local 205 v. Day Care Council of N.Y., Inc.*, 992 F. Supp. 388 (S.D.N.Y. 1998). In that case, a union filed a demand for arbitration against a day care center, and the arbitrator entered an award against the day care center and against an association of day care centers that represented the day care center. *Id.* at 390–91. Neither the day care center nor the association attended the arbitration hearing. *Id.* at 391. The union moved to confirm the arbitration award in federal court, and the association opposed the motion on the ground that it had not agreed to arbitrate the underlying dispute. *Id.* The union argued that section 12 of the FAA barred the association's defense, but the court disagreed because "the

9

limitations period of § 12 does not prevent it from arguing that it has not agreed to arbitrate any disputes." *Id.* at 393–394.

The second case is *MCI Telecomms. Corp. v. Exalon Indus., Inc.*, 138 F.3d 426 (1st Cir. 1998). In that case, MCI filed an arbitration demand against Exalon and Exalon did not attend the hearing. *Id.* at 428. The arbitrator entered an award and MCI moved in federal court to confirm it. *Id.* Exalon opposed the motion to confirm and claimed that it had not agreed to arbitrate the original dispute. *Id.* MCI argued that Exalon had waived this defense by failing to file a motion to vacate the award within the time limits proscribed by section 12. *Id.* The First Circuit disagreed: "[T]he time limits provided by section 12 for the vacation, modification, or correction of an award do not prevent a party who did not participate in an arbitration proceeding from challenging the validity of the award at the time of its enforcement on the basis that no written agreement to arbitrate existed between the parties." *Id.* at 431.

The case before us resembles Local 205 and MCI Telecommunications Corp. in important respects. As was the case for the association in Local 205 and for Exalon in MCI Telecommunications Corp., Forero did not participate in the arbitration proceeding and now questions whether the arbitration agreement covers the alleged disputed decided by the arbitrator. Pl.'s Mem. at 1.[4] In the absence of Supreme Court or Second Circuit precedent, the Court finds these similarities meaningful and these opinions persuasive. As a result, the Court holds that section 12's limitations do not apply to Forero's defense.

---

[4] To be sure, a distinction does exist between *Local 205*, *MCI Telecommunications Corp.*, and the case at bar: In *Local 205* and *MCI Telecommunications Corp.*, the association and Exalon claimed that a written arbitration agreement did not cover *any* dispute between the parties, whereas here Forero argues that the arbitration agreement did not cover the *particular* issues brought before the arbitrator because those issues, conceded before the hearing, were no longer arbitrable. The Court regards this dissimilarity as a distinction without difference because issues related to either an arbitration agreement's scope or existence speak to the same question: Namely, did the arbitrator decide a matter that the parties agreed to arbitrate?

10

## III. CONCLUSION

For the foregoing reasons, Defendants' motion to confirm the arbitration award is DENIED. The Clerk of the Court is respectfully directed to terminate the first letter motion, Doc. 68, second letter motion, Doc. 73, and motion, Doc. 79.

It is SO ORDERED.

Dated: September 17, 2018
        New York, New York

                                              Edgardo Ramos, U.S.D.J.