UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Christian Zambrano, *et al.*, | Civ. No. 15-CV-8410 (ER) |
| *Plaintiffs,* | Oral argument requested |
| v. | |
| Strategic Delivery Solutions, LLC, *et al.*, | |
| *Defendants.* | |

**Memorandum of Law
in Support of Plaintiffs Blanca Alulema & Maria Tacoaman's
Motion to Lift Stay and for Leave to Amend Complaint**

Hugh Baran
National Employment Law
Project
90 Broad Street, Ste. 1100
New York, NY 10004
(646) 693-8231
hbaran@nelp.org

Gabriela Siegel
Make the Road New York
301 Grove St
Brooklyn, NY 11237
(718) 418-7690 x 4494
gabriela.siegel@
maketheroadny.org

Patricia Kakalec
Kakalec Law PLLC
195 Montague Street, 14th Fl.
Brooklyn, NY 11201
(212) 705-8730
patricia@kakaleclaw.com

*Attorneys for Plaintiffs Blanca Alulema and Maria Tacoaman*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................ 1

PROCEDURAL HISTORY AND BACKGROUND ................................. 2

ARGUMENT ............................................................ 3

I.    The Court Has Broad Discretion to Lift the Stay Pending Arbitration Here. ................... 3

II.    The Court's September 2016 Order Stayed the Claims of Plaintiffs Alulema and Tacoaman, but by its Plain Language Did Not Make This Stay Contingent on Their Proceeding in Arbitration. ................................................... 4

III.    The Court's September 2016 Order Could Not Have Required Plaintiffs Alulema and Tacoaman to Arbitrate, as the Court Lacked a Legal Basis for Compelling Them to Arbitrate. 5

IV.    Even if the Court Determines that its Prior Order Required Plaintiffs Alulema and Tacoaman to Arbitrate, the Court May Reconsider That Order Under Rule 54(b) in Light of the Intervening Change of Law in *New Prime* ................................................... 8

V.    The Stay Should Be Lifted and Ms. Alulema and Ms. Tacoaman Should be Permitted to Proceed in Court, Rather than in Arbitration. ................................................... 10

    A.    The FAA Does Not Apply to Any Vendor Agreements Ms. Alulema and Ms. Tacoaman May Have Signed. ................................................... 11

    B.    The Vendor Agreements' Arbitration Choice-of-Law Provision Should be Enforced. ................................................... 13

    C.    Under New York Law, the Vendor Agreements' Arbitration Provisions are Unenforceable, Requiring their Invalidation. ................................................... 15

        1.    The Provision Requiring Each Side to Bear Its Own Costs Deprives Ms. Alulema and Ms. Tacoaman of Substantive Statutory Rights and Remedies. ................... 16

        2.    The Arbitral Fee-Splitting Provision and Provision Requiring Use of Commercial Rules Result in High Costs Preventing Ms. Alulema and Ms. Tacoaman From Accessing the Arbitral Forum. ................................................... 17

        3.    The Delegation Clause in the Arbitration Agreement Would Require Ms. Alulema and Ms. Tacoaman to Incur High Costs and Fees in Order to Determine Arbitrability. ................................................... 20

        4.    The Class/Collective Action Waiver Deprives Ms. Alulema and Ms. Tacoaman of Substantive Statutory Rights and Prevents them from Vindicating Those Rights In the Arbitral Forum. ................................................... 21

        5.    The Invalid, Illegal, and Unenforceable Arbitration Provisions Here May Not Be Severed. ................................................... 22

VI.    Ms. Alulema and Ms. Tacoaman Should Be Permitted to Amend Their Complaint to Proceed with Their Individual Labor Law Claims in this Action. ................................................... 23

CONCLUSION ................................................... 25

## PRELIMINARY STATEMENT

Plaintiffs Blanca Alulema and Maria Tacoaman respectfully submit this Memorandum of Law in support of their Motion to Lift the Stay and Amend the Complaint. Ms. Alulema and Ms. Tacoaman, who worked long hours for Strategic Delivery Services, LLC ("SDS") and the other Defendants doing delivery work between 2010 and 2020, were never paid overtime for their work and were forced to pay out of their own pockets for many of the costs of doing their jobs. Although Defendants treated its drivers as independent contractors, the facts here show that, as a matter of economic reality, Defendants were the employers of Ms. Alulema and Ms. Tacoaman. Defendants were thus required to pay overtime to Ms. Alulema and Ms. Tacoaman for the hours they worked above forty in each work week, pay them the applicable minimum wage rate for all hours worked, and not take unlawful deductions from their pay, among other things.

While not the initial Lead Plaintiffs in this action, Ms. Alulema and Ms. Tacoaman opted into this case in 2016 by filing consents to sue in accordance with the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"). Shortly thereafter, this action was stayed by the Court's September 22, 2016 Order. Ms. Alulema and Ms. Tacoaman now ask the Court to lift the stay to allow them to proceed with their claims. As discussed below, they are not required to arbitrate their claims under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"),  as the recent Supreme Court case *New Prime v. Olivera*, 139 S. Ct. 532 (2019), makes clear.

Ms. Alulema and Ms. Tacoaman seek only a first—not a second—bite at the apple: the opportunity to proceed and vindicate their statutory rights under our federal and state minimum wage and overtime laws. As explained in more detail below, the issues on the instant motion involve a change in the law, were not squarely before this Court, or were not addressed by this Court under New York law at the time of September 2016 Order. Ms. Alulema and Ms. Tacoaman also seek leave, pursuant to Federal Rule of Civil Procedure 15(a), to amend the Complaint.

1

## PROCEDURAL HISTORY AND BACKGROUND

On October 26, 2015, SDS delivery drivers Christian Zambrano, Luz Durango, Moira Riveros, and Rigoberto Romero (the "Lead Plaintiffs") sued SDS and corporate officers David Kronick, Andrew Kronick, and Mike Ruccio (collectively, "Defendants"), alleging that: (1) they were misclassified as independent contractors instead of employees; (2) they were regularly required to work more than 40 hours in a workweek; and (3) SDS failed to pay them at the overtime rate for all hours worked in excess of 40 in a workweek, in violation of the FLSA and the New York Labor Law ("NYLL"). *See* Compl., ECF No. 1. Lead Plaintiffs also alleged payroll notice violations, unlawful deductions, and untimely payment of wages in violation of the NYLL. *Id.* Lead Plaintiffs, who sought to represent coworkers in an FLSA collective action and NYLL Rule 23 class action, were represented by Joseph & Kirschenbaum LLP.

On January 29, 2016, Defendants moved to dismiss the Complaint and compel Lead Plaintiffs to arbitrate their claims. *See* Mem. of Law in Support of Mot. To Dismiss & Compel Arbitration, dated Jan. 29, 2016 ("Defs.' Mem. re Mot. To Dismiss"), ECF No. 22. Between March 22 and April 27, 2016, twenty-three SDS delivery drivers opted into the collective action, represented by different counsel: Slater Slater Schulman LLP and The Marlborough Law Firm. *See* Consent Forms, ECF Nos. 36–59. Plaintiffs Blanca Alulema and Maria Tacoaman opted into the action on April 5, 2016 and March 22, 2016, respectively. ECF Nos. 46 & 39. Defendants did not attempt to supplement their motion so as to compel arbitration of the opt-in Plaintiffs' claims.

On September 22, 2016, the Court compelled Lead Plaintiffs to arbitrate their claims against Defendants. *Zambrano v. Strategic Delivery Sols., LLC* (*Zambrano I*), No. 15 Civ. 8410 (ER), 2016 WL 5339552, at *4–9 (S.D.N.Y. Sept. 22, 2016). The Court also stayed this action

pending arbitration of Lead Plaintiffs' claims before the American Arbitration Association ("AAA"). *Id.* at *10. Again, Defendants did not move to compel any opt-in Plaintiffs to arbitrate.[1]

On August 24, 2020, the Court so-ordered a stipulation by which the National Employment Law Project substituted as counsel for Ms. Alulema and Ms. Tacoman. Consent Order, ECF No. 95. The other undersigned counsel appeared for Ms. Alulema and Ms. Tacoaman. Notices of Appearance, ECF Nos. 93 & 105. New counsel sought leave to file a motion to lift the stay, allowing Ms. Alulema and Ms. Tacoaman's claims to proceed in this Court, and to file an Amended Complaint. Pre-Motion Conference Ltr., ECF No. 91. On October 2, 2020, the Court held a pre-motion conference, granted Ms. Alulema and Ms. Tacoaman permission to file their motion, and set a briefing schedule. This brief is submitted in accordance with that schedule.

## ARGUMENT

### I.    The Court Has Broad Discretion to Lift the Stay Pending Arbitration Here.

When a court orders some but not all claims to arbitration, "the decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir. 1987) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983)); *see generally Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

The decision whether to lift a discretionary stay pending arbitration is similarly a matter within the district court's discretion to control its docket. *See, e.g.*, *Bergman v. Spruce Peak Realty,*

---

[1] Defendants did serve a demand for arbitration upon opt-in Plaintiff Martin Forero, and that arbitration went forward. *See Zambrano v. Strategic Delivery Systems* (*Zambrano II*), No. 15 Civ. 8410 (ER), 2018 WL 4462360, at *2–3 (S.D.N.Y. Sept. 17, 2018).

*LLC*, Nos. 2:11-cv-127 & 2:11-cv-128, 2012 WL 6212849, at *8 (D. Vt. Dec. 13, 2012) (exercising

discretion to lift stay of non-arbitrable claims while arbitration remained pending); *see also In re*

*Kind LLC "Healthy & All Natural" Litig.*, No. 15-MD-2645 (WHP), 2019 WL 542834, at *2

(S.D.N.Y. Feb. 11, 2019) (decision to continue or lift stay is within court's discretion).

Because the Court issued a discretionary stay pending arbitration of the Lead Plaintiffs'

claims, the Court has broad discretion to determine whether to lift that stay, considering, among

other factors: (1) the unusual procedural posture of Ms. Alulema and Ms. Tacoaman's claims;

(2) the public interest in workers being able to vindicate their rights under the FLSA and state

wage laws; (3) the intervening change in law in *New Prime v. Oliveira*, 139 S. Ct. 532 (2019),

which clarified that transportation workers engaged in interstate commerce are not subject to the

FAA, regardless of their classification as "independent contractors;" (4) the arbitration choice-of-

law clause in any Vendor Agreements that Ms. Alulema and Ms. Tacoaman may have signed,

which designates the FAA as the only arbitration law that applies to those agreements; and (5) the

unenforceable provisions in the arbitration requirement[2] that Ms. Alulema and Ms. Tacoaman may

have signed that render the arbitration agreements invalid in their entirety.

## II.     The Court's September 2016 Order Stayed the Claims of Plaintiffs Alulema and Tacoaman, but by its Plain Language Did Not Make This Stay Contingent on Their Proceeding in Arbitration.

While the Court's September 2016 Order stayed the action in its entirety, *Zambrano I*, 2016

WL 5339552, at *1, the order compelling arbitration only applied, on its face, to those claims set

forth by the Lead Plaintiffs. The first sentence of the Court's Order listed and identified only

---

[2] In using the term "arbitration requirement," we are following other colleagues' practice in rejecting the common use of the term "arbitration agreement," which belies the reality that for workers in low-paying jobs, the provisions in such contracts are not bilateral but instead employer-dictated and required as a condition of employment. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1636 n.2 (2018) (Ginsburg, J., dissenting) (noting the Hobson's Choice employees face when such agreements are imposed: "accept arbitration on their employer's terms or give up their jobs."). But we have not altered quotations in which courts refer to "arbitration agreements."

"Christian Zambrano, Luz Durango, Moira Riveros, and Rigoberto Romero" as "Plaintiffs." *Zambrano I*, 2016 WL 5339552, at \*1. The Court then continued to use the term "Plaintiffs" throughout its opinion in reference to matters pertaining only to Lead Plaintiffs Zambrano, Durango, Riveros, and Romero. *See, e.g.*, *id.* at \*1 ("On October 26, 2015, Plaintiffs instituted this action. . . ."). The Court's analysis as to the "Plaintiffs' Ability to Assert Their Statutory Rights" and "Plaintiffs' Ability to Access the Arbitral Forum," for example, considered only factual findings in the record as pertained to Lead Plaintiffs Zambrano, Durango, Riveros, and Romero. *See, e.g., id.* at \*7 n.14 ("Plaintiff Romero is single and provides the primary financial support for one child who lives with him; . . . Plaintiff Durango is separated and provides the primary financial support for one child who lives with her; . . . Plaintiffs Zambrano and Riveros, who live together, have four dependent children. . . .").

In contrast, this Court noted that "[s]ince this action was filed, twenty-three individuals have filed consents to join," further distinguishing the opt-in Plaintiffs as separate from the Lead "Plaintiffs" whom this Court found as bound to proceed by way of arbitration. *Id*. at \*5. Accordingly, while the Court's September 2016 Order stayed the entire case, the plain text of the Order did not require Ms. Alulema and Ms. Tacoaman to arbitrate their claims.

### III. The Court's September 2016 Order Could Not Have Required Plaintiffs Alulema and Tacoaman to Arbitrate, as the Court Lacked a Legal Basis for Compelling Them to Arbitrate.

In their pre-motion conference response, Defendants argued that this Court previously ordered Ms. Alulema and Ms. Tacoaman to arbitrate their claims. Defs.' Pre-Motion Ltr. at 2 ("The individuals' [sic] collectively totaled twenty-three (23) who were directed to proceed to arbitration to litigate their claims."). But Defendants' claim is belied by controlling Second Circuit precedent, New York law, and Defendants' own filings on the docket.

In the Second Circuit, courts must first consider "whether the parties have entered into a valid agreement to arbitrate" before granting a motion to compel under the FAA. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) ("The threshold question facing any court considering a motion to compel arbitration is therefore whether the parties have indeed agreed to arbitrate."). Absent evidence of such an agreement, a court cannot compel arbitration under the FAA. *See Volt Info. Scis. v. Bd. Of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989) ("[W]e have recognized that the FAA does not require parties to arbitrate when they have not agreed to do so . . . .") (citation omitted); *James v. RD Am., LLC*, No. 3:16-cv-1445 (VAB), 2019 WL 4140814, at *4 (D. Conn. Aug. 30, 2019) (absent evidence of complete and properly-authenticated agreement to arbitrate, a court has no legal basis to enforce that contract); *MAT Movies & Television Prods. GmbH & Co. Project IV KG v. RHI Entm't Distrib., LLC*, 752 F. Supp. 2d 373, 379 (S.D.N.Y. 2010) ("Even though federal policy favors arbitration, a court cannot require arbitration absent a valid agreement to arbitrate a particular dispute."); *see also Klay v. All Defs.*, 389 F.3d 1191, 1200 (11th Cir. 2004).

New York law similarly requires that a court, in considering a motion to compel arbitration, examine whether there is evidence which affirmatively establishes that the parties expressly agreed to arbitrate. *See Waldron v. Goddess*, 61 N.Y.2d 181, 183–84 (1984). Absent such evidence, a court cannot compel a party to arbitrate under New York law. *Id.*; *Schubtex, Inc. v. Allen Snyder, Inc.*, 49 N.Y.2d 1, 5–6 (1979) ("[A] litigant ought not to be forced into arbitration and, thus, denied the procedural and substantive rights otherwise available in a judicial forum, absent evidence of an express intention to be so bound."); *Mionis v. Baer*, 749 N.Y.S.2d 497, 501 (N.Y. App. Div., 1st Dep't 2002) ("It is a fundamental principle of New York law that in the absence of an agreement to do so, parties cannot be forced to arbitrate.") (citations omitted).

On January 29, 2016, Defendants moved to dismiss the Complaint and to compel Lead Plaintiffs Luz Durango, Moira Riveros, and Rigoberto Romero to arbitrate their claims. *See* Defs.' Mem. re Mot. to Dismiss, ECF No. 22, at 1, 6–10, 18. Defendants also argued that Lead Plaintiff Christian Zambrano was required to arbitrate under Ms. Durango's arbitration provision, and urged either that his claims be dismissed or that he be compelled to arbitrate as well. *See id.* at 10–16. At the time Defendants' motion was filed, no other plaintiffs had joined the case.

In support of that motion, Defendants submitted a declaration from Kimberly Edick, Regional Logistics Coordinator for SDS, along with three arbitration agreements signed by Lead Plaintiffs Luz Durango, Rigoberto Romero, and Moira Riveros. *See* Declaration of Kimberly Edick, ECF No. 24 ("Edick Decl."); Exs. A–C to Edick Decl. Apart from affirming that Lead Plaintiff Christian Zambrano was not a vendor for SDS, Ms. Edick's declaration did not refer to other plaintiffs at all, or provide evidence of arbitration agreements that would bind other plaintiffs.

After Defendants' motion was briefed, multiple opt-in plaintiffs, including Ms. Alulema and Ms. Tacoaman, joined this action. *See* ECF Nos. 36–59. But Defendants did not then move to compel arbitration of the opt-in plaintiffs' claims, or make any other motion with respect to the opt-in plaintiffs. The Court then ruled on Defendants' motion, ordering the Lead Plaintiffs to arbitrate. *Zambrano I*, 2016 WL 5339552, at *10. But the Court did not dismiss the entire action; instead, it exercised its discretion and stayed the action pending the arbitrations it had ordered. *Id.*

At any point thereafter, Defendants could have moved for an additional order compelling the opt-in plaintiffs to arbitrate as well. But they did not do so. Because Defendants never moved to compel Ms. Alulema and Ms. Tacoaman to arbitrate their claims, and never presented any evidence that either of them had agreed to arbitrate, this Court lacked the authority to order either

of them to arbitrate their claims, under both the FAA and New York law—absent any motion to compel such arbitration or evidence that Ms. Alulema and Ms. Tacoaman had agreed to arbitrate.

**IV.     Even if the Court Determines that its Prior Order Required Plaintiffs Alulema and Tacoaman to Arbitrate, the Court May Reconsider That Order Under Rule 54(b) in Light of the Intervening Change of Law in *New Prime*.**

If the Court determines that its September 2016 Order required Plaintiffs Alulema and Tacoaman to arbitrate, the Court should nevertheless reconsider that order under Federal Rule of Civil Procedure 54(b), in light of the intervening change of law in *New Prime*. Because the Supreme Court has determined that courts must determine whether 9 U.S.C. § 1 ("FAA Section 1") applies before ordering arbitration, and that transportation workers engaged in interstate commerce are not subject to the FAA regardless of whether they are classified as independent contractors, the Court's prior order may be reconsidered under Rule 54(b)—allowing the Court to determine afresh: (1) whether the arbitration choice-of-law provision prevents New York law from being applied, and (2) whether New York law requires the arbitration clauses to be invalidated.

Rule 54(b) allows a court to revise "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). District courts are typically limited in reconsidering earlier decisions, and treat those decisions as law of the case. *See Agostini v. Felton*, 521 U.S. 203, 236 (1997). However, the law of the case doctrine is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), cert. denied, 506 U.S. 820 (1992). While litigants should "neither be required, nor without good reason permitted" to relitigate an issue previously decided, a court nonetheless "retains 'discretion to revisit earlier rulings in the same case.'" *Lewis v. Clarkstown Police Dept.*, No. 11 Civ. 2487 (ER),

2014 WL 6883468, at *1 (S.D.N.Y. Dec. 8, 2014) (quoting *Official Cmte. of Unsecured Creditors of Color Tile v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)).

The Second Circuit has held that under Rule 54(b), a court's prior decision may be revised where there is "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Color Tile*, 322 F.3d at 167 (quoting *Virgin Atl. Airways*, 956 F.2d at 1255). "Perhaps the most obvious justifications for departing from the law of the case arise when there has been an intervening change of law outside the confines of the particular case." 18 B. Wright, A. Miller & E. Cooper, *Fed. Practice and Procedure* § 4478 (2d ed.). An intervening change of controlling law occurs when the Supreme Court adopts a new interpretation of a relevant statutory or constitutional provision, or establishes binding authority on a legal issue that was unsettled at the time of the earlier decision. *See, e.g.*, *Agostini*, 521 U.S. at 236 (reconsidering 1985 injunction under Rule 60(b), in light of intervening change in Establishment Clause jurisprudence); *Davis v. United States*, 417 U.S. 333, 342 (1974) (Court of Appeals erred in applying law of the case despite intervening Supreme Court precedent).

Here, the Court may reconsider its September 2016 decision in light of the intervening change in controlling law in *New Prime*, discussed in more detail in Part V(A) below. In *New Prime*, the Supreme Court held that courts should decide for themselves whether the FAA's Section 1 exclusion of the "contracts of employment" of transportation workers engaged in interstate commerce applies before ordering arbitration and staying a case under FAA sections 3 and 4. *New Prime*, 139 S. Ct. at 537. The Supreme Court also held that "contract of employment" means any agreement to perform work, including that of an independent contractor. *Id.* at 543–44.

This Court's September 2016 Order compelling the Lead Plaintiffs to arbitrate their claims against SDS came prior to the Supreme Court's decisive interpretation of Section 1 of the FAA as

exempting workers like SDS's drivers from the Act's scope. Indeed, this Court itself noted the lack of controlling law on the Section 1 exemption. *See Zambrano I*, 2016 WL 5339552, at *3. As "transportation workers engaged in interstate commerce," this Court found that Lead Plaintiffs "satisfy this portion of the [Section 1] exemption", but did not decide the issue. *Id*. Noting the lack of clarity as to whether the FAA applied, the Court nevertheless determined arbitration could be compelled under either the FAA or New York law—but did not address several of Lead Plaintiffs' objections to the enforcement of unconscionable arbitration provisions under New York law. *Compare Zambrano I*, 2016 WL 5339552, at *6–8 (analyzing attorneys' fees provision and cost-sharing provision under FAA law, but not under New York law), *with id.* at *9 (analyzing, under New York law, Lead Plaintiffs' argument that FLSA/NYLL claims cannot be arbitrated because they embody important public policies, but not considering how New York law would treat attorneys' fees and cost-sharing provisions, and deferring to arbitrator as to class waiver).

Under *New Prime,* this threshold issue is resolved: even if we assume *arguendo* that the Plaintiffs were independent contractors, the Supreme Court has now decisively clarified that any "agreement[] to perform work" made by transportation workers engaged in interstate commerce is outside the scope of the FAA, regardless of the workers' employment status. The impact of the intervening change in controlling law since *New Prime* is substantial, as any contract signed by Ms. Alulema and Ms. Tacoaman with SDS is now clearly understood to be outside the scope of the FAA. The Court therefore may not compel them to arbitrate their claims under the FAA, for the reasons discussed below.

## V.   The Stay Should Be Lifted and Ms. Alulema and Ms. Tacoaman Should be Permitted to Proceed in Court, Rather than in Arbitration.

Ms. Alulema and Ms. Tacoaman do not have copies of Vendor Agreements they may have signed. Nevertheless, we here assume *arguendo* that they were required to sign, and did sign,

Agreements substantially similar to those signed by Lead Plaintiffs.[3] *See, e.g.*, Durango Vendor Agreement, annexed as Ex. A to Edick Decl. (hereafter, "Vendor Agreement" or "Agrmt."), ECF No. 24. To date, Defendants have not filed agreements signed by Ms. Alulema or Ms. Tacoaman.

### A. The FAA Does Not Apply to Any Vendor Agreements Ms. Alulema and Ms. Tacoaman May Have Signed.

Because Ms. Alulema and Ms. Tacoaman's contracts of employment fall within the Section 1 exemption to the FAA, the Act does not apply to any Vendor Agreement they may have signed— meaning that they cannot be compelled to arbitrate under the FAA.

While the FAA generally requires courts to enforce arbitration requirements, *see Epic Sys. Co. v. Lewis*, 138 S. Ct 1612, 1621 (2018), Section 1 of the FAA specifically provides that "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" are excluded from the FAA's coverage, 9 U.S.C. § 1. The FAA does not apply to any "contracts of employment" of these workers, nor to any arbitration clauses in those contracts. *New Prime*, 139 S. Ct. at 537 ("§ 1 warns that 'nothing' in the Act 'shall apply' to 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'") (quoting 9 U.S.C. § 1). The Section 1 exemption applies only to transportation workers. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

Until recently, courts were divided over whether to apply the Section 1 exemption in the face of a delegation clause, and over whether transportation workers classified as independent contractors fell within the exemption. But as discussed above, *New Prime* clarified both these issues. *New Prime*, 139 S. Ct. at 537, 543–44. Accordingly, if any Vendor Agreements signed by

---

[3] It is Defendants' burden to prove such agreements exist, and mutual assent to them, under New York law. Should Defendants file such agreements, Ms. Alulema and Ms. Tacoaman reserve the right to raise other defenses to their enforcement beyond those raised in Part V.C below—including whether there was a sufficient meeting of the minds, or circumstances suggesting impropriety during the formation of the contract, duress, or undue influence.

Ms. Alulema and Ms. Tacoaman were before the Court, this Court—not an arbitrator—would have to determine whether those contracts are exempt from the FAA.

The Second Circuit has not adopted a test to determine when a worker is part of a class of workers engaged in interstate commerce under Section 1 of the FAA. But both the First and Ninth Circuits have recently arrived at the same standard, holding that workers who transport goods within the flow of interstate commerce are a class of workers engaged in interstate commerce, and thus exempt from the FAA. *See Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 26 (1st Cir. 2020) (Amazon last-mile drivers, "by virtue of their work transporting goods or people 'within the flow of interstate commerce,' are 'a class of workers engaged in interstate commerce.'") (quoting *Circuit City Stores*, 532 U.S. at 118); *Rittman v. Amazon.com, Inc.*, 971 F.3d 904, 915. Both courts emphasized the Supreme Court's holdings in Federal Employers' Liability Act ("FELA") cases that analyzed when a worker is engaged in interstate commerce, finding that these cases, decided shortly before the FAA's enactment, were particularly relevant in shedding light on the meaning of the words "engaged in . . . interstate commerce" in Section 1. *See Waithaka*, 966 F.3d at 19–20; *Rittman*, 971 F.3d at 911–14. Both courts also concluded that workers need not cross state lines to be engaged in interstate commerce. *Waithaka*, 966 F.3d at 26; *Rittman*, 971 F.3d at 911, 919.

Under *Waithaka*'s standard, Ms. Alulema and Ms. Tacoaman are members of a class of transportation workers engaged in interstate commerce. SDS drivers' daily activities required them to transport goods that moved in the flow of interstate commerce—pharmaceutical products—and deliver them to pharmacies. *See* Affirmation of Maria Tacoaman ("Tacoaman Aff."), annexed as Ex. 1 to Declaration of Hugh Baran in Support of Mot. to Lift Stay and Amend Compl. ("Baran Decl."), ¶ 3; Affirmation of Blanca Alulema ("Alulema Aff."), annexed as Ex. 2 to Baran Decl., ¶ 3. Like the AmazonFlex drivers in *Waithaka*, the SDS drivers were the last mile deliverer of

these products, hauling goods "on the final legs of interstate journeys."[4] *Waithaka*, 966 F.3d at 26.

Defendants also previously conceded, and this Court held, that Lead Plaintiffs were transportation

workers engaged in interstate commerce. *Zambrano I*, 2016 WL 5339552, at *3 ("Defendants do

not dispute that Plaintiffs are transportation workers engaged in interstate commerce. Indeed,

Plaintiffs satisfy this portion of the exemption, since they are drivers who allege to have moved

goods (pharmaceutical products) through interstate commerce.") (citations omitted).

### B. The Vendor Agreements' Arbitration Choice-of-Law Provision Should be Enforced.

The Court previously held that even if the FAA did not apply to the Lead Plaintiffs' Vendor

Agreement, the arbitration clause in that agreement was still enforceable under New York

arbitration law. *Zambrano I*, 2016 WL 5339552, at *4, *9. But the Court did not address whether

that Agreement should be enforced according to its arbitration choice-of-law provision. This is a

new issue for the Court to address, in the wake of the Supreme Court's decision in *New Prime*,

that was not analyzed in this Court's September 2016 Order.

"Under New York law, 'courts will generally enforce choice-of-law clauses,' because

'contracts should be interpreted so as to effectuate the parties' intent[.]'" *AEI Life LLC v. Lincoln

Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) (quoting *Ministers & Missionaries Benefit Bd.

v. Snow*, 26 N.Y.3d 466, 470 (2015), and collecting cases). "Choice-of-law provisions are intended

to guarantee a uniform interpretation of contractual language." *Deutsche Bank Nat'l Tr. Co. v.

Barclays Bank PLC*, 34 N.Y.3d 327, 340 (2019).

The SDS Vendor Agreement contains a general choice-of-law provision stating that the

"laws of the state of residence of the Vendor . . . shall govern this Agreement[,]" Agrmt. § 19(a);

---

[4] The Seventh Circuit has adopted a slightly more restrictive test, which the SDS workers nevertheless meet. *See
Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802–03 (7th Cir. 2020).

and an arbitration choice-of-law provision providing that "[t]he parties agree to comply and be bound by The Federal Arbitration Act," *id.* § 20(a).[5] Under the arbitration choice-of-law provision, the arbitration section is to be construed under the FAA alone—not under state arbitration law.

To be sure, the Vendor Agreement also contains a severability clause. Agrmt. § 24. But the severability clause only provides that provisions that are "invalid, illegal or unenforceable" may be modified so as to be "valid, legal and enforceable but so as to most nearly retain the intent of the parties[.]" "[I]f such modification is not possible, the provision may be severed. *Id.*

There is nothing "invalid, illegal or unenforceable" about the arbitration choice-of-law provision. Defendants chose to be bound by the entire FAA, including Section 1, with respect to the arbitration requirement. Severing this provision and instead applying the general choice-of-law provision to the arbitration requirement would rewrite the Vendor Agreement. Judicial rewriting of contracts is not permitted under New York law. *Slatt v. Slatt*, 64 N.Y.2d 966, 967 (1985) ("In adjudicating the rights of parties to a contract, courts may not fashion a new contract under the guise of contract construction . . . .") (citation omitted); *see also Rittmann*, 971 F.3d at 920–21 (refusing to rewrite contract to remove arbitration choice-of-law provision under Washington law).

Because the FAA does not apply to the Vendor Agreements, and because the arbitration choice-of-law provision provides that only the FAA is applicable to the arbitration provision, Ms. Alulema and Ms. Tacoaman are not required to arbitrate their disputes under New York law.

---

[5] Defendants have not disputed that this was an arbitration choice-of-law provision, but have instead argued that Ms. Alulema and Ms. Tacoaman were required to appeal the Court's September 2016 Order. *See* Defs.' Pre-Motion Conf. Ltr. at 3–4. But Ms. Alulema and Ms. Tacoaman had no right to appeal that Order.

### C.  Under New York Law, the Vendor Agreements' Arbitration Provisions are Unenforceable, Requiring their Invalidation.

If the Court finds New York law may be applied here—even though the contract specifically provided that the FAA applied—the arbitration provisions are nevertheless unenforceable under New York law.

In New York, arbitration requirements not governed by the FAA "are unenforceable where substantive rights, embodied by statute, express a strong public policy which must be judicially enforced." *Wertheim & Co. v. Halpert*, 48 N.Y.2d 681, 683 (1979), *abrogated in cases governed by the FAA*, *Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623, 629 (1993). While New York has a strong policy "favoring arbitration agreements[,]" it has an "equally strong policy requiring the invalidation of such agreements when they contain terms that could preclude a litigant from vindicating his/her statutory rights in the arbitral forum." *Brady v. Williams Capital Grp.*, 14 N.Y.3d 459, 467 (2010). New York law does not require litigants demonstrate that such improper terms will absolutely preclude them from vindicating their statutory rights, but rather that such terms "could" preclude them from vindicating their rights in arbitration. *Brady*, 14 N.Y.3d at 467.

As detailed below, multiple provisions of the arbitration requirement undermine our clients' substantive statutory rights and could preclude them from vindicating those rights in the arbitral forum, contrary to the strong public policies of New York. Under New York law, these terms require invalidation of the entire arbitration requirement. *See Brady*, 14 N.Y.3d at 467; *see also Waithaka*, 966 F.3d at 33 ("Notwithstanding the Supreme Court's view that such state policies must give way when the FAA governs a dispute, the policies remain intact where, as here, the FAA does not preempt state law.") (citation omitted).

1.  **The Provision Requiring Each Side to Bear Its Own Costs Deprives Ms. Alulema and Ms. Tacoaman of Substantive Statutory Rights and Remedies.**

The arbitration requirement here contains a provision requiring each side to "bear their own costs including, without limitation, attorneys' fees." Agrmt. § 20(a). This provision, which applies even if the party ultimately prevails in arbitration, deprives Ms. Alulema and Ms. Tacoaman of their right to recover reasonable attorney's fees and costs under the FLSA, the NYLL, and New Jersey law, and thus impermissibly restricts their ability to pursue their full statutory remedies under these laws.

This Court previously agreed with the Lead Plaintiffs that this provision "cannot preclude [Lead Plaintiffs] from recovering their reasonable attorney's fees and costs should they prevail on their claims." *Zambrano I*, 2016 WL 5339552, at *6. But the Court concluded, under FAA jurisprudence, that it was up to the arbitrator to determine whether to sever this unenforceable provision. *Id.* Here, however, New York law requires the Court itself to consider whether this provision requires invalidation of the entire agreement. *Brady*, 14 N.Y.3d at 14.

The right to recover attorneys' fees and costs under these statutes is not merely procedural; it is a substantive statutory right critical to the design of both the FLSA and the NYLL that ensures low-paid plaintiffs can vindicate their rights *and* receive full payment of the minimum and overtime wages required by statute. *See Fisher v. SD Protection Inc.*, 948 F.3d 593, 603–04 (2d Cir. 2020) (Congress mandated FLSA attorney's fee-shifting to enable "everyday workers" earning "modest salaries" to effectively vindicate their right to fair pay); *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12 Civ. 6094 (PAE), 2014 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014) .

If low-paid plaintiffs were required to pay attorney's fees themselves, such fees would effectively be deductions from any damages awarded—thus resulting in underpayment of the minimum and overtime wages that they are owed. Whatever the amount of fees, requiring a low-

paid worker to bear them effectively deprives the worker of the full wages that they are owed under the statutes—violating the statutes' mandatory requirements that workers be paid the legally-required minimum and overtime wages. Accordingly, this provision, which purports to waive the attorney's fee-shifting provisions of the FLSA and NYLL, is unenforceable.

### 2. The Arbitral Fee-Splitting Provision and Provision Requiring Use of Commercial Rules Result in High Costs Preventing Ms. Alulema and Ms. Tacoaman From Accessing the Arbitral Forum.

The Vendor Agreement requires the parties to "each bear one half (1/2) of the fees and costs of the arbitrator," and to conduct arbitration under the AAA's Commercial Rules. The combined effect of these provisions would impose high arbitration costs on Ms. Alulema and Ms. Tacoaman—both of whom are low-paid workers—that vastly exceed the filing fee in federal or state court. These costs will effectively prevent Ms. Alulema and Ms. Tacoaman from vindicating their statutory rights in arbitration.

Under New York law these types of provisions do not *per se* render the arbitration requirement invalid. Rather, under New York law, when issues about the costs of arbitration are raised to oppose enforcement of an arbitration requirement, courts must conduct a case-by-case inquiry into the litigant's financial situation that "at a minimum consider[s] the following questions: (1) whether the litigant can pay the arbitration fees and costs; (2) what is the expected cost differential between arbitration and litigation in court; and (3) whether the cost differential is so substantial as to deter the bringing of claims in the arbitral forum." *Brady*, 14 N.Y.3d at 467.

As set forth in their affirmations, Ms. Tacoaman and Ms. Alulema are not in a position to pay the costs of pursuing their claims through arbitration. Ms. Tacoaman was fired without cause from SDS on April 28, 2020, and has been unable to find a new job in light of the ongoing COVID-19 pandemic. Tacoaman Aff. ¶¶ 4, 6. Both Ms. Tacoaman and her husband are without any income other than Ms. Tacoaman's meager PUA benefits at this time, and have no savings. *Id.* ¶¶ 5, 7–10.

Ms. Alulema's financial situation is also extremely precarious, and does not permit her to pursue her claims in arbitration. Ms. Alulema has worked on and off since leaving SDS on January 31, 2020. Alulema Aff. ¶ 6. Ms. Alulema suffered a substantial loss of income due to the COVID-19 pandemic, and was without work from approximately mid-March 2020 until May 25, 2020. *Id.* Her husband was also unemployed for approximately four months. *Id.* ¶ 7. Although both Ms. Alulema and her husband are currently employed, they are both low-income workers, respectively earning approximately $430 and $600 each per week, and have no savings. *Id.* ¶¶ 6–7; 10.

Under the AAA's Commercial Rules, Ms. Alulema and Ms. Tacoaman would each be individually responsible for an "initial filing fee" of $1,925, based on the current value of their claims,[6] as well as a "final fee" of $1,375—regardless of the outcome of the arbitration. *See* Commercial Arbitration Rules: Administrative Fee Schedules, annexed as Ex. 4 to Baran Decl. ("Commercial Fee Sched."), at 1 (standard fee schedule for claims valued at $75,000 to $150,000). These fees alone total $3,300 for each of them; together, the $6,600 Ms. Alulema and Ms. Tacoaman would be required to pay in these administrative filing fees dwarfs the $400 federal court filing fee by a factor of 16.

These administrative fees could arguably be paid by SDS if it filed the arbitration demand. But SDS could likely seek and receive half of those administrative fees from the Ms. Alulema and Ms. Tacoaman under the cost-splitting provision, as they sought to do in the case of another opt-in Plaintiff. *See Zambrano II*, 2018 WL 4462360, at *3 & n.2. And while the administrative fees

---

[6] Because Ms. Alulema and Ms. Tacoaman's claims exceed $75,000, the AAA would generally not apply its Expedited Procedures. AAA Commercial Arbitration Rules, annexed as Ex. 3 to Baran Decl. ("Commercial Rules"), at 10, ¶ R-1(b). Even if the AAA did apply those Expedited Procedures in the first instance, it appears the AAA has discretion to remove a case from the Expedited Procedures without the parties' consent. *See Zambrano II*, 2018 WL 4462360, at *2–3 (detailing how Plaintiff Forero was initially in the Expedited Procedures, requiring only a $600 deposit and $1200 in arbitrator compensation for the first day of the hearing, but was then sent an invoice indicating the case had been removed from the Expedited Procedures and demanding a deposit of $11,900 in fees). The Expedited Procedures would also limit Ms. Alulema and Ms. Tacoaman's ability to prove their case through adequate discovery.

could potentially be reduced in the AAA's discretion, as this Court previously observed, *Zambrano I*, 2016 WL 5339552, at *8, Ms. Alulema and Ms. Tacoaman could not receive such a determination absent filing an arbitration demand. *See* Sample AAA Aff. in Support of Administrative Fees Hardship Waiver, annexed as Ex. 5 to Baran Decl. ("Hardship Waiver Aff."), at 2 (declarant must affirm they are a party to a AAA case and seek the fee waiver for that case).

Moreover, none of this accounts for how the high costs of the arbitrator's compensation will prevent Ms. Alulema and Ms. Tacoaman from accessing the arbitral forum. *See* Commercial Fee Sched. at 1 ("*Arbitrator compensation is not included*" in administrative fees). "Unless the parties' agreement provides otherwise, arbitrator compensation and administrative fees are subject to allocation by an arbitrator in an award." *Id.* Even if Ms. Alulema and Ms. Tacoaman received a hardship waiver of administrative fees, they would still have to pay the arbitrator compensation. *See* Hardship Waiver Aff. at 2 ("I understand that any hardship waiver, if granted, does not affect my separate obligation to pay arbitrator compensation.").

Here, the arbitration requirement's fee-splitting provision expressly requires that Ms. Alulema and Ms. Tacoaman "each bear one half (1/2) of the fees and costs of the arbitrator.". There is nothing unclear about this: under this fee schedule, the arbitrator must defer to the text of the arbitration requirement, requiring Ms. Alulema and Ms. Tacoaman to each pay one half of the arbitrator's compensation—in each of their individual arbitrations.[7]

---

[7] Beginning October 1, 2017, the AAA made a policy change indicating that it would apply the Employment Fee Schedule "to any dispute between an individual employee or an independent contractor (working or performing as an individual and not incorporated) and a business or organization and the dispute involves work or work-related claims, including any statutory claims and including work-related claims under independent contractor agreements." Commercial Rules at 10, n.*. While this change could affect the costs Ms. Alulema and Ms. Tacoaman are required to pay to arbitrate their claims, it remains unclear what fee schedule and rules would apply in fact.

In a November 12, 2019 letter to the AAA, Karl Racine, Attorney General for the District of Columbia, along with 11 other state attorneys general, wrote that "Notwithstanding this language [in the AAA's policy change], we have learned of instances where AAA arbitrators have applied the Commercial Fee Schedule to workers classified as independent contractors seeking to arbitrate employment-related claims." *See* Letter of Karl A. Racine and 11 State

The prospect that the arbitrator's compensation will be extremely costly is no longer speculative. Another opt-in plaintiff in this case faced arbitrator compensation costs of $5,985 for a one-day hearing. *Zambrano II*, 2018 WL 4462360, at *3 & n.2. As discussed in their affirmations, neither Ms. Alulema nor Ms. Tacoaman has the resources to pay such enormous expenses out-of-pocket. Alulema Aff. ¶¶ 6–10; Tacoaman Aff. ¶¶ 5–11. These costs are so substantial that they will deter Ms. Alulema and Ms. Tacoaman from bringing their claims in arbitration. Alulema Aff. ¶¶ 11–15; Tacoaman Aff. ¶¶ 12–16.

Taken together, these facts demonstrate that these provisions are unenforceable under the "case-by-case inquiry" required under New York law. *Brady*, 14 N.Y.3d at 467.

### 3. The Delegation Clause in the Arbitration Agreement Would Require Ms. Alulema and Ms. Tacoaman to Incur High Costs and Fees in Order to Determine Arbitrability.

The Vendor Agreements require that the "issue of arbitrability shall be determined by the arbitrator applying the law of the state of residence of the Vendor." This delegation clause accordingly requires an arbitrator to first determine disputes about arbitrability—thus requiring Ms. Alulema and Ms. Tacoaman to incur high costs and fees. Delegation clauses such as this one are not *per se* objectionable under New York law. In this case, however, the combination of the arbitration cost-splitting provision, and the provision requiring each side to bear its own attorney's fees, is particularly problematic.

If Ms. Alulema and Ms. Tacoaman want to challenge the attorney's fees or choice of law provision in arbitration, they would still have to pay $6,600 in administrative filing fees, plus the arbitrator's compensation, to reach these threshold issues. They would at least have to the pay arbitrator's time for a motion on these issues, and they might even have to await a final arbitration

---

Attorneys General to AAA, dated Nov. 12, 2019, annexed as Ex. 6 to Baran Decl. This statement by the attorneys general suggests the AAA's policy change is not, in practice, uniformly followed.

award to know whether they can effectively prosecute their rights and recover attorneys' fees in the manner provided by the statutes. Those high costs, in other words, would effectively deter them from ever filing an arbitration demand in the first place to resolve these issues.

### 4. The Class/Collective Action Waiver Deprives Ms. Alulema and Ms. Tacoaman of Substantive Statutory Rights and Prevents them from Vindicating Those Rights In the Arbitral Forum.

The arbitration requirement also incorporates a class and collective action waiver providing that "any arbitration, suit, action or other legal proceeding arising out of or in any way relating to this Agreement or the services provided hereunder shall be conducted and resolved on an individual basis only and not on a class-wide, multiple plaintiff, collective or similar basis unless mutually agreed to in writing by all interested parties." Agrmt. § 20(b). This waiver deprives Ms. Alulema and Ms. Tacoaman of their substantive statutory rights to bring an action together to vindicate their statutory rights, even if in arbitration.

While the U.S. Supreme Court has held that class and collective action waivers such as this are permissible, and not in conflict with workers' rights to engage in concerted activity for mutual aid or protection under the National Labor Relations Act, *see Epic Sys.*, 138 S. Ct. at 1622–23, 1624–28, *Epic Systems* does not require this waiver's enforcement where the FAA does not apply. The Court should therefore look at whether the class and collective action waivers prevent the enforcement of substantive statutory rights here.

The FLSA's provision for collective actions is not merely procedural. It allows employees to band together to challenge employer practices and policies that violate their rights to minimum and overtime pay. Through collective actions, workers are both able to prove claims that they could not prove on their own, and are able to withstand employer retaliation. *See, e.g., Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1139 (D. Nev. 1999) (noting that FLSA collective actions allow workers to "present a united front against an employer, and head off individualized

retaliation."). The same principle undergirds why workers join together in FLSA actions even where they do not seek broader collective certification, but simply seek to proceed as a group, as provided for in the statute. Here, Ms. Alulema and Ms. Tacoaman, who are represented by two public interest organizations, want to proceed together in their FLSA claims.

Similarly, New York law provides that employees may band together to challenge employer practices and policies that violate their rights to minimum and overtime pay through class actions. *See Andryeyeva v. N.Y. Health Care, Inc.*, 33 N.Y.3d 152, 184 (2019) (discussing New York's public policy behind class actions); NYLL § 703 (protecting workers' rights to "engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint, or coercion of employers[.]").

The FLSA's collective action right and state law create substantive rights that "express a strong public policy which must be judicially enforced." *Wertheim & Co.*, 48 N.Y.2d at 683. And the collective/class waiver prevents Ms. Alulema and Ms. Tacoaman from exercising these statutory rights by prosecuting their claims together—both in court *and* in arbitration.

### 5. The Invalid, Illegal, and Unenforceable Arbitration Provisions Here May Not Be Severed.

The invalid arbitration provisions here may not be severed by the arbitrator or the Court. Because the FAA does not apply here, New York law must be followed.[8] And under New York law, the presence of terms that would undermine Ms. Alulema and Ms. Tacoaman's substantive statutory rights and preclude them from vindicating their statutory rights in the arbitral forum requires that the Court invalidate the entire arbitration requirement. *See Brady*, 14 N.Y.3d at 467; *see also Waithaka*, 966 F.3d at 33 ("Notwithstanding the Supreme Court's view that such state

---

[8] The Court's prior decision that severance would be proper and left to the arbitrator applied FAA jurisprudence; these findings should be reconsidered in light of *New Prime*. *See Zambrano I*, 2016 WL 5339552, at *6.

policies must give way when the FAA governs a dispute, the policies remain intact where, as here, the FAA does not preempt state law.") (citation omitted). The public policy articulated in *Brady* is consistent with New York law's prohibition on judicial rewriting of contracts. *See Slatt*, 64 N.Y.2d at 967.

If Vendor Agreements signed by Ms. Alulema and Ms. Tacoaman are produced and filed with the Court by Defendants, the Court should accordingly construe their entire arbitration clauses as invalid. These invalid arbitration requirements should not prevent Ms. Alulema and Ms. Tacoaman from pursuing their claims before this Court.

## VI.   Ms. Alulema and Ms. Tacoaman Should Be Permitted to Amend Their Complaint to Proceed with Their Individual Labor Law Claims in this Action.

As discussed above, Plaintiffs Alulema and Tacoaman entered this case as opt-in Plaintiffs pursuant to Section 216(b) of the FLSA. Ms. Alulema filed her consent to sue form on April 5, 2016, ECF No. 46, and Ms. Tacoaman filed hers on March 22, 2016, ECF No. 39. At that time, because they were included within the putative class, Ms. Alulema and Ms. Tacoaman did not bring individual claims under the NYLL. At this juncture, however, and with no opposition from counsel for Lead Plaintiffs, Plaintiffs Alulema and Tacoaman seek to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a) to add individual claims under NYLL and New Jersey Wage & Hour Law. Baran Decl. ¶ 10.

As opt-in Plaintiffs under the FLSA, Plaintiffs Alulema and Tacoaman "joined the action on the date that those notices were filed." *Gonyer v. Vane Line Bunkering, Inc.*, 32 F. Supp. 3d 514, 517 (S.D.N.Y. 2014). As the language of Section 216(b) makes clear, they are parties to this action. *See Gonzalez v. Nicholas Zito Racing Stable Inc.*, No. 04 CV 22 SLT AKT, 2008 WL 941643, at *1 (E.D.N.Y. Mar. 31, 2008); *Ramirez-Marin v. JD Classic Builders Corp.,* No. 16CV5584, 2017 WL 4358759, at *3 (E.D.N.Y. Sept. 30, 2017) (discussing *Gonzalez* and noting

that its principles apply even when no motion to conditionally certify has been filed); *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018).

As party plaintiffs, Ms. Alulema and Ms. Tacoaman may properly seek to amend the Complaint. *Gonzalez*, 2008 WL 941643, at *3 (determining that opt-in plaintiffs "have standing to amend the complaint") (citing *Prickett v. DeKalb County,* 349 F.3d 1294, 1297 (11th Cir.2003) ("[B]y referring to them as 'party plaintiff[s]' [in 29 U.S.C. § 216(b) ] Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs.")); *see also Almanzar v. C & I Assocs., Inc.*, 175 F. Supp. 3d 270, 279 n.3 (S.D.N.Y. 2016) ("Individuals who have opted-in to an FLSA collective action have "party status" and are able to advance their own claims."). This is particularly appropriate here where the Lead Plaintiffs do not oppose amendment.

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint shall be freely given "when justice so requires." FED. R. CIV. P. 15(a)(2). As this Court has noted,

> As a general rule, leave to amend a complaint should be freely granted. *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir. 2002). District courts have broad discretion in deciding whether to grant leave to amend, *id.*, and "it is rare that such leave should be denied," *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

*Santi v. Hot in Here, Inc.,* No. 18 CIV. 03028 (ER), 2019 WL 290145, at *3 (S.D.N.Y. Jan. 22, 2019). Given the presumption that granting leave favors the interests of justice, "it is rare that such leave should be denied, especially when there has been no prior amendment." *Ricciuti*, 941 F.2d at 123.

The claims set forth in Plaintiff Alulema and Tacoaman's proposed First Amended Complaint mirror those in the initial Complaint, as Plaintiffs allege as individuals the same state law class claims for overtime, notice violations, and unlawful deductions. *See* Proposed First

Amended Compl., annexed as Ex. 7 to Baran Decl.[9] The NYLL overtime claims Ms. Alulema and Ms. Tacoaman seek to add largely overlap with their already-pending FLSA overtime claims. The only new claims are those for failure to pay the minimum wage under NYLL, and claims under the New Jersey Wage and Hour Law and Wage Payment Law, brought because Ms. Alulema and Ms. Tacoaman each worked in New Jersey for a period. The overarching independent contractor issues, however, are the same. Thus, there will be no surprise or prejudice in allowing Ms. Alulema and Ms. Tacoaman to amend and go forward with these claims.

Moreover, Plaintiffs Alulema and Tacoaman are not proceeding now in bad faith or with a dilatory motive; instead, they did not proceed earlier because of the stay in place, and initially delayed making this motion because of settlement discussions between Defendants and their prior counsel. *See* Alulema Aff. ¶¶ 15–16; Tacoaman Aff. ¶¶ 16–17. Given the "strong preference for resolving disputes on the merits," *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (quoting *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005)) (internal quotation marks and further citation omitted), the Court should grant leave to amend here.[10]

## CONCLUSION

For the reasons set forth above, the Court should lift the stay in this action and allow Plaintiffs Alulema and Tacoaman to file their Amended Complaint.

Dated:  New York, NY                          /s/ Hugh Baran
       October 23, 2020                Hugh Baran
                                NATIONAL EMPLOYMENT LAW PROJECT
                                90 Broad Street, Suite 1100
                                New York, NY 10004
                                (646) 693-8231

---

[9] Plaintiff Alulema and Tacoaman's First Amended Complaint would be substantially in the format of the Proposed First Amended Complaint.

[10] Should the Court deny Ms. Alulema and Ms. Tacoman leave to amend, Ms. Alulema and Ms. Tacoaman would ask the Court to sever their claims pursuant to Fed. Civ. P. 21, and allow them to pursue them in a separate action, with the statute of limitations in such a case running back to the dates that they joined the instant action.

hbaran@nelp.org

Gabriela Siegel
MAKE THE ROAD NEW YORK
301 Grove St
Brooklyn, NY 11237
(718) 418-7690 x 4494
gabriela.siegel@maketheroadny.org

Patricia Kakalec
KAKALEC LAW PLLC
195 Montague Street, 14th Floor
Brooklyn, NY 11201
(212) 705-8730
patricia@KakalecLaw.com