UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTIAN ZAMBRANO, LUZ DURANGO,
MOIRA RIVEROS, and RIGOBERTO ROMERO,
*on behalf of themselves and all others similarly
situated*,

Plaintiffs,

– against –

STRATEGIC DELIVERY SOLUTIONS, LLC,
DAVID KRONICK, ANDREW KRONICK, and
MIKE RUCCIO,

Defendants.

**OPINION & ORDER**

15 Civ. 8410 (ER)

Ramos, D.J.:

Christian Zambrano, Luz Durango, Moira Riveros, and Rigoberto Romero ("Lead Plaintiffs") brought this putative collective and class action against Strategic Delivery Solutions, LLC ("SDS"), David Kronick, Andrew Kronick, and Mike Ruccio ("Defendants"), alleging that Defendants improperly classified them as independent contractors and denied them wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Between March and April of 2016, twenty-three other plaintiffs opted in to the litigation ("Opt-in Plaintiffs"; together with Lead Plaintiffs, "Plaintiffs"). On September 22, 2016, the Court granted Defendants' motion to compel arbitration and stayed the case. Doc. 64. Two of the Opt-in Plaintiffs, Blanca Alulema and Maria Tacoaman ("Moving Plaintiffs"), now move to lift the stay and amend the Complaint to add claims under New York and New Jersey law. For the reasons stated below, Moving Plaintiffs' motion is GRANTED in part and DENIED in part.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Tacoaman began working for SDS as a delivery driver in July 2010, and Alulema in August 2010. Docs. 108-1 ¶ 2, 108-2 ¶ 2. While working for SDS, their duties included delivering pharmaceutical merchandise to various stores and locations in New York and New

Jersey, including an SDS facility in Elizabeth, New Jersey.  Docs. 108-1 ¶ 3, 108-2 ¶ 3.  The job required them to use their own cars, and they were responsible for car maintenance, gas, and parking costs that ate into their earnings.  Docs. 108-1 ¶ 5, 108-2 ¶ 4.

In July 2014, after they had worked for SDS for approximately four years, Moving Plaintiffs and David Kronick, on behalf of SDS, signed documents titled Independent Vendor Agreement for Transportation Services ("Vendor Agreement").  *See* Doc. 111-2. The signatures of both Moving Plaintiffs on the Vendor Agreements are electronic signatures.  Doc. 111-2 at 10, 21.  The Vendor Agreements include a clause providing that the parties agree to arbitrate disputes or claims "arising out of or in any way relating to" the Vendor Agreement or to the transportation services provided to SDS.  *Id.* at 8 ¶ 20(a), 19 ¶ 20(a).

On October 26, 2015, Lead Plaintiffs initiated this action, on behalf of themselves and all others similarly situated, against Defendants, their purported employers.  Doc. 1.  Lead Plaintiffs allege that they worked for Defendants as drivers, *id.* ¶¶ 13, 27, 39, 51, and that they routinely worked more than 40 hours per week, *id.* ¶¶ 14, 28, 40, 52.  Lead Plaintiffs allege that Defendants violated the FLSA and NYLL by, among other things, failing to pay them overtime wages, failing to provide notices as required by NYLL, making unlawful deductions from their wages, and requiring them to incur expenses for Defendants' benefit without reimbursement, including through the required rental of scanners and payment of gas and parking costs.  *Id.* ¶¶ 130, 135, 139, 142, 143.

On January 29, 2016, before any Opt-in Plaintiffs had joined this action, Defendants moved to dismiss the Complaint and compel arbitration with respect to Lead Plaintiffs.[1]  Doc. 21.  Durango, Riveros, and Romero had executed Vendor Agreements for Transportation

---

[1] In their briefing in opposition, Lead Plaintiffs agreed to voluntarily dismiss without prejudice their claims against Andrew Kronick.  *See Zambrano v. Strategic Delivery Sols., LLC*, No. 15 Civ. 8410 (ER), 2016 WL 5339552, at *1 n.1 (S.D.N.Y. Sept. 22, 2016).  However, Plaintiffs never filed a notice of voluntary dismissal, and Andrew Kronick has not been dismissed from this action.  Moving Plaintiffs' proposed amended complaint purports to bring claims against Andrew Kronick.  *See* Doc. 108-7 ¶¶ 9-10.

Services with SDS.  *See* Doc. 24.  Zambrano performed work for Defendants but had not

executed a Vendor Agreement; Defendants argued that he was "Vendor Support Personnel" of the

business entity of Riveros, his partner,[2] and therefore bound by the terms of her Vendor

Agreement.  Doc. 22 at 10-11.  The Vendor Agreements executed by Moving Plaintiffs, which

Defendants submit for the first time in connection with their opposition to the instant motion, are

identical to those executed by Durango, Riveros, and Romero.  Doc. 111-2.[3]  The Vendor

Agreements state, in relevant part:

> Agreement to Arbitrate:  The parties agree to comply and be bound by The Federal
> Arbitration Act.  The parties agree that any dispute, difference, question, or claim arising
> out of or in any way relating to this Agreement or the transportation services provided
> hereunder shall be subject to binding arbitration in accordance with the Rules for
> Commercial Arbitration of the American Arbitration Association ("AAA") in effect at the
> time such arbitration is initiated.  The parties agree that the issue of arbitrability shall be
> determined by the arbitrator applying the law of the state of residence of the Vendor.  The
> parties shall bear their own costs including, without limitation, attorneys' fees, and shall
> each bear one half (1/2) of the fees and costs of the arbitrator.  Any arbitration shall be
> conducted before a single arbitrator selected from a list of potential arbitrators provided
> by the AAA.

Doc. 24, Exs. A-C ¶ 20(a); *see also* Doc. 111-2 at 8 ¶ 20(a), 19 ¶ 20(a).  Defendants

invoked this provision and section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, to

compel Lead Plaintiffs to arbitrate their claims.  In opposing the motion to dismiss and compel

arbitration, Lead Plaintiffs argued that the arbitration clause prevented them from vindicating

their rights and that the provision requiring both parties to share in the administrative costs of

arbitration would make proceeding in an arbitral forum cost prohibitive for them.  Doc. 27 at 16-

19.  Defendants' motion to dismiss and compel arbitration was fully briefed as of March 14,

2016, before any Opt-in Plaintiffs joined this action.  Docs. 21-35.

---

[2] In their briefing, Defendants incorrectly stated that Zambrano was married to Durango, Doc. 22 at 11, when in fact he and Riveros lived together as partners, Docs. 30 ¶ 17, 32 ¶ 18.  Lead Plaintiffs conceded in their opposition that, if the arbitration provision were enforceable, it would cover Zambrano's claims.  *See Zambrano I*, 2016 WL 5339552, at *1 n.3.

[3] The Vendor Agreements submitted by Defendants bear e-signatures of Moving Plaintiffs, rather than handwritten signatures.  Moving Plaintiffs contest the validity of their signatures and of the Vendor Agreements.  Doc. 112 at 3 n.3.

Between March 22 and April 27, 2016, twenty-three other plaintiffs, including Moving Plaintiffs, joined the action as Opt-in Plaintiffs.  Docs. 36-60.  On March 22, 2016, Tacoaman filed her consent to become a party plaintiff.  Doc. 39.  On April 5, 2016, Alulema filed her consent to become a party plaintiff.  Doc. 46.  The consent forms provide in part:

> By my signature below, I hereby authorize the filing and prosecution of the above-styled Fair Labor Standards Act action in my name and on my behalf by the above representative Plaintiffs and designate the class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I choose to be represented in this matter by the named plaintiffs and my own designated counsel, Slater Slater Schulman LLP and The Marlborough Law Firm P.C.[4]

Docs. 39, 46.  In their consent forms, Moving Plaintiffs also alleged that Defendants paid them less than the federal minimum wage and/or that they had not received overtime compensation for hours worked in excess of forty hours per week.  *See* Docs. 39, 46.

On September 22, 2016, the Court denied Defendants' motion to dismiss but granted their motion to compel arbitration and stayed the case pending arbitration.  *See Zambrano v. Strategic Delivery Sols., LLC*, No. 15 Civ. 8410 (ER), 2016 WL 5339552, at *10 (S.D.N.Y. Sept. 22, 2016) ("*Zambrano I*").  The Court's September 2016 Order did note that twenty-three individuals filed consents to join the litigation since the action was brought, *Zambrano I*, 2016 WL 5339552, at *1 n.2, but the Order defined "Plaintiffs" as Zambrano, Durango, Riveros, and Romero and found that they were compelled to arbitrate.  *See id.* at *1, 5-9.  The Court determined that, whether either the FAA or New York law applied, the Vendor Agreements required the parties to proceed to arbitration to resolve their disputes.  *Id.* at *7-9.  Despite Lead Plaintiffs' concerns as to the high cost of arbitration, the Court determined that the existence of hardship provisions in the American Arbitration Association ("AAA") rules rendered their concerns speculative.  *Id*. at *8. The Court concluded that a stay would permit the parties to move their dispute "out of court and

---

[4] Moving Plaintiffs' consent to become a party plaintiff forms were executed in Spanish and English, as were the consent forms of several other Opt-in Plaintiffs.

into arbitration as quickly and easily as possible." *Id.* at *10 (citation omitted).  The Court noted that it could, at a later date, "address any claim by Plaintiffs that they were not able to vindicate all their statutory rights due to costs or fees imposed on them in arbitration." *Id.* at *10.  At no time throughout the pendency of this case have Defendants moved the Court to compel arbitration as to any individuals other than the Lead Plaintiffs.

Following the Court's decision, on November 23, 2016, SDS brought a Demand for Arbitration against Opt-in Plaintiff Martin Forero ("Forero").  *See* Doc. 81-1 at 1.  However, when presented with an invoice for $11,900 for the deposit to cover the arbitrator's anticipated compensation, Forero abandoned his claims.[5]  Despite Forero's clear indications that he could not afford the deposit and therefore would not contest Defendants' contentions, Defendants and arbitrator Judge Albert M. Rosenblatt (the "Arbitrator") proceeded with the hearing without Forero or his counsel.  *Zambrano v. Strategic Delivery Sols., LLC*, No. 15 Civ. 8410 (ER), 2018 WL 4462360, at *3 (S.D.N.Y. Sept. 17, 2018) ("*Zambrano II*"); *see also* Doc. 81-1 at 2.  On June 23, 2017, the Arbitrator issued a written opinion determining:  (1) that Forero was an independent contractor, and (2) that in signing the Vendor Agreement, he waived his right to proceed in any class action against Defendants.  Doc. 81-1 at 7.  The Arbitrator awarded SDS $7,010.00 as reimbursement for Forero's half of the arbitration fees.[6]  *Id.*

---

[5] The Court's opinion denying Defendants' motion to confirm the arbitration award lays out Forero's multiple communications with the AAA, Defendants' counsel, and the Arbitrator explaining that he could not afford the $11,900 deposit, would only be able to proceed to arbitration under an expedited and limited cost proceeding, and would not contest Defendants' contentions if forced to proceed to arbitration at full cost  *See Zambrano v. Strategic Delivery Sols., LLC*, No. 15 Civ. 8410 (ER), 2018 WL 4462360, at *2-3 (S.D.N.Y. Sept. 17, 2018).

[6] The arbitration proceedings against Forero took place according to the AAA's Commercial Rules and Commercial Fee Schedule.  *See* Docs. 83-2, 83-4, 83-5.  The AAA maintains different rules, fee schedules, and forms for different types of disputes, including, *inter alia*, commercial arbitration rules and employment arbitration rules.  Since the arbitration proceedings against Forero, on October 1, 2017, the AAA changed its policies to apply one Employment Fee Schedule to disputes between workers (employees or independent contractors) and the businesses or organizations they work for.  The Employment Fee Schedule covers disputes involving statutory claims and work-related claims under independent contractor agreements.  *See* Doc. 107 at 19 n.7; Doc. 108-3 at 10 n.*.  The October 2017 Employment Fee Schedule policy replaced and simplified the AAA's prior administrative fee schedules covering disputes arising from employment and employment contracts.  *See Employment Arbitration Rules and Mediation Procedures Amended and Effective October 1, 2017*, AMERICAN ARBITRATION ASSOCIATION, https://go.adr.org/EmploymentRules.html (last visited Sept. 28, 2021).  The revised Employment Fee Schedule provides for arbitration at a lower cost to the employee or contractor than did the Commercial Fee Schedule.  *See id.*

Following the Arbitrator's decision and award against Forero, SDS brought a demand for arbitration against Lead Plaintiff Riveros.  Riveros' arbitration proceedings were scheduled for November 17, 2017.  Doc. 69.  The record is silent as to whether the proceeding took place, what fee schedule applied, and what the outcome may have been.  Likewise, the record is silent as to whether Defendants brought demands for arbitration against any other Plaintiffs in the intervening four years between September 2016 and November 2020.

On January 19, 2018, Defendants moved this Court to confirm the arbitration award of $7,010.00 against Forero.  Doc. 79.  The Court denied Defendants' motion, reasoning that arbitration is fundamentally "a matter of consent, not coercion," *Zambrano II*, 2018 WL 4462360 at \*3 (citations omitted), and concluding that, since Forero had conceded all contested issues in advance of the arbitration, there was no dispute or claim for the Arbitrator to decide, *id*. at \*4.

This case has remained stayed since the Court entered its September 2018 Order. Alulema stopped working for SDS in January 2020, and Tacoaman in April 2020.  Docs. 108-1 ¶ 2, 108-2 ¶ 2.  By the end of their employment with SDS, Moving Plaintiffs were only making approximately $408 each per week in take-home pay, after subtracting out-of-pockets costs for gas and parking.   Docs. 108-1 ¶ 5, 108-2 ¶ 4.

On August 24, 2020, present counsel entered their appearances for Moving Plaintiffs. Docs. 92, 93.  Now pending before the Court is Moving Plaintiffs' Motion to Lift the Stay and Amend the Complaint.  Doc. 106.  Moving Plaintiffs contend that the Court's September 2016 Order compelling arbitration does not apply to them, as the Order does not specifically compel Opt-in Plaintiffs to arbitrate, and they joined this action after the Defendants' motion to dismiss and compel arbitration had been fully briefed.  Moving Plaintiffs further argue that an

---

The Court may "take judicial notice of information contained on websites where the authenticity of the site has not been questioned." *Fernandez v. Zoni Language Centers., Inc.*, No. 15 Civ. 6066 (PKC), 2016 WL 2903274, at \*3 (S.D.N.Y. May 18, 2016), *aff'd* 858 F.3d 45 (2d Cir. 2017) (citing *Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 549 (2d Cir. 2002)).

intervening change in law—the Supreme Court's 2019 decision *New Prime v. Oliveira*, 139 S. Ct. 532 (2019)—permits reconsideration of the Court's September 2016 decision pursuant to Fed. R. Civ. P. 54(b).  Moving Plaintiffs now seek to file their proposed First Amended Complaint ("PFAC").  The PFAC would bring the same putative FLSA collective action allegations; bring a putative Rule 23 class action for alleged NYLL overtime, notice, and unlawful deductions violations, but exclude Moving Plaintiffs from the Rule 23 class and have them bring the same claims in their individual capacities; and add individual claims for Moving Plaintiffs under NYLL for minimum wage violations and under New Jersey law for wage and hour and wage payment law violations.  *See* Doc. 108-7.  In the alternative, Moving Plaintiffs request that their claims be severed pursuant to Fed. R. Civ. P. 21, so that they may pursue their claims in a separate action with the statute of limitations running back to the date they opted in to this action.  Doc. 107 at 25 n.10.

On November 11, 2020, more than four years after the Court had compelled arbitration and about two and a half weeks after Moving Plaintiffs submitted their Motion to Lift the Stay, SDS brought Demands for Arbitration against them.  *See* Docs. 113-1, 113-2.  Notwithstanding the intervening October 2017 change in AAA policy, under which the lower cost Employment Fee Schedule applies to disputes between employees or independent contractors and businesses or organizations, SDS filed its Demands for Arbitration under the AAA Commercial Arbitration Rules and Standard Fee Schedule.  Docs. 113-1 at 2, 113-2 at 2.  On November 24, 2020, the Employment Filing Team of the AAA wrote to the parties informing them that a nonbinding preliminary administrative review had determined that arbitration proceedings against Moving Plaintiffs should proceed under the Employment Fee Schedule.  Doc. 114-1.  The AAA's letter, while subject to review by the arbitrator, provides that SDS should pay the filing fees and arbitrator compensation.  *Id*.  On December 2, 2020, counsel for the Moving Plaintiffs requested that the AAA pause arbitration proceedings pending the Court's ruling on the instant motion.  Doc. 114-2.

At no time have Lead Plaintiffs, or any of the Plaintiffs, brought a motion for conditional collective action certification pursuant to the FLSA. Defendants' Motion to Dismiss and to Compel Arbitration, filed on January 29, 2016, before the Opt-in Plaintiffs filed their consents to sue, was directed only at Lead Plaintiffs Zambrano, Durango, Riveros, and Romero. *See* Docs 21, 22. In support of that motion, Defendants submitted only the Vendor Agreements executed by Plaintiffs Durango, Riveros, and Romero. *See* Doc. 24 Exs. A-C. Defendants' Motion to Confirm Arbitration Award discussed only the arbitration proceedings against Forero. *See* Docs. 79, 80. Likewise, neither the Court's Order in *Zambrano II*, nor the parties' briefing, discussed whether *Zambrano I* had compelled Forero and the other Opt-in Plaintiffs to arbitrate.

## II.   LEGAL STANDARD

### A.  Conditional Certification of FLSA Collective Actions

Pursuant to the FLSA, an individual may file suit against an employer on behalf of himself and "other employees similarly situated" who give "consent in writing" to become party plaintiffs. 29 U.S.C. § 216(b). While the statute does not prescribe any particular procedures for approval of actions brought collectively by those who are "similarly situated," § 216(b) has been construed to grant authority to a district court to mandate that notice be given to potential plaintiffs informing them of the option to join the suit. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs.") Unlike Rule 23 class actions, FLSA collective actions are opt-in. A person is not a party to the action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

The Second Circuit Court of Appeals has endorsed a two-step process for determining whether a court should certify a collective action under § 216(b). *See Myers v. Hertz Corp.,* 624 F.3d 537, 554-55 (2d Cir. 2010); *see also Glatt v. Fox Searchlight Pictures, Inc.,* 811 F.3d 528, 540 (2d Cir. 2016). This process entails an analysis of whether prospective plaintiffs are "similarly situated" at two different stages: "an early 'notice stage,' and again after discovery is

largely complete." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (quoting *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)).  At stage one, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers,* 624 F.3d at 555.  Conditional certification at this stage requires only a "modest factual showing" that named plaintiffs and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Id* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997))*. See also Jackson v. Bloomberg, L.P.,* 298 F.R.D. 152, 158 (S.D.N.Y. 2014).  When determining whether a matter shall proceed as a collective action, courts should be mindful of the remedial purpose of the FLSA, which should be given a liberal construction. *Braunstein v. Eastern Photographic Laboratories, Inc.,* 600 F.2d 335, 336 (2d Cir. 1978).  At stage two, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555*.*  If the court concludes that they are not similarly situated, the action may be "de-certified," and "the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*

### B.  Class Actions Under Rule 23

"Because FLSA and [state law] claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the [state law] claims as a class action under the district court's supplemental jurisdiction." *Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 244 (2d Cir. 2011).  "Where a collective action under the FLSA that is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Garcia v. Pancho Villa's of Huntington Vill., Inc.,* 281 F.R.D. 100, 104-05 (E.D.N.Y. 2011) (quoting *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202-03 (S.D.N.Y. 2006)).  "[C]ourts in the

Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together." *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 163 (S.D.N.Y. 2008) (collecting cases). However, the Second Circuit has held that "the requirements for certifying a class under Rule 23 are unrelated to and more stringent than the requirements for 'similarly situated' employees to proceed in a collective action under § 216(b)." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020).

In a Rule 23 action, one or more members of a class are permitted to sue on behalf of the class if: (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). The four requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* (internal quotation marks and citations omitted).

If the Rule 23(a) criteria are satisfied, the proposed class must also satisfy at least one of the categories provided in Rule 23(b) to be certified as a class action. *E.g.*, *Pino v. Harris Water Main & Sewer Contrs. Inc.*, No. 17-CV-5910 (KAM) (RER), 2021 WL 3675148, at *4 (E.D.N.Y. Aug. 19, 2021) (citing *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007)).

"In addition to the requirements of numerosity, commonality, typicality, adequate representation, predominance, and superiority set forth in Rule 23, the Second Circuit has recognized an 'implied requirement of ascertainability.'" *Pino*, 2021 WL 3675148, at *3 (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)). "To be ascertainable, the class must be 'readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling.'" *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (quoting *McBean v. City of N.Y.*, 260 F.R.D. 120, 132–33 (S.D.N.Y. 2009)).

### C. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its complaint pursuant to the other party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Motions to amend are ultimately within the discretion of the district court judge who should grant leave freely absent any compelling reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment," or some other compelling reason. *Foman v. Davis*, 371 U.S. 178, 182 (1962), *see also Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009).

Rule 21 permits a court to add a new party "at any time, on just terms" or to "sever any claim against a party." Fed. R. Civ. P. 21. The moving party bears the burden of demonstrating that "severance is required to avoid prejudice or confusion and to promote the ends of justice." *Agnesini v. Doctor's Assocs., Inc.*, 275 F.R.D. 456, 458 (S.D.N.Y. 2011) (citing *Bey v. City of N.Y.*, No. 99 Civ. 3873 (LMM), 2009 WL 1911742, at *1 (S.D.N.Y. June 30, 2009)). "The decision whether to grant a severance motion is committed to the sound discretion of the trial court." *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011) (quoting *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988)); *accord Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 204 F.R.D. 248, 250 (S.D.N.Y. 2001). "Courts may order a Rule 21 severance when it will serve the ends of justice and further the prompt and efficient disposition of litigation." *Id.* (quoting *T.S.I. 27, Inc. v. Berman Enters., Inc.,* 115 F.R.D. 252, 254 (S.D.N.Y. 1987)).

### III. DISCUSSION

#### A. Applicability of the Court's Prior Orders to Moving Plaintiffs

*1. Status of Moving Plaintiffs*

Moving Plaintiffs argue that the Court's September 2016 Order compelling arbitration does not apply to them, because, on its face, the Order refers only to Lead Plaintiffs. Doc. 107 at

4-5.  Moving Plaintiffs further argue that Defendants have not produced evidence of arbitration agreements they may have signed, nor did Defendants move to compel Opt-in Plaintiffs to arbitrate, and therefore Moving Plaintiffs are not compelled to arbitrate their claims by force of that prior Order.  *Id.* at 7.  In support, Moving Plaintiffs cite several cases from this Circuit holding that courts must first consider "whether the parties have entered into a valid agreement to arbitrate" before granting a motion to compel under the FAA.  *Id.* at 6 (citing *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012)).  In the alternative, Moving Plaintiffs argue that the Supreme Court's decision in *New Prime v. Oliveira* constitutes an intervening change in law permitting the reconsideration of this Court's September 2016 Order.  *Id.* at 8-10.

Defendants counter that the plain language of the September 2016 Order states that the case is a "putative collective and class action," and that by filing consents to become party plaintiffs, Opt-in Plaintiffs designated Lead Plaintiffs to litigate on their behalf.  Doc. 110 at 6.  Thus, there is no distinction between Lead Plaintiffs and Opt-in Plaintiffs, and Moving Plaintiffs are "unquestionably bound by the Order if they remain in the litigation."  *Id.* at 7.

Although this case has been pending since 2015, Plaintiffs have never moved for conditional collective action certification, the first step in the two-step certification process in FLSA cases.  The purpose of the first step is to identify those individuals who may be "similarly situated" to the named plaintiff(s) insofar as they were "victims of a common policy or plan that violated the law."  *Myers*, 624 F.3d at 555.  Here, the Court has neither conditionally certified a collective action nor overseen any notice-giving process to potentially similarly situated plaintiffs.  Therefore, in the absence of any initial certification, the Court must first determine as a threshold matter the party status of Moving Plaintiffs, and the effective date of that party status.  For the reasons set forth below, the Court finds that the date of the filing of Moving Plaintiffs' consents to become party plaintiffs controls, and that they have been party plaintiffs, with independent claims, since filing their consents to sue in the spring of 2016.

Section 216(b) of the FLSA provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  Workers "become parties to a collective action only by filing written consent with the court."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 449 (2016) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). "Furthermore, in contrast to the procedures for a class action under Fed. R. Civ. P. 23, in a collective action, only plaintiffs who affirmatively opt in can benefit from the judgment."  *Wood v. Mike Bloomberg 2020, Inc.*, 484 F. Supp. 3d 151, 156 (S.D.N.Y. 2020) (citing *Indergit v. Rite Aid Corp.*, 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010)); *see also ABC Carpet*, 236 F.R.D. at  196.

Courts in this Circuit recognize that FLSA collective actions differ from Rule 23 actions in that each FLSA plaintiff has party status and may pursue their own individual claim.  *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 279-80 (S.D.N.Y. 2019); *see also Almanzar v. C & I Assocs., Inc.*, 175 F. Supp. 3d 270, 279 n.3 (S.D.N.Y. 2016).  Unlike a Rule 23 action, a FLSA "collective action is more accurately described as a kind of mass action, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases."  *Pettenato*, 425 F. Supp. 3d at 279 (citing *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018)).  For this reason, the affirmative assent of each opt-in plaintiff is required for settlement.  *See Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 279 (E.D.N.Y. 2020) ("[I]n a FLSA 'collective action' every plaintiff, original or 'opt-in', is free to pursue his or her individual claim . . . [E]ach plaintiff can choose his or her counsel, accept or reject a settlement proposal, and decide to go to trial.  In these respects, an 'opt-in' plaintiff is no different from the original plaintiff who filed the Complaint." (quoting *Oldershaw v. DaVita Healthcare Partners, Inc.*, 255 F. Supp. 3d 1110, 1115-16 (D. Colo. 2017))).

The Third and Eleventh Circuits have addressed the question of opt-in plaintiffs' party status in the absence of conditional collective action certification and have determined that opt-in plaintiffs become party plaintiffs upon filing their consents to sue; nothing further is required.

13

*See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 n. 10 (3rd Cir. 2016); *Mickles v. Country Club, Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) ("The plain language of § 216(b) supports that those who opt in become party plaintiffs upon the filing of a consent and that nothing further, including conditional certification, is required. . . . Although § 216(b) . . . requires an opt-in plaintiff [to] be similarly situated to the named plaintiff, the opt-in plaintiffs remain party plaintiffs until the district court determines they are not similarly situated and dismisses them."). Courts in this Circuit have likewise held that opt-in plaintiffs become parties to a FLSA action upon filing written consent, which renders the opt-in plaintiff "party to the lawsuit through a separate action joined to the original lawsuit, which commences on the date written consent is filed." *Anjum v. J.C. Penney Co., Inc.*, No. 13-CV-0460 (RJD)(RER), 2014 WL 5090018, at *12 (E.D.N.Y. Oct. 9, 2014) (citing 29 U.S.C. § 256(b)); *see also Johnson v. Parts Auth., LLC*, No. 16-CV-06852 (DLI)(RML), 2020 WL 8414990, at *2 (E.D.N.Y. Sept. 30, 2020) (finding that opt-in plaintiff became a party plaintiff through a separate action joined to the original lawsuit upon filing of her written consent). The Court finds that the consents filed by Moving Plaintiffs, rather than any conditional certification, determines their status as plaintiffs, on equal footing with Lead Plaintiffs but bringing their own individual cases. *See Campbell*, 903 F.3d at 1105. Thus, Moving Plaintiffs have party status and have standing to move to amend. *See Gonzalez v. Nicholas Zito Racing Stable Inc.,* No. 04-CV-22 (SLT)(AKT), 2008 WL 941643, at *3 (E.D.N.Y. Mar. 31, 2008) (opt-in plaintiffs had standing to amend the complaint and could be substituted as named plaintiffs).

   2.  *Applicability of September 2016 Order Compelling Arbitration to Moving Plaintiffs*

   Whether the September 2016 Order compelling arbitration applies to Moving Plaintiffs, when they have never been certified as part of a FLSA collective, presents a close question. The Second Circuit has not spoken directly on this point. As noted above, Moving Plaintiffs present a plain language argument that the September 2016 Order did not compel them to proceed in arbitration, but have not briefed the import, if any, of the fact that the Court issued that order prior to any conditional collective certification. Doc. 107 at 4-5. Moving Plaintiffs also argue that

Defendants did not present evidence that they had signed any arbitration agreements, *id.* at 5-7, but this argument is apparently mooted because Defendants have now produced Vendor Agreements with arbitration clauses bearing the electronic signatures of the Moving Plaintiffs.[7] *See* Doc. 111.

Defendants argue that, upon filing their written consents, Moving Plaintiffs agreed to be bound by the Lead Plaintiffs' litigation strategy.  Doc. 110 at 5-7.  Defendants point to the language of the consent, which states "I hereby authorize the filing and prosecution of the above-styled Fair Labor Standards Act action in my name and on my behalf by the above representative Plaintiffs and designate the class representatives as agents on my behalf to make decisions concerning the litigation[.]"  *Id.* at 6 n.6.  Notably, however, Defendants do not cite any outside authority for the proposition that Moving Plaintiffs are bound by the September 2016 Order compelling arbitration in the absence of conditional collective certification.

At least one court in this Circuit has addressed a situation substantially similar to the case at bar, determining that its prior order compelling lead plaintiff to arbitration "did not apply to [opt-in plaintiff's] separate action."  *Parts Auth.*, 2020 WL 8414990, at *3.  The *Parts Authority* court reasoned that, because the lead plaintiff had never moved for conditional certification of a FLSA collective action, the court had never determined whether lead plaintiff and opt-in plaintiff were "similarly situated" under § 216(b).  *Id.*

Similarly, in an opinion resolving both defendants' motion to compel the named plaintiff to arbitrate and named plaintiff's preliminary motion for certification of a collective action and notice pursuant to § 216(b), a district court in the Central District of California surveyed case law on the status of pre-certification opt-in plaintiffs and determined that opt-in plaintiffs in that case had equal standing to bring a motion for conditional certification as the named plaintiff.  *Ortega v. Spearmint Rhino Cos. Worldwide, Inc.*, No. EDCV 17-206 JGB (KKx), 2019 WL 2871156, at *6-7 (C.D. Cal. May 15, 2019).  In *Ortega*, the court found that the named plaintiff had signed an

---

[7] Moving Plaintiffs have expressly reserved the right to contest the authenticity of those Vendor Agreements and to present other applicable contract defenses.  Doc. 112 at 3 n.3.

enforceable arbitration agreement including a collective and class action waiver and therefore was required to arbitrate her claims and unable to move for conditional certification. *Id.* at *5-6. However, the *Ortega* court explained that, because defendants had not moved to compel arbitration as to the opt-in plaintiffs, the opt-in plaintiffs could move for collective certification because the existence of any arbitration agreements went to defendants' defenses, rather than to the viability of a collective action at the initial certification stage.[8] *Id.* at *5 (citing *D'Antuono v. C & G of Groton, Inc.*, 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011); *Varghese v. JP Morgan Chase & Co.*, 2016 WL 4718413, at *9 (S.D.N.Y. Sept. 9, 2016) ("[C]ourts have consistently held that that existence of arbitration agreements is 'irrelevant' to collective action approval 'because it raises a merits-based determination.'")). The *Ortega* defendants did not name the opt-in plaintiffs in their motion to compel but did belatedly introduce in their reply briefing arbitration agreements purportedly signed by the opt-in plaintiffs. *Id.* at *3 n.2.  As such, the court found that the opt-in plaintiffs were not compelled to arbitrate and could proceed with their claims in litigation.  The court reasoned:

> The Opt-in Plaintiffs . . . remain parties to this case.  Defendants have not properly moved to compel their claims to arbitration and Opt-in Plaintiffs have not yet had the opportunity to raise applicable contract law defenses to the formation of any arbitration agreements they may have signed.  Further, while Defendants argue that the issuance of class notice is not warranted where both the named Plaintiff and the opt-in Plaintiff have signed arbitration agreements which include a class-action waiver, this argument puts the cart before the horse when it comes to the Opt-in Plaintiffs.  While Opt-in Plaintiffs may ultimately be compelled to abandon their collective action and litigate their claims in individual arbitration, the enforceability of their collective action waiver is most suitable for determination in the second stage of the collective action certification process, <u>after</u> collective action notice has issued and discovery has taken place.

*Id.* at *7.

---

[8] Unlike in this case, the *Ortega* court found—and named plaintiff did not dispute—that the arbitration agreement included a collective and class action waiver that precluded her from pursuing a FLSA collective action. *Ortega*, 2019 WL 2871156, at *6.  However, the *Ortega* court found that this did not preclude opt-in plaintiffs, whose alleged arbitration agreements were not at issue, from proceeding with the motion for conditional collective certification. *Id.*  In *Zambrano I*, the Court did not decide the enforceability of the class waiver provision, determining that it was instead an issue for the arbitrator to decide.  2016 WL 5339552, at *10.

The Court finds the analysis in *Ortega* persuasive.  Defendants here also have not properly moved to compel Moving Plaintiffs to arbitrate their claims.  Like the *Ortega* defendants, Defendants only belatedly introduced the relevant Vendor Agreements in response to Moving Plaintiffs' instant motion.  *See* Doc. 111.  Moving Plaintiffs have not had an opportunity to present any contract law defenses to the arbitration clauses in the Vendor Agreements.  Furthermore, as Moving Plaintiffs argue, Doc. 107 at 8-13, the Supreme Court's intervening 2019 decision in *New Prime*[9] may indeed bear on whether Moving Plaintiffs may be compelled to arbitrate under the FAA.

The question of whether plaintiffs may move for collective action certification under the FLSA, even when prospective members of the collective may have signed arbitration agreements, is also instructive.  While circuit courts are divided on this issue, the weight of law in this Circuit holds that a collective may be conditionally certified, and notice given, notwithstanding that some or all of the prospective members of the collective may have signed arbitration agreements.  *See, e.g.*, *Barone v. LAZ Parking Ltd., LLC*, No. 3:17-CV-01545 (VLB), 2019 WL 5328832, at *3 (D. Conn. Oct. 20, 2019) ("The Court agrees with the plaintiffs that the weight of authority within the Second Circuit militates against adopting the Fifth Circuit's approach," and stating "that courts within the Second Circuit have consistently refused to exclude plaintiffs from receiving notice simply because they have signed arbitration agreements." (collecting cases)); *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18 Civ. 12220 (PAE) (RWL), 2019 WL 4493429, at *9 (S.D.N.Y. Sept. 9, 2019) ("[T]his court believes it appropriate in this case to follow the greater weight of authority endorsing sending notice of a collective action to potential opt-ins who may be party to an arbitration agreement."); *Garcia v. Chipotle Mexican Grill, Inc.*, No. 16 Civ. 601 (ER), 2019 WL 358503, at *3 (S.D.N.Y. Jan. 29, 2019) (rejecting defendant's argument that notice to employees who had signed arbitration agreements was "stirring up litigation," and

---

[9] In *New Prime*, the Supreme Court held that the term "contracts of employment" in the FAA refers to any agreement to perform work, and therefore transportation workers who engage in interstate commerce, whether employees or independent contractors, are exempt from the FAA under its residual clause, 9 U.S.C. § 1.  *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 543-44 (2019).

explaining that the court's prior order "explicitly authorized notice to be sent to these employees notwithstanding the potential existence of arbitration agreements"); *D'Antuono*, 2011 WL 5878045, at *3 (fact that the court had previously found two named plaintiffs to have signed leases containing valid and enforceable arbitration agreements "does not require the Court to now find that [potential opt-in plaintiffs] with leases the Court has not evaluated may not opt-into" the case); *but cf. Errickson v. Paychex, Inc.*, 447 F. Supp. 3d 14, 27–29 (W.D.N.Y. 2020) (finding that the employees who had signed arbitration agreements were not "similarly situated" to named plaintiffs and therefore ordering that notice not be sent to employees who had signed arbitration agreements); *but see In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050–51 (7th Cir. 2020).  On balance, courts in this Circuit do not allow the purported existence of arbitration agreements to foreclose prospective plaintiffs' ability to receive notice of their potential claims under the FLSA.[10]  Here, the Court finds that the existence of alleged arbitration agreements, not yet properly before the Court, may not prevent Moving Plaintiffs from amending the Complaint and seeking to advance litigation— even if Moving Plaintiffs, too, may ultimately be required to arbitrate.  The Court will proceed accordingly and declines, at this time, to decide the impact of *New Prime* on its prior decision in *Zambrano I*.

---

[10] Courts in this Circuit have found that, where all named plaintiffs had allegedly signed arbitration agreements, named plaintiffs could not move for conditional certification pending a motion to compel arbitration, because "no determination has yet been made as to whether any of the named Plaintiffs has standing to proceed with his claim." *Hamoudeh v. UnitedHealth Grp. Inc.*, No. 16-CV-790 (PKC)(RML), 2016 WL 2894870, at *2 (E.D.N.Y. May 17, 2016); *see also Litvinov v. UnitedHealth Grp. Inc.*, No. 13 Civ. 8541 (KBF), 2014 WL 1054394 (S.D.N.Y. Mar. 11, 2014) (concerning a near identical suit); *Thompson v. Body Sculpt Int'l, LLC*, No. 18-CV-1001 (ARR)(GRB), 2018 WL 3235545, at *8 (E.D.N.Y. July 2, 2018) (granting defendants' motion to compel and denying plaintiffs' motion for conditional certification of a collective action as moot).  The instant case, however, is distinguishable from *Hamoudeh*, *Litvinov*, and *Thompson* as neither a motion for conditional certification nor a motion to compel is properly before the Court; instead, Moving Plaintiffs seek only to amend for an initial opportunity to pursue their claims.

### B.  Leave to Amend

*1.  Futility and Moving Plaintiffs' Proposed Exclusion from the Putative Class*

The Second Circuit has held that leave to amend may be denied based on futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (internal quotation marks and citations omitted).  The non-moving party bears the burden of establishing the amendment's futility.  *See, e.g., Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC,* 450 F. Supp. 3d 358, 377 (S.D.N.Y. 2020) (citations omitted).  To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss pursuant to Rule 12(b)(6).  *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 456 (S.D.N.Y. 2016).  Accordingly, when considering a motion to amend a pleading, a "court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's favor."  *Id.* at 456 (citations omitted).

The PFAC, like the original Complaint, brings a putative collective action alleging FLSA overtime violations and a putative Rule 23 class action alleging various violations of NYLL (overtime violations, notice violations, and unlawful deductions and untimely payments).  *Compare* Doc. 1 *with* Doc. 108-7.  Moving Plaintiffs seek to amend in two ways:  first, by excluding themselves from the putative class, but bringing the same causes of action in their individual capacities for the alleged NYLL violations, Doc. 108-7 ¶¶ 92, 164-177, and second, by adding individual claims for alleged NYLL minimum wage violations and New Jersey wage and hour and payment law violations, Doc. 108-7 ¶¶ 178-188.  In support of their proposed New Jersey causes of action, Moving Plaintiffs provide declarations discussing their working conditions with SDS, work locations in New York and New Jersey, and payment.  Docs. 108-1, 108-2.

Defendants oppose Moving Plaintiffs' motion to amend and to add individual claims under NYLL and New Jersey law, arguing that Moving Plaintiffs should not be permitted to bring individual claims and to exclude themselves from the class.  Doc. 110 at 3.  They argue that such amendment would be futile, because if Moving Plaintiffs "wish to remove themselves from the Class they can no longer stay in the case.  Denial of the Motion to Amend is warranted as

[Moving Plaintiffs] would not be [parties] to the case and the amendment would be improper and futile." *Id.* at 5.  Instead, Defendants suggest that Moving Plaintiffs may instead bring their individual FLSA, NYLL, and New Jersey claims through a new action, to which Defendants would be able to present statutes of limitations defenses.  *Id.* at 3 n.2, 5.  In reply, Moving Plaintiffs argue that Defendants conflate their proposed exclusion from the putative Rule 23 class with the FLSA collective action and stress that they retain party status through their ongoing participation in the putative collective action.  Doc. 112 at 8-10.

Defendants' futility argument that Moving Plaintiffs may not seek to exclude themselves from the class and instead bring individual claims relies on *Morris v. Affinity Health Plan, Inc.*, 928 F. Supp. 2d 805 (S.D.N.Y. 2013).  Doc. 107 at 3-4.  The *Morris* court held that opt-out plaintiffs, who had removed themselves from the class settlement and from the case entirely, could not amend the complaint, after the court's approval of the settlement agreement, to pursue their own individual claims.  928 F. Supp. 2d at 811-12 (S.D.N.Y. 2013).  Moving Plaintiffs argue that *Morris* is inapposite because they are not seeking to leave the FLSA collective action. Doc. 112 at 9.  The Court agrees with Moving Plaintiffs that *Morris* does not control.  Here, unlike in *Morris*, the Court has not yet certified any FLSA collective action or Rule 23 class action.

At the same time, Moving Plaintiffs have not provided any specific authority in support of their proposed class, which purports to exclude them from the class of plaintiffs pursuing the same claims that they seek to pursue individually, and which claims arise out of common questions of law or fact.  *See Scott*, 954 F.3d at 512 (citing Fed. R. Civ. P. 23(a)).  The Court agrees with Moving Plaintiffs that the procedural situation is unusual, Doc. 112 at 10; however, the parties have not specifically briefed the propriety or advisability of the class defined in the PFAC. Rule 23(b)(1) allows a class to be maintained where "prosecuting separate actions by or against individual class members would create a risk of" either "(A) inconsistent or varying adjudications," or "(B) adjudications . . . that, as a practical matter, would be dispositive of the interests

of the other members not parties to the individual adjudications[.]"[11]   Rule 23(b)(3) states that a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members," and where a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."   The proposed class in the PFAC—specifically excluding Moving Plaintiffs, who would bring individual claims for the same causes of action—has the potential to create the very discrepancies Rule 23(b) is meant to protect against.   Thus, the Moving Plaintiffs' formulation of the putative class does not appear to further the goals of a Rule 23 class action.

By contrast, the Court finds that, drawing all inferences in Moving Plaintiffs' favor, their proposed individual NYLL minimum wage and New Jersey claims are not futile.   Defendants have not presented any argument as to why the proposed NYLL and New Jersey claims would be futile, beyond asserting generally, based on *Almanzar*, that opt-in plaintiffs may only bring the same state claims that the original plaintiffs asserted.   Doc. 110 at 2 n.1.   However, nothing in *Almanzar* compels this conclusion; instead, the court noted that "[i]ndividuals who have opted-in to an FLSA collective action have 'party status' and are able to advance their own claims," and, on a summary judgment motion, found defendants liable to all plaintiffs, not just named plaintiffs, for NYLL violations.   175 F. Supp. 3d at 279 n.3.   Moreover, plaintiffs routinely bring both collective FLSA and/or state claims and individual state claims by means of the same complaint. *See, e.g.*, *Vogel v. Am. Kiosk Mgmt.*, 371 F. Supp. 2d 122, 128 (D. Conn. 2005) (plaintiff asserted individual and collective actions under the FLSA and individual claims under Connecticut law). Especially where, as here, proceedings are still in early stages, the proposed individual NYLL and New Jersey claims are not futile.

---

[11] Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"

*2. Undue Delay and Undue Prejudice*

In the Second Circuit, in addition to futility and bad faith, a court may also deny a motion to amend under Rule 15 "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties." *Perez v. MVNBC Corp.*, No. 15 Civ. 6127 (ER), 2016 WL 6996179, at *4 (S.D.N.Y. Nov. 29, 2016) (quoting *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000)).

Defendants have not argued that Moving Plaintiffs have unduly delayed or that they would suffer undue prejudice should Moving Plaintiffs be permitted to proceed with the PFAC. Moving Plaintiffs argue that they should be permitted to amend the complaint to add individual claims because they have standing as party plaintiffs, and Lead Plaintiffs do not oppose the PFAC; because their individual NYLL and New Jersey claims in the PFAC mirror the FLSA and state law class claims in the initial Complaint; and because the "overarching independent contractor issues" underlying all claims are the same. Doc. 107 at 23-25. Therefore, Moving Plaintiffs argue there is no surprise or prejudice to Defendants. *Id.* at 25.

The Court finds that Moving Plaintiffs meet the liberal standard of Rule 15. Although the case has remained pending now for several years, the Court credits Moving Plaintiffs' argument that they did not proceed earlier because of the stay in place. *Id.* Moreover, the Court does not fault Moving Plaintiffs for undue delay in seeking to lift the stay, where Defendants have waited years to bring arbitration demands against them, and then, only in response to the instant motion. *See* Doc. 113. Furthermore, a moving party's delay, absent bad faith or prejudice, is not a sufficient reason to deny a motion to amend. *Perez*, 2016 WL 6996179, at *5 (citing *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)).

Defendants have not argued that they will be prejudiced by the addition of individual state-law claims, and in any case the Court does not find that Defendants would suffer undue prejudice. This case has been stayed since very early stages, and thus the parties have not begun discovery, and there has been no scheduling order entered in this case. *Cf. Perez*, 2016 WL 6696179 at *3-5 (explaining the interplay between Rules 15, 16, and 21 and granting leave to

amend on plaintiffs' showing of good cause under Rule 16).  Furthermore, while Defendants do oppose Moving Plaintiffs' arguments that the Court should reconsider *Zambrano I* and that they should be permitted to proceed with their proposed class, Defendants have not made any show-ing that they will be prejudiced by having to defend against additional claims brought under NYLL and New Jersey law and arising out of the independent contractor relationship between the parties.  *See Zorrilla v. Carlson Restaurants, Inc.*, 255 F. Supp. 3d 465, 479 (S.D.N.Y. 2017) ("[T]here is no undue prejudice when the new state claim and the original . . . FLSA claim allege substantively similar forms of liability, thus implicating the same evidence and defenses as the original pleading.").

### 3.  The Proposed NYLL and New Jersey Claims Relate Back Under Rule 15(c)

Rule 15(c)(1) provides that "[a]n amendment to a pleading relates back to the date of the original pleading" when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  "All that the case law in the Second Circuit requires under Rule 15(c)(1)(B) is that 'the basic claim must have arisen out of the conduct set forth in the original pleading.'"  *Perkins v. S. New Engl. Tel. Co*., No. 3:07-CV-967 (JCH), 2009 WL 3754097, at *5 (D. Conn. Nov. 4, 2009) (quoting *Slayton v. Am. Express Co.,* 460 F.3d 215, 228 (2d Cir.2006)).  Rule 15(c) "mandates relation back once the Rule's requirements are satisfied; it does not leave the decision whether to grant relation back to the district court's equitable discretion."  *Krupski v. Costa Crociere S. p. A.,* 560 U.S. 538, 553 (2010).  "As long as the requirements of Rule 15(c) are met, considerations such as the general timeliness of the proposed amendment are not rele-vant."  *Charlot v. Ecolabs, Inc.*, 97 F. Supp. 3d 40, 69 (E.D.N.Y. 2015) (citing *Krupski*, 560 U.S. at 553).

"Where the amendment would involve a new cause of action [ ], the district court may deny leave unless the original complaint gave the defendant fair notice of the newly alleged claims."  *Charlot*, 97 F. Supp. at 70 (collecting cases).  In *Charlot*, the court found that the plain-tiffs' original complaint, which brought FLSA, New York, and New Jersey claims, did not put

defendant on notice that they might be sued by additional plaintiffs "asserting individual and class claims under the wage-and-hour laws of four additional states." *Id.* at 72.  However, in *Zorrilla*, a court in this district found that the plaintiffs' original pleadings, which brought a "nationwide collective action premised on the allegation that Defendants apply the same employment policies . . . to all tipped workers," provided defendants with adequate notice that additional state claims might be brought.  255 F. Supp. 3d at 477.  The court found that a plaintiff's three additional proposed claims brought under the laws of a different state "arise out of the general fact situation alleged in the original pleading," and therefore defendants had adequate notice.  *Id.* (citing *Slayton*, 460 F.3d at 228).

Here, under either the *Charlot* or *Zorrilla* framework, the Court finds that the original Complaint did provide Defendants adequate notice that Plaintiffs might include additional state claims, especially since Defendants have not argued that they will be prejudiced by having to defend against new claims or that they did not have notice.  Moving Plaintiffs' claims arise out of Defendants' alleged policy of mischaracterizing employees as independent vendors.  Moreover, Defendants have had actual notice, in that Lead Plaintiffs have argued from the beginning that they are transportation workers engaged in interstate commerce, Doc. 27 at 4, and submitted declarations that they transported merchandise across state lines, from New York to locations in Connecticut, New Jersey, and Pennsylvania, Docs. 29 ¶ 3, 30 ¶ 3, 32 ¶ 3.  Furthermore, the PFAC alleges that SDS maintains a facility in Elizabeth, New Jersey.  Doc. 108-7 at ¶ 87.  Taking this fact as true, as the Court must in considering a motion to amend, Defendants were on notice that Plaintiffs might bring claims under New Jersey law.

Therefore, the Court grants Moving Plaintiffs leave to amend and to add claims under NYLL and New Jersey law.  FLSA § 256 provides that

> [i]n determining when an action is commenced for the purposes of [determining statute of limitations under FLSA] . . . in the case of a collective or class action instituted [under FLSA], it shall be considered to be commenced in the case of any individual claimant—

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
> (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

*Perkins*, 2009 WL 3754097, at *3 (citing 29 U.S.C. § 256). Courts in this Circuit have determined § 256(b) to mean that the action commences for opt-in plaintiffs on the date they file their written consent forms. *Id.* at *4 ("[T]his court reads section 256(b) to say that the action for an individual not named in the complaint commences on the day their own individual consent is filed with the court[.]"); *Soler v. G & U, Inc.,* 103 F.R.D. 69, 75-76 (S.D.N.Y. 1984) ("[A]s to each individual claimant, the . . . claims will relate back to the date on which his or her consent to sue form was filed with the court and not to the date on which the original complaint was filed."). Therefore, Moving Plaintiffs' additional claims relate back to the date they opted into the suit.

The Court therefore grants Moving Plaintiffs leave to amend to assert their proposed Fifth Cause of Action for alleged New York Stage minimum wage violations, Sixth Cause of Action for alleged New Jersey wage and hour law violations, and Seventh Cause of Action for alleged New Jersey wage payment law violations. The Court does not grant Moving Plaintiffs leave to proceed with their current formulation of the putative Rule 23 class.

## IV.  CONCLUSION

For the foregoing reasons, Moving Plaintiffs' motion to amend is GRANTED in part and DENIED in part. Moving Plaintiffs are permitted to amend the Complaint to add the proposed Fifth, Sixth, and Seventh Causes of Action. The Court does not permit Moving Plaintiffs to exempt themselves from the putative class action at this time.

Moving Plaintiffs are directed to file their Amended Complaint by October 19, 2021. If Plaintiffs intend to dismiss Andrew Kronick as a defendant, Plaintiffs are directed to submit their notice of voluntary dismissal by October 19, 2021. The parties are directed to appear for a

telephonic status conference on November 4, 2021 at 9:30 am.  The parties are directed to dial

(877) 411-9748 and enter access code 3029857# at that time.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 106.


It is SO ORDERED.

Dated:   September 28, 2021
         New York, New York

_____
              Edgardo Ramos, U.S.D.J.