**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTIAN ZAMBRANO, LUZ DURANGO, MOIRA RIVEROS, and RIGOBERTO ROMERO, on behalf of themselves and all others similarly situated,<br><br>BLANCA ALULEMA and MARIA TACOAMAN,<br><br>Plaintiffs,<br><br>v.<br><br>STRATEGIC DELIVERY SOLUTIONS, LLC, DAVID KRONICK, ANDREW KRONICK, and MIKE RUCCIO,<br><br>Defendants. | Case No.: 15-cv-08410-ER |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE UNDER THE FLSA

---

JASINSKI, P.C.
20 Hance Avenue, 3rd Floor
Tinton Falls, New Jersey 07724
Phone: (973) 824-9700
Fax: (732) 842-1805

*Attorneys for Defendants*
*Strategic Delivery Solutions, LLC,*
*David Kronick, Andrew Kronick*
*and Mike Ruccio*

Of Counsel:
    David F. Jasinski, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

SUMMARY OF RELEVANT FACTS .................................................................................... 2

ARGUMENT ........................................................................................................................... 3

POINT I PLAINTIFFS FAIL TO MEET THE STANDARDS FOR COLLECTIVE ACTION
CERTIFICATION UNDER SECTION 216 OF THE FLSA ................................................. 3

    A.  The Legal Standard for Obtaining Court-Authorized Notice ............................................ 3

    B.  Plaintiff Has Failed To Establish That They Were Similarly Situated To The Potential
Opt-In Plaintiffs. ........................................................................................................................ 4

        i.    Plaintiffs' Affidavits Lack Specific Information About Work Performed. .............. 5

        ii.    Plaintiffs Are Not Representative of the Proposed Collective ................................. 6

POINT II EQUITABLE TOLLING IS NOT APPROPRIATE .................................................... 12

    A.  Plaintiffs' Request For Equitable Tolling Must Be Denied. ............................................ 13

        i.    Plaintiffs Have Not Met Their Burden As To Themselves.................................... 14

        ii.    Plaintiffs Have Not, And Cannot, Meet The Burden As To Potential Plaintiffs. ... 15

POINT III IF ANY DISCOVERY IS ORDERED, IT SHOULD BE LIMITED TO THOSE SDS
INDEPENDENT CONTRACTORS WHO PROVIDED SERVICES AT THE FARMINGDALE,
NEW YORK FACILITY ........................................................................................................ 16

POINT IV IF ANY NOTICE IS APPROPRIATE, IT SHOULD BE FAIR AND ACCURATE 16

CONCLUSION...................................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*A.Q.C. ex rel. Castillo v. U.S.*,
  656 F.3d 135 (2d Cir. 2011)................................................................ 14

*Amendola  v. Bristol-Myers Squibb Co.*,
  558 F.Supp.2d 459 (S.D.N.Y. 2008)....................................................... 3

*Barfield v. N.Y.C. Health & Hosps. Corp.*,
  2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) .......................................... 6

*Cohen v. Gerson Lehrman Group, Inc.*,
  686 F Supp. 2d 317 (S.D.N.Y. 1020)..................................................... 16

*Contrera v. Langer*,
  278 F. Supp. 3d 702 (S.D.N.Y. 2017).................................................... 12

*Flores v. Osaka Health Spa*,
  2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) ............................................ 4

*Guan Ming Lin v. Benihana Nat'l Corp.*,
  755 F.Supp.2d 504 (S.D.N.Y. 2010)....................................................... 6

*Guillen v. Marshalls of MA, Inc.*,
  750 F.Supp.2d 469 (S.D.N.Y. 2010).................................................... 3, 4

*Gustafeon v. Bell Atl. Corp.*,
  171 F.Supp.2d 311 (S.D.N.Y.2001)...................................................... 13

*Jenkins v. TJX Companies Inc.*,
  853 F.Supp.2d  317 (E.D.N.Y. 2012)................................................. 4, 16

*Johnson v. Nyack Hosp.*,
  86 F.3d 8 (2d Cir.1996).................................................................... 12

*Laroque v. Domino's Pizza*,
  557 F.Supp.2d 346 (E.D.N.Y. 2008)....................................................... 3

*Levinson v. Primedia, Inc.*,
  2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ........................................... 5

*Lujan v. Cabana Mgmt., Inc.*,
  2011 WL 317984 (E.D.N.Y. Feb. 1, 2011) ...................................... 6, 7, 15

*Lynch v. United Servs. Auto Assn'n*,
  491 F.Supp.2d 357 (S.D.N.Y.2007)........................................................ 3

*Mark v. Gawker Media, LLC*,
  2014 WL 5557489 (S.D.N.Y. Nov. 3, 2014) .......................................... 14

*Menominee Indian Tribe of Wis. v. U.S.*,
  136 S.Ct. 750 (2016) ...................................................................... 14

*Meyers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir 2020)................................................................. 3

*Miller v. lnt'l Tel. & Tel. Corp.*,
  755 F.2d 20 (2d Cir.1985)................................................................ 13

*Monger v. Cactus Salon & Spa's, LLC*,
  2009 WL 1916386 (E.D.N.Y. July 6, 2009) ..................................... 6, 7, 11

*Morales v. Plantworks*,
  2006 WL 278154 (S.D.N.Y. Feb. 1, 2006) .............................................. 4

*Perez Perez v. Escobar Construction, Inc.*,
___ F.Supp.3d ___, 2021 WL 2012300, (S.D.N.Y. May 20, 2021) ............................ 13, 14, 15

*Pineda v. Jim-Mar Consultants, Inc.*,
2010 WL 3853027 (E.D.N.Y., Sept. 27, 2010)........................................................................ 4

*Thompson v. World Alliance Fin. Corp.*,
No. 08 Civ. 4951 (AKT), 2010 WL 3394188 (E.D.N.Y. Aug. 20, 2010) ............................... 13

*Urresta v. MBJ Cafeteria Corp.*,
No. 10-cv-8277 (S.D.N.Y. Oct. 17, 2011) ............................................................................... 5

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
767 F.Supp.2d 445 (S.D.N.Y. 2011)........................................................................................ 13

**Rules**

29 U.S.C.A. § 255(a) ............................................................................................................... 12

## PRELIMINARY STATEMENT

Plaintiffs Alulema and Tacoaman seek to have this case conditionally approved as a collective action; to compel Defendants to produce names and contact information; for equitable tolling; and for notice to be sent to all independent contractors that served clients of Strategic Delivery Solutions, LLC ("SDS") in New Jersey and New York.  Their request must be denied. The threshold issue in deciding whether to authorize class notice in an FLSA action is whether the plaintiff has demonstrated that potential class members are similarly situated.  Even under the modest factual standard set by this Court, Plaintiffs' affidavits are devoid of sufficient proof that there are other similarly situated members in all of New Jersey and New York.

The Plaintiffs are requesting collective certification for the FLSA claims only.  The present motion is not based on the New York and New Jersey State claims.  Nor is the present motion submitted on the basis that Plaintiffs themselves were improperly misclassified as independent contractors as that issue addresses the merits. The basis that there are similarly situated class members is based solely on Plaintiffs' scant declarations that they had conversations with and observed unidentified independent contractors at the Farmingdale, New York and Elizabeth, New Jersey facilities and reference to their sons, Marcos Paucar and Darwin Ronquillo.  Based on these thin declarations, Plaintiffs now ask this court to have SDS produce private information of all independent contractors in New York and New Jersey, which includes hundreds of independent contractors located throughout New York and New Jersey.

Simply stated, Plaintiffs have failed to provide any information about the potential class members other than two self-serving statements about their sons. Plaintiffs have failed to submit any of the potential class members' names except their sons. The silence on these critical issues is indicative of the failure of their claims. At best, the Plaintiffs have alleged either individual claims

that do not extend beyond their own individual work experiences or do not extend beyond Farmingdale, New York. Far more is required to warrant court-authorized notice.

As set forth more fully below, Plaintiffs have not met their burden to proceed as a collective action under the FLSA and their motion should be denied in its entirety.

## SUMMARY OF RELEVANT FACTS

Strategic Delivery Solutions, LLC ("SDS") arranges for the local delivery of pharmaceutical merchandise. (Doc. 116, p. 1.)  SDS does not perform the deliveries.  (Doc. 111-2.)  Rather, SDS contracts with local couriers who pick-up and deliver the pharmaceuticals. (*Id.*)  Plaintiffs executed an Owner/Operator Agreement and Independent Vendor Agreements for Transportation Services ("Agreements") with SDS wherein Plaintiffs affirmed their understanding of the independent contractor relationship.  Declaration of David F. Jasinski, Esq., Exhibits A, B and C.

Apart from classification issues, the individuals' designation as "independent contractors" is germane to issues pertaining to FLSA conditional certification.  Autonomy and independence as independent contractors lead to varying work experiences, and negate a showing that said independent contractors are "similarly situated" with each other.  Declaration of Andrew Kronick ("Kronick Decl."), ¶¶3-7.  Independent contractors are not precluded from performing delivery services for other companies. Kronick Decl., ¶4.  They have the right to determine the manner by which they provide delivery services. Kronick Decl., ¶5.  They enjoy the right to employ, furnish and supervise qualified licensed drivers and other personnel to perform their deliveries and to select their own routes and the order of their deliveries.  Kronick Decl., ¶6.

Plaintiffs contracted with SDS and provided delivery services at the Farmingdale, NY facility as independent contractors.  Kronick Decl., ¶7.  Although SDS' client formerly operated a

dock out of Elizabeth, New Jersey, there is no longer a facility in Elizabeth. The Elizabeth, New Jersey facility ceased operations in 2016. Kronick Decl., ¶2.

**ARGUMENT**
**POINT I**
**PLAINTIFFS FAIL TO MEET THE STANDARDS FOR COLLECTIVE ACTION CERTIFICATION UNDER SECTION 216 OF THE FLSA**

**A.      The Legal Standard for Obtaining Court-Authorized Notice**

"In contrast to the procedural requirements set forth in Rule 23 of the Federal Rules of Civil Procedure for class actions...neither the FLSA nor the Federal Rules of Civil Procedure provide for the certification of an FLSA class action." *Amendola v. Bristol-Myers Squibb Co.,* 558 F.Supp.2d 459 n.l (S.D.N.Y. 2008). Although Section 216(b) does not refer to court- authorized notice to potential opt-in plaintiffs, it is generally accepted that district courts have the power to authorize an FLSA plaintiff to send such notice. *See Laroque v. Domino's Pizza*, 557 F.Supp.2d 346, 351-52 (E.D.N.Y. 2008); *Guillen v. Marshalls of MA, Inc.,* 750 F.Supp.2d 469, 475 (S.D.N.Y. 2010). Such orders are often referred to in terms of "certifying a class." *Guillen,* 750 F.Supp.2d at 475 (internal quotations omitted) (citing *Meyers v. Hertz Corp.,* 624 F.3d. 537  (2d Cir. 2010). "The act of 'certifying' a collective action, however, means only that this Court has exercised its discretionary power to facilitate the sending of notice to potential class members." *Id.* Courts have treated motions styled as ones for "conditional certification" as requests for authorization of notice to the potential FLSA class. *See e.g., Meyers v. Hertz Corp.*, 624 F.3d 537, 555, n. 10 (2d Cir 2010).

Typically, "a federal court authorizes notice of the litigation to [individuals] after making a preliminary determination that the [individuals] who will be receiving the notice are similarly situated to the plaintiff." *Amendola,* 558 F.Supp.2d at 467 (citing *Lynch v. United Servs. Auto Assn'n,* 491 F.Supp.2d 357.368 (S.D.N.Y.2007)).  The named plaintiffs bear the burden of

3

showing that they are similarly situated to the proposed plaintiffs. *Flores v. Osaka Health Spa,* 2006 WL 695675 (S.D.N.Y. Mar. 16, 2006). Although, Plaintiffs' burden "... may require only a 'modest factual showing' (internal quotation marks and citations omitted), . . . the burden is not non-existent and the factual showing, even if modest, must still be based on some substance". *Guillen,* 750 F.Supp.2d 469 at 480 (S.D.N.Y. 2010), *accord, Morales v. Plantworks*, 2006 WL 278154 (S.D.N.Y. Feb. 1, 2006). *See also Jenkins v. TJX Companies Inc.,* 853 F.Supp.2d 317, 323 (E.D.N.Y. 2012).

**B.    Plaintiffs Have Failed To Establish That They Were Similarly Situated To The Potential Opt-In Plaintiffs.**

The Court should deny Plaintiffs' request because Plaintiffs have not met their minimal burden of demonstrating that they are similarly situated to the potential class members. In deciding whether a plaintiff is similarly situated to other potential class members, courts will evaluate several factors. Specifically, courts will consider whether the plaintiff: (1) performed the same general tasks as those in the proposed class; (2) have identified other individuals by name; and (3) have personal knowledge of a policy denying other individuals overtime compensation. *See e.g.*, *Pineda v. Jim-Mar Consultants, Inc.,* 2010 WL 3853027 (E.D.N.Y., Sept. 27, 2010) (granting court-authorized notice, in part, because plaintiffs submitted the names of thirty-two other individuals whom plaintiffs alleged were similarly situated).

Some factors weigh against granting court-authorized notice. For example, courts reject motions based on an inadequate and uncorroborated proof including a general lack of details as to the work performed, conclusory allegations, and hearsay statements*. See e.g., Guillen,* 2010 WL4627851 at *7-9 (S.D.N.Y., Nov. 16, 2010) (finding that plaintiffs' presentation was "extremely thin" because the evidence only reflected the experiences of five individuals from nine of defendants 820 stores and there was a general lack of information in plaintiffs' identical

affidavits as to the work performed).  *See also Levinson v. Primedia, Inc.*, 2003 WL 22533428, at *2 (S.D.N.Y. Nov. 6, 2003) ("Even if the assertion, found in each of plaintiffs' affidavits submitted to the court, that 'All guides worked under the same contracts,' were true, this would not constitute a showing that defendants' compensation structure violated the law").

i.      *Plaintiffs' Affidavits Lack Specific Information About Work Performed.*

Here, the same "extremely thin" submissions are relied upon by Plaintiffs.  Plaintiffs are requesting to send court-authorized notice to all individuals who contracted with SDS in New York and New Jersey but have failed to identify or even describe any other individual who is associated with SDS other than individuals with a familial relationship.   Absent from Plaintiffs' presentation is any evidence whatsoever regarding any other independent contractor with whom they allegedly had a conversation with at SDS.  Further, there certainly is no evidence that would support and lead to even a supposition that there is a commonality amongst independent contractor.  Plaintiffs' declarations are also devoid of any details regarding the work performed by those independent contractors with whom they had a conversation within the limited geographic areas of Farmingdale and Elizabeth or even the individuals identified as their sons.

Plaintiffs cannot attest to the work experience of other independent contractors who performed pharmaceutical delivery services outside of the Farmingdale, New York facility. If this matter is conditionally certified, the scope of the class should be limited only to individuals from the Farmingdale, New York facility because these are the only contractors, who assuming, arguendo, may satisfy the "similarly situated" standard.   *Urresta v. MBJ Cafeteria Corp.,* No. 10-cv-8277, p. 15 (S.D.N.Y. Oct. 17, 2011) (J. Sweet) (denying conditional certification to proposed class of individuals outside the purview of plaintiff's knowledge as "plaintiffs, even under the relatively lenient evidentiary standard, have not made the modest factual showing that they and

the potential opt-in plaintiffs that these other colleges were victims of a common policy or plan").

ii.     *Plaintiffs Are Not Representative of the Proposed Collective*

Plaintiffs rely solely on conclusory allegations and inadmissible hearsay as support for their application that the Court grant their request for conditional certification of the collective. However, the basis provided by Plaintiffs is simply insufficient to establish that potential plaintiffs were supposed victims of a common policy or plan at all locations throughout New York and New Jersey. As such, Plaintiffs' request must be denied.

It is well established that, while plaintiffs may rely upon pleadings in support of a motion for conditional certification, the pleadings must be supplemented by other evidence, such as affidavits. *See Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F.Supp.2d 504, 509 (S.D.N.Y. 2010). Those supporting allegations must be specific, not conclusory, and inadmissible hearsay is not an adequate basis upon which to base a motion for conditional certification. *See, e.g., Barfield v. N.Y.C. Health & Hosps. Corp.,* 2005 WL 3098730, *1 (S.D.N.Y. Nov. 18, 2005) (denying plaintiff's motion for certification as a collective action as "plaintiff presents nothing but limited anecdotal hearsay to suggest that there is a widespread practice of referral nurses working in excess of 40 hours per week . . . and no evidence whatever that this is pursuant to a policy of either [defendant]."); *Lujan v. Cabana Mgmt., Inc.*, 2011 WL 317984, *7 (E.D.N.Y. Feb. 1, 2011); *Monger v. Cactus Salon & Spa's, LLC,* 2009 WL 1916386 (E.D.N.Y. July 6, 2009).

The repeated hearsay statements asserted by Plaintiffs do not show that they are similarly situated to any of potential plaintiffs. In fact, Plaintiffs, because they work by themselves and for themselves, have no true idea what other independent contractors do or the work and method they utilize to perform the work. It is Plaintiffs' burden to come forward with commonality, and even under the low standard set by this Court, Plaintiffs cannot identify what types of services other

owner operators perform.

In addition, here, Plaintiffs each provide affidavits in support of their application.  However, the November 18, 2021 affidavits are rife with conclusory statements and inadmissible hearsay, which are insufficient to support their request.  The vast majority of their sworn statements are qualified by phrases such as "to my knowledge" or "based upon my conversations".  As a matter of basic evidence law, these statements are inadmissible and cannot serve as support for Plaintiffs' request. *See Lujan v. Cabana Mgmt., Inc.,* 2011 WL 317984, *7 (E.D.N.Y. Feb. 1, 2011) (denying notice to potential plaintiffs in defendant's Florida restaurants because "Plaintiff proffers one affidavit from one [individual] who worked at one of the three Florida restaurants" and "[t]he only corroborating evidence before the Court consists of conclusory hearsay statements in two affidavits); *Monger v. Cactus Sal & Spa's, LLC,* 2009 WL 1916386 (E.D.N.Y. July 6, 2009) (finding that plaintiffs' evidence was insufficient to justify certification at other locations, reasoning that plaintiffs' only evidence that individuals at other locations are "similarly situated is that they 'believe' that all hair stylists and shampoo assistants are subject to the same policies.  They offer no basis for this belief; they name no individuals at other [locations] who are similarly situated; and they provide no documentary evidence that policies are the same at different [ ] locations.").  Likewise, Plaintiff Alulema's and Plaintiff Tacoaman's October 22, 2020 Affidavits do not provide any support for their argument that notice should be granted here. They do not even provide the conclusory and hearsay statements set forth in their more recent affidavits.

A sampling of these problematic statements from Plaintiffs' November 18, 2021 Affidavits are set forth below.

<u>Plaintiff Alulema's Conclusory and Inadmissible Hearsay Statements</u>

- "***Based upon my conversations with other delivery drivers*** who were based at the Elizabeth location any my observations of other drivers' work, I understand that those other SDS delivery drivers had the same basic job duties as me:  transporting SDS's merchandise to pharmaceutical products to pharmacies and other locations in New Jersey and New York. . . .".  (Alulema Affidavit, dated November 18, 2021, ¶7.) (emphasis added.)

- "***Based upon my conversations with other delivery drivers*** who were based at the Farmingdale location and my observations of other drivers' work, I understand that those other delivery drivers had the same basic job duties as me:  transporting SDS's merchandise of pharmaceutical products to pharmacies and other locations in New York.  . . .".  (Alulema Affidavit, dated November 18, 2021, ¶11.) (emphasis added.)

- "***To my knowledge***, SDS also had delivery drivers working for them who were based out of other facilities in New York.  . . .  I also recall reading that there was an SDS facility in the Bronx where other delivery drivers worked."  (Alulema Affidavit, dated November 18, 2021, ¶12.) (emphasis added.)

- I know that SDS also claimed that my fellow delivery drivers who worked making deliveries in New Jersey and New York were 'independent contracts' because, for example, my son Marcos was also called an 'independent contractor' by SDS."  (Alulema Affidavit, dated November 18, 2021, ¶14.)

- "There was also nothing 'independent' about the nature of the work my fellow delivery drivers in New Jersey and New York did.  They employed other delivery drivers like my son Marcos, including in the sense that they dictated the way in which he was to handle their goods, required him to obtain a specific type of vehicle according to their specifications and specific insurance coverage, set his delivery routes, determined the order and timing of his stops, determined per-stop compensation, and controlled his work and had the power to control his work in various other ways."  (Alulema Affidavit, dated November 18, 2021, ¶16.)

- "***To my knowledge***, the other SDS delivery drivers were also not paid an hourly wage.  One reason I know this is because my son Marcos  was also not paid an hourly wage."  (Alulema Affidavit, dated November 18, 2021, ¶18.) (emphasis added.)

- "***To my knowledge***, many of the other delivery drivers for SDS also worked more than forty hours per week.  I know because, for example, my son Marcos sometimes worked more than forty hours per week."  (Alulema Affidavit, dated November 18, 2021, ¶20.) (emphasis added.)

- "***To my knowledge***, the other delivery drivers for SDS were not paid an overtime premium for any of the hours they worked over forty in a workweek.  One reason I know this is because my son Marcos was not paid an overtime premium for any of the hours he worked over forty in a workweek." (Alulema Affidavit, dated November 18, 2021, ¶22.) (emphasis added.)

- "***To my knowledge***, the other SDS delivery drivers were also generally paid on a per-stop basis.  One reason I know this is because my son Marcos was also paid on a per-stop basis." (Alulema Affidavit, dated November 18, 2021, ¶24.) (emphasis added.)

- "***To my knowledge***, SDS also regularly took deductions out of the checks of other delivery drivers in a  similar fashion as they did from me.  One reason I know this is because my son Marcos also regularly had such deductions taken out of his pay." (Alulema Affidavit, dated November 18, 2021, ¶26.) (emphasis added.)

- "***To my knowledge***, SDS also required other delivery drivers to pay out of pocket for all the necessary expenses for doing their jobs, including to obtain a specific type of vehicle and minimum level of insurance coverage, as well as the regular costs of gas, tolls, and parking tickets, and did not reimburse them for those expenses.  One reason I know this is because my son Marcos was also required to pay out of pocket for such expenses, and was not reimbursed for those expenses." (Alulema Affidavit, dated November 18, 2021, ¶34.) (emphasis added.)

- "Other delivery drivers' pay for overtime hours was also reduced below the legally required overtime rate in a similar fashion as I have described with respect to my pay.  One reason I know this is because my son Marcos also similarly had his pay for overtime hours reduced below the legally required overtime rate by Defendants' pay scheme." (Alulema Affidavit, dated November 18, 2021, ¶39.)

- "However, ***to my knowledge***, SDS is still operating, and still employs other delivery drivers to make deliveries of pharmaceutical products throughout New York and New Jersey." (Alulema Affidavit, dated November 18, 2021, ¶43.) (emphasis added.)

<u>Plaintiff Tacoaman's Conclusory and Inadmissible Hearsay Statements</u>

- "***Based upon my conversations with other delivery drivers*** and my observations of other drivers' work, I understand that those other SDS delivery drivers had the same basic job duties as me:  transporting SDS's merchandise to pharmaceutical products to pharmacies and other locations in New Jersey and New York. . . .". (Tacoaman Affidavit, dated November 18, 2021, ¶7.) (emphasis added.)

- "***Based upon my conversations with other delivery drivers*** and my observations of other drivers' work, I understand that those other SDS delivery drivers had the same basic job duties as me:  transporting SDS's merchandise to pharmaceutical products

9

to pharmacies and other locations in New York. . . .". (Tacoaman Affidavit, dated November 18, 2021, ¶10.) (emphasis added.)

- "***To my knowledge***, SDS also had delivery drivers working for them who were based out of other facilities in New York." (Tacoaman Affidavit, dated November 18, 2021, ¶11.) (emphasis added.)

- "I know that SDS also claimed that my fellow delivery drivers who worked making deliveries in New Jersey and New York were 'independent contractors' because, for example, my son Darwin Ronquillo . . . who also worked for SDS, was also called an 'independent contractor' by SDS." (Tacoaman Affidavit, dated November 18, 2021, ¶13.)

- "There was also nothing 'independent' about the nature of the work my fellow delivery drivers in New Jersey and New York did.  They employed other delivery drivers like my son Darwin, including in the sense that they dictated the way in which he was to handle their goods, required him to obtain a specific type of vehicle according to their specifications and specific insurance coverage, set his delivery routes, determined the order and timing of his stops, determined per-stop compensation, and controlled his work and had the power to control his work in various other ways." (Tacoaman Affidavit, dated November 18, 2021, ¶15.)

- "***To my knowledge***, the other SDS delivery drivers were also not paid an hourly wage.  One reason I know this is because my son Darwin  was also not paid an hourly wage." (Tacoaman Affidavit, dated November 18, 2021, ¶17.) (emphasis added.)

- "***To my knowledge***, many of the other delivery drivers for SDS also worked more than forty hours per week.  I know because, for example, my son Darwin sometimes worked more than forty hours per week." (Tacoaman Affidavit, dated November 18, 2021, ¶19.) (emphasis added.)

- "***To my knowledge***, the other delivery drivers for SDS were not paid an overtime premium for any of the hours they worked over forty in a workweek.  One reason I know this is because my son Darwin was not paid an overtime premium for any of the hours he worked over forty in a workweek." (Tacoaman Affidavit, dated November 18, 2021, ¶21.) (emphasis added.)

- "***To my knowledge***, the other SDS delivery drivers were also generally paid on a per-stop basis.  One reason I know this is because my son Darwin was also paid on a per-stop basis." (Tacoaman Affidavit, dated November 18, 2021, ¶23.) (emphasis added.)

- "***To my knowledge***, Defendants also regularly took deductions out of the checks of other delivery drivers in a  similar fashion as they did from me.  One reason I know

this is because my son Darwin also regularly had such deductions taken out of his pay." (Tacoaman Affidavit, dated November 18, 2021, ¶25.) (emphasis added.)

- "***To my knowledge***, Defendants also required other delivery drivers to pay out of pocket for all the necessary expenses for doing their jobs, including to obtain a specific type of vehicle and minimum level of insurance coverage, as well as the regular costs of gas, tolls, and parking tickets, and did not reimburse them for those expenses. One reason I know this is because my son Darwin was also required to pay out of pocket for such expenses, and was not reimbursed for those expenses." (Tacoaman Affidavit, dated November 18, 2021, ¶34.) (emphasis added.)

- "Other delivery drivers' pay for overtime hours was also reduced below the legally required overtime rate in a similar fashion as I have described with respect to my pay. One reason I know this is because my son Darwin also similarly had his pay for overtime hours reduced below the legally required overtime rate by Defendants' pay scheme." (Tacoaman Affidavit, dated November 18, 2021, ¶39.)

- "However, ***to my knowledge***, SDS is still operating, and still employs other delivery drivers to make deliveries of pharmaceutical products throughout New York and New Jersey." (Tacoaman Affidavit, dated November 18, 2021, ¶43.) (emphasis added.)

Without more, Plaintiffs' cannot sustain their burden of establishing that a common policy or plan existed at the Farmingdale or Elizabeth locations let alone all depots in New Jersey and New York, which is necessary in order for the Court to grant their application. Although Plaintiffs assert in their affidavits that they themselves delivered out of Farmingdale, New York, Plaintiffs provide nothing – other than their "belief" – in support of the contention that a common policy or plan existed such as to warrant notice. As stated in the *Monger* case, in which the court denied conditional certification where plaintiffs failed to put forth competent evidence beyond their own beliefs about whether others were subject to the same policies:

> Plaintiffs' only evidence that [individuals at other locations] are similarly situated is that they "believe" that all hair sytlists and shampoo assistants are subject to the same polices. They offer no basis for their belief; they name no individuals at other salons who are similarly situated; and they provide no documentary evidence that policies are the same at different  . . . locations.

*Monger v. Cactus Sal & Spa's, LLC,* 2009 WL 1916386 (E.D.N.Y. July 6, 2009)

While Plaintiffs do mention each of their sons (Plaintiff Alulema's son, Marcos Paucar, and Plaintiff Tacoaman's son, Darwin Ronquillo) in their November 18, 2021 affidavits, their sons' did not provide services in New Jersey, and moreover, Plaintiffs' statements simply remain insufficient. These statements provide little to no detail and also constitute inadmissible hearsay, with the basis for the statements being what Plaintiffs heard from or were otherwise informed by their sons. The conclusory and hearsay statements couched in Plaintiffs' November 18, 2021 affidavits simply do not amount to enough to satisfy their burden.

In sum, Plaintiffs have not set forth sufficient, competent evidence to warrant the relief requested – namely that notice be ordered as to every location throughout New York and New Jersey. Notwithstanding, to the extent the Court determines that notice is warranted, its scope must be limited to those individuals who provided services out of the Farmingdale, New York location, which is the location out of which Plaintiffs themselves assert they provided services.

## POINT II
## EQUITABLE TOLLING IS NOT APPROPRIATE

An action under the FLSA has a two-year statute of limitations, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C.A. § 255(a). In a collective action suit such as this, the statute of limitations period continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form opting into the suit. *See Contrera v. Langer,* 278 F. Supp. 3d 702 (S.D.N.Y. 2017).

While signed consents do not relate back to the original filing date of the complaint, the court may apply equitable tolling "as a matter of fairness where a [party] has been prevented in some extraordinary way from exercising his rights." *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir.1996). An extraordinary circumstance might exist if an individual shows that it would have

been impossible for a reasonably prudent person to learn of the cause of action, *see Miller v. lnt'l Tel. & Tel. Corp.,* 755 F.2d 20, 24 (2d Cir.1985), or if the defendant concealed from the plaintiff the existence of the cause of action. *Gustafeon v. Bell Atl. Corp.,* 171 F.Supp.2d 311, 323 (S.D.N.Y.2001) (explaining that statute of limitations begins to run when plaintiff either acquires actual knowledge of facts comprising his claim or should have acquired such knowledge through reasonable diligence).

Here, Plaintiffs' argument as to why the statute of limitations should be tolled for potential collective members is without merit as set forth below.  Notwithstanding, at best, Plaintiff s request is premature at this stage.  Here, if the Court permits notice to be effectuated upon a large class of potential plaintiffs, the determination as to the timeliness of each future potential plaintiff s action is better reserved for a future proceeding. *See Whitehorn v. Wolfgang's Steakhouse, Inc.,* 767 F.Supp.2d 445 (S.D.N.Y. 2011), (citing *Thompson v. World Alliance Fin. Corp.,* No. 08 Civ. 4951 (AKT), 2010 WL 3394188, at *7 (E.D.N.Y. Aug. 20, 2010) (permitting plaintiffs to notify potential members employed within three years of filing complaint, but declining to rule on equitable tolling until later date)).

A.      **Plaintiffs' Request For Equitable Tolling Must Be Denied.**

Plaintiffs' request for equitable tolling must be denied.  A plaintiff "seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Perez Perez v. Escobar Construction, Inc.,* ___ F.Supp.3d ___, 2021 WL 2012300, *9 (S.D.N.Y. May 20, 2021) (internal citations and quotations omitted) (denying plaintiffs' request for equitable tolling presented in motion for conditional certification of collective action).   As Plaintiffs acknowledge, equitable tolling is a drastic remedy, applicable only in rare and exceptional circumstances. *See A.Q.C. ex*

*rel. Castillo v. U.S.,* 656 F.3d 135, 144 (2d Cir. 2011).  The second prong of the equitable tolling

test "is met only where the circumstances that caused a litigant's delay are both extraordinary *and*

beyond its control." *Menominee Indian Tribe of Wis. v. U.S.,* 136 S.Ct. 750, 756 (2016) (emphasis

in original).

Equitable tolling also requires that a court look into the facts surrounding the circumstances

regarding a potential plaintiff's failure to opt into a collective at an earlier point in time.  *See Perez*

*Perez*, 2021 WL 2012300 at *9.  Stated differently, a court must examine the individualized facts

for each person seeking the benefit of this rare and exceptional remedy.   "When a movant does

not provide any grounds showing equitable tolling may be appropriate, it will not be

applied." *Mark v. Gawker Media, LLC*, 2014 WL 5557489, *2 (S.D.N.Y. Nov. 3, 2014).

i.    *Plaintiffs Have Not Met Their Burden As To Themselves.*

Plaintiffs have not met their burden to have equitable tolling applied to their own

claims.  As to the first prong, Plaintiffs have not met their burden and shown that they have been

diligent.  Plaintiffs could have made an application at any point to lift the stay, but they did

not.  Nothing stood in their way of doing so.   Plaintiffs were well aware of the lawsuit long before

the stay, having opted into the action on March 22, 2016 (Plaintiff Tacoaman) and April 5, 2016

(Plaintiff Alulema).  At any point, Plaintiffs could have decided to obtain their own counsel – just

like they did four years later in August 2020.  However, Plaintiffs chose to wait.  They chose to

do nothing for four years, until October 2020, when they – ***four years after the stay's***

***implementation*** -- finally decided to make a request to lift the stay in this case.  Nothing precluded

them from doing so earlier.  Again, they filed their opt in consents in 2016, just prior to the stay's

implementation on September 22, 2016.

Regarding the second prong, Plaintiffs fare no better.  Again, they rely on the stay as their

supposed rationale for ignoring this matter for four years. They also claim that they did not previously move forward with the litigation because of the high costs of arbitration. However, Plaintiffs ignore the fact that they were capable of – and did – obtain their own counsel, who, four years after the stay's implementation, moved to have the stay lifted.

In addition, Plaintiffs ignore the fact that they could have sought to have arbitration fees waived, which would have eliminated the "high arbitration fees" that they claim stood as an impediment to previously pursing their claims in arbitration. To be sure, in their October 22, 2020 affidavits, Plaintiffs set forth the exact facts relevant to the fee waiver issue, noting with detailed specificity why and how their and their spouse's incomes are such that paying arbitration fees would be too financially burdensome. Notwithstanding, Plaintiffs failed to request arbitration and submit similar affidavits regarding fees until over four years after they each decided to opt into this lawsuit. As such, Plaintiffs do not satisfy their burden and their request for equitable tolling must be denied.

ii.     *Plaintiffs Have Not, And Cannot, Meet The Burden As To Potential Plaintiffs.*

Plaintiffs have not, and cannot, meet their burden regarding equitable tolling as to potential plaintiffs. Equitable tolling requires that a court look into the facts surrounding the circumstances regarding an individual plaintiff's failure to opt into a collective at an earlier point in time. *See Perez Perez*, 2021 WL 2012300 at *9. Plaintiffs cannot know – nor do they present individualized facts – that would support a request for equitable tolling for these other individuals. "When a movant does not provide any grounds showing equitable tolling may be appropriate, it will not be applied." *Mark v. Gawker Media, LLC*, 2014 WL 5557489, *2 (S.D.N.Y. Nov. 3, 2014). Without this necessary basis, Plaintiffs' request that equitable tolling be applied to any potential plaintiff must be denied.

**POINT III**
**IF ANY DISCOVERY IS ORDERED, IT SHOULD BE LIMITED TO THOSE SDS INDEPENDENT CONTRACTORS WHO PROVIDED SERVICES AT THE FARMINGDALE, NEW YORK FACILITY**

As fully discussed above, Defendant respectfully submits that conditional certification is not appropriate and Plaintiffs' request to do so should be denied.  In addition, and for the same reasons, Plaintiffs should not be entitled to any discovery from Defendant regarding other independent contractors.  However, to the extent that this Court grants some discovery to Plaintiffs, it should be limited to only those independent contractors who contracted with SDS and performed services out of the Farmingdale facility.  And, as stated, "the mere classification  of a group of [individuals]-even a large or nationwide  group--as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for §  216(b) purposes." *Jenkins v. TJX Companies Inc.,* 853 F.Supp.2d  317, 323 (E.D.N.Y. 2012).

**POINT IV**
**IF ANY NOTICE IS APPROPRIATE, IT SHOULD BE FAIR AND ACCURATE**

As fully discussed above, Defendants respectfully submit that court-authorized notice to potential class members is not appropriate and Plaintiffs' request to do so should be denied. However, if the Court grants Plaintiffs' request, it should not permit distribution of Plaintiffs' proposed notice. (Pltfs. Proposed Notice.) Rather, the Court should order the parties to meet and confer to devise a fair and accurate notice agreeable to all parties. See *Cohen v. Gerson Lehrman Group, Inc.,* 686 F Supp. 2d 317, 331-332 (S.D.N.Y. 1020) (granting notice and directing parties to "confer and make a good-faith effort to agree to the test of the proposed notice.").

Plaintiffs' proposal is not fair and accurate for several reasons, including the following:

16

▪ The notice should not go to all current and former SDS independent contractors in New Jersey and New York. It is not limited in scope to those independent contractors who are similarly situated. The scope should be further limited to only those independent contractors who contracted with SDS to provide services at the Farmingdale, NY facility.

▪ The language that "Drivers" allege, among other things, that they were improperly classified by SDS as independent contractors suggests that there are more than the named plaintiffs.

• The language that "Drivers" bring claims under the FLSA and under New York State and New Jersey law for failure to pay overtime and illegal deductions, as well as any descriptions of the claims for deductions and expenses, is completely inappropriate since Plaintiffs' motion, here, is limited to the FLSA overtime claims only. The constant repeating of the claims in the About the Lawsuit, What this Lawsuit is About, Why is this Lawsuit a Collective Action, What are the Plaintiffs asking For, Can I join this Lawsuit, and the Consent itself, is prejudicial. [Expand]

• Given that this notice only pertains to the FLSA portion of Plaintiffs' claims and that Plaintiff has not made a showing of a willful violation rendering the three-year statute of limitations set forth in 29 U.S.C. § 255(a), time period should be limited to two years.

• The reference to Judge Ramos "overseeing this collective action" gives a misimpression that the litigation itself is Court-ordered.

• Likewise a statement that the Court has agreed that "you are someone similarly situated to Plaintiff so that you may decide whether or not to join the case," is completely inappropriate as this is a motion for conditional certification and the Court has made no such finding. Indeed, Plaintiffs' notice does not explain the fact that the Court must still make a determination that the Named Plaintiff and anyone who chooses to join the FLSA action are, in fact, similarly situated to one another.

• Plaintiffs' statement that individuals delivered for SDS is inappropriate and that SDS "required" independent contractors to pay some expenses and SDS took deductions is inappropriate. . Deliveries were made for customers who contracted with SDS.

• No warning regarding termination or retaliation is necessary when there is no evidence, or even allegation of retaliation. As written, it implies that there is a need for such protection. And, in particular, the placement of it in bold and larger font size along with a lengthy explanation of the illegality of such retaliation is excessive.

• Stating that individuals can get free help is inappropriate.

- Recipients should also be advised that they may not opt in to the lawsuit if they fail to return the consent form to be filed with the Court prior to the deadline.

- Individuals should be advised of their right to retain counsel of their own choosing. However by adding subject to any defenses that might be asserted seeks to dissuade putative opt-ins from obtaining separate counsel, by implying that they would be subject to defenses that may be asserted if they use Plaintiffs' counsel.

- "Why [sic] happens if I do nothing at all" section should be revised in its entirety in favor of a non-prejudicial and non-coercive instruction to putative opt-ins. For instance, the sentence "You will not be entitled to share any amounts recovered by the Plaintiff as part of this lawsuit," should be removed. It makes it sound that Plaintiffs will recover money. It is unnecessary as the prior statement already says that "[i]f you choose not to join this lawsuit, you will not be directly affected by any ruling, judgment, or settlement in this case, whether favorable or unfavorable." Moreover, it should be made clear that if a person does not wish to be part of the lawsuit, they do not need to do anything.

- The Notice should also include the names of SDS' counsel.

In sum, Plaintiffs' proposed notice is not appropriate. If the Court orders notice of any kind, Defendants respectfully request that the Court direct the parties to submit a mutually agreeable notice within thirty days of the Court's Order, subject to the Court's approval. If the parties cannot agree, they should submit their separate proposals for the Court's decision.

## CONCLUSION

Plaintiffs have failed to meet their burden to show that they are similarly situated to members of the potential class and that a sufficient number of those individuals actually wish to participate in this action. For the reasons set forth above, Defendants respectfully request that Plaintiffs' motion should be denied and that the parties should proceed with their litigation of Plaintiffs' individual claims.

Dated: December 13, 2021                    Respectfully submitted,

                                            JASINSKI, P.C.

                                            /s *David F. Jasinski*
                                            David F. Jasinski, Esq.
                                            Sixty Park Place, 8th Floor
                                            Newark, New Jersey 07102
                                            (Tel) 973-824-9700
                                            (Fax) 973-824-6061
                                            djasinski@jplawfirm.com
                                            *Attorneys for Defendants*