# EXHIBIT B

VENDOR FEIN No._____          LOCATION  SDS-RX - Farmingdale, NY

REDACTED

### INDEPENDENT VENDOR AGREEMENT FOR TRANSPORTATION SERVICES

THIS INDEPENDENT VENDOR AGREEMENT FOR TRANSPORTATION SERVICES ("AGREEMENT") entered into as of

the  21   day of  July            20 14  , by and between  MARIA TACOAMAN_____

_____its_____principal_____office_____located_____at

_____(the "Vendor") and Strategic

REDACTED

Delivery Solutions, LLC, a New York limited liability company ("SDS").

### WITNESSETH:

WHEREAS, SDS is a duly licensed freight forwarder and freight broker pursuant to operating authorities issued by the United States Department of Transportation ("DOT"); and

WHEREAS, SDS is engaged in the business of arranging for the provision of local delivery services for its customers ("Customer(s)") with respect to pharmaceutical products and general merchandise, among other things (hereinafter referred to as "Packages" and/or "Package"), throughout the State(s) of Dispatch

WHEREAS, in connection with the operation of such business, SDS has the need, from time to time, for the services of independent contractors to pickup, transport and deliver Packages for SDS's Customers and

WHEREAS, Vendor owns  and  operates a business that provides transportation services and owns, leases, and/or otherwise has access to a motor vehicle and other equipment and accessories as are necessary to conduct such business; and

WHEREAS, Vendor is engaged in providing transportation services and desires to receive offers to provide transportation services for SDS's Customers, as an independent contractor, which offers Vendor shall be free to accept or decline.

NOW, THEREFORE, it is mutually agreed between the parties as follows:

1.     Vendor Relationship. The parties agree and acknowledge that the relationship of Vendor with SDS hereunder is that of an independent contractor and any and all services provided by Vendor hereunder shall be provided in such capacity. Vendor shall in no way and for no purpose hereunder be considered an agent, servant, employee, partner or co-venturer of SDS or be deemed to hold any relationship with SDS other than that of an independent contractor. Neither Vendor nor Vendor's officers, directors, agents, subcontractors, substitute drivers, employees, helpers or servants ("Vendor Support Personnel") are to be considered employees of SDS at any time, under any circumstances or for any purpose. Vendor and SDS acknowledge and agree that SDS shall have no right to direct or control the manner, means, details or methods by which Vendor provides its services hereunder.

Vendor shall be solely responsible for the direction and control of its Vendor Support Personnel, including selecting, hiring, firing, supervising, directing, servicing accepted pickups and deliveries, making payments for services rendered, withholding and paying applicable state and federal payroll taxes, providing workers' compensation insurance, paying workers' compensation and unemployment insurance premiums, setting wages, hours of work .and performance standards, regulatory compliance, assigning routes of travel, providing all necessary tools or assistance to safely accomplish the work, working conditions and handling any grievances with such Vendor Support Personnel. SDS shall not request Vendor to discontinue the use of Vendor Support Personnel utilized by Vendor to perform its obligations under this Agreement. This shall not prevent SDS from asserting that the actions of Vendor Support Personnel constitute a Material Breach by Vendor, as defined in Section 16 hereto.

2.     Term of Agreement. This Agreement shall commence as of the  21    day of  July           , 20 14  . The Term of this Agreement shall automatically extend annually or until the parties have entered into another written agreement. Notwithstanding anything to the contrary set forth above, this Agreement may be terminated earlier by either party in accordance with Section 16 of this Agreement.

3.     Vendor's Control of Services. During the Term of this Agreement, SDS may, from time to time, in its sole discretion, based on Customer requirements, provide Vendor with offers of transportation services by notifying Vendor of the place and time of pick-up and delivery, as determined by the Customer, together with any completion schedules and specifications being

requested by the Customer. Vendor shall have the right to decline or accept any such offer. Vendor, upon acceptance of an offer, agrees to provide the transportation services and, in connection therewith, *Vendor* shall be solely responsible for selecting the route(s) to be taken. All other matters relating to the pick-up, transport and/or delivery of Packages, including, but not limited to, the priority which may be given to the pick-up and/or delivery of any particular item in relation to any other item which may be picked up and/or delivered, shall be in the control of and at the discretion of Vendor; provided, however, that Vendor shall conform with any time constraints and special conditions required by SDS's Customers of which it is specifically advised at the time Vendor accepts the offer.

4.     Availability of Vendor.  Vendor shall determine, in its sole discretion whether and when to provide services to SDS. Vendor is not on-call for SDS and is not be eligible for any on-call payments from SDS. When declining an offer to provide transportation services, Vendor shall not be required to provide any justification for Vendor's refusal. Vendor shall not be penalized for declining an offer from SDS. Vendor, as an independent contractor, is understood by SDS to offer its services equally to other companies and to the public generally, in a manner consistent with the other provisions of this Agreement. With the exception of exclusive use arrangements that may be agreed to by Vendor in its discretion, Vendor may perform concurrent delivery services for companies other than SDS and commingle cargo to the extent allowed by law, except where customer specifically prohibits such arrangements. Notwithstanding the foregoing, Vendor agrees that the DOT operating authority that may apply when providing transportation services for SDS's Customers will not apply in any manner to any other operations or services provided by Vendor.

5.     Vendor's Compensation and Payment.
(a)     Rate of Settlement.  SDS agrees to pay, and Vendor agrees to accept, as full and complete compensation settlement for each delivery made by Vendor pursuant to this Agreement a mutually agreed upon sum of money which has been negotiated and shall be computed as provided for in the bid submitted by Vendor as set forth in Schedule A attached hereto and incorporated herein (such compensation shall hereinafter be referred to as "Settlement). The term "Net Revenue" as used in Schedule A of this Agreement shall mean revenue less sales/cash discounts, credits (billing errors/delivery failures, etc) and bad debt. SDS and Vendor shall each have the right to request changes to the provisions of Schedule A. The provisions of Schedule A may only be modified by written agreement signed by Vendor and SDS. SDS will not be liable to Vendor for any settlement or loss associated with suspension of services due to acts of God or other events beyond the control of SDS, including, but not limited to, war, civil disturbance, acts of terrorism, acts or demands of any government or governmental agency, labor disturbances, fires, floods or other casualty, severe weather, or *Vendor* suspension or termination of service. The determination of when and how often SDS may provide Vendor with offers of transportation services hereunder shall be at the sole discretion of SDS and nothing contained herein shall constitute a guarantee to Vendor that SDS will make any such offers. Vendor understands and agrees that from time to time circumstances such as traffic or shipment delays, adverse weather, and other potentially cost increasing circumstances will occur and Vendor will not be guaranteed any additional payment from SDS for such occurrences. Vendor shall be free to request additional compensation due to extenuating circumstances, and Vendor and SDS may negotiate for additional compensation subject to mutual agreement. Vendor hereby acknowledges that financial gain or loss may be recognized by Vendor while providing transportation services under this Agreement. Notwithstanding anything to the contrary in this Agreement, SDS makes no promises or representations whatsoever as to the amount of business Vendor will be offered at any time under this Agreement.

(b)     Payment.  Vendor shall provide SDS with completed manifests, proofs of delivery, bills of lading, and/or weekly invoices detailing the applicable sums Vendor believes are due under this Agreement. Vendor agrees that payments may be made on a weekly basis by a third party administrator of SDS pursuant to a separate agreement between Vendor and such third party administrator. Vendor's payments shall be reconciled by SDS on a weekly basis and paid within two (2) weeks following the completion of Vendor's services ("Settlement Payment"). The Settlement Payment contains an itemized listing of all deductions.

(c)     Documentation.  It is the responsibility of Vendor to provide completed proofs of delivery, manifests, or bills of lading detailing items such as addresses and legible signatures as proof that pick-up and/or deliveries have been completed. Vendor shall also be responsible for the expense of generating proofs of delivery, manifests or bills of lading and Vendor may purchase same from any source. Alternatively, forms may be made available by SDS for a nominal amount to be negotiated with Vendor. SDS reserves the right to refuse payment for services if Vendor does not submit completed manifest documentation, bills of lading and/or proofs of delivery.

(d)     Settlement Disputes.  SDS and Vendor agree that each Settlement Payment by SDS to Vendor under this Agreement shall be considered to be proper and accurate unless written notice disputing the amount of such Settlement Payment is provided by Vendor to SDS within fourteen (14) days of Vendor's receipt of such Settlement Payment. In the absence of such timely notice by Vendor, the Settlement Payment shall be conclusively presumed to be correct.

(e)     Final Settlement.  Vendor agrees that SDS shall have the right to withhold its final Settlement Payment under this Agreement for a maximum period of thirty (30) days in order to allow SDS sufficient time to account for, calculate and provide a complete reconciliation of the amount of Vendor's final settlement after making any and all deductions or offsets allowed under the

SDS Rx TC Agreement_v01.00

terms of this Agreement.

6. Fringe Benefits.
    (a) Vendor agrees and acknowledges that neither it nor its Vendor Support Personnel shall (i) have the status of an employee of SDS or (ii) participate in SDS's employee benefit plans or group insurance plans or programs including, but not limited to, salary, bonus or incentive plans, stock options or purchase plans, medical or dental plans, or plans pertaining to retirement, vacation, personal time off, deferred savings, disability, (hereinafter collectively referred to as "Fringe Benefits").
    (b) Vendor hereby agrees to indemnify, hold harmless and defend SDS, its parent, subsidiaries, affiliates, assignees, and their employees. officers, directors, equity holders, members, managers, and Board of Managers against any claim, cost, penalty, loss or expense (including attorneys' fees) arising out of or relating to any claim, demand, or suit for Fringe Benefits by Vendor and/or Vendor Support Personnel.

7. Independently Owned Business.
    (a) Business Licenses and Operating Authorities. Vendor warrants and represents that it is an independently owned business entity duly operating under the business name as set forth above in accordance with the corporate and local laws of its state of residence and the Internal Revenue Service ("IRS") either as a corporation, partnership, limited liability company, unincorporated business association, d/b/a, or sole proprietorship and that it has obtained in accordance with IRS regulations the Federal Employer Identification Number ("FEIN#") set forth above. Vendor further warrants and represents that it has obtained and shall maintain at all times during the Term of this Agreement any and all motor carrier operating authorities, permits, or licenses of any nature required by the United States DOT and/or required under the laws of any jurisdiction in which Vendor operates.
    (b) Taxes. (a) The relationship of Vendor and/or Vendor Support Personnel with SDS is that of an independent contractor. It is fully understood by SDS and Vendor that neither federal, state, nor local income taxes nor payroll taxes of any kind, including, but not limited, to F.I.C.A. or F.U.T.A., will be withheld or paid by SDS on behalf of Vendor and Vendor Support Personnel. Vendor agrees on behalf of itself and any Vendor Support Personnel (i) to pay all self-employment and other applicable taxes and/or other payments, including, but not limited to, sales taxes, payroll taxes of any kind, income taxes, social security taxes, unemployment insurance, state disability insurance and estimates thereof, and all workers' compensation insurance payments as may be required under the laws, rules or regulations of any governmental agency having jurisdiction over Vendor and/or Vendor Support Personnel; (ii) to maintain sufficient records demonstrating that Vendor has satisfied its obligation to pay such taxes and other payments; and (iii) to withhold and pay all local, state and federal income taxes on behalf of all Vendor Support Personnel, to the extent required by law. Vendor acknowledges that the social security tax Vendor must pay is higher than the social security tax Vendor would pay if Vendor were an employee. Upon written request, Vendor shall provide SDS with documentation which evidences that such taxes required by law have been promptly paid, including but not limited to, cancelled checks, receipts or government forms. Vendor hereby agrees to indemnify and to hold harmless SDS, its parent, subsidiaries, affiliates, assignees, and their employees. officers, directors, equity holders, members, managers, and Board of Managers against any claim, cost, penalty, loss or expense (including attorneys' fees) arising out of or related to such taxes, costs or payments.
    (c) Cost of Vendor's Business. Vendor agrees that it is solely responsible for all the costs and expenses of its business arising out of or relating to the transportation services provided by Vendor under this Agreement including, but not limited to, costs for Vendor Support Personnel, vehicle costs, scanners, load moving and securing devices, costs of generating proofs of delivery, licenses, insurance coverage, vehicle maintenance and repair, uniforms (if required), Customer required signage for its vehicles, worker's compensation insurance or occupational accident insurance, cargo insurance, background checks and drug tests, as well as any other costs or expenses described in this Agreement and any and all taxes, fines, and assessments by any and all regulatory agencies, boards or municipalities. Vendor hereby indemnifies and agrees to hold harmless SDS and its officers, directors, equity holders, members, managers, and Board of Managers against any claim, cost, penalty, loss or expense (including attorneys' fees) arising out of or related to Vendor's nonpayment or underpayment of any such costs, expenses, taxes, fines, assessments or payments as well as penalties and interest thereon for Vendor or Vendor Support Personnel.
    (d) Unemployment Compensation. Vendor agrees that, as an independent contractor, the services Vendor shall provide pursuant to the Agreement are not covered by the unemployment compensation laws of any state, including, but not limited to, Georgia.
    (e) Indemnity. Vendor agrees to indemnify, defend, and hold SDS harmless from all claims arising out of or related to Vendor's representation to SDS that it was an independent contractor.

8. Vendor's Vehicle(s).
    (a) Vehicle - Vendor warrants that it shall provide and use for the performance of its services hereunder a lawfully registered and safe vehicle capable of meeting any safety standards maintained by SDS's Customers. Vendor shall, at Vendor's sole cost and expense, keep and maintain such vehicle(s) in good operating condition and working order and shall perform all preventive and corrective maintenance and repairs required to insure safe and efficient operation and the good appearance of the

**Vendor Agreement Master**          3

vehicle(s). Vendor shall be responsible for procuring and paying the cost of all expenses incurred in or incidental to the operation of such vehicle(s) including, but not limited to, gas, oil, tires, repairs, insurance, purchase of equipment, inspections, fees, permits, and storage, and will do all that is required in order for the vehicle(s) to meet the requirements of all applicable state, federal and local laws, rules and regulations. Vendor shall direct, in all respects, the operation and maintenance of the equipment used in performance of this Agreement, which direction includes, but is not limited to, selection of substitute drivers, helpers, places of repair, stopping, parking, replacement, maintenance, purchases of fuel, equipment, insurance, parts and accessories. Notwithstanding the terms of this provision, the undersigned parties agree that both parties shall benefit by adhering to certain recognized industry standards. Vendor agrees to meet any applicable Customer contractual requirements regarding drivers' qualifications. The parties mutually agree that observance of Customer requirements shall protect both parties from excessive insurance rates, cancellation of insurance coverage, and contractual breach.

(b) <u>Department of Transportation</u>. Vendor acknowledges that under certain DOT regulations and guidelines, Vendor may be operating pursuant to the authority granted SDS. Vendor agrees, whether operating pursuant to SDS's DOT authority or its own authority, to create, maintain and make available to SDS or any governmental agency having jurisdiction over Vendor, documents required for DOT compliance, including, but not limited to, driver qualification files, vehicle inspection reports, vehicle maintenance and repair reports, daily drivers logs, hours of service, and vehicle condition reports. Vendor grants SDS the right to periodically inspect Vendor's equipment for the sole purpose of observing compliance with such regulations and guidelines. Vendor also acknowledges that SDS under certain circumstances is required to verify the status of Vendor's equipment in order to comply with DOT regulations and guidelines. This in no way serves to diminish Vendor's control of its own equipment.

(c) Signage. Many of SDS's Customers have concerns regarding safety and allowing access to their workplace. To the extent required by those Customers Vendor chooses to service under this Agreement, Vendor shall obtain and pay the costs of all appropriate and Customer required signage for its vehicle(s). Vendor agrees that it has the sole responsibility and shall bear the cost and expense of painting, obtaining, affixing, and removing such signage. Upon termination of this Agreement, Vendor shall immediately remove and return any Customer required signage to SDS.

9. <u>Uniforms and Identification Badges</u>. Vendor agrees that while providing services pursuant to the Agreement, Vendor will maintain a professional appearance. Vendor may be offered transportation services for SDS's Customers who require that Vendor be easily identified for security purposes. Should Vendor accept an offer to provide such services, Vendor will be paid a mutually agreed upon advertising/marketing fee pursuant to an executed Advertising Display Agreement. Vendor may not use SDS's logos or any uniforms purchased through SDS other than for the purposes of providing services under this Agreement.

10. <u>Tools and Equipment</u>. Vendor agrees that it will provide all tools and equipment necessary for providing services under this Agreement. Vendor shall furnish and maintain, at its own cost and expense, shipment handling equipment, radios, cellular telephones, beepers, scanners, and any other type of equipment utilized by Vendor. Vendor shall provide a commercial scanner or other communication device compatible with SDS's proprietary technology to allow Vendor to handle and track shipments according to the Customer's package tracking requirements. Vendor will rent such equipment from SDS under the negotiated terms and conditions set forth in Schedule B attached hereto.

11. <u>Insurance.</u>
(a) Public Liability Insurance Notwithstanding SDS's obligation to maintain coverage for the protection of the public and not for purposes of contradiction but as additional insurance, Vendor, at its expense, shall carry and keep in full force and effect for the duration of this Agreement, Commercial Auto Liability insurance covering Bodily Injury and Property Damage, with a limit of liability not less than (i) $300,000 Combined Single Limit for vehicles with a gross manufacturer's vehicle weight of 26,000 pounds or less, (ii) $750,000 combined single limit for vehicles with a gross manufacturer's weight of 26,000 pounds or less operating under the Vendor's operating authority, and (iii) $1,000,000 Combined Single Limit for vehicles with a gross manufacturer's vehicle weight in excess of 26,000 pounds. Each such policy of insurance shall name SDS, parent, subsidiaries, affiliates, and their assignees, officers, directors, equity holders, members, and Board of Managers as Additional Insureds on such policy. If the scope of this Agreement involves more than one vehicle, coverage must apply to all other owned or hired and non-owned vehicles. Vendor agrees to provide SDS with a customary Certificate of Insurance as evidence of such insurance. Each such insurance policy obtained by Vendor shall require the insurer to provide SDS with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. Vendor agrees to immediately notify SDS of any changes in coverage, expiration, termination or cancellation of such insurance. All such insurance maintained by Vendor shall provide that insurance, as it applies to SDS, shall be primary and SDS's insurance shall be noncontributing notwithstanding any insurance SDS maintains.

(b)  <u>Workers' Compensation Insurance/Occupational Accident Insurance.</u> Vendor, at its own expense, agrees to keep in full force and effect during the Term of this Agreement either workers' compensation Insurance covering statutory benefits and employer's liability with a limit of liability of not less than $100,000 per accident, $500,000 policy limit, $100,000 per employee; or Occupational Accident Insurance ("OccAcc") with a $1,000,000 limit of liability.. Vendor agrees to provide SDS with a customary Certificate of Insurance as evidence of such insurance. Each insurance policy obtained by Vendor shall require the insurer to provide SDS with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. Vendor agrees to immediately notify SDS of any expiration, termination or cancellation of such insurance. Vendor agrees to assume the liability for the payment of any workers' compensation premiums, claims, and/or benefits arising out of the conduct of Vendor's business for Vendor or any Vendor Support Personnel, and to indemnify SDS, its parent, subsidiaries, affiliates, assignees and their officers, directors, equity holders, members, managers, and Board of Managers for any issues, disputes, or benefits associated with the same.

12.  <u>Vendor's Liability for</u> Packages.

(a)  Vendor, at its own expense, agrees to carry and keep in full force and effect for the duration of this Agreement, Motor Truck Cargo Liability Insurance in an amount not less than $10,000 per occurrence with a deductible not to exceed $100.00 per occurrence for the handling of general freight, $50,000 per occurrence with a deductible not to exceed $100.00 for the handling of pharmacy freight, and $250,000 per occurrence with a deductible not to exceed $100.00 for the handling of Wholesale Pharma freight, covering loss or damage to the Packages which are in or subject to the care, custody and control of Vendor. Vendor shall provide SDS with a customary Certificate of Insurance as evidence of such insurance and deductible. Each such insurance policy obtained by Vendor shall require the insurer to provide SDS with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. Vendor shall be liable to SDS for loss or damage to Packages shipped under this Agreement whether or not the loss is covered by the insurance. Packages picked up by Vendor shall be deemed to be in the care, custody, possession, and control of Vendor until the same shall have been delivered to, and accepted by, the designated consignee, recipient, or its authorized agent. In the event of damage, shortage, spillage, contamination or other loss to any Packages that occurs while in Vendor's care, custody, possession or control, Vendor shall notify the shipper and/or SDS of the damage or loss as soon as practicable after damage or loss occurs. It is Vendor's responsibility to complete accepted transportation services and make any corrections with respect to the Customer expectations. If it should become necessary for SDS to intervene due to Vendor's inability or refusal to complete services accepted by Vendor, SDS reserves the right, upon notice, to setoff unavoidable costs against any Settlement Payment due Vendor. Vendor agrees to cooperate with SDS and/or the shipper to resolve cargo claims/damages as quickly as possible and agrees that in the event SDS is held liable for any loss or damage to any Packages caused by Vendor's intentional or negligent acts or omissions, SDS shall have the right to recover such amount from Vendor. Should Vendor elect to participate in a Cargo Loss Waiver ("CLW") program, SDS's right of recovery for the loss or damage to the Packages shall be subject to the terms of the CLW program. Vendor reserves the right to dispute liability for damage or loss, and to pursue the claim through legal process after paying the total disputed amount.

(b)  Vendor may elect to participate in a CLW program (not available for retail cargo loss) rather than procure Motor Truck Cargo and/or Financial Cargo Liability insurance. Vendor agrees that failure to provide SDS with the customary Certificate of Insurance within seven (7) days of the signing of this Agreement shall be deemed an election by Vendor to participate in the CLW program. CLW is not insurance but a limitation of SDS's right to collect from Vendor for the loss or damage of Packages while in Vendor's custody. SDS agrees, pursuant to the CLW, to limit its recovery for damages/losses claimed by a Vendor, subject to the following terms and conditions:

1.  Vendor pays a negotiated CLW fee (not to exceed $18.00 per week), which fee may be deducted from Vendor's Settlement Payment.
2.  Loss/damage is not the result of Vendor's willful conduct or gross negligence.
3.  Vendor accepts liability for the first $500 of loss/damage to Packages, and agrees that this amount may be deducted from its Settlement Payment.

13.  <u>Indemnification.</u> Vendor agrees to indemnify, defend and hold harmless SDS and its parent, subsidiaries, affiliates, assignees, and their employees, officers, directors, equity holders, managers, members, and Board of Managers from and against any and all claims or suits for injury to or death of Vendor, its agents, representatives, Vendor Support Personnel, assistants, employees and/or subcontractors or loss of or damage to their property and from and against any and all other claims or suits for injury or death to person or loss of or damage to property of SDS or SDS's Customers, agents, members, employees or any third party, resulting from Vendor's breach of this Agreement or Vendor's intentional or negligent acts or omissions, and/or those of its agents, representatives, assistants, employees, Vendor Support Personnel, and/or subcontractors. SDS shall have the right to set off and deduct from any and all amounts owing from SDS to Vendor the full value of any damage, loss or liability incurred by SDS or any third party arising out of any negligent or intentional act or omission by Vendor or its agents, representatives, assistants, employees or subcontractors.

**Vendor Agreement Master**          5

14.   <u>Substance Abuse and Drivers Qualifications Policies.</u>  In order to comply with applicable DOT rules, regulations, guidelines, and Customer requirements, Vendor agrees that it and its Vendor Support Personnel, including, but not limited to, any substitute drivers and any person having access to Customer shipments or facilities, will comply with the Substance Abuse Policy and Drivers' Qualification Policy set forth in Schedule C attached hereto and incorporated herein.

15.   <u>Confidential Information/Non-Solicitation.</u>  In consideration of the parties' desire to establish a business relationship, and SDS's agreement to provide Vendor with confidential proprietary information acquired, or to be acquired or developed by and belonging to or relating to SDS or SDS's Customers or any of its subsidiaries including, but not limited to, the names and addresses of its Customers and suppliers; technology used; prices charged and paid and other information, data, and documents now existing or previously developed or acquired by SDS's Customers, and Vendor's recognition that the secrecy of such confidential information gives SDS a significant advantage in developing, marketing and maintaining SDS's Customer base. Vendor agrees that:

(a)   It will not directly cause, permit or aid in the disclosure to or use by any person, corporation, or entity of any confidential information, at any time, for whatever reasons, except as required by law with prior written consent by SDS;

(b)   That during the term of this Agreement and for a period of six (6) months thereafter, Vendor shall not either directly or indirectly either for itself or for any other person, firm, company or corporation, use such confidential proprietary information to solicit, divert, or take away any of SDS's Customers;

(c)   In the event of a breach or threatened breach by Vendor of any of these provisions, SDS shall be entitled to an injunction restraining Vendor from disclosing or using any such confidential proprietary information.  Nothing herein, however, shall be construed as prohibiting SDS from pursuing any other remedies available to it for such breach or threatened breach including, but not limited to, recovery of damages, costs and attorneys' fees.

16.   <u>Termination of Agreement.</u>

(a)   Notwithstanding anything to the contrary set forth in Section 2, this Agreement may be terminated at any time and for any reason by either party upon five (5) days prior written notice.

(b)   Notwithstanding anything to the contrary in Section 2 or Section 16(a) above, in the event either party commits a Material Breach of the terms of this Agreement, the other party shall have the right to terminate this Agreement immediately.

The term "Material Breach" includes but is not limited to any of the following events:

(i)   Vendor fails to carry and keep in full force and effect at all times during the Term hereof the policies of insurance required in this Agreement;

(ii)   Vendor willfully fails or refuses to provide the services required hereunder in accordance with the terms set forth by the Customer and terms of this Agreement;

(iii)   the Vendor fails to perform to a Customer's satisfaction;

(iv)   proven use of drugs or alcohol by Vendor or Vendor Support Personnel while in providing services under this Agreement;

(v)   violation of applicable laws by Vendor or Vendor Support Personnel during the Term of this Agreement;

(vi)   taking any action that the non-breaching party reasonably determines to be adverse to the non- - breaching party's business, its reputation and/or its relationship with its Customers;

(vii)   operation of a vehicle while performing the services hereunder by Vendor or Vendor Support Personnel without a valid and current commercial or other drivers license as required by law;

(viii)   the filing by or against either party of a claim or cause of action under any bankruptcy related law or statute;

(ix)   failure by Vendor to maintain any necessary state or federal motor carrier authority required by applicable law to deliver Packages under this Agreement;

(x)      the providing of false or fraudulent documentation by either party to the other party;

(xi)     failure of SDS to allow Vendor to independently operate Vendor's business; including interference by SDS with Vendor's control over all aspects of Vendor's business, and/or

(xii)    failure of either party to perform as required pursuant to the terms of this Agreement (other than failures identified above in this Section 16(b)), if such breach is not cured within three (3) days of receipt of written notice of the breach.

(c)   This Agreement may be terminated immediately by either party without further obligation in the event there is a decline in the number of Packages to be delivered hereunder or SDS ceases to do business with a Customer for any reason that Vendor performed contract services for.

(d)   Upon the termination of this Agreement through the expiration of its Term, non-renewal or as otherwise provided for in this Section 16, SDS's only liability and sole responsibility to Vendor shall be to make payment to Vendor of unpaid sums, for services completed prior to termination, which have been incurred pursuant to Section 5 hereof.

17.    Waiver. The waiver of a breach of any of the terms or conditions hereof shall be limited to the act or acts constituting such breach and shall not be construed as a waiver of future acts or happenings.

18.    Headings. The headings set forth herein have been inserted for convenience only and are not to be considered when construing the provisions of this Agreement.

19.    Governing Law.
(a) The laws of the state of residence of the Vendor, without regard to the conflicts of laws principles thereof, shall govern this Agreement, including its construction and interpretation, the rights and remedies of the parties hereunder, and all claims, controversies or disputes (whether arising in contract or tort) between the parties.
(b)    The parties voluntarily agree to waive any right to a trial by jury in any suit filed hereunder and agree to adjudicate any dispute pursuant to Paragraph 20 below.

20.    Arbitration and Waiver To Join A Class.
(a) Agreement to Arbitrate. The parties agree to comply and be bound by The Federal Arbitration Act. The parties agree that any dispute, difference, question, or claim arising out of or in any way relating to this Agreement or the transportation services provided hereunder shall be subject to binding arbitration in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA") in effect at the time such arbitration is initiated. The parties agree that the issue of arbitrability shall be determined by the arbitrator applying the law of the state of residence of the Vendor. The parties shall bear their own costs including, without limitation, attorneys' fees, and shall each bear one half (1/2) of the fees and costs of the arbitrator. Any arbitration shall be conducted before a single arbitrator selected from a list of potential arbitrators provided by the AAA. The arbitrator shall be a former judge or have at least ten (10) years experience in either commercial business legal practice or representation of clients in the transportation industry. The hearing shall be conducted in the city in or closest to the location where the Vendor performs its transportation services under this Agreement, unless both parties consent to a different location. Nothing in this Agreement shall be construed as limiting or precluding the parties from bringing any action in any court of competent jurisdiction for injunctive or other extraordinary relief, in the event the arbitrator determines that it does not have jurisdiction to order such relief. The parties shall have the immediate right to seek such injunctive or other extraordinary relief at any time, including, without limitation, during the pendency of arbitration or other proceeding.
(b) Voluntary Waiver to Join a Class. Vendor hereby agrees that any arbitration, suit, action or other legal proceeding arising out of or in any way relating to this Agreement or the services provided hereunder shall be conducted and resolved on an individual basis only and not on a class-wide, multiple plaintiff, collective or similar basis unless mutually agreed to in writing by all interested parties. Vendor hereby voluntarily and expressly waives any right it may have to join any suit, action, arbitration, or other legal proceeding arising out of or in any way relating to this Agreement or the services provided hereunder on a class-wide, multiple plaintiff, collective or similar basis.

21.    Entire Agreement. This Agreement and Addenda hereto constitute the entire agreement of the parties relating to the subject matter hereof and supersedes any and all oral or written agreements or negotiations relating to any such subject matter. Each party to this Agreement acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by either party or anyone acting on behalf of any party hereto which are not embodied herein. This Agreement supersedes any prior agreement between SDS, its predecessors, successors or affiliates, and Vendor relating to the subject matter

SDS Ex. G Agreement_v01.00

hereof. Any modification of or amendment to this Agreement and/or any Addenda, Attachment, or Schedule hereto will be effective only if it is in writing signed by the party to be charged.

22.    Gender. Etc. Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine or neuter gender shall include all genders.

23.    Notice. Any notice to be given hereunder by a party may be effected by overnight delivery in writing or by registered or certified United States mail, postage prepaid. Notices shall be addressed to the parties at their following respective addresses or at such other address as a party may designate by giving written notice in accordance with the provisions of this Paragraph.

TO:    SDS: See below.                                TO:    CONTRACTOR: See below.

24.    Reformation and Severability. If any provision of this Agreement shall be invalid, illegal or unenforceable, it shall to the extent possible, be modified in such a manner as to be valid, legal and enforceable but so as to most nearly retain the intent of the parties, and if such modification is not possible, such provision shall be severed from this Agreement, and in either case the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

25.    Assignment.
(a)    Assignment by SDS: This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their assignees. SDS may assign this Agreement, without written confirmation from Vendor, to any corporation which controls SDS, is controlled by or under control of SDS, or to any corporation resulting from the merger of or consolidation with SDS.

(b)    Assignment by Vendor. Provided Vendor is in good standing hereunder, Vendor shall, with thirty (30) days prior written notice to SDS, have the right to assign his/her rights and obligations hereunder to another person or entity ("Replacement Vendor") who is qualified to provide services of Vendor under this Agreement, and, provided Vendor or Vendor's representatives continue to provide services under this Agreement up to the effective date of such assignment SDS shall thereupon enter into negotiation for a new agreement with the Replacement Vendor on terms and conditions satisfactory and agreeable to the New Vendor and SDS. Any consideration to be paid by Replacement Vendor on account of such assignment shall be strictly a matter of agreement between Vendor and Replacement Vendor unless otherwise agreed by Vendor. SDS shall have no other obligation whatsoever either to secure a Replacement Vendor for the benefit of Vendor, or to assure any payment to Vendor on account of Vendor's assignment of this Agreement.

26.    Counterparts; Facsimile or Email Signatures. This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Agreement. This Agreement shall become effective upon the execution and delivery of a counterpart hereof by each of the parties hereto. Delivery by telecopier or by electronic or digital transmission in PDF or other format of an executed counterpart of a signature page to this Agreement or any notice, communication, agreement, certificate, document or other instrument in connection herewith shall be effective as delivery of an executed original counterpart thereof.

27. CONSTRUCTION AND REVIEW. IN THE EVENT OF ANY AMBIGUITY IN ANY OF THE TERMS OF THIS AGREEMENT, INCLUDING ANY EXHIBITS HERETO, SUCH AMBIGUITY SHALL NOT BE CONSTRUED FOR OR AGAINST A PARTY ON THE BASS THAT THE PARTY DID OR DID NOT AUTHOR SAME. EACH PARTY ACKNOWLEDGES AND AGREES THAT THEY (A) HAVE HAD AN ADEQUATE OPPORTUNITY OF AT LEAST THREE (3) DAYS TO REVIEW THE TERMS AND CONDITIONS AND TO REFLECT UPON AND CONSIDER THE TERMS AND CONDITIONS OF THIS AGREEMENT, (B) HAVE HAD THE OPPORTUNITY TO CONSULT WITH
LEGAL COUNSEL REGARDING SUCH TERMS, AND (C) FULLY UNDERSTAND THE TERMS OF THIS
AGREEMENT AND HAVE VOLUNTARILY SIGNED IT.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**STRATEGIC DELIVERY SOLUTIONS, LLC:**                 **Vendor:**

Signature: _David M Kronick_              Signature: _MARIA A TACOAMAN_
Name:      David M Kronick                Name:      MARIA A TACOAMAN
Title:     Chief Information Officer      SSN/Tax ID: REDACTED
Address:   PO Box 239                     Address:
City:      Farmingdale                    City:
State:     NY                             State:
Zip:       11735                          Zip:
Date:      7/21/2014                      Date:      7/21/2014

Notice to Vendor: Please keep copy of the Agreement and all Schedules for your records.

SDS Fav iC Agreement_s01.00

SCHEDULE B

I, MARIA A TACOAMAN                                      , an independent
vendor, under contract with SDS, elect to rent the equipment specifically identified
below from SDS. I acknowledge receipt of the following equipment and agree to a
deduction from my Settlement Payment for the associated rental, and (if applicable)
airtime costs. I understand that I am solely responsible for the equipment and will be
held accountable should it be lost or stolen. I understand that I am solely responsible
for the cost of repair or replacement if the equipment is broken beyond repair due to my
fault or the fault of any individual I employ or with whom I subcontract. I understand
that I will not be charged for the use of equipment that is inoperable through no fault of
mine or no fault of any individual I employ or to whom I subcontract, provided I give
prompt written notice that the equipment is inoperable and immediately return the
equipment.

Further, I understand that should termination of the Agreement occur, for any reason,
I will be expected to immediately return said equipment. If I neglect to return the
equipment, the amount necessary to replace the equipment will be due within ten (10)
days of the termination date. If I do not reimburse SDS in full for said equipment, I
understand that all replacement costs will and may, if necessary, be deducted from a
final Settlement Payment.

[EQUIPMENT VENDOR ELECTS TO RENT]

| Scanner  Model | | | |
|---|---|---|---|
| Replacement Cost Scanner | | Weekly rental (hardware and software) | $18 |
| Serial Number (original) | | Weekly Air time (if applicable) | $8 |
| Replacement cost car charger | $50 | Repair unit (screen) | $250 |
| Replacement cost Holster | $25 | Repair unit (other) | $350 |
| | | | |

| Vendor Signature: | *MARIA A TACOAMAN* | Date: | 7/21/2014 |
|---|---|---|---|
| SDS Representative: | D.J M.K...l | Date: | 7/21/2014 |

Schedule C
### CONTROLLED SUBSTANCE AND ALCOHOL
### TEST CONSENT AND ACKNOWLEDGMENT FOR INDEPENDENT VENDORS

I understand that because I am engaged as an independent vendor in providing transportation services, I am involved in a safety sensitive business that puts the public at risk. As such, pursuant to law, as a condition of contractual engagement, I must voluntarily consent to and satisfactorily complete urine-screening tests to determine the presence of certain controlled substances and/or a breath, saliva, and/or blood alcohol test to determine the presence of alcohol. I further understand that all provisions of this policy apply to any and all of my own employees and/or subcontractors who operate on behalf of SDS pursuant to the Agreement.

I further understand that I must voluntarily consent to unannounced searches and inspections of myself, my clothing, vehicle (owned, non-owned, or leased vehicle), and any package, purse, briefcase, toolbox, lunch box, or other container utilized by myself or my Vendor Support Personnel pursuant to the Agreement as an independent vendor for the purpose of enforcing this policy.

As a candidate for contractual engagement, I understand that the presence of one or more of such controlled substances or alcohol will disqualify me from further consideration for contractual engagement.

As an incumbent independent contractor, I understand that because the safety of the public is involved, the Company has adopted a "zero tolerance" policy and that failing a test for controlled substances and/or excessive alcohol will result in immediate termination of my contract. I also agree that the Company cannot force me or my drivers to undergo a drug and/or alcohol test. I agree, *however, that,* because of the safety sensitive nature of my business and the services I am rendering, the Company and Customer will be forced to treat my refusal to undergo a reasonable suspicion and/or accident related drug and/or alcohol test as a "presumed positive" test result and terminate my services and/or service contract.

I certify and acknowledge that I have received, read (or have had read to me), the Driver Awareness Package, this form, and the SDS Substance Abuse Policy (and the related DOT Substance Abuse Policy, if applicable), and that I understand these policies to be a condition of my contractual relationship. I agree to the release of information obtained through medical inquiries or substance screen tests by the medical examiner(s) to SDS and all related entities or its representatives or its Customers on a "need to know" basis.

I hereby agree to pay directly or authorize the Company to deduct from my settlement, the costs of any pre- engagement tests, periodic tests and re-engagement follow-up tests administered pursuant to this policy.

I also hereby authorize the Company to conduct through its designated medical examiner(s), a substance abuse screening test(s) and I release the clinic/physician and related entities, their directors, employees and agents from all legal responsibility related to providing the information obtained through the medical inquiries or screening test to the Company, its Customers or other authorized entities.

*MARIA A TACOAMAN*
_____
Vendor Signature

REDACTED
_____
Social Security Number

_____
Authorized SDS Signature

7/21/2014
_____
Date Signed

Vendor Agreement 2012 Master

VENDOR FEIN No,_____        LOCATION  SDS RX - Elizabeth, NJ_____

### INDEPENDENT VENDOR AGREEMENT FOR TRANSPORTATION SERVICES

THIS INDEPENDENT VENDOR AGREEMENT FOR TRANSPORTATION SERVICES ("AGREEMENT") entered into as of

the 21___ day of July_____, 20 14___, by and between  BLANCA H, ALULEMA_____

REDACTED _____ principal   office      located       at
_____(the "Vendor") and Strategic

Delivery Solutions, LLC, a New York limited liability company ( SDS ).

### WITNESSETH:

WHEREAS, SDS is a duly licensed freight forwarder and freight broker pursuant to operating authorities issued by the United States Department of Transportation ("DOT"); and

WHEREAS, SDS is engaged in the business of arranging for the provision of local delivery services for its customers ("Customer(s)") with respect to pharmaceutical products and general merchandise, among other things (hereinafter referred to as "Packages" and/or "Package"), throughout the State(s) of Dispatch

WHEREAS, in connection with the operation of such business, SDS has the need, from time to time, for the services of independent contractors to pick up, transport and deliver Packages for SDS's Customers and

WHEREAS, Vendor owns  and  operates a business that provides transportation services and owns, leases, and/or otherwise has access to a motor vehicle and other equipment and accessories as are necessary to conduct such business; and

WHEREAS, Vendor is engaged in providing transportation services and desires to receive offers to provide transportation services for SDS's Customers, as an independent contractor, which offers Vendor shall be free to accept or decline.

NOW, THEREFORE, it is mutually agreed between the parties as follows:

1.     Vendor Relationship. The parties agree and acknowledge that the relationship of Vendor with SDS hereunder is that of an independent contractor and any and all services provided by Vendor hereunder shall be provided in such capacity. Vendor shall in no way and for no purpose hereunder be considered an agent, servant, employee, partner or co-venturer of SDS or be deemed to hold any relationship with SDS other than that of an independent contractor. Neither Vendor nor Vendor's officers, directors, agents, subcontractors, substitute drivers, employees, helpers or servants ("Vendor Support Personnel") are to be considered employees of SDS at any time, under any circumstances or for any purpose. Vendor and SDS acknowledge and agree that SDS shall have no right to direct or control the manner, means, details or methods by which Vendor provides its services hereunder.

*Vendor* shall be solely responsible for the direction and control of its Vendor Support Personnel, including selecting, hiring, firing, supervising, directing, servicing accepted pickups and deliveries, making payments for services rendered, withholding and paying applicable state and federal payroll taxes, providing workers' compensation insurance, paying workers' compensation and unemployment insurance premiums, setting wages, hours of work .and performance standards, regulatory compliance, assigning routes of travel, providing all necessary tools or assistance to safely accomplish the work, working conditions and handling any grievances with such *Vendor* Support Personnel. SDS shall not request *Vendor* to discontinue the use of *Vendor* Support Personnel utilized by Vendor to perform its obligations under this Agreement. This shall not prevent SDS from asserting that the actions of Vendor Support Personnel constitute a Material Breach by Vendor, as defined in Section 16 hereto.

2.     Term of Agreement. This Agreement shall commence as of the 21___ day of July_____. 20 14___. The Term of this Agreement shall automatically extend annually or until the parties have entered into another written agreement. Notwithstanding anything to the contrary set forth above, this Agreement may be terminated earlier by either party in accordance with Section 16 of this Agreement.

3.     Vendor's Control of Services. During the Term of this Agreement, SDS may, from time to time, in its sole discretion, based on Customer requirements, provide *Vendor* with offers of transportation services by notifying *Vendor* of the place and time of pick-up and delivery, as determined by the Customer, together with any completion schedules and specifications being

**Vendor Agreement  Master**                    1

requested by the Customer. Vendor shall have the right to decline or accept any such offer. Vendor, upon acceptance of an offer, agrees to provide the transportation services and, in connection therewith, *Vendor* shall be solely responsible for selecting the route(s) to be taken. All other matters relating to the pick-up, transport and/or delivery of Packages, including, but not limited to, the priority which may be given to the pick-up and/or delivery of any particular item in relation to any other item which may be picked up and/or delivered, shall be in the control of and at the discretion of Vendor; provided, however, that Vendor shall conform with any time constraints and special conditions required by SDS's Customers of which it is specifically advised at the time Vendor accepts the offer.

4.    Availability of Vendor. Vendor shall determine, in its sole discretion whether and when to provide services to SDS. Vendor is not on-call for SDS and is not be eligible for any on-call payments from SDS. When declining an offer to provide transportation services, Vendor shall not be required to provide any justification for Vendor's refusal. Vendor shall not be penalized for declining an offer from SDS. Vendor, as an independent contractor, is understood by SDS to offer its services equally to other companies and to the public generally, in a manner consistent with the other provisions of this Agreement. With the exception of exclusive use arrangements that may be agreed to by Vendor in its discretion, Vendor may perform concurrent delivery services for companies other than SDS and commingle cargo to the extent allowed by law, except where customer specifically prohibits such arrangements. Notwithstanding the foregoing, Vendor agrees that the DOT operating authority that may apply when providing transportation services for SDS's Customers will not apply in any manner to any other operations or services provided by Vendor.

5.    Vendor's Compensation and Payment.
(a)    Rate of Settlement. SDS agrees to pay, and Vendor agrees to accept, as full and complete compensation settlement for each delivery made by Vendor pursuant to this Agreement a mutually agreed upon sum of money which has been negotiated and shall be computed as provided for in the bid submitted by Vendor as set forth in Schedule A attached hereto and incorporated herein (such compensation shall hereinafter be referred to as "Settlement). The term "Net Revenue" as used in Schedule A of this Agreement shall mean revenue less sales/cash discounts, credits (billing errors/delivery failures, etc) and bad debt. SDS and Vendor shall each have the right to request changes to the provisions of Schedule A. The provisions of Schedule A may only be modified by written agreement signed by Vendor and SDS. SDS will not be liable to Vendor for any settlement or loss associated with suspension of services due to acts of God or other events beyond the control of SDS, including, but not limited to, war, civil disturbance, acts of terrorism, acts or demands of any government or governmental agency, labor disturbances, fires, floods or other casualty, severe weather, or *Vendor* suspension or termination of service. The determination of when and how often SDS may provide Vendor with offers of transportation services hereunder shall be at the sole discretion of SDS and nothing contained herein shall constitute a guarantee to Vendor that SDS will make any such offers. Vendor understands and agrees that from time to time circumstances such as traffic or shipment delays, adverse weather, and other potentially cost increasing circumstances will occur and Vendor will not be guaranteed any additional payment from SDS for such occurrences. Vendor shall be free to request additional compensation due to extenuating circumstances, and Vendor and SDS may negotiate for additional compensation subject to mutual agreement. Vendor hereby acknowledges that financial gain or loss may be recognized by Vendor while providing transportation services under this Agreement. Notwithstanding anything to the contrary in this Agreement, SDS makes no promises or representations whatsoever as to the amount of business Vendor will be offered at any time under this Agreement.
(b)    Payment. Vendor shall provide SDS with completed manifests, proofs of delivery, bills of lading, and/or weekly invoices detailing the applicable sums Vendor believes are due under this Agreement. Vendor agrees that payments may be made on a weekly basis by a third party administrator of SDS pursuant to a separate agreement between Vendor and such third party administrator. Vendor's payments shall be reconciled by SDS on a weekly basis and paid within two (2) weeks following the completion of Vendor's services ("Settlement Payment"). The Settlement Payment contains an itemized listing of all deductions.
(c)    Documentation. It is the responsibility of Vendor to provide completed proofs of delivery, manifests, or bills of lading detailing items such as addresses and legible signatures as proof that pick-up and/or deliveries have been completed. Vendor shall also be responsible for the expense of generating proofs of delivery, manifests or bills of lading and Vendor may purchase same from any source. Alternatively, forms may be made available by SDS for a nominal amount to be negotiated with Vendor. SDS reserves the right to refuse payment for services if Vendor does not submit completed manifest documentation, bills of lading and/or proofs of delivery.
(d)    Settlement Disputes. SDS and Vendor agree that each Settlement Payment by SDS to Vendor under this Agreement shall be considered to be proper and accurate unless written notice disputing the amount of such Settlement Payment is provided by Vendor to SDS within fourteen (14) days of Vendor's receipt of such Settlement Payment. In the absence of such timely notice by Vendor, the Settlement Payment shall be conclusively presumed to be correct.
(e)    Final Settlement. Vendor agrees that SDS shall have the right to withhold its final Settlement Payment under this Agreement for a maximum period of thirty (30) days in order to allow SDS sufficient time to account for, calculate and provide a complete reconciliation of the amount of Vendor's final settlement after making any and all deductions or offsets allowed under the

SDS Rx IC Agreement_v01.09

terms of this Agreement.

6. Fringe Benefits.

(a) Vendor agrees and acknowledges that neither it nor its Vendor Support Personnel shall (i) have the status of an employee of SDS or (ii) participate in SDS's employee benefit plans or group insurance plans or programs including, but not limited to, salary, bonus or incentive plans, stock options or purchase plans, medical or dental plans, or plans pertaining to retirement, vacation, personal time off, deferred savings, disability, (hereinafter collectively referred to as "Fringe Benefits").

(b) Vendor hereby agrees to indemnify, hold harmless and defend SDS, its parent, subsidiaries, affiliates, assignees, and their employees. officers, directors, equity holders, members, managers, and Board of Managers against any claim, cost, penalty, loss or expense (including attorneys' fees) arising out of or relating to any claim, demand, or suit for Fringe Benefits by Vendor and/or Vendor Support Personnel.

7. Independently Owned Business.

(a) Business Licenses and Operating Authorities. Vendor warrants and represents that it is an independently owned business entity duly operating under the business name as set forth above in accordance with the corporate and local laws of its state of residence and the Internal Revenue Service ("IRS") either as a corporation, partnership, limited liability company, unincorporated business association, d/b/a, or sole proprietorship and that it has obtained in accordance with IRS regulations the Federal Employer Identification Number ("FEIN#") set forth above. Vendor further warrants and represents that it has obtained and shall maintain at all times during the Term of this Agreement any and all motor carrier operating authorities, permits, or licenses of any nature required by the United States DOT and/or required under the laws of any jurisdiction in which Vendor operates.

(b) Taxes. (a) The relationship of Vendor and/or Vendor Support Personnel with SDS is that of an independent contractor. It is fully understood by SDS and Vendor that neither federal, state, nor local income taxes nor payroll taxes of any kind, including, but not limited, to F.I.C.A. or F.U.T.A., will be withheld or paid by SDS on behalf of Vendor and Vendor Support Personnel. Vendor agrees on behalf of itself and any Vendor Support Personnel (i) to pay all self-employment and other applicable taxes and/or other payments, including, but not limited to, sales taxes, payroll taxes of any kind, income taxes, social security taxes, unemployment insurance, state disability insurance and estimates thereof, and all workers' compensation insurance payments as may be required under the laws, rules or regulations of any governmental agency having jurisdiction over Vendor and/or Vendor Support Personnel; (ii) to maintain sufficient records demonstrating that Vendor has satisfied its obligation to pay such taxes and other payments; and (iii) to withhold and pay all local, state and federal income taxes on behalf of all Vendor Support Personnel, to the extent required by law. Vendor acknowledges that the social security tax Vendor must pay is higher than the social security tax Vendor would pay if Vendor were an employee. Upon written request, Vendor shall provide SDS with documentation which evidences that such taxes required by law have been promptly paid, including but not limited to, cancelled checks, receipts or government forms. Vendor hereby agrees to indemnify and to hold harmless SDS, its parent, subsidiaries, affiliates, assignees, and their employees. officers, directors, equity holders, members, managers, and Board of Managers against any claim, cost, penalty, loss or expense (including attorneys' fees) arising out of or related to such taxes, costs or payments.

(c) Cost of Vendor's Business. Vendor agrees that it is solely responsible for all the costs and expenses of its business arising out of or relating to the transportation services provided by Vendor under this Agreement including, but not limited to, costs for Vendor Support Personnel, vehicle costs, scanners, load moving and securing devices, costs of generating proofs of delivery, licenses, insurance coverage, vehicle maintenance and repair, uniforms (if required), Customer required signage for its vehicles, worker's compensation insurance or occupational accident insurance, cargo insurance, background checks and drug tests, as well as any other costs or expenses described in this Agreement and any and all taxes, fines, and assessments by any and all regulatory agencies, boards or municipalities. Vendor hereby indemnifies and agrees to hold harmless SDS and its officers, directors, equity holders, members, managers, and Board of Managers against any claim, cost, penalty, loss or expense (including attorneys' fees) arising out of or related to Vendor's nonpayment or underpayment of any such costs, expenses, taxes, fines, assessments or payments as well as penalties and interest thereon for Vendor or Vendor Support Personnel.

(d) Unemployment Compensation. Vendor agrees that, as an independent contractor, the services Vendor shall provide pursuant to the Agreement are not covered by the unemployment compensation laws of any state, including, but not limited to, Georgia.

(e) Indemnity. Vendor agrees to indemnify, defend, and hold SDS harmless from all claims arising out of or related to Vendor's representation to SDS that it was an independent contractor.

8. Vendor's Vehicle(s).

(a) Vehicle - Vendor warrants that it shall provide and use for the performance of its services hereunder a lawfully registered and safe vehicle capable of meeting any safety standards maintained by SDS's Customers. Vendor shall, at Vendor's sole cost and expense, keep and maintain such vehicle(s) in good operating condition and working order and shall perform all preventive and corrective maintenance and repairs required to insure safe and efficient operation and the good appearance of the

**Vendor Agreement Master**          3

vehicle(s). Vendor shall be responsible for procuring and paying the cost of all expenses incurred in or incidental to the operation of such vehicle(s) including, but not limited to, gas, oil, tires, repairs, insurance, purchase of equipment, inspections, fees, permits, and storage, and will do all that is required in order for the vehicle(s) to meet the requirements of all applicable state, federal and local laws, rules and regulations. Vendor shall direct, in all respects, the operation and maintenance of the equipment used in performance of this Agreement, which direction includes, but is not limited to, selection of substitute drivers, helpers, places of repair, stopping, parking, replacement, maintenance, purchases of fuel, equipment, insurance, parts and accessories. Notwithstanding the terms of this provision, the undersigned parties agree that both parties shall benefit by adhering to certain recognized industry standards. Vendor agrees to meet any applicable Customer contractual requirements regarding drivers' qualifications. The parties mutually agree that observance of Customer requirements shall protect both parties from excessive insurance rates, cancellation of insurance coverage, and contractual breach.

(b) Department of Transportation. Vendor acknowledges that under certain DOT regulations and guidelines, Vendor may be operating pursuant to the authority granted SDS. Vendor agrees, whether operating pursuant to SDS's DOT authority or its own authority, to create, maintain and make available to SDS or any governmental agency having jurisdiction over Vendor, documents required for DOT compliance, including, but not limited to, driver qualification files, vehicle inspection reports, vehicle maintenance and repair reports, daily drivers logs, hours of service, and vehicle condition reports. Vendor grants SDS the right to periodically inspect Vendor's equipment for the sole purpose of observing compliance with such regulations and guidelines. Vendor also acknowledges that SDS under certain circumstances is required to verify the status of Vendor's equipment in order to comply with DOT regulations and guidelines. This in no way serves to diminish Vendor's control of its own equipment.

(c) Signage. Many of SDS's Customers have concerns regarding safety and allowing access to their workplace. To the extent required by those Customers Vendor chooses to service under this Agreement, Vendor shall obtain and pay the costs of all appropriate and Customer required signage for its vehicle(s). Vendor agrees that it has the sole responsibility and shall bear the cost and expense of painting, obtaining, affixing, and removing such signage. Upon termination of this Agreement, Vendor shall immediately remove and return any Customer required signage to SDS.

9. Uniforms and Identification Badges. Vendor agrees that while providing services pursuant to the Agreement, Vendor will maintain a professional appearance. Vendor may be offered transportation services for SDS's Customers who require that Vendor be easily identified for security purposes. Should Vendor accept an offer to provide such services, Vendor will be paid a mutually agreed upon advertising/marketing fee pursuant to an executed Advertising Display Agreement. Vendor may not use SDS's logos or any uniforms purchased through SDS other than for the purposes of providing services under this Agreement.

10. Tools and Equipment. Vendor agrees that it will provide all tools and equipment necessary for providing services under this Agreement. Vendor shall furnish and maintain, at its own cost and expense, shipment handling equipment, radios, cellular telephones, beepers, scanners, and any other type of equipment utilized by Vendor. Vendor shall provide a commercial scanner or other communication device compatible with SDS's proprietary technology to allow Vendor to handle and track shipments according to the Customer's package tracking requirements. Vendor will rent such equipment from SDS under the negotiated terms and conditions set forth in Schedule B attached hereto.

11. Insurance.
(a) Public Liability Insurance Notwithstanding SDS's obligation to maintain coverage for the protection of the public and not for purposes of contradiction but as additional insurance, Vendor, at its expense, shall carry and keep in full force and effect for the duration of this Agreement, Commercial Auto Liability insurance covering Bodily Injury and Property Damage, with a limit of liability not less than (i) $300,000 Combined Single Limit for vehicles with a gross manufacturer's vehicle weight of 26,000 pounds or less, (ii) $750,000 combined single limit for vehicles with a gross manufacturer's weight of 26,000 pounds or less operating under the Vendor's operating authority, and (iii) $1,000,000 Combined Single Limit for vehicles with a gross manufacturer's vehicle weight in excess of 26,000 pounds. Each such policy of insurance shall name SDS, parent, subsidiaries, affiliates, and their assignees, officers, directors, equity holders, members, and Board of Managers as Additional Insureds on such policy. If the scope of this Agreement involves more than one vehicle, coverage must apply to all other owned or hired and non-owned vehicles. Vendor agrees to provide SDS with a customary Certificate of Insurance as evidence of such insurance. Each such insurance policy obtained by Vendor shall require the insurer to provide SDS with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. Vendor agrees to immediately notify SDS of any changes in coverage, expiration, termination or cancellation of such insurance. All such insurance maintained by Vendor shall provide that insurance, as it applies to SDS, shall be primary and SDS's insurance shall be noncontributing notwithstanding any insurance SDS maintains.

(b) <u>Workers' Compensation Insurance/Occupational Accident Insurance.</u> Vendor, at its own expense, agrees to keep in full force and effect during the Term of this Agreement either workers' compensation Insurance covering statutory benefits and employer's liability with a limit of liability of not less than $100,000 per accident, $500,000 policy limit, $100,000 per employee; or Occupational Accident Insurance ("OccAcc") with a $1,000,000 limit of liability.. Vendor agrees to provide SDS with a customary Certificate of Insurance as evidence of such insurance. Each insurance policy obtained by Vendor shall require the insurer to provide SDS with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. Vendor agrees to immediately notify SDS of any expiration, termination or cancellation of such insurance. Vendor agrees to assume the liability for the payment of any workers' compensation premiums, claims, and/or benefits arising out of the conduct of Vendor's business for Vendor or any Vendor Support Personnel, and to indemnify SDS, its parent, subsidiaries, affiliates, assignees and their officers, directors, equity holders, members, managers, and Board of Managers for any issues, disputes, or benefits associated with the same.

12.    <u>Vendor's Liability for</u> Packages.

(a)    Vendor, at its own expense, agrees to carry and keep in full force and effect for the duration of this Agreement, Motor Truck Cargo Liability Insurance in an amount not less than $10,000 per occurrence with a deductible not to exceed $100.00 per occurrence for the handling of general freight, $50,000 per occurrence with a deductible not to exceed $100.00 for the handling of pharmacy freight, and $250,000 per occurrence with a deductible not to exceed $100.00 for the handling of Wholesale Pharma freight, covering loss or damage to the Packages which are in or subject to the care, custody and control of Vendor. Vendor shall provide SDS with a customary Certificate of Insurance as evidence of such insurance and deductible. Each such insurance policy obtained by Vendor shall require the insurer to provide SDS with thirty (30) days written notice of any changes in coverage, expiration, termination or cancellation of such insurance. Vendor shall be liable to SDS for loss or damage to Packages shipped under this Agreement whether or not the loss is covered by the insurance. Packages picked up by Vendor shall be deemed to be in the care, custody, possession, and control of Vendor until the same shall have been delivered to, and accepted by, the designated consignee, recipient, or its authorized agent. In the event of damage, shortage, spillage, contamination or other loss to any Packages that occurs while in Vendor's care, custody, possession or control, Vendor shall notify the shipper and/or SDS of the damage or loss as soon as practicable after damage or loss occurs. It is Vendor's responsibility to complete accepted transportation services and make any corrections with respect to the Customer expectations. If it should become necessary for SDS to intervene due to Vendor's inability or refusal to complete services accepted by Vendor, SDS reserves the right, upon notice, to setoff unavoidable costs against any Settlement Payment due Vendor. Vendor agrees to cooperate with SDS and/or the shipper to resolve cargo claims/damages as quickly as possible and agrees that in the event SDS is held liable for any loss or damage to any Packages caused by Vendor's intentional or negligent acts or omissions, SDS shall have the right to recover such amount from Vendor. Should Vendor elect to participate in a Cargo Loss Waiver ("CLW") program, SDS's right of recovery for the loss or damage to the Packages shall be subject to the terms of the CLW program. Vendor reserves the right to dispute liability for damage or loss, and to pursue the claim through legal process after paying the total disputed amount.

(b)    Vendor may elect to participate in a CLW program (not available for retail cargo loss) rather than procure Motor Truck Cargo and/or Financial Cargo Liability insurance. Vendor agrees that failure to provide SDS with the customary Certificate of Insurance within seven (7) days of the signing of this Agreement shall be deemed an election by Vendor to participate in the CLW program. CLW is not insurance but a limitation of SDS's right to collect from Vendor for the loss or damage of Packages while in Vendor's custody. SDS agrees, pursuant to the CLW, to limit its recovery for damages/losses claimed by a Vendor, subject to the following terms and conditions:

1.    Vendor pays a negotiated CLW fee (not to exceed $18.00 per week), which fee may be deducted from Vendor's Settlement Payment.

2.    Loss/damage is not the result of Vendor's willful conduct or gross negligence.

3.    Vendor accepts liability for the first $500 of loss/damage to Packages, and agrees that this amount may be deducted from its Settlement Payment.

13.    <u>Indemnification.</u> Vendor agrees to indemnify, defend and hold harmless SDS and its parent, subsidiaries, affiliates, assignees, and their employees, officers, directors, equity holders, managers, members, and Board of Managers from and against any and all claims or suits for injury to or death of Vendor, its agents, representatives, Vendor Support Personnel, assistants, employees and/or subcontractors or loss of or damage to their property and from and against any and all other claims or suits for injury or death to person or loss of or damage to property of SDS or SDS's Customers, agents, members, employees or any third party, resulting from Vendor's breach of this Agreement or Vendor's intentional or negligent acts or omissions, and/or those of its agents, representatives, assistants, employees, Vendor Support Personnel, and/or subcontractors. SDS shall have the right to set off and deduct from any and all amounts owing from SDS to Vendor the full value of any damage, loss or liability incurred by SDS or any third party arising out of any negligent or intentional act or omission by Vendor or its agents, representatives, assistants, employees or subcontractors.

**Vendor Agreement Master**          5

14.  Substance Abuse and Drivers Qualifications Policies.  In order to comply with applicable DOT rules, regulations, guidelines, and Customer requirements, Vendor agrees that it and its Vendor Support Personnel, including, but not limited to, any substitute drivers and any person having access to Customer shipments or facilities, will comply with the Substance Abuse Policy and Drivers' Qualification Policy set forth in Schedule C attached hereto and incorporated herein.

15.  Confidential Information/Non-Solicitation.  In consideration of the parties' desire to establish a business relationship, and SDS's agreement to provide Vendor with confidential proprietary information acquired, or to be acquired or developed by and belonging to or relating to SDS or SDS's Customers or any of its subsidiaries including, but not limited to, the names and addresses of its Customers and suppliers; technology used; prices charged and paid and other information, data, and documents now existing or previously developed or acquired by SDS's Customers, and Vendor's recognition that the secrecy of such confidential information gives SDS a significant advantage in developing, marketing and maintaining SDS's Customer base. Vendor agrees that:

(a)  It will not directly cause, permit or aid in the disclosure to or use by any person, corporation, or entity of any confidential information, at any time, for whatever reasons, except as required by law with prior written consent by SDS;

(b)  That during the term of this Agreement and for a period of six (6) months thereafter, Vendor shall not either directly or indirectly either for itself or for any other person, firm, company or corporation, use such confidentiall proprietary information to solicit, divert, or take away any of SDS's Customers;

(c)  In the event of a breach or threatened breach by Vendor of any of these provisions, SDS shall be entitled to an injunction restraining Vendor from disclosing or using any such confidential proprietary information.  Nothing herein, however, shall be construed as prohibiting SDS from pursuing any other remedies available to it for such breach or threatened breach including, but not limited to, recovery of damages, costs and attorneys' fees.

16.  Termination of Agreement.

(a)  Notwithstanding anything to the contrary set forth in Section 2, this Agreement may be terminated at any time and for any reason by either party upon five (5) days prior written notice.

(b)  Notwithstanding anything to the contrary in Section 2 or Section 16(a) above, in the event either party commits a Material Breach of the terms of this Agreement, the other party shall have the right to terminate this Agreement immediately.

The term "Material Breach" includes but is not limited to any of the following events:

(i)  Vendor fails to carry and keep in full force and effect at all times during the Term hereof the policies of insurance required in this Agreement;

(ii)  Vendor willfully fails or refuses to provide the services required hereunder in accordance with the terms set forth by the Customer and terms of this Agreement;

(iii)  the Vendor fails to perform to a Customer's satisfaction;

(iv)  proven use of drugs or alcohol by Vendor or Vendor Support Personnel while in providing services under this Agreement;

(v)  violation of applicable laws by Vendor or Vendor Support Personnel during the Term of this Agreement;

(vi)  taking any action that the non-breaching party reasonably determines to be adverse to the non-- breaching party's business, its reputation and/or its relationship with its Customers;

(vii)  operation of a vehicle while performing the services hereunder by Vendor or Vendor Support Personnel without a valid and current commercial or other drivers license as required by law;

(viii)  the filing by or against either party of a claim or cause of action under any bankruptcy related law or statute;

(ix)  failure by Vendor to maintain any necessary state or federal motor carrier authority required by applicable law to deliver Packages under this Agreement;

SDS Rv'd Agreement_v01.00

(x)     the providing of false or fraudulent documentation by either party to the other party;

(xi)    failure of SDS to allow Vendor to independently operate Vendor's business; including interference by SDS with Vendor's control over all aspects of Vendor's business, and/or

(xii)    failure of either party to perform as required pursuant to the terms of this Agreement (other than failures identified above in this Section 16(b)), if such breach is not cured within three (3) days of receipt of written notice of the breach.

(c)   This Agreement may be terminated immediately by either party without further obligation in the event there is a decline in the number of Packages to be delivered hereunder or SDS ceases to do business with a Customer for any reason that Vendor performed contract services for.

(d)   Upon the termination of this Agreement through the expiration of its Term, non-renewal or as otherwise provided for in this Section 16, SDS's only liability and sole responsibility to Vendor shall be to make payment to Vendor of unpaid sums, for services completed prior to termination, which have been incurred pursuant to Section 5 hereof.

17.    Waiver. The waiver of a breach of any of the terms or conditions hereof shall be limited to the act or acts constituting such breach and shall not be construed as a waiver of future acts or happenings.

18.    Headings. The headings set forth herein have been inserted for convenience only and are not to be considered when construing the provisions of this Agreement.

19.    Governing Law.

(a)   The laws of the state of residence of the Vendor, without regard to the conflicts of laws principles thereof, shall govern this Agreement, including its construction and interpretation, the rights and remedies of the parties hereunder, and all claims, controversies or disputes (whether arising in contract or tort) between the parties.

(b)   The parties voluntarily agree to waive any right to a trial by jury in any suit filed hereunder and agree to adjudicate any dispute pursuant to Paragraph 20 below.

20.    <u>Arbitration and Waiver To Join A Class.</u>

(a)   <u>Agreement to Arbitrate</u>. The parties agree to comply and be bound by The Federal Arbitration Act. The parties agree that any dispute, difference, question, or claim arising out of or in any way relating to this Agreement or the transportation services provided hereunder shall be subject to binding arbitration in accordance with the Rules for Commercial Arbitration of the American Arbitration Association ("AAA") in effect at the time such arbitration is initiated. The parties agree that the issue of arbitrability shall be determined by the arbitrator applying the law of the state of residence of the Vendor. The parties shall bear their own costs including, without limitation, attorneys' fees, and shall each bear one half (1/2) of the fees and costs of the arbitrator. Any arbitration shall be conducted before a single arbitrator selected from a list of potential arbitrators provided by the AAA. The arbitrator shall be a former judge or have at least ten (10) years experience in either commercial business legal practice or representation of clients in the transportation industry. The hearing shall be conducted in the city in or closest to the location where the Vendor performs its transportation services under this Agreement, unless both parties consent to a different location. Nothing in this Agreement shall be construed as limiting or precluding the parties from bringing any action in any court of competent jurisdiction for injunctive or other extraordinary relief, in the event the arbitrator determines that it does not have jurisdiction to order such relief. The parties shall have the immediate right to seek such injunctive or other extraordinary relief at any time, including, without limitation, during the pendency of arbitration or other proceeding.

(b)   <u>Voluntary Waiver to Join a Class</u>. Vendor hereby agrees that any arbitration, suit, action or other legal proceeding arising out of or in any way relating to this Agreement or the services provided hereunder shall be conducted and resolved on an individual basis only and not on a class-wide, multiple plaintiff, collective or similar basis unless mutually agreed to in writing by all interested parties. Vendor hereby voluntarily and expressly waives any right it may have to join any suit, action, arbitration, or other legal proceeding arising out of or in any way relating to this Agreement or the services provided hereunder on a class-wide, multiple plaintiff, collective or similar basis.

21.    Entire Agreement. This Agreement and Addenda hereto constitute the entire agreement of the parties relating to the subject matter hereof and supersedes any and all oral or written agreements or negotiations relating to any such subject matter. Each party to this Agreement acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by either party or anyone acting on behalf of any party hereto which are not embodied herein. This Agreement supersedes any prior agreement between SDS, its predecessors, successors or affiliates, and Vendor relating to the subject matter

SDS Fxr IC Agreement_v01.00

hereof. Any modification of or amendment to this Agreement and/or any Addenda, Attachment, or Schedule hereto will be effective only if it is in writing signed by the party to be charged.

22.    Gender. Etc. Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine or neuter gender shall include all genders.

23.    Notice.  Any notice to be given hereunder by a party may be effected by overnight delivery in writing or by registered or certified United States mail, postage prepaid.  Notices shall be addressed to the parties at their following respective addresses or at such other address as a party may designate by giving written notice in accordance with the provisions of this Paragraph.

TO:    SDS: See below.                          TO:    CONTRACTOR: See below.

24.    Reformation and Severability.  If any provision of this Agreement shall be invalid, illegal or unenforceable, it shall to the extent possible, be modified in such a manner as to be valid, legal and enforceable but so as to most nearly retain the intent of the parties, and if such modification is not possible, such provision shall be severed from this Agreement, and in either case the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

25.    Assignment.
(a)    Assignment by SDS: This Agreement shall be binding upon and inure to the benefit of the parties to this Agreement and their assignees. SDS may assign this Agreement, without written confirmation from Vendor, to any corporation which controls SDS, is controlled by or under control of SDS, or to any corporation resulting from the merger of or consolidation with SDS.

(b)    Assignment by Vendor. Provided Vendor is in good standing hereunder, Vendor shall, with thirty (30) days prior written notice to SDS, have the right to assign his/her rights and obligations hereunder to another person or entity ("Replacement Vendor") who is qualified to provide services of Vendor under this Agreement, and, provided Vendor or Vendor's representatives continue to provide services under this Agreement up to the effective date of such assignment SDS shall thereupon enter into negotiation for a new agreement with the Replacement Vendor on terms and conditions satisfactory and agreeable to the New Vendor and SDS. Any consideration to be paid by Replacement Vendor on account of such assignment shall be strictly a matter of agreement between Vendor and Replacement Vendor unless otherwise agreed by Vendor. SDS shall have no other obligation whatsoever either to secure a Replacement Vendor for the benefit of Vendor, or to assure any payment to Vendor on account of Vendor's assignment of this Agreement.

26.    Counterparts; Facsimile or Email Signatures. This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which counterparts, when so executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Agreement. This Agreement shall become effective upon the execution and delivery of a counterpart hereof by each of the parties hereto.  Delivery by telecopier or by electronic or digital transmission in PDF or other format of an executed counterpart of a signature page to this Agreement or any notice, communication, agreement, certificate, document or other instrument in connection herewith shall be effective as delivery of an executed original counterpart thereof.

27. <u>CONSTRUCTION AND REVIEW</u>. IN THE EVENT OF ANY AMBIGUITY IN ANY OF THE TERMS OF THIS AGREEMENT, INCLUDING ANY EXHIBITS HERETO, SUCH AMBIGUITY SHALL NOT BE CONSTRUED FOR OR AGAINST A PARTY ON THE BASS THAT THE PARTY DID OR DID NOT AUTHOR SAME. EACH PARTY ACKNOWLEDGES AND AGREES THAT THEY (A) HAVE HAD AN ADEQUATE OPPORTUNITY OF AT LEAST THREE (3) DAYS TO REVIEW THE TERMS AND CONDITIONS AND TO REFLECT UPON AND CONSIDER THE TERMS AND CONDITIONS OF THIS AGREEMENT, (B) HAVE HAD THE OPPORTUNITY TO CONSULT WITH

LEGAL COUNSEL REGARDING SUCH TERMS, AND (C) FULLY UNDERSTAND THE TERMS OF THIS

AGREEMENT AND HAVE VOLUNTARILY SIGNED IT.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year first above written.

**STRATEGIC DELIVERY SOLUTIONS, LLC:**          **Vendor:**

| | |
|---|---|
| Signature: _DM MKronick_ | Signature: _BLANCA H ALULEMA_ |
| Name: David M Kronick | Name: BLANCA H, ALULEMA |
| Title: Chief Information Officer | SSN/Tax ID: REDACTED |
| Address: PO Box 239 | Address: |
| City: Farmingdale | City: |
| State: NY | State: |
| Zip: 11735 | Zip: |
| Date: 7/21/2014 | Date: 7/21/2014 |

Notice to Vendor: <u>Please keep copy of the Agreement and all Schedules for your records.</u>

SCHEDULE B

I, BLANCA H, ALULEMA                                          , an independent
vendor, under contract with SDS, elect to rent the equipment specifically identified
below from SDS. I acknowledge receipt of the following equipment and agree to a
deduction from my Settlement Payment for the associated rental, and (if applicable)
airtime costs. I understand that I am solely responsible for the equipment and will be
held accountable should it be lost or stolen. I understand that I am solely responsible
for the cost of repair or replacement if the equipment is broken beyond repair due to my
fault or the fault of any individual I employ or with whom I subcontract. I understand
that I will not be charged for the use of equipment that is inoperable through no fault of
mine or no fault of any individual I employ or to whom I subcontract, provided I give
prompt written notice that the equipment is inoperable and immediately return the
equipment.

Further, I understand that should termination of the Agreement occur, for any reason,
I will be expected to immediately return said equipment. If I neglect to return the
equipment, the amount necessary to replace the equipment will be due within ten (10)
days of the termination date. If I do not reimburse SDS in full for said equipment, I
understand that all replacement costs will and may, if necessary, be deducted from a
final Settlement Payment.

[EQUIPMENT VENDOR ELECTS TO RENT]

| Scanner Model | | | |
|---|---|---|---|
| Replacement Cost Scanner | | Weekly rental (hardware and software) | $18 |
| Serial Number (original) | | Weekly Air time (if applicable) | $8 |
| Replacement cost car charger | $50 | Repair unit (screen) | $250 |
| Replacement cost Holster | $25 | Repair unit (other) | $350 |
| | | | |

| | | | |
|---|---|---|---|
| Vendor Signature: | *BLANCA H ALULEMA* | Date: | 7/21/2014 |
| SDS Representative: | DY McKinl | Date: | 7/21/2014 |

### Schedule C
## CONTROLLED SUBSTANCE AND ALCOHOL
## TEST CONSENT AND ACKNOWLEDGMENT FOR INDEPENDENT VENDORS

I understand that because I am engaged as an independent vendor in providing transportation services, I am involved in a safety sensitive business that puts the public at risk. As such, pursuant to law, as a condition of contractual engagement, I must voluntarily consent to and satisfactorily complete urine-screening tests to determine the presence of certain controlled substances and/or a breath, saliva, and/or blood alcohol test to determine the presence of alcohol. I further understand that all provisions of this policy apply to any and all of my own employees and/or subcontractors who operate on behalf of SDS pursuant to the Agreement.

I further understand that I must voluntarily consent to unannounced searches and inspections of myself, my clothing, vehicle (owned, non-owned, or leased vehicle), and any package, purse, briefcase, toolbox, lunch box, or other container utilized by myself or my Vendor Support Personnel pursuant to the Agreement as an independent vendor for the purpose of enforcing this policy.

As a candidate for contractual engagement, I understand that the presence of one or more of such controlled substances or alcohol will disqualify me from further consideration for contractual engagement.

As an incumbent independent contractor, I understand that because the safety of the public is involved, the Company has adopted a "zero tolerance" policy and that failing a test for controlled substances and/or excessive alcohol will result in immediate termination of my contract. I also agree that the Company cannot force me or my drivers to undergo a drug and/or alcohol test. I agree, *however*, that, because of the safety sensitive nature of my business and the services I am rendering, the Company and Customer will be forced to treat my refusal to undergo a reasonable suspicion and/or accident related drug and/or alcohol test as a "presumed positive" test result and terminate my services and/or service contract.

I certify and acknowledge that I have received, read (or have had read to me), the Driver Awareness Package, this form, and the SDS Substance Abuse Policy (and the related DOT Substance Abuse Policy, if applicable), and that I understand these policies to be a condition of my contractual relationship. I agree to the release of information obtained through medical inquiries or substance screen tests by the medical examiner(s) to SDS and all related entities or its representatives or its Customers on a "need to know" basis.

I hereby agree to pay directly or authorize the Company to deduct from my settlement, the costs of any pre- engagement tests, periodic tests and re-engagement follow-up tests administered pursuant to this policy.

I also hereby authorize the Company to conduct through its designated medical examiner(s), a substance abuse screening test(s) and I release the clinic/physician and related entities, their directors, employees and agents from all legal responsibility related to providing the information obtained through the medical inquiries or screening test to the Company, its Customers or other authorized entities.

*BLANCA H ALULEMA*
DF0V50SAAC540SA844950014FB7IFAS
_____
Vendor Signature

REDACTED
_____
Social Security Number

D. Y. M Kennel
_____
Authorized SDS Signature

7/21/2014
_____
Date Signed

Vendor Agreement 2012 Master