

Hugh Baran<br>Hugh@KakalecLaw.com

March 30, 2022

**Via ECF**
Hon. Edgardo Ramos, United States District Judge
United States District Court for the Southern District of New York
40 Foley Square, New York, NY 10007

    Re:    *Zambrano, et al. v. Strategic Delivery Solutions, et al.*, No. 15-cv-8410 (ER)

Dear Judge Ramos,

    My office, along with Make the Road New York, represents Plaintiffs Blanca Alulema, Maria Tacoaman, Darwin Ronquillo, Marcos Paucar, and Alexandra Robalino in the above-referenced matter. We write to briefly respond to Defendants' pre-motion letter seeking permission to file a motion to compel discovery, and to Defendants' response to our pre-motion letter seeking permission to move for a protective order. This matter is scheduled for a conference with Your Honor on April 6, 2022.

    Defendants state that they "have not inquired into personal issues such as immigration status, nor do they intend to." Defs.' Pre-Mot. Ltr., ECF No. 160, at 2. Defendants represent that they merely made "queries into Plaintiff's background" at Ms. Tacoaman's deposition. *Id.* at 1. Similarly, Defendants represent that they simply made "preliminary inquiries" including "queries relevant to the issue regarding the formation of the Agreements" at Ms. Alulema's deposition. *Id.*

    But Defendants' assertion that their inquiries did not concern immigration status is flatly contradicted by the deposition transcripts, which show that Defendants asked both direct and indirect questions that concern immigration status. Mr. Jasinski, counsel for Defendants, directly asked Ms. Tacoaman: "Are you a citizen of the United States?" Tacoaman Dep. at 6 (excerpt attached). Shortly after I objected and instructed Ms. Tacoaman not to answer Mr. Jasinski's question, Mr. Jasinski asked Ms. Tacoaman: "When did you start paying taxes in the United States?" *Id.* at 7. After I objected and instructed Ms. Tacoaman not to answer, and some back and forth, Mr. Jasinski asked Ms. Tacoaman: "When did you start working in the United States?" *Id.* at 11.

    At the deposition of Ms. Alulema, Mr. Jasinski asked: "Ms. Alulema, where were you born?" Alulema Dep. at 20 (excerpt attached). After I objected and instructed Ms. Alulema not to answer, and counsel discussed the issue, Mr. Jasinski asked: "Okay, Ms. Alulema, when did you come to the United States?" *Id.* at 26.

    Defendants insist their only real concern is our clients' "education and background" and "familiarity with business arrangements similar to those they had with Defendants," suggesting that this is relevant to Defendants' defense because "Plaintiffs intend to argue that they either had a lack of knowledge or inability to understand the enrollment process, the terms of the Agreements,

and the arbitration provisions." Defs.' Pre-Mot. Ltr. at 2. While Plaintiffs Alulema and Tacoaman disagree with Defendants' characterization of their anticipated substantive arguments about formation, we note that Plaintiffs' counsel did not object to questions as to education level, language comprehension, and how Ms. Tacoaman came to work at SDS during the depositions. *See, e.g.*, Tacoaman Dep. at 6 (question about education level); *id.* at 13 (discussing how Ms. Tacoaman learned of the job at SDS while working in a previous delivery role); Alulema Dep. at 19 (exploring whether Ms. Alulema spoke English while speaking with attorneys). What Plaintiffs do object to is inquiry into "education and background" that entails asking Plaintiffs questions directly or indirectly related to immigration status, for all the reasons set forth in Plaintiffs' pre-motion letter.

Today, in the same breath as Defendants deny their interest in Plaintiffs' immigration status, they cite a single case to argue that such inquiries are, in fact, permissible. *See* Defs.' Resp. to Pls.' Pre-Mot. Ltr., ECF No. 162. But that case is against the overwhelming weight of opinion among courts in this Circuit which have held that questions about immigration status are improper in Fair Labor Standards Act and New York Labor Law actions. *See* Pls.' Pre-Mot. Ltr., ECF No. 159, at 2 n.3–4 (collecting cases).

We thank the Court for its attention to this matter and look forward to discussing these issues further at the April 6, 2022 pre-motion conference.

Respectfully submitted,

*/s/ Hugh Baran*

Hugh Baran (he/him)
Counsel for Plaintiffs Blanca
Alulema, Maria Tacoaman, Darwin
Ronquillo, Marcos Paucar, &
Alexandra Robalino

cc:     All counsel by ECF

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF NEW YORK
 2              CASE NO. 15-cv-8410 (ER)

 3

        X--------------------------   X
 4
        CHRISTIAN ZAMBRANO, LUZ
 5      DURANGO, MOIRA RIVEROS, on          CIVIL ACTION
        behalf of themselves and all         DEPOSITION
 6      others similarly situated,              OF:

 7                  Plaintiffs,              MARIA
                                             TACOAMAN
 8              v.

 9      STRATEGIC DELIVERY SERVICES,
        LLC, DAVID KRONICK, ANDREW
10      KRONICK, and MIKE RUCCIO,

11                  Defendants.

12      X--------------------------
                                             X
13
```

14     T R A N S C R I P T   of the stenographic notes

15  of the proceedings in the above-entitled matter as

16  taken by and before CARMEN WOLFE, a Certified Court

17  Reporter and Notary Public of New Jersey, AS ALL

18  PARTIES AGREE TO CONNECT REMOTELY THROUGH ZOOM, on

19  Friday, March 11, 2022 commencing at 10:10 in

20  the forenoon.

21

22              QUICK COURT REPORTING, LLC
                     47 BRIAN ROAD
23         WEST CALDWELL, NEW JERSEY   07006
                     (973)618-0872
24            office@quickreporters.com

25

 1      Q.      Are you under any medication today that
 2   will in any way prevent you from participating in this
 3   deposition?
 4   A.      No.  I don't take any medications.
 5              MR. JASINSKI:  Now, for the record, Mr.
 6   Baran, can you tell us who's in the room today with Ms.
 7   Tacoaman?
 8              MR. BARAN:  Yes.  For the record, I am
 9   here, Hugh Baran, B-A-R-A-N, representing Ms. Tacoaman.
10   Also in the room is Tricia Kakalec representing Ms.
11   Tacoaman, and Nicole Sanchez from Make The Road New
12   York, a paralegal, which is another firm -- Make The
13   Road is also representing Ms. Tacoaman.
14      Q.      Ms. Tacoaman, do you have any documents
15   in front of you right now?
16   A.      No.  I have nothing.  No.
17      Q.      Do you have your cell phone in front of
18   you?
19   A.      No.
20      Q.      Ms. Tacoaman, can you tell me your
21   education, please?
22   A.      I only reach fifth grade.
23      Q.      Are you a citizen of the United States?
24              MR. BARAN:  Objection whether it's
25   relevant.

1          MR. JASINSKI:  It's going to the issue.
2  First of all, I just want to say when you conducted
3  these depositions of the witnesses you asked many
4  questions that had no bearing with regards to the
5  things.  It was preliminary questions and I allowed it
6  to be answered.  I would just accept -- I would expect
7  the same consideration.  I'm not going to dwell on
8  personal aspects.  The fact is Ms. Tacoaman a citizen
9  of the United I think is relevant.
10         MR. BARAN:  I'm going to instruct Ms.
11 Tacoaman not to answer the question.
12         MR. JASINSKI:  Okay.  Why?
13         MR. BARAN:  Because it is not relevant
14 to the subject matter of this deposition.
15    Q.    Ms. Tacoaman, do you pay taxes in the
16 United States?
17 A.    Yes.
18    Q.    When did you start paying taxes in the
19 United States?
20         MR. BARAN:  Objection.  I'm going to
21 instruct the witness not to answer that question.
22         MR. JASINSKI:  Why?
23         MR. BARAN:  Because it's not relevant to
24 this deposition.
25         MR. JASINSKI:  It is surely relevant to

1    the issues in this particular proceeding.  It's issues
2    relevant to the allegations that you're making.  It's
3    also relevant to the -- don't shake your head.  Let me
4    finish, please.  It's also relevant to the defenses
5    that the defendant is raising in this particular
6    matter.  I'm going to go on with the deposition, but
7    you're already establishing yourself being an
8    obstructionist.  And from my perspective, if we've got
9    to come back again we will, but -- maybe I was asking
10   too much, but when you conducted the deposition you
11   went into areas that had absolutely no relevance in
12   this particular matter, but I allowed it to go forward.
13   I would just ask for the same consideration.  If you
14   don't want to give it, you don't have to.  We'll just
15   come back again.  You're directing the witness not to
16   answer that particular question?
17            MR. BARAN:  Yes.  And I'm just going to
18   state for the record that this deposition is limited to
19   matters concerning the formation of alleged agreements
20   to arbitrate between Ms. Tacoaman and your client, SDS.
21   That is the subject matter of this deposition.  Any
22   questions outside of that subject area are beyond the
23   scope of this deposition and beyond the scope of the
24   Court ordered discovery.  And I'm instructing the
25   witness not to answer questions that are not related to

1   the subject matter of this deposition because that is a
2   limitation that's been imposed by the Court; and I'm
3   enforcing that limitation.  Matters going to her
4   citizenship status or tax paying status have nothing to
5   do with that subject matter, and I'm not going to let
6   her answer those questions.
7              MR. JASINSKI:  You spent hours in your
8   depositions, in the first two depositions.  You asked
9   one of the witnesses, Ms. Starling, whether she had a
10  sister that worked for SDS.  That had no bearing with
11  regards to any of the limitations that you're now
12  trying to present on me.  With regards to Mr. Kronick,
13  you went into the operations of SDS which had nothing
14  with regards to the limitations.  I allowed you to do
15  that.  I had no objections which allowed you to do
16  that.  You exceeded the Court Order that you are now
17  trying to impose on me.  If you want to continue to do
18  that we will, and I will go to the Court with regards
19  to this because you yourself decided to exceed it.  So,
20  you're playing games.  You're being, very, very sneaky
21  with regards to the questions that you ask.  You spent
22  hours with Mr. Kronick having nothing to do with the
23  limitations that you're now trying to present on me.
24  So, if you want to you can do that, but I do intend to
25  go to the Court because it is -- I'm going to be

1  polite.  It is simply unconscionable that you are now
2  trying to present to me that I'm limited with regards
3  to things when you wreaked havoc over that limitation
4  with regards to the questions that you posed with
5  regards to Ms. Starling as well as Mr. Kronick.
6            MR. BARAN:  And I'm just going to state
7  for the record that from my recollection of the
8  testimony with Ms. -- concerning Ms. Starling, her
9  sister, there were documents that explicitly were --
10 that were in the record provided by defendants that
11 were related to her sister, that her sister was named
12 in those documents.  So that was squarely within the
13 scope of discovery.  I'm not sure what you're referring
14 to with respect to Mr. Kronick's deposition, but I
15 would just state I hear you.
16           MR. JASINSKI:  I suggest you read it.
17           MR. BARAN:  I hear you.  And we are, you
18 know, we are simply going to enforce the limitation
19 that the Court has provided.  And again, questions --
20           MR. JASINSKI:  You did not -- you did
21 not follow that.
22           MR. BARAN:  You had the right to object
23 to those questions.  And, in fact, you did on numerous
24 occasions object and limit the deposition testimony to
25 areas that were within the scope.  Sometimes if you

1  chose not to do that, that is not -- does not somehow
2  constitute a waiver of our rights with respect to the
3  limitations imposed by the Court.  If you want to go to
4  the judge we will take it up with him.
5              MR. JASINSKI:  We will.
6     Q.      I'm going to ask again, Ms. Tacoaman.
7  When did you start working in the United States?
8              MR. BARAN:  Objection.  It's not
9  relevant to the scope of this.
10             MR. JASINSKI:  It's definitely relevant
11 to the issues that are before the Court in this
12 particular proceeding.  It has to do -- you can
13 instruct her.  I'm going to put it on the record.  You
14 are prohibiting me from properly presenting and
15 creating my defenses as to the issues that are before
16 us in this particular proceeding.  Because if I
17 understand what you're saying, it is we're being
18 prejudiced by your limitations with regards to the
19 issues that are before you.  These are very preliminary
20 questions which we're allowed to ask.
21             MR. BARAN:  Okay.  I'm going to instruct
22 the witness not to answer that question and state,
23 again, for the record that this deposition -- this
24 deposition is limited to areas concerning the formation
25 of alleged agreements to arbitrate between Ms. Tacoaman

1   and your client, SDS.  There will be other

2   opportunities for deposition testimony should this case

3   proceed in the court in which defendants will have

4   every right to ask questions concerning their

5   substantive defenses to the underlying claims in this

6   case.

7               MR. JASINSKI:  I suggest you look at --

8   I suggest you look at what the issues are that are

9   before us in this particular proceeding.  And the

10  enforceability of the arbitration clause is an issue.

11  And the arguments that we've raised, you're preventing

12  us from pursuing those particular arguments.

13              MR. BARAN:  I will state, again, for the

14  record that I don't see how when Ms. Tacoaman began

15  working in this country or her immigration or

16  citizenship status has anything to do with the

17  formation of alleged agreements to arbitrate or to the

18  extent that it is part of this discovery or relevant to

19  this discovery and the enforceability of those

20  agreements.

21      Q.     Ms. Tacoaman, what did you do for SDS?

22              THE INTERPRETER:  I'm sorry, Counsel.  I

23  couldn't hear that.

24              MR. JASINSKI:  That's okay, sir.

25      Q.     Ms. Tacoaman, what did you do for SDS?

1  A.    Delivery of medications.
2       Q.     What type of medications did you
3  deliver?
4  A.    Well, we don't know what the contents of it are
5  because they come sealed, but we deliver to pharmacies.
6       Q.     And when did you start providing
7  delivery services for SDS?
8  A.    2011.
9       Q.     And how did you hear of SDS?
10 A.    I heard that there was work available there, and
11 I went to apply.
12      Q.     Who did you hear it from?
13 A.    Some friends that were talking about it there.
14      Q.     Who were the friends?
15 A.    I made deliveries.  So, there was a person there
16 saying that there was work available there, and I went
17 to apply.
18      Q.     When you say you made deliveries what
19 deliveries were you making?
20 A.    Newspapers.
21      Q.     And you were not delivering newspapers
22 for SDS.  Is that correct?
23 A.    No.
24      Q.     It was another company.  Correct?
25 A.    Yes.  It's another company.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Index No. 15-cv-08410

```
CHRISTIAN ZAMBRANO, LUZ         :
DURANGO, MOIRA RIVEROS and      :
RIGOBERTO ROMERO, on behalf     :      REMOTE
of themselves and all           :
others similarly situated,      :   DEPOSITION OF:
                                :
        Plaintiffs,             :   BLANCA ALULEMA
                                :
    - vs -                      :
                                :
STRATEGIC DELIVERY SOLUTIONS,   :
LLC, DAVID KRONICK, ANDREW      :
KRONICK and MIKE RUCCIO,        :
                                :
        Defendants.             :
- - - - - - - - - - - - - - - -
```

T R A N S C R I P T  of the stenographic notes of the proceedings in the above-entitled matter, as taken by and before LEIGH ANN COLEMAN, a Notary Public and Certified Court Reporter of The State of New Jersey, License No. XI01473, held via Zoom on Friday, March 25, 2022, commencing at 10:07 a.m.

QUICK COURT REPORTING, LLC
47 BRIAN ROAD
WEST CALDWELL, NEW JERSEY  07006
(973) 618-0872
office@quickreporters.com

19

1  Q.  And who participated in this Zoom
2  meeting yesterday for one hour?
3  A.  My lawyer.
4  Q.  And your lawyer's name?
5  A.  Hugh.
6  Q.  Anyone else besides Hugh?
7  A.  I don't know. I don't remember the
8  name of the person who's here, the lady.
9  Q.  Are we talking about Tricia?
10 A.  Yes.
11 Q.  And besides Hugh and Tricia was there
12 anyone else?
13 A.  No.
14 Q.  So there were a total of three
15 people: Yourself, Hugh and Tricia. Is that
16 correct?
17 A.  Yes.
18 Q.  There was no translator that was in
19 that conversation. Correct?
20 A.  Well, Patricia is the one who
21 translated for me.
22 Q.  Did you speak any English during this
23 conversation or during this Zoom meeting that you
24 had with you and Tricia?
25 A.  No.

20

1  Q.  Did you review any documents
2  yesterday?
3  A.  No.
4  Q.  Do you understand what I meant by the
5  word "documents"?
6  A.  Documents means papers. Yeah, I had
7  no papers.
8  Q.  Ms. Alulema, where were you born?
9     MR. BARAN: Objection. This question
10 is beyond the scope of this deposition, which is
11 only concerning issues related to the formation of
12 alleged agreements to arbitrate between your client
13 and Ms. Alulema.
14    In addition, it's well settled that
15 questions about citizenship status are not relevant
16 in these cases at all and are not appropriate, so
17 I'm going to object and instruct my client not to
18 answer the question.
19    MR. JASINSKI: I didn't ask about
20 citizenship. I asked about where she was born.
21 It's going to our defense.
22    MR. BARAN: It --
23    MR. JASINSKI: Let me finish.
24    MR. BARAN: Go ahead.
25    MR. JASINSKI: It's going to our

21

1  defense in this particular case, and I haven't done
2  anything with regards to it because I wanted to wait
3  until after I completed this deposition. You're
4  preventing us from properly presenting what we
5  believe in this case. I asked her where she was
6  born. I didn't ask with regards to citizenship so
7  you can direct her not to answer, but you are
8  preventing us from being able to establish what we
9  believe was a legitimate defense in this case.
10    MR. BARAN: This deposition is not
11 concerning the merits. This period of discovery
12 does not involve the merits of either parties'
13 claims or defenses in this case. It is limited to
14 the question of whether there were valid arbitration
15 agreements formed between your client and my clients
16 so --
17    MR. JASINSKI: Yes --
18    MR. BARAN: -- pursuant to Rule 30c2
19 I am enforcing the limitation on discovery that has
20 imposed by the court.
21    In addition, it is not an appropriate
22 question even if we were in the merit stage of this
23 case.
24    MR. JASINSKI: It's not having to do
25 with the merits. It has to do with our defense in

22

1  this particular case as it relates --
2     MR. BARAN: Well, your defense --
3     MR. JASINSKI: You have a bad habit
4  of interrupting.
5     MR. BARAN: I apologize for
6  interrupting. Please continue.
7     MR. JASINSKI: I ask you to just
8  please, I know I sometimes have pregnant pauses, but
9  most of the time I try to continue with regards to
10 it so can you please just not interrupt.
11    It goes to our defense with regards
12 to the arbitration clause in this particular -- in
13 this particular issue so I just don't understand
14 where -- I'm not going into the merits of the case
15 as it relates to whether or not the
16 misclassification aspect of it. I'm dealing with it
17 with regards to the arbitration, and the core issue
18 with regards to the arbitration is the agreement
19 itself, and I think I understand what you're trying
20 to argue, but you're not giving us the opportunity
21 in order to put our defense on this case. It's --
22    MR. BARAN: How is where our client
23 was born relevant to whether there were valid
24 arbitration --
25    MR. JASINSKI: I'm going to ask the

23

1  witness to leave so I don't have an argument that
2  will --
3      MR. BARAN:  We will.  So we're going
4  to...
5      (The witness leaves the room.)
6      MR. BARAN:  Do you want to stay on
7  the record, or do you want to go off the record?
8      MR. JASINSKI:  Yes, I do want to stay
9  on the record.
10     MR. BARAN:  Okay.  So she's not
11 answering that question.  You can make an
12 application to the court if you want, but she's not
13 answering that question.
14     MR. JASINSKI:  Well, if we're going
15 to have these particular problems with regards to
16 our -- what we believe our defense of the
17 arbitration -- you know what, I heard Cristobal say
18 is that, well, she has no knowledge, she's not
19 particularly bright, she --
20     MR. BARAN:  Yep.
21     MR. JASINSKI:  -- you know, she
22 doesn't know what conversations.  I mean, and that's
23 going to be your argument with regards to the
24 agreement itself.  I mean, you've already said that
25 it was an electronic transmission, she didn't know

24

1  what she was signing.  You know, you've said with
2  regards to, well, they don't understand the English
3  language with regards to this, and I believe that we
4  have the right to probe with regards to that, to
5  present a contrary view.  So, you know, while I
6  didn't ask with regards to citizenship, I didn't
7  particularly -- I don't particularly care, you know,
8  with regards to citizenship.  She's been paying
9  taxes so I'm guessing she is a citizen, at some
10 point in time that she obtained her citizenship, so
11 I don't understand this knee-jerk reaction
12 concerning it.  It goes to our ability to argue the
13 contrary position that you're raising, and you take
14 a position, you take a very narrow position with
15 regard -- it's not the arbitration clause.  It's the
16 agreement itself that you're -- you can't just parse
17 out the arbitration clause.  It's the totality of
18 the contract itself and the circumstances
19 surrounding that particular contract.  I didn't
20 intend to go into the merits of whether or not it
21 was that there's misclassification and whether or
22 not that there is a proper class certification of a
23 class.  So I just don't understand this myopic view
24 that you have taken in this because we are being
25 prejudiced with regards to this particular issue.

25

1  So, again, we spent more time with regards to
2  arguing this than we do in terms of the questions
3  that are going to be asked because this could be a
4  fairly easy, straightforward deposition.  It's not
5  turning out that way, but this could be.  So if the
6  three of you want to talk about this and let me know
7  with this, I'm not going into a full blown
8  deposition.  It's very narrow as it relates to the
9  IC agreement itself, and within the IC agreement
10 there's the arbitration clause, but also within the
11 IC agreement are the circumstances around Ms.
12 Alulema and her company, Alulema Delivery Solutions.
13     I'm done.  I'm done.
14     MR. BARAN:  Respectfully, I don't
15 think we're taking a myopic position.  We made it
16 clear last time that questions related to place of
17 birth, citizenship status, etc. are not going to be
18 addressed.  We had a conversation on the record
19 about that in the last deposition.  You could have
20 gone to the judge about that.  You did not.  You
21 still proceeded with this deposition.  You can make
22 an application now to the court if you want, but
23 she's not answering that question.  You are free to
24 ask questions regarding her knowledge of the English
25 language.  I would agree with you that those types

26

1  of questions are fair, but the place someone is born
2  is not relevant to whether -- to that and --
3      MR. JASINSKI:  It was a preliminary
4  question.  I mean, you know, I -- fine.  I'll pull
5  out, when we break, I'll pull out the court order,
6  and I did it last time, and the questions that I am
7  asking, I have no interest in the personal life of
8  Blanca Alulema.  I do have questions as it relates
9  to the issues in our defense in this particular
10 case.  That's all I'm trying to do.  So let's just
11 continue on because right now it's 10:45.  We
12 started a couple minutes late, but basically we've
13 accomplished nothing other than that I've heard a
14 lot of objections with regards to what I think are
15 very harmless questions so let's bring her back in.
16     (The witness returns to the room.)
17     MR. BARAN:  We're ready to proceed.
18 Q.   Okay.  Ms. Alulema, when did you come
19 to the United States?
20     MR. BARAN:  Objection.
21 Q.   What year --
22     MR. JASINSKI:  I just -- Ms. Alulema,
23 please leave.
24     (The witness leaves the room.)
25     MR. JASINSKI:  We're going to adjourn

27

1  the deposition today.  I'm not going to go forward,
2  but I will ask that -- and I'm going to -- I'm going
3  to make this application that Mr. Baran has invited
4  me to make with regards to this because I think this
5  is all silly.  This is silly stuff that we're
6  dealing with.  You're making allegations with
7  regards to this.  It's very silly.  These were very
8  preliminary questions with regards to this.  Her
9  citizenship isn't even an issue because she's paid
10 taxes.
11             MR. BARAN:  Then why are you asking
12 questions --
13             MR. JASINSKI:  Because it goes to our
14 defense in this case.  I'm going to adjourn it
15 because that's the only way that I think that we're
16 going to get forward with regards to this.  I'm
17 going to adjourn it and make this application that
18 Mr. Baran has invited us to make.  So I'm going to
19 adjourn the deposition today, and we'll make the
20 application, and then we'll --
21             MR. BARAN:  Why don't we --
22             MR. JASINSKI:  No, no, no, no, no.
23 That's what we're going --
24             MR. BARAN:  Why don't we call the
25 court now?

28

1             MR. JASINSKI:  No, I want to put
2  something in writing with regards.
3             MR. BARAN:  Respectfully --
4             MR. JASINSKI:  Mr. Baran, Mr. Baran,
5  this isn't your deposition.
6             MR. BARAN:  But respectfully --
7             MR. JASINSKI:  This is my deposition.
8  Again, you're talking over me, and I would just
9  appreciate that you not do it.
10            So we're going to adjourn the
11 deposition.  I'm going to make an application to the
12 court, and let the court decide how they want to do
13 it because this is really silly so, and if I'm
14 wrong, I'm wrong with regards to this.
15            MR. BARAN:  Respectfully, you had the
16 opportunity to make this application before the
17 deposition.  We had the same exact conversation and
18 dispute at the last deposition.  You had the
19 opportunity to make this application.  You did not
20 do so.
21            MR. JASINSKI:  Right.  I'm not
22 waiving any -- and, frankly, the first day of the
23 deposition you went well beyond questions with
24 regards to the arbitration so I'm going to make the
25 application.  I'll bring it up to the court.  Let

29

1  the court decide how they want to do it.  If I'm
2  wrong, I'm wrong with regards to it, but that's what
3  we're going to do today.  Okay?
4             MR. BARAN:  All right.  I
5  respectfully say --
6             MR. JASINSKI:  We will submit this.
7  We'll submit this application, and we're going to
8  bring it to the court's attention.  I don't want to
9  verbalize it.  I want to put it in writing, and
10 that's how I think they should proceed.  Okay?
11            MR. BARAN:  Okay.  I'm just going to,
12 pursuant to the rules, reserve our right to review
13 the transcript and make any corrections that are
14 needed.
15            MR. JASINSKI:  There's nothing in
16 this transcript that warrants any corrections.
17            MR. BARAN:  I am still reserving our
18 right to do that under the --
19            MR. JASINSKI:  I get it.  I get it.
20            Okay.  Thank you, everyone.  We'll be
21 in touch.
22            (Whereupon, the proceeding is
23      adjourned at 10:47 a.m.)

30

1              C E R T I F I C A T E
2      I, LEIGH ANN COLEMAN, a Notary Public and
3  Certified Court Reporter of the State of New Jersey,
4  do hereby certify that prior to the commencement of
5  the examination the witness was duly sworn by me
6  to testify the truth, the whole truth, and nothing
7  but the truth.
8      I DO FURTHER CERTIFY that the foregoing is a
9  true and accurate transcript of the testimony as
10 taken by and before me at the time, place and on the
11 date herein before set forth.
12     I DO FURTHER CERTIFY that I am neither a
13 relative nor employee nor attorney nor counsel of any
14 of the parties to this action, and that I am neither a
15 relative nor employee of such attorney or counsel,
16 and that I am not financially interested in the
17 action.
18
19          /s/ Leigh Ann Coleman, CCR
20          Notary Public of New Jersey
21          My Commission Expires:  12/11/2026
22          License Number:  XI01473
23
24
25 Dated:   3/29/22

31

ERRATA SHEET

Case Name:

Witness Name:

Date:

PAGE    LINE         CHANGE

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Sworn to and subscribed before me

on this\_\_\_\_\_day of_____2014.

_____

Notary Public

32

I have read the foregoing and the same is true and correct to the best of my knowledge.

_____

BLANCA ALULEMA

Signed and subscribed to before me
_____
this\_\_\_\_\_day of _____.