UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTIAN ZAMBRANO, LUZ DURANGO, MOIRA RIVEROS, and RIGOBERTO ROMERO, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

- against -

STRATEGIC DELIVERY SOLUTIONS, LLC, DAVID KRONICK, ANDREW KRONICK, and MIKE RUCCIO,

Defendants.

**OPINION AND ORDER**
15 Civ. 8410 (ER)

Ramos, D.J.:

Christian Zambrano, Luz Durango, Moira Riveros, and Rigoberto Romero ("Lead Plaintiffs") bring this putative collective and class action against Strategic Delivery Solutions, LLC ("SDS"), David Kronick, Andrew Kronick, and Mike Ruccio (collectively, "Defendants"), alleging that Defendants improperly classified them as independent contractors and denied them wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law. Between March and April of 2016, twenty-three other plaintiffs opted into the litigation. *See* Docs. 36–59. Presently, Plaintiffs Blanca Alulema and Maria Tacoaman ("Moving Plaintiffs") petition this Court to: (1) conditionally certify a collective action under the FLSA, 29 U.S.C. § 216(b); (2) equitably toll the statute of limitations for the period in which the case was stayed; (3) order disclosure of contact information of similarly situated individuals; and (4) approve notice to be sent to those similarly situated. For the reasons stated below, Moving Plaintiffs' motion is GRANTED in part, and the Court withholds adjudication on Moving Plaintiff's proposed notice, *see* Doc. 142-2.

## I. Factual Background

The Court assumes familiarity with the facts and procedural posture of this action, as previously set forth in its September 28, 2021 Order, *see Zambrano v. Strategic Delivery Sols., LLC (Zambrano III)*, No. 15 Civ. 8410 (ER), 2021 WL 4460632, at *1–5 (S.D.N.Y. Sept. 28, 2021), Doc. 116. As such, the Court will summarize only the facts necessary to resolve this motion.

From 2010 to 2020, *see* Doc. 128 at 3,[1] Tacoaman and Alulema were delivery drivers for SDS, a company that delivers pharmaceutical products to pharmacies and other entities in New York and New Jersey, Doc. 122 ¶ 114, the First Amended Complaint. SDS operates facilities in Elizabeth (New Jersey), Farmingdale (New York), Brooklyn, the Bronx, and other locations.[2] *See* Doc. 129-1 ¶¶ 6, 9, 12, Nov. 18, 2021 Affirmation of Blanca Alulema in Support of Mot. For Conditional Cert; *see also* Doc. 129-2 ¶¶ 5, 8, 11, Nov. 18, 2021 Affirmation of Maria Tacoaman in Support of Mot. For Conditional Cert. Defendant David Kronick is an owner and chief executive officer of SDS; Defendant Andrew Kronick is an owner and managing partner of SDS; and Defendant Mike Ruccio is the chief operating officer of SDS. Doc. 122 ¶¶ 7, 9, 11. Moving Plaintiffs allege that these individual defendants exercised sufficient control over the day-to-day operations of SDS to qualify as their employers. *Id.* ¶¶ 8, 10, 12, 159. According to Moving Plaintiffs, Defendants dictated the manner with which the drivers were to handle goods, required drivers to obtain a specific type of insurance coverage, set drivers' delivery routes, determined the order and timing of drivers' stops, and established per-stop compensation. *See id.* ¶¶ 120–

[1] Moving Plaintiffs note that the representation in the First Amended Complaint that Alulema was a delivery driver starting in 2014, Doc. 122 ¶ 63, is a typographical error. *See* Doc. 128 at 3 n.1. She actually started in 2010. *See* Doc. 129-3 ¶ 2, 2020 Alulema Affidavit.

[2] According to Defendant's opposition, the Elizabeth, New Jersey facility ceased operations in 2016. *See* Doc. 133 at 2–3.

141; Doc. 129-1 ¶¶ 15–16; Doc. 129-2 ¶¶ 14–15. Moving Plaintiffs therefore allege that Defendants unilaterally misclassified its delivery drivers as independent contractors.[3]

Over the course of their time with SDS, Moving Plaintiffs worked out of SDS's locations in Elizabeth and Farmingdale.[4] *See* Doc. 129-1 ¶¶ 6, 9; Doc. 129-2 ¶¶ 5, 8. Their duties involved making pharmaceutical deliveries in New Jersey and New York. *See* Doc. 129-1 ¶ 5; Doc. 129-2 ¶ 5. During their time at the Elizabeth facility, Moving Plaintiffs claim to have worked alongside more than fifty other delivery drivers who, like them, delivered products throughout New Jersey and New York. *See* Doc. 129-1 ¶¶ 6–7; Doc. 129-2 ¶¶ 6–7. During their time at Farmingdale, Moving Plaintiffs claim to have worked alongside approximately twenty other delivery drivers who made deliveries in New York. *See* Doc. 129-1 ¶¶ 10–11; Doc. 129-2 ¶¶ 9–10.

Moving Plaintiffs claim that, in general, they and the other delivery drivers were paid on a per-stop, as opposed to hourly, basis. *See* Doc. 129-1 ¶¶ 23–24; Doc. 129-2 ¶¶ 22–23. Moving Plaintiffs allege that they and the other delivery drivers often worked more than forty hours per week, *see* Doc. 129-1 ¶¶ 19–20; Doc. 129-2 ¶¶ 18–19, but were never paid overtime premiums for additional hours worked, *see* Doc. 129-1 ¶¶ 21–22; Doc. 129-2 ¶¶ 20–21. Moreover, SDS regularly made deductions from the weekly paychecks of Moving Plaintiffs, ranging from $75.63 to $90.75 per week, which included fees described as "cargo waiver," "manifest," and "CMS

---

[3] In their reply memorandum, Moving Plaintiffs ask the Court to take judicial notice of SDS's public website, which, in recruiting new drivers nationwide, refers to them as "independent contractors." *See* Doc. 142 at 7 n.6 (citing *Drive for Us*, SDSRX, https://www.sds-rx.com/drive-for-us/ (accessed Dec. 21, 2021) ("SDS-Rx is seeking independent contractors in various markets across our network.")). The Court takes judicial notice of the contents of SDS's website because the website is public, and its authenticity is not in question. *See* FED. R. EVID. 201(b); *23-34 94th St. Grocery Corp. v. N.Y.C. Bd. Of Health*, 685 F.3d 174, 183 n.7 (2d Cir. 2012) (taking judicial notice of content of website whose authenticity was not in question); *Force v. Facebook, Inc.*, 934 F.3d 53, 59 n.5 (2d Cir. 2019) (taking judicial notice of contents of Facebook's terms of service).

[4] According to Defendants' opposition, the Elizabeth, New Jersey facility closed in 2016. *See* Doc. 133 at 2–3.

Fee." *See* Doc. 129-1 ¶ 25; Doc. 129-2 ¶ 24. Other drivers making deliveries in New York and New Jersey were purportedly subject to similar deductions. *See* Doc. 129-1 ¶ 26; Doc. 129-2 ¶ 25; Doc. 122 ¶¶ 23–24, 35–36, 47–48. Moving Plaintiffs further contend that they and the other drivers were required to pay out-of-pocket for the necessary expenses of doing their jobs, including the cost of: the specific type of cars that Defendants required their drivers to use; a particular kind of car insurance required by Defendants; maintaining their cars; and gas, tolls, and parking tickets. *See* Doc. 129-1 ¶¶ 27–34; Doc. 129-2 ¶¶ 26–34; Doc. 122 ¶¶ 21–22, 33–34, 45–46, 57–58. SDS did not reimburse any of those expenses. *Id.*

As a result of SDS's pay practices, Moving Plaintiffs argue that they and the other New York and New Jersey drivers routinely received pay for overtime hours falling below the legally required overtime rate. *See* Doc. 129-1 ¶¶ 27–34, 39; Doc. 129-2 ¶¶ 26–34, 39; Doc. 122 ¶¶ 145–51, 154, 160–61. Named Plaintiffs, who made deliveries in New York's Bronx, Dutchess New York, Orange, and Westchester counties, also assert that the same common policy of misclassification and resulting FLSA violations affected them. Doc. 122 ¶¶ 18, 31, 43, 55.

## II. Procedural History

On October 26, 2015, Lead Plaintiffs initiated this action, on behalf of themselves and all others similarly situated, against Defendants. Doc. 1. On January 29, 2016, before any of the approximately twenty opt-in plaintiffs (the "Opt-in Plaintiffs") had joined this action, Defendants moved to dismiss the Complaint and compel arbitration with respect to Lead Plaintiffs. Doc. 21. On September 22, 2016, the Court granted Defendants' motion to compel arbitration and stayed the case. Doc. 64. Approximately four years later, on October 23, 2020, the Moving Plaintiffs moved to lift the stay and amend the Complaint to add claims under New York and New Jersey law, Doc. 106, which the Court granted in part and denied in part on September 28, 2021. *See generally* 2021 WL 4460632. Specifically, the Court found that "the existence of alleged arbitration agreements, not yet properly before the Court,

[did] not prevent Moving Plaintiffs from amending the Complaint and seeking to advance Litigation—even if Moving Plaintiffs [will] ultimately be required to arbitrate." 2021 WL 4460632 at *10. The Court also noted that the "weight of the law in this Circuit holds that a collective may be conditionally certified, and notice given, notwithstanding that some or all of the prospective members of the collective may have signed arbitration agreements." *Id.* (collecting cases). Between March and April of 2016, the Opt-in Plaintiffs joined the litigation. *See* Docs. 36–59.

On October 8, 2021, Moving Plaintiffs requested a pre-motion conference to seek permission to file the instant motion for conditional certification, *see* Doc. 120, which the Court granted. On October 19, 2021, Moving Plaintiffs filed an amended complaint, Doc. 122. On November 2, 2021, Defendants requested a pre-motion conference to seek leave to file a motion to dismiss and compel arbitration against Moving Plaintiffs, *see* Doc. 123, which Moving Plaintiffs opposed on November 3, 2021, arguing that the Court should instead permit them first to file a motion for conditional certification and to conduct limited discovery concerning the alleged formation of the arbitration provisions. Doc. 125. After a November 4, 2021 telephone conference with the parties, the Court granted Moving Plaintiffs' request, denying Defendants permission to file their proposed motion, and permitting limited discovery into the arbitration provisions.

Moving Plaintiffs now seek conditional certification of this action under the FLSA, pursuant to 29 U.S.C. § 216(b) for the following class of potential opt-in plaintiffs: "All current and former delivery drivers (or those in comparable roles with different titles) who worked and/or performed services for Strategic Delivery Solutions, LLC delivering pharmaceutical products to pharmacies and other locations in New York and/or New Jersey between September 2013 and the present" (the "Potential Opt-in Plaintiffs" or the "Proposed Class"). Doc. 128 at 1. Moving Plaintiffs also ask the Court to equitably toll the statute of limitations for the period in which this case was stayed (i.e., from September 23, 2016 until September 28, 2021) as to themselves and as to the Potential Opt-in Plaintiffs. Lastly, Moving

Plaintiffs ask that the Court approve the proposed notice. *See* Doc. 132-2.

## III. Discussion

### A. Conditional Certification of a FLSA Collective Action

For the foregoing reasons, the Court finds that the Moving Plaintiffs have made the requisite "modest factual showing" that individuals who delivered pharmaceutical products for SDS in New York or New Jersey between September 2013 and the present "together were victims of a common policy or plan that violated the law." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (internal quotation omitted). The Court therefore grants Moving Plaintiffs' motion for conditional certification.

#### i. Standard

Pursuant to the FLSA, an individual may file suit against an employer on behalf of himself and "other employees similarly situated" who give "consent in writing" to become party plaintiffs. 29 U.S.C. § 216(b). While the statute does not prescribe any particular procedures for approval of actions brought collectively by those who are "similarly situated," § 216(b) has been construed to grant authority to a district court to mandate that notice be given to potential plaintiffs informing them of the option to join the suit. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."). Unlike Rule 23 class actions, FLSA collective actions are opt-in. A person is not a party to the action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

"The Second Circuit has long recognized that FLSA cases should, if possible, be certified as collective actions in light of . . . 'the broad remedial purpose of the [FLSA], which should be given a liberal construction, as well as with the interests of the courts in avoiding a multiplicity of suits.'" *Slamna v. API Rest. Corp.*, No. 12 Civ. 757 (RWS), 2013 WL 3340290, at *1 (S.D.N.Y. July 2, 2013) (quoting *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336

(2d Cir. 1978)). The court has endorsed a two-step process for determining whether a court should certify a collective action under § 216(b). *See Myers*, 624 F.3d at 554–55; *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016). This process entails an analysis of whether prospective plaintiffs are "similarly situated" at two different stages: "an early 'notice stage,' and then again after discovery is largely complete." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (quoting *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009)).

At stage one—the step relevant here—the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555 (citations omitted). Conditional certification at this stage requires only a "modest factual showing" that named the plaintiffs and potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Id.* (quoting *Hoffmann v. Sbarro*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see also Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 446 (S.D.N.Y. 2013) (citing *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("The court's limited role at this stage is simply to determine whether the plaintiff has sufficiently alleged that [the plaintiff] and other employees were victims of a common compensation policy that violated the FLSA.")). When determining whether a matter shall proceed as a collective action, courts should be mindful of the remedial purpose of the FLSA, which should be given a liberal construction. *Braunstein*, 600 F.2d at 336; *accord Colon v. Majory Perry Street Corp.*, No. 12 Civ. 3788 (JPO), 2013 WL 3328223, at *4 (S.D.N.Y. July 2, 2013) ("[B]ecause the standard at the first stage is fairly lenient, courts applying it typically grant conditional certification.") (internal citations and quotation marks omitted).[5]

[5] At stage two, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. If the court concludes that they are not similarly situated, the action may be "de-certified," and "the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.* (citation omitted).

**ii. Application**

Moving Plaintiffs allege that during their employment at SDS, they—like all other drivers who also delivered pharmaceutical products for SDS in New York or New Jersey between September 2013 and the present—were subject to various pay policies that violate the FSLA. These practices include: (1) failing to pay overtime premiums for hours worked over 40 in a workweek; (2) making illegal deductions that reduced drivers' pay below the legally-required overtime or minimum wage; and (3) requiring drivers to make payments by separate transactions (i.e., to pay out-of-pocket expenses incurred for Defendants' benefit, which reduced drivers' pay below what is legally required). *See* Doc. 128 at 1–6; Doc. 142 at 8 n.7. According to Moving Plaintiffs, these FLSA-violating policies stem from the misclassification of the drivers as independent contractors, rather than employees. *See* Doc. 128 at 12; *see also* Doc. 129-1 ¶¶ 15–16; Doc. 129-2 ¶¶ 14–15; Doc. 122 ¶¶ 120–141 (explaining the control Defendants exercised over delivery drivers). They argue that because courts routinely grant conditional certification in analogous situations involving unilateral misclassifications alleged to violate the FLSA, the Court should do so here. Doc. 128 at 12 (citing *Spack v. Trans World Ent'mt Corp.*, No. 17 Civ. 1335 (TJM) (CFH), 2019 WL 192344, at *8–10 (N.D.N.Y. Jan. 15, 2019) (granting conditional certification of claim that plaintiffs and potential opt-ins were misclassified as overtime-exempt and thus not paid overtime premiums); *Martin v. Sprint/united Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at * (S.D.N.Y. Jan. 4, 2016) (granting conditional certification for class of workers who alleged they were misclassified as independent contractors and identified discrete pay practices that caused their wages to fall below statutory minimum and overtime wages); *see also Sbarro, Inc.*, 982 F. Supp. at 264.

In opposition, Defendants make two arguments. First, they assert that Moving Plaintiffs fail to establish that they are similarly situated to the drivers based out of Farmingdale and Elizabeth. Second, they argue that if the Court holds otherwise, the Court should nonetheless limit the certified class *only* to the drivers who operated out of those two locations—and not to the drivers who operated out of *any* SDS facility in New York and New Jersey, as Moving Plaintiffs request. *See* Doc. 133 at 4–12.

**1. The Farmingdale and Elizabeth Drivers**

In support of Defendants' first argument, they assert that Moving Plaintiffs provide insufficient evidence of (1) the work performed by the Farmingdale and Elizabeth drivers, and (2) for the proposition that SDS subjects all of its delivery drivers in Farmingdale and Elizabeth to the same pay policies. *See* Doc. 133 at 5. The Court rejects these arguments and finds that Moving Plaintiffs are similarly situated to the drivers based out of Farmingdale and Elizabeth.

With respect to their first point, Defendants contend that Moving Plaintiffs offer "extremely slim" evidence of the specific services performed by the delivery drivers with whom they worked in Farmingdale and Elizabeth. *See* Doc. 133 at 4–5 (citing *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 477, 480 (S.D.N.Y., Nov. 16, 2010) (requiring plaintiffs to show more than "extremely thin" evidence of plaintiffs' and the proposed class's similar job responsibilities)). Defendants argue that because Moving Plaintiffs worked by themselves—and for themselves—they have "no true idea what [the] other independent contractors d[id] or the work and method they utilize[d] to perform the work."[6] *Id.* at 6. Defendants also take issue with

[6] Defendants contend that many of the statements made by Moving Plaintiffs should not be credited because they are conclusory and constitute "hearsay." Courts, however, "do not resolve factual disputes . . . or make credibility determinations" at the conditional certification stage. *Lynch*, 491 F. Supp. 2d at 368. "[C]ourts in this Circuit regularly rely on [hearsay] evidence to determine the propriety of sending a collective action notice." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 664 (S.D.N.Y. 2013) (quoting *Moore v. Eagle Sanitation*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011)). Far from being suspect, hearsay evidence "is to be expected, since 'the initial class certification determination must be made on preliminary documents such as pleadings and affidavits, which necessarily contain

the fact that Moving Plaintiffs have not identified any of the supposedly similarly situated individuals by name. *Id*. at 4.

At this stage, to meet the "similarly situated" standard, Moving Plaintiffs "need not show that [they and their fellow drivers] held *identical* jobs[.]" *Lin v. Benihana Nat. Corp.*, 275 F.R.D. 165, 173 (S.D.N.Y. 2011) (emphasis added); *see* Doc. 142 at 2. Nor are Moving Plaintiffs "required to identify similarly situated employees by name to obtain conditional certification." *Elamrani v. Henry Limousine, Ltd.*, No. 15 Civ. 2050 (ERK) (MDG), 2016 WL 5477590, at *4 (E.D.N.Y. Sept. 28, 2016) (internal quotation marks and citations omitted); *Hernandez v. Immortal Rise, Inc.*, No. 11 Civ. 4360 (RRM) (LB), 2012 WL 4369746, at *4 (E.D.N.Y. Sept. 24, 2012). They need only make a modest showing of common job responsibilities, which they have done. Courts in this circuit have held that "firsthand observations" of occupational duties suffice to establish "an approximate class of similarly situated individuals" for purposes of conditional certification. *See Hernandez*, 2012 WL 4369746, at *4. The affidavits submitted by the Moving Plaintiffs plainly state that they witnessed the work activities of approximately seventy other SDS delivery drivers between 2010 and 2020 in Elizabeth and Farmingdale and had conversations with many of those individuals. The Court considers this firsthand experience sufficient to show that Moving Plaintiffs and the Farmingdale and Elizabeth drivers shared common work responsibilities.

Defendants also argue that because Moving Plaintiffs fail to establish that they and Farmingdale and Elizabeth drivers were subject to the same SDS policies, the Court cannot find

---

unproven allegations.'" *Id.* (quoting *Fasanelli v. Heartland Brewery, Inc. and Bloostein*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007)). While it may well be the case that plaintiffs seeking class certification cannot rely *exclusively* on "limited anecdotal hearsay" as Defendants purport, Doc. 133 at 6 (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 05 Civ. 6319 (JSR), 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005)), Moving Plaintiffs offer more than that (e.g., their pay records, the fact that more than twenty other drivers have come forward claiming to be similarly situated, etc.).

that they are similarly situated. The Court disagrees. At this stage, Moving Plaintiffs also need not show that they and the Farmingdale and Elizabeth drivers "were subject to *identical* treatment." *Lin*, 275 F.R.D. at 173 (emphasis added). All that is required is a modest showing. Moving Plaintiffs allege—and Defendants do not dispute, *see generally* Doc. 133—that SDS unilaterally classified their delivery drivers as independent contractors. *See* Doc 129-1,¶¶ 13–34, 39; Doc. 130-1 ¶¶ 12–34, 39; *see also supra* n.2 (SDS's website recruits new drivers nationwide as independent contractors and suggests no policy distinctions between facility locations). Moving Plaintiffs allege that the purportedly illicit pay practices flow directly from that misclassification. To be sure, it is not always the case that a company that calls a group of workers independent contractors automatically subjects that group to identical policies. However, that fact, together with the other evidence provided by Plaintiffs (i.e., their compensation figures, conversations with other drivers, observations, and that twenty-one other plaintiffs have already opted into the litigation, identifying themselves as drivers also harmed by Defendants' policies[7]) establishes the requisite showing that common policies applied to Moving Plaintiffs and the Farmingdale and Elizabeth drivers.

**2. All New York and New Jersey Drivers**

Defendants argue that even if the Court were to conclude that the drivers were subject to the same policies, it should nonetheless limit the scope of the class only to Farmingdale and Elizabeth-based drivers, and not to drivers who operated out of any other SDS facility in New York and New Jersey. *See* Doc. 133 at 5. According to Defendants, this case is like *Monger v.*

[7] *See Elamrani*, 2016 WL 5477590, at *4 (taking note of the fact that three opt-ins had already identified themselves by name by filing opt-in forms).

*Cactus Salon & Spa's, LLC*, 08 Civ. 1817 (FB) (WDW), 2009 WL 1916386 (E.D.N.Y. July 6, 2009) and *Guillen*, 750 F. Supp. 2d 469 (S.D.N.Y. 2010).

In *Monger*, two former employees of a beauty parlor, Cactus Salon, sought preliminary class certification for all of Cactus Salon's hair stylists and shampooers across its twenty-five locations. 2009 WL 1916386, at *1–3. Ultimately, the court refused to extend the class to all of the company's hair stylists and shampooers because the "only evidence that other locations' employees [were] similarly situated [was plaintiffs'] 'belie[f]' that [they were] subject to the same polices. [Plaintiffs] offer[ed] no basis for this belief[.]" *Id.* at *2. In *Guillen* the court similarly denied plaintiffs' motion to consolidate a nationwide class where the evidence reflected the experiences of five individuals who had worked at only nine New York-based stores owned by a company that operated 820 stores. *See generally* 750 F. Supp. 2d 469. Both of these cases are distinguishable.

First, unlike the plaintiffs in *Monger*—and as already established—Moving Plaintiffs *do* offer a basis for their contention that SDS subjected its delivery drivers in New York and New Jersey to a common policy of violative practices. Such practices stemmed from SDS's uniform classification of delivery drivers as independent contractors and included failing to pay overtime premiums and making illegal deductions from their pay. For that reason, alone, *Monger* is not analogous. In *Guillen*, the plaintiffs sought to certify a *nationwide* class based on the accounts of employees based strictly in the New York metropolitan area. Here, Moving Plaintiffs have *actually* worked in the two states that encompass the Proposed Class and observed the activities of fellow delivery drivers in each of those states, too. The First Amended Complaint also alleges that the Named Plaintiffs were subject to the same common policy of misclassification and resulting FLSA violations as they worked in the same New York counties as Moving Plaintiffs.

Doc. 122 ¶¶ 18, 31, 43, 55. "Courts in this Circuit regularly find named plaintiffs to be similarly situated to employees at locations where they did not work[.]" *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011) (collecting cases); *see also Cano v. Four M Food Corp.*, No. 08 Civ. 3005 (JFB) (AKT), 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009) ("It is not necessary . . . that the prospective class members all . . . worked at the same locations as the named plaintiffs[.]"). And as Moving Plaintiffs correctly point out, courts routinely grant conditional certifications for collectives spanning broad geographic areas based on affidavits and allegations from plaintiffs based in only a few states. *See, e.g.*, *Vecchio v. Quest Diagnostics Inc.*, No. 16 Civ. 5165 (ER), 2018 WL 2021615, at *6 (S.D.N.Y. Apr. 30, 2018). For all these reasons, and particularly in light of the lenient applicable standard, the Court hereby grants Moving Plaintiffs' motion for conditional certification of the Proposed Class.

### B. Equitable Tolling

#### i. Standard

An action under the FLSA has a two-year statute of limitations, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C.A. § 255(a). In a collective action suit such as this, the statute of limitations period continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form opting into the suit. *See Contrera v. Langer*, 278 F. Supp. 3d 702, 722–23 (S.D.N.Y. 2017); *see also Sbarro*, 982 F. Supp. at 260 ("only by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled") (citation omitted).

"Equitable tolling is appropriate only in rare and exceptional circumstances, where a plaintiff has been prevented in some extraordinary way from exercising his rights." *Garcia v.*

*Chipotle Mexican Grill, Inc.*, No. 16 Civ. 601 (ER), 2016 WL 6561302, at *10 (S.D.N.Y. Nov. 4, 2016) (internal quotation marks and citation omitted). A plaintiff "seeking equitable tolling bears the burden of establishing . . . that he has been pursuing his rights diligently, and . . . that some extraordinary circumstance stood in his way." *Perez Perez v. Escobar Construction, Inc.*, 20 Civ. 8010 (LTS) (GWG), 2021 WL 2012300, *9 (S.D.N.Y. May 20, 2021) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (U.S. 2005)). "When a movant does not provide any grounds showing equitable tolling may be appropriate, it will not be applied." *Mark v. Gawker Media, LLC*, 13 Civ. 4347 (AJN), 2014 WL 5557489, *2 (S.D.N.Y. Nov. 3, 2014) (citation omitted).

Importantly, "[w]here parties are ordered or agree by stipulation to suspend proceedings during the pendency of legal proceedings, the time during which a party is prevented from obtaining legal relief is not counted for purposes of statutes of limitations." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006) (holding that "in the interest of fairness, . . . the statute of limitations for potential collective action members [is] tolled"); *see also Coppernoll v. Hamcor, Inc.*, No. C 16-05936 WHA, 2017 WL 1508853, at *1–4 (N.D. Cal. Apr. 27, 2017) (equitably tolling statute of limitations for potential opt-in plaintiffs during a court-ordered stay pending resolution of Supreme Court case during which plaintiffs could not engage in discovery, file motion for class certification, or receive approval to provide notice this action to putative class members); *Bolletino v. Cellular Sales of Knoxville, Inc.*, No. 12 Civ. 138, 2012 WL 3263941, at *8–12 (E.D. Tenn. Aug. 9, 2012) (granting plaintiffs' request for equitable tolling after granting defendant's motion to stay all proceedings to "prevent preclusion of claims based upon the delay in discovery and any collective action certification").

**ii. Application**

Moving Plaintiffs argue that the Court should equitably toll the statute of limitations for the four-year period during which this case was stayed (i.e., from September 22, 2016 to September 28, 2021) and to permit notice to be sent to all delivery drivers working for Defendants in New York and New Jersey from September 2013 (three years prior to the start of the stay) through the present.

In response, Defendants first argue that Moving Plaintiffs have not met their burden to have equitable tolling applied to their *own* claims because "[they] were well aware of the lawsuit long before the stay, having opted into the action on March 22, 2016 ([] Tacoman) and April 4, 2016 ([] Alulema)," but did not move to lift the stay until four years after it was put in place. *See* Doc. 133 at 14. The question of whether the Court should equitably toll Moving Plaintiffs' claims for the stay period, however, is not an issue.

First and foremost, Moving Plaintiffs do not ask for tolling for themselves; they ask for tolling *only* for Potential Opt-in Plaintiffs. *See* Doc. 128 at 15–19. What's more, caselaw makes clear that "the statute of limitations period continues to run with respect to each potential plaintiff's collective action claim *until that plaintiff files the written consent form*[;]"once a potential plaintiff opts in, his claims are tolled. *ABC Carpet & Home*, 236 F.R.D at 198–99 (emphasis added); *see also Contrera*, 278 F. Supp. 3d at 722–23. Moving Plaintiffs opted into the suit on March 22 and April 4, 2016, respectively—months before the stay was implemented on September 22, 2016. Therefore, Moving Plaintiffs' claims have been tolled since before (and throughout) the period of the stay. Furthermore, as next explained, even if Moving Plaintiffs had *not* opted into the action before the stay was put in place, their claims would still be tolled during the stay period.

Defendants argue that the Court should not—and, indeed, cannot—equitably toll Potential Opt-in Plaintiffs' claims during the stay period. Applying equitable tolling, Defendants contend, requires courts to examine the individual circumstances surrounding an individual plaintiff's failure to timely opt into the suit. *See* Doc. 133 at 15. But at this point, the Court knows nothing about the individual circumstances surrounding any Potential Opt-in Plaintiff's claims. *Id.* Thus, Defendants assert that Moving Plaintiffs' request for equitable tolling for the Proposed Class must be denied.

Defendants have it wrong. As Moving Plaintiffs correctly note, when there is a stay in place, courts routinely toll the FSLA limitation period during its pendency.[8] *See* Doc. 128 at 16 (citing *ABC Carpet & Home*, 236 F.R.D. at 199; *Coppernoll*, 2017 WL 1508853, at *1–4). In *ABC Carpet & Home*, for example, a corporate defendant in an FLSA collective action argued that a potential plaintiff was time-barred from joining the action because his claims fell outside the statute of limitations. *See* 236 F.R.D. at 199. In response, plaintiff maintained that "because the Court postponed class action motions until it issued an [o]pinion on [d]efendants' motion for summary judgment, and because of the remedial nature of the FLSA, the doctrine of equitable tolling should apply," so that at least some of his claims would not be time barred. *Id.* Ultimately, the court held that "[w]here parties are ordered or agree by stipulation to suspend proceedings during the pendency of legal proceedings, the time during which a party is prevented from obtaining legal relief is not counted for purposes of statutes of limitations." *Id.*

[8] Moving Plaintiffs also argue that the high costs in arbitration fees incurred by other plaintiffs, *see Zambrano v. Strategic Delivery Sols, LLC* (*Zambrano II*), No. 15 Civ. 8410 (ER), 2018 WL 4462360, at *3 (S.D.N.Y. Sept. 17, 2018) (noting the $7,010 in fees Plaintiff Martin Forero was directed to pay), could have chilled drivers from exercising their rights. *See* Doc. 128 at 17–18; *see also* Doc 129-4 ¶¶ 16–17, 2020 Tacoaman Affidavit; Doc. 129-3 ¶¶ 15–16 (indicating that Moving Plaintiffs believed the only way to pursue their claims would be to pay the high fees and costs in arbitration that they could not afford). But Moving Plaintiffs fail to point to any authority that has found that the chilling effect on potential plaintiffs of an arbitration's high costs constitutes an extraordinary circumstance for purposes of equitable tolling.

(citing *Sbarro*, 982 F. Supp. at 260 n.14; *Roebuck v. Hudson Valley Farms*, 239 F. Supp. 2d 234, 240 n.10 (N.D.N.Y. 2002) (tolling FLSA statute of limitations for potential opt-in plaintiffs based on court-sanctioned agreement by parties)). Applying the same reasoning, the court went on to find it "in the interest of fairness," that the "the statute of limitations for potential collective action members [be] tolled," in addition to the individual potential plaintiff. *Id.*

Much like the court's postponement of class action motions in *ABC Carpet & Home*, the stay, here, effectively grounded all proceedings and did not permit any plaintiff to seek conditionally certify a class and thereby notify other similarly situated drivers of the opportunity to opt into the action. Just as it was reasonable for plaintiffs in *ABC Carpet & Home* to respect the court's order, so, too, was it reasonable for the parties, here, to abide by the Court's stay. Defendants' opposition does not cite any caselaw for why the approach advanced in *ABC Carpet & Home* should not apply here; they simply dwell on the Court's inability to consider the circumstances surrounding a Potential Opt-in Plaintiff's claim. But to decide whether to categorically toll the stay period for all Potential Opt-in Plaintiffs, the Court need not consider each Potential Opt-in Plaintiff's unique circumstances, since—no matter what they may be—one critical fact remains constant: that the stay halted litigation and non-parties' ability to participate.

Accordingly, the Court holds that the statute of limitations Potential Opt-in Plaintiffs is equitably tolled for the stay period (i.e., September 22, 2016 to September 28, 2021) and, consequently, that notice may be sent to workers based on the proposed time period, from September 23, 2012 to the present.[9]

[9] It is irrelevant whether the Elizabeth location is currently operational, *see supra* n.2, as it was operational during at least part of this period.

**C. Discovery**

The Supreme Court has made clear that the benefits of granting conditional certification of Section 216(b) collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc.*, 493 U.S. at 170. To facilitate those ends, courts in this Circuit typically require defendant-employers to provide a list with the names, last known contact information, and dates of employment of all the Potential Opt-in Plaintiffs. *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2015 WL 7076009, at *4 (S.D.N.Y. Nov. 12, 2015) ("Courts commonly grant requests for such contact information in connection with the conditional certification of an FLSA collective action.") (collecting cases). Courts in this district also regularly require defendants to include telephone numbers and email addresses. *See, e.g.*, *Chen & Lau v. Dun Huang Corp.*, 19 Civ. 11883 (GBD) (BCM), 2021 WL 5234421, at *8 ("[I]t is by now fairly clear that telephone numbers and email addresses permit a more efficient means of providing notice than mailing addresses alone.") (collecting cases); *see also Duran v. R&L Interior Renovations & Constr. Corp.*, No. 20 Civ. 9344 (AJN), 2021 WL 4847074, at *4 (S.D.N.Y. Oct. 18, 2021) (finding requests for lists containing last known phone numbers and email addresses to be commonly granted, and ordering such a list be produced within 14 days).

Moving Plaintiffs request that Defendants produce the aforementioned information for Potential Opt-in Plaintiffs within fifteen days of this order. *See* Doc. 128 at 19–20. In light of above-referenced caselaw, the Court grants Moving Plaintiffs' request.

**D. The Proposed Notice**

In light of this opinion, the parties are directed to meet and confer, per Defendants' request, *see* Doc. 133 at 16–18, to resolve any outstanding issues that Defendants may still take

with respect to the proposed notice attached to Moving Plaintiffs' reply brief, *see* Docs. 142-1, 142-2. The Court hereby directs the parties to submit a mutually agreed upon notice within thirty days of this order, subject to the Court's approval. If the parties cannot agree, parties should submit their separate proposal for the Court's decision.

## IV. Conclusion

For the reasons set forth above, Moving Plaintiffs' motion to conditionally certify a collective action under the FSLA for the Proposed Class and order disclosure of contact information for the Proposed Class is GRANTED. As stipulated above, the court withholds adjudication on Moving Plaintiffs' proposed notice, *see* Doc. 142-2, and directs parties to submit a mutually agreed upon proposal within thirty days. The Clerk of Court is respectfully directed to terminate the motion, Doc. 127.

It is SO ORDERED.

Dated: August 16, 2022
New York, New York

Edgardo Ramos, U.S.D.J.