UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTIAN ZAMBRANO, LUZ DURANGO, MOIRA RIVEROS, *and* RIGOBERTO ROMERO, *on behalf of themselves and all others similarly situated*,

                Plaintiffs,

– against –

STRATEGIC DELIVERY SOLUTIONS, LLC, DAVID KRONICK, ANDREW KRONICK, *and* MIKE RUCCIO,

                Defendants.

**OPINION & ORDER**

15 Civ. 8410 (ER)

---

Ramos, D.J.:

      Christian Zambrano, Luz Durango, Moira Riveros, and Rigoberto Romero ("Lead Plaintiffs") brought this putative collective and class action against Strategic Delivery Solutions, LLC ("SDS"), David Kronick, Andrew Kronick, and Mike Ruccio (collectively, "Defendants"), alleging that SDS improperly classified them as independent contractors and denied them wages. Doc. 1. Plaintiffs Blanca Alulema and Maria Tacoaman ("Moving Plaintiffs") opted into the action in 2016. Docs. 39, 46. Presently, Moving Plaintiffs petition the Court for leave to file a second amended complaint to: (1) allege that Tacoaman and Alulema are representative plaintiffs for the New York Labor Law ("NYLL") class claims in this case; (2) allege a NYLL minimum wage class claim in place of the minimum wage claim currently brought only by Alulema and Tacoaman; and (3) add individual New Jersey Wage and Hour Law, and New Jersey Wage Payment Law claims for opt-in Plaintiffs who worked in New Jersey. Doc. 259 at 1. For the reasons set forth below, the motion is GRANTED.

I.   **BACKGROUND**

The Court assumes familiarity with the facts and procedural posture of this action, as previously set forth in its September 28, 2021 and August 16, 2022 Orders. *See generally Zambrano v. Strategic Delivery Solutions, LLC*, No. 15 Civ. 8410 (ER), 2021 WL 4460632 (S.D.N.Y. Sept. 28, 2021) (Doc. 116); *Zambrano v. Strategic Delivery Solutions, LLC*, No. 15 Civ. 8410 (ER), 2022 WL 3369597 (S.D.N.Y. Aug. 16, 2022) (Doc. 170). For present purposes, the Court provides the following summary.

   **A.  Factual Background**

From 2010 to 2020, Moving Plaintiffs Alulema and Tacoaman were delivery drivers for SDS, a company that delivers pharmaceutical products in New York and New Jersey. *Zambrano*, 2022 WL 3369597, at *1. SDS operates facilities in Farmingdale (New York), Brooklyn, the Bronx, and other locations.[1] *Id.* Defendant David Kronick is an owner and chief executive officer of SDS; Defendant Andrew Kronick is an owner and managing partner of SDS; and Defendant Mike Ruccio is the chief operating officer of SDS. *Id.* at *1. Moving Plaintiffs allege that Defendants exercised sufficient control over the day-to-day operations of SDS and the specific manner by which plaintiffs performed their work to qualify as their employers. *Id.* Specifically, Moving Plaintiffs aver that SDS dictated the manner with which the drivers were to handle goods, required drivers to obtain a specific type of insurance coverage, set drivers' delivery routes, determined the order and timing of drivers' stops, and established per-stop compensation. *Id.* Moving Plaintiffs therefore allege that SDS unilaterally misclassified its delivery drivers as independent contractors. *Id.*

As for SDS's pay practices, moving Plaintiffs claim that they and the other delivery drivers were paid on a per-stop basis, as opposed to hourly. *See id.* at *2. Moving Plaintiffs allege that they and the other delivery drivers often worked more than

---

[1] According to Defendants, an SDS location in Elizabeth, New Jersey ceased operations in 2016. *Zambrano*, 2022 WL 3369597, at *1 n.2.

forty hours per week, but were never paid overtime premiums for additional hours worked. *Id.* Moreover, SDS regularly made deductions from the weekly paychecks of Moving Plaintiffs, ranging from $75.63 to $90.75 per week, which included fees described as "cargo waiver," "manifest," and "CMS Fee." *Id.* Other drivers making deliveries in New York and New Jersey were purportedly subject to similar deductions. *Id.* Moving Plaintiffs further contend that they and the other drivers were required to pay out-of-pocket for the necessary expenses of doing their jobs, including the cost of: the specific type of vehicles that Defendants required their drivers to use; the particular kind of car insurance required by Defendants; maintenance of their vehicles; and gas, tolls, and parking tickets. *Id.* SDS did not reimburse any of those expenses. *Id.* As a result of SDS's pay practices, Moving Plaintiffs argue that they and the other drivers routinely received pay for overtime hours that fell below the legally required overtime rate. *Id.*

### B. Procedural History

#### 1. *Zambrano v. Strategic Delivery Solutions, LLC*

Lead Plaintiffs Christian Zambrano, Luz Durango, Moira Riveros, and Rigoberto Romero initiated this action on October 26, 2015. Doc. 1. In their original complaint, Lead Plaintiffs brought a claim under the FLSA for unpaid overtime on behalf of a putative collective, and claims under the NYLL for overtime, notice, and unlawful deductions violations on behalf of a putative class. *See id.* at ¶¶ 125–45. On January 29, 2016, SDS moved to dismiss the original complaint and compel arbitration. Doc. 21. Between March and April of 2016, twenty-three other plaintiffs opted to join the litigation. Docs. 36–59. Among these opt-in plaintiffs were the Moving Plaintiffs. *See* Docs. 39, 46. On September 22, 2016, the Court denied Defendants' motion to dismiss, but granted the motion to compel arbitration with respect to Lead Plaintiffs, and stayed

the case.[2] *See Zambrano v. Strategic Delivery Solutions, LLC*, No. 15 Civ. 8410 (ER), 2016 WL 5339552, at *10 (S.D.N.Y. Sept. 22, 2016) (Doc. 64).

Four years later, on October 23, 2020, the Moving Plaintiffs petitioned the Court to lift the stay and grant leave to amend the complaint. Doc. 106. In their first amended complaint, Moving Plaintiffs sought to, *inter alia*, exclude themselves from the NYLL class action claims, and instead bring the same claims in their individual capacity. *See Doc.* 108-7. Moving Plaintiffs also requested to add individual claims pursuant to NYLL for minimum wage violations, and individual claims for violations of New Jersey Wage and Hour Law ("NJWHL") and New Jersey Wage Payment Law ("NJWPL"). *See id.*

On September 28, 2021, the Court granted Moving Plaintiffs' motion in part and denied it in part. *See generally Zambrano*, 2021 WL 4460632. Specifically, the Court granted Moving Plaintiffs' request to add individual claims under NYLL for minimum wage violations and individual claims under New Jersey law for wage and hour and wage payment law violations.[3] *Id*. at *13, 14. However, the Court denied Moving Plaintiffs' request to be excluded from the NYLL class and bring those claims individually. *Id.* at *12. The Court concluded that "excluding Moving Plaintiffs, who would bring individual claims for the same causes of action[,] has the potential to create the very discrepancies Rule 23(b) is meant to protect against." *Id*.

On October 19, 2021, Moving Plaintiffs filed the first amended complaint. Doc. 122. On November 2, 2021, SDS requested a pre-motion conference to seek leave to file a motion to dismiss and compel arbitration against Moving Plaintiffs. Doc. 123. At the November 4, 2021 conference, the Court denied SDS permission to file their proposed

---

[2] The January 2016 motion to dismiss and compel arbitration was filed before other claimants opted into the litigation, *see* Doc. 21, and the Court's September 2016 Order limited its definition of "Plaintiffs" to Lead Plaintiffs Zambrano, Durango, Riveros, and Romero. *See Zambrano*, 2016 WL 5339552, at *1.

[3] At this time, there has not been a Rule 23 class certification motion in this case. In their memorandum in support of the instant motion, Moving Plaintiffs assert that "should the Court grant [their] motion to amend, [they] intend to move for certification of a Rule 23 New York Labor Law class following any necessary discovery on that issue." Doc. 259 at 8 n.3.

motion, and instead permitted limited discovery into the arbitration provisions, as Moving Plaintiffs requested. *See* Doc. 125.

On November 18, 2021, Moving Plaintiffs petitioned the Court to conditionally certify a collective action under the FLSA for the following class of potential opt-in plaintiffs: "All current and former delivery drivers (or those in comparable roles with different titles) who worked and/or performed services for Strategic Delivery Solutions, LLC delivering pharmaceutical products to pharmacies and other locations in New York and/or New Jersey between September 2013 and the present." *See* Docs. 127, 128. The Court granted certification on August 16, 2022. *See generally Zambrano*, 2022 WL 3369597.

Notice to potential opt-in plaintiffs was completed on November 23, 2022, *see* Doc. 186, and, as of the filing of the instant motion, 758 individuals have opted into this case. *See* Doc. 259 at 4. Of these 758 opt-in plaintiffs, 318 allege they performed work in New Jersey. Doc. 259 at 7.

On March 15, 2023, Defendants informed the Court of the parties' "mutual desire" to pursue mediation with a private mediator, *see* Doc. 218, which commenced on September 13, 2023. Doc. 236. However, the mediation concluded without resolution. Doc. 243.

On March 15, 2024, Moving Plaintiffs filed the instant motion, requesting leave to amend the first amended complaint to: (1) allege that plaintiffs Tacoaman and Alulema are proposed representative plaintiffs for the NYLL class claims in this case, replacing the Lead Plaintiffs; (2) bring the NYLL minimum wage claim, which was originally brought individually by just the Moving Plaintiffs, on behalf of a putative class; and (3) add individual New Jersey Wage and Hour Law ("NJWHL") and New Jersey Wage Payment Law ("NJWPL") claims for the 318 opt-in plaintiffs who worked in New Jersey. Docs.

5

256, 259 at 5–6.[4]  On April 26, 2024, Defendants filed their memorandum in opposition to the instant motion.  Doc. 262.  In their response, Defendants do not "oppose substituting Plaintiffs Alulema and Tacoaman as the NYLL class representatives," nor do they "oppose converting the NYLL minimum wage claim to a class claim."  *See id.* at 4 n.1.  Defendants do, however, oppose the request to bring individual New Jersey law claims for the New Jersey opt-in plaintiffs.  *See id.*

  2. *Bernard v. Strategic Delivery Solutions, LLC*

In *Bernard v. Strategic Delivery Solutions, LLC*, plaintiffs bring a putative class action in the District of New Jersey on behalf of all individuals who were classified as independent contractors while performing courier services for SDS in Connecticut, Pennsylvania, Maryland, New York, and New Jersey.  *See* No. 22 Civ. 7396 (CPO) (MJS), Doc. 29.  The *Bernard* plaintiffs allege independent contractor misclassification and assert, *inter alia*, FLSA collective claims,[5] New York state class claims, and New Jersey state class claims.  *Id.* at ¶¶ 76–159.  The New Jersey claims include claims for violations of NJWHL and NJWPL.  *Id.* at ¶¶ 76–93.

The *Bernard* plaintiffs moved for conditional certification of the FLSA collective on July 7, 2023, and for class certification on October 31, 2023.  *See* No. 22 Civ. 7396 (CPO) (MJS), Docs. 30, 46.  On June 20, 2024, the *Bernard* court denied both motions.  *See* No. 22 Civ. 7396 (CPO) (MJS), Doc. 82.

On July 26, 2024, the *Bernard* plaintiffs petitioned the court to transfer venue for that action to this District, presumably so that it may be consolidated with the instant action.  *See* No. 22 Civ. 7396 (CPO) (MJS), Doc. 89.  The motion to transfer is fully-

---

[4] Moving Plaintiffs initially filed their memorandum of law in support of the instant motion on March 15, 2024.  Doc. 257.  With Defendants' consent, Moving Plaintiffs filed an amended version on March 18, 2024.  Doc. 259.

[5] The FLSA class claims in *Bernard* exclude individuals who worked in New York or New Jersey and received court-approved FLSA notice in the instant case.  *See* No. 22 Civ. 7396 (CPO) (MJS), Doc. 29 at 2 n.1.

briefed, pending resolution of the instant motion before the Court. *See* No. 22 Civ. 7396 (CPO) (MJS), Doc. 111.

## II.   STANDARD OF REVIEW

"As a general matter, the Federal Rules provide that leave to amend should be 'freely give[n] . . . when justice so requires.'" *Meyer v. Seidel*, 89 F.4th 117, 139 200 (2d Cir. 2023) (quoting Fed. R. Civ. P. 15(a)(2)). As the Second Circuit has explained, this permissive standard "reflects two of the most important principles behind the Federal Rules:  [P]leadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated, and mere technicalities should not prevent cases from being decided on the merits." *See id.* (citation and internal quotations omitted).  A district court may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).  "The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Rozenzweig v. ClaimFox, Inc.*, 251 F. Supp. 3d 449, 454 (E.D.N.Y. 2017) (quoting *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994)).

## III.   DISCUSSION

In their second amended complaint, Moving Plaintiffs seek to:  (1) allege that plaintiffs Tacoaman and Alulema are proposed representative plaintiffs for the NYLL class claims in this case, replacing the names of the Lead Plaintiffs; (2) bring the NYLL minimum wage claim, which was brought individually by just the Moving Plaintiffs, on behalf of a putative class; and (3) add individual NJWHL and NJWPL claims for the 318

7

opt-in plaintiffs who worked in New Jersey. Doc. 259 at 5–6. Defendants do not oppose the first or second requests. *See* Doc. 262 at 4 n.1.

Defendants primarily argue that they would be prejudiced by the unworkability of the third request. *See* Doc. 262 at 6–8. As Defendants contest, "[e]ach and every one of the 318 proposed plaintiffs would be individual litigants, and Defendants would have the right to depose and seek written discovery from each of them." *Id.* at 8. Moreover, as Defendants point out, "Plaintiffs' proposal raises the question of how Plaintiffs' Counsel would go about trying to settle with 318 individual plaintiffs as clients. Each one would need to agree to settlement before any 'global' agreement could be made." *Id.* at 9. However, as Moving Plaintiffs emphasize in reply, "the 318 New Jersey Opt-Ins are already individual party plaintiffs in this action as a result of having filed FLSA opt-ins." Doc. 264 at 3. Accordingly, Moving Plaintiffs argue that the addition of NJWHL and NJWPL claims by the New Jersey opt-in plaintiffs would not introduce an undue amount of prejudice. *Id.* The Court agrees.

In determining whether parties would be prejudiced, courts consider whether the amendment would: "(1) require the opponent to 'expend significant additional resources to conduct discovery and prepare for trial,' (2) significantly prolong the resolution of the action, or (3) 'prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Cummings-Fowler v. Suffolk City v. Community College*, 282 F.R.D. 292, 297 (E.D.N.Y. 2012) (quoting *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000)). "[L]ess threat of prejudice exists where a new claim arises from a set of operative facts that were alluded to in earlier pleadings or motions." *Hegazy v. Halal Guys, Inc.*, No. 22 Civ. 1880 (JHR), 2024 WL 3988141, at *3 (S.D.N.Y. Aug. 28, 2024) (internal quotations omitted) (quoting *Xpressions Footwear Corp. v. Peters*, No. 94 Civ. 6136 (JGK), 1995 WL 758761, at *4 (S.D.N.Y. Dec. 22, 1995)).

Here, individual NJWHL and NJWPL claims are already asserted against Defendants by Moving Plaintiffs. *See* Doc. 122 at ¶¶180–86. Additionally, the opt-in

8

plaintiffs are already party plaintiffs. *See Zambrano*, 2021 WL 4460632, at *8 (citation omitted) ("opt-in plaintiffs become party plaintiffs upon filing their consents to sue; nothing further is required."). Hence, the Moving Plaintiffs seek to bring claims that already pleaded in the operative complaint, now on behalf of plaintiffs who are already party to this litigation.[6] The Court thus finds the level of prejudice from this amendment to be minimal. Moreover, even to the extent that Defendants may have to expend additional resources to litigate the added claims, "it is well established . . . that [t]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Hegazy*, 2024 WL 3988141, at *4 (collecting cases).

Defendants also object that Moving Plaintiffs do not address whether any of the proposed claims of the 318 individual New Jersey opt-ins are timely for statute of limitations purposes. *See* Doc. 262 at 8. In reply, Moving Plaintiffs note that the Court has already found that "the statute of limitations was 'equitably tolled for the stay period (i.e., September 22, 2016 to September 28, 2021)" and that the New Jersey opt-in plaintiffs' claims under New Jersey law are thus timely. *See* Doc. 264 at 3 n.1 (quoting *Zambrano*, 2022 WL 3369597, at *9). The Court agrees that, to the extent the New Jersey claims comport with that timeframe, they are timely.

Lastly, Defendants argue that the introduction of the New Jersey claims by the opt-in plaintiffs would "require duplicative litigation in multiple forums," in light of the pending *Bernard* litigation. *See* Doc. 262 at 9. Defendants provide no authority for the proposition that this might constitute prejudice or should otherwise bar amendment. Indeed, to the extent that the prospect of duplicative litigation factors into this analysis, "forcing [opt-in Plaintiffs] to seek relief [for their New Jersey law claims] in [a] separate

---

[6] Defendants also argue that "Plaintiffs are actually seeking the permissive joinder of 318 individual plaintiffs under F.R.C.P. 20." Doc. 262 at 7. Because the opt-in plaintiffs are already plaintiffs in this case, this argument is unavailing.

action[] would be illogical and unnecessarily duplicative." *Covet & Mane, LLC v. Invisible Bead Extensions, LLC*, No. 21 Civ. 7740 (JPC) (RWL), 2023 WL 6066168, at *4 (S.D.N.Y. Sept. 18, 2023) (internal quotations omitted) (granting leave to amend); *see also Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 199 (S.D.N.Y. 2014) (granting leave to amend FLSA complaint to add state law claims, noting that "FLSA's broad remedial nature and its collective action provision suggest that the act contemplates this very situation, and given the choice between litigating each claim separately or in the aggregate, it favors the latter."). Accordingly, the Court finds that it is proper to grant Moving Plaintiffs leave to amend their complaint.

## IV.  CONCLUSION

For the reasons set forth above, Moving Plaintiffs' motion for leave to amend is GRANTED. The second amended complaint shall be filed by January 27, 2025.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 256.

It is SO ORDERED.

Dated:   January 16, 2025
         New York, New York

EDGARDO RAMOS, U.S.D.J.