**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x
**CHRISTIAN ZAMBRANO, LUZ**
**DURANGO, MOIRA RIVEROS, and**
**RIGOBERTO ROMERO, on behalf of**
**themselves and all others similarly situated,**          **INDEX NO.  15 CIV 8410 (ER)**

**BLANCA ALULEMA and MARIA**
**TACOAMAN, and 758 Additional Opt-In**          <u>**SECOND AMENDED COMPLAINT**</u>
**Plaintiffs,**
                                                          **FLSA COLLECTIVE ACTION AND**
                        **Plaintiffs,**                   **RULE 23 CLASS ACTION**

                        **v.**                            **DEMAND FOR JURY TRIAL**

**STRATEGIC DELIVERY SOLUTIONS,**
**LLC., DAVID KRONICK, ANDREW**
**KRONICK, and MIKE RUCCIO,**

                        **Defendants.**
--------------------------------------------------------x


        Plaintiffs Christian Zambrano, Luz Durango, Moira Riveros, and Rigoberto Romero

("Original Named Plaintiffs"), on behalf of themselves and on behalf of all others similarly

situated, by and through their undersigned counsel; Plaintiffs Blanca Alulema and Maria

Tacoaman, on behalf of themselves and all others similarly situated; and the 758 additional opt-in

Plaintiffs (hereafter the "FLSA Collective Plaintiffs") by and through their undersigned counsel,

allege as follows:

<u>**JURISDICTION AND VENUE**</u>

        1.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331

because this case is brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

("FLSA").  This Court has supplemental jurisdiction over the New York and New Jersey state law

claims, as they are so related to the claims in this action within the Court's original jurisdiction

that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Defendants are subject to personal jurisdiction in New York.

3.      Venue is proper in this District because Defendants conduct business in this District, and a substantial part of the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## PARTIES

*Defendants*

4.      Defendant Strategic Delivery Services, LLC ("SDS") is a limited liability company organized and existing under the laws of New York.

5.      Upon information and belief, SDS's gross revenue each year exceeds $500,000.

6.      SDS is an employer within the meaning of the FLSA.

7.      Defendant David Kronick is an owner and Chief Executive Officer of SDS.

8.      Upon information and belief, Defendant David Kronick exercises sufficient control of SDS's day to day operations to be considered an employer of SDS drivers and those similarly situated under the FLSA.

9.      Defendant Andrew Kronick is an owner and Managing Partner of SDS.

10.      Upon information and belief, Defendant Andrew Kronick exercises sufficient control of SDS's day to day operations to be considered an employer of SDS drivers and those similarly situated under the FLSA.

11.      Defendant Mike Ruccio is the Chief Operating Officer of SDS.

12.    Upon information and belief, Defendant Ruccio exercises sufficient control of SDS' day to day operations to be considered an employer of SDS drivers and those similarly situated under the FLSA.

***Plaintiff Christian Zambrano***

13.    Plaintiff Christian Zambrano has worked for SDS as a delivery driver since October 2013.

14.    Prior to April 2015, Zambrano regularly worked 70 hours or more per week for Defendants.

15.    Zambrano currently regularly works 50 hours or more per week for Defendants.

16.    Defendants require Zambrano to be "on call" on certain weekends, during which time he works thirteen (13) hours per day both weekend days.

17.    Defendants do not pay Zambrano an overtime premium when he works in excess of 40 hours in a workweek.

18.    Zambrano has made deliveries for SDS in this District.  For example, for at least six months of his employment with SDS, he made deliveries in each of New York, Bronx, Westchester, Orange, and Dutchess Counties multiple times per week.

19.    Prior to April 2015, Zambrano estimates that his average gross pay was approximately $1,149 per week.

20.    Zambrano estimates that his current average gross pay is approximately $849 per week.

21.    Defendants require Zambrano to maintain a high level of vehicle insurance coverage and to use and maintain his own vehicle to make deliveries.

22.    Defendants require Zambrano to pay for his own auto maintenance, gasoline, and

toll fees and do not reimburse him for those expenses.

23.    Defendants deduct a rental fee for a scanner from Zambrano's paycheck.

24.    Defendants deduct an "administrative fee" and a variety of other fees each week from Zambrano's paychecks.

25.    Defendants require Zambrano to wear an SDS uniform.

26.    Zambrano will be able to state his compensation, hours worked, and deductions from his paycheck with more specificity after reviewing the records Defendants were required to keep under New York and federal law.

***Plaintiff Moira Riveros***

27.    Plaintiff Moira Riveros has worked as a delivery driver for SDS since 2014.

28.    Riveros regularly works in excess of 50 hours or more per week for SDS.

29.    Defendants require Riveros to be "on call" on certain weekends.

30.    Defendants do not pay Riveros an overtime premium when she works in excess of 40 hours in a workweek.

31.    Riveros makes deliveries for SDS in this District.  For example, she makes deliveries in New York County multiple times a week.  She also regularly makes deliveries in Bronx and Westchester Counties.

32.    Riveros estimates that her average gross pay is approximately $2,500 per week.

33.    Defendants require Riveros to maintain a high level of vehicle insurance coverage and to use and maintain her own vehicle to make deliveries.

34.    Defendants require Riveros to pay for her own auto maintenance, gasoline, and toll fees and do not reimburse her for those expenses.

35.    Defendants deduct a rental fee for a scanner from Riveros' paycheck.

4

36.     Defendants deduct an "administrative fee" and a variety of other fees each week from Riveros' paychecks.

37.     Defendants require Riveros to wear an SDS uniform.

38.     Riveros will be able to state her compensation, hours worked, and deductions from her paycheck with more specificity after reviewing the records Defendants were required to keep under New York and federal law.

***Plaintiff Luz Durango***

39.     Plaintiff Luz Durango has worked as a delivery driver for SDS for approximately five (5) years.

40.     Durango regularly works between 75 and 85 hours per week for SDS.

41.     Defendants require Durango to be "on call" on certain weekends.

42.     Defendants do not pay Durango an overtime premium when she works in excess of 40 hours in a workweek.

43.     Durango has made deliveries for SDS in this District.  For example, for much of her employment with SDS she made deliveries in Bronx and Westchester Counties on a daily basis.

44.     Durango estimates that her average gross pay is between $1,900 and $2,000 per week.

45.     Defendants require Durango to maintain a high level of vehicle insurance coverage and to use and maintain her own vehicle to make deliveries.

46.     Defendants require Durango to pay for her own auto maintenance, gasoline, and toll fees and do not reimburse her for those expenses.

47.     Defendants deduct a rental fee for a scanner from Durango's paycheck.

48.     Defendants deduct an "administrative fee" and a variety of other fees each week from Durango's paychecks.

49.     Defendants require Durango to wear an SDS uniform.

50.     Durango will be able to state her compensation, hours worked, and deductions from her paycheck with more specificity after reviewing the records Defendants were required to keep under New York and federal law.

***Plaintiff Rigoberto Romero***

51.     Plaintiff Rigoberto Romero has worked for SDS as a delivery driver since 2014.

52.     Prior to March 18, 2015, Romero worked approximately 70 hours per week.

53.     Defendants require Romero to be "on call" on certain weekends, working from Friday night through Monday morning in addition to his regular schedule.

54.     Defendants do not pay Romero an overtime premium when he works in excess of 40 hours in a workweek.

55.     Romero has made deliveries for SDS in this District.  For example, for over a year of his employment, he made deliveries to Bronx County approximately twice a month.

56.     Prior to March 18, 2015, Romero estimates that his average gross pay was approximately $1,800 per week.

57.     Defendants require Romero to maintain a high level of vehicle insurance coverage and to use and maintain his own vehicle to make deliveries.

58.     Defendants require Romero to pay for his own auto maintenance, gasoline, and toll fees and do not reimburse him for those expenses.

59.     Defendants deduct a rental fee for a scanner from Romero's paycheck.

60.     Defendants deduct an "administrative fee" and a variety of other fees each week

from Romero's paychecks.

61.    Defendants require Romero to wear an SDS uniform.

62.    Romero will be able to state his compensation, hours worked, and deductions from her paycheck with more specificity after reviewing the records Defendants were required to keep under New York and federal law.

*Plaintiff Blanca Alulema*

63.    Plaintiff Blanca Alulema worked for SDS as a delivery driver since 2014.

64.    Alulema worked approximately 45 to 50 hours per week.

65.    Defendants did not pay Alulema an overtime premium when she worked in excess of 40 hours in a workweek.

66.    Alulema estimates that her average gross pay fluctuated each year over the course of her employment, as seen in her payroll records.  For example, in 2011 her average pay before deductions was approximately $760 per week.  In 2019, her average pay before deductions was approximately $630 per week.

67.    At times during her work as a delivery driver for SDS, Alulema earned less than the applicable state minimum wage.

68.    Defendants required Alulema to maintain a high level of vehicle insurance coverage and to use and maintain her own vehicle to make deliveries.

69.    Defendants required Alulema to pay for her own auto maintenance, gasoline, and toll fees and did not reimburse her for those expenses.

70.    Defendants deducted a rental fee for a scanner from Alulema's paycheck.

71.    Defendants deducted an "administrative fee" and a variety of other fees each week

from Alulema's paychecks.

72.     Defendants required Alulema to wear an SDS uniform.

73.     Alulema will be able to state her compensation, hours worked, and deductions from her paycheck with more specificity after reviewing the records Defendants were required to keep under New York and federal law.

74.      Alulema made deliveries of pharmaceutical products to SDS's customers, which included pharmacies in New Jersey and New York at major brand stores including Rite Aid, CVS, and Costco.

75.     Upon information and belief, some of the goods that Tacoaman delivered were manufactured outside New York and New Jersey, in other states and in other countries.

***Plaintiff Maria Tacoaman***

76.     Plaintiff Maria Tacoaman worked for SDS as a delivery driver since 2010.

77.     Tacoaman worked approximately 45 to 50 hours per week.

78.     Defendants did not pay Tacoaman an overtime premium when she worked in excess of 40 hours in a workweek.

79.     Tacoaman estimates that her average gross pay fluctuated each year over the course of her employment, as seen in her payroll records.  For example, in 2018 her average pay before deductions was approximately $810 per week.  In 2019, her average pay before deductions was approximately $790 per week.

80.     Defendants required Tacoaman to maintain a high level of vehicle insurance coverage and to use and maintain her own vehicle to make deliveries.

81.     Defendants required Tacoaman to pay for her own auto maintenance, gasoline, and

toll fees and did not reimburse her for those expenses.

82.    Defendants deducted a rental fee for a scanner from Tacoaman's paycheck.

83.    Defendants deducted an "administrative fee" and a variety of other fees each week from Tacoaman's paychecks.

84.    Defendants required Tacoaman to wear an SDS uniform.

85.    Tacoaman will be able to state her compensation, hours worked, and deductions from her paycheck with more specificity after reviewing the records Defendants were required to keep under New York and federal law.

86.    Tacoaman made deliveries of pharmaceutical products to SDS's customers, which included pharmacies in New Jersey and New York at major brand stores including Rite Aid and Costco.

87.    When Tacoaman worked out of the Elizabeth, New Jersey SDS facility, she regularly drove across state lines to make deliveries in Brooklyn, New York.

88.    Upon information and belief, some of the goods that Tacoaman delivered were manufactured outside New York and New Jersey, in other states and in other countries.

***Other Allegations Regarding Drivers***

89.    The FLSA Collective Plaintiffs have consented in writing to becoming parties in this action.  The FLSA Collective Plaintiffs' consent forms have already been filed on the docket in this action.

90.    A full list of the Plaintiffs who, upon information and belief, worked in New Jersey is annexed hereto as Exhibit 1.

## CLASS AND COLLECTIVE ALLEGATIONS

***Collective Action Allegations***

91.     Plaintiffs Alulema and Tacoaman sue on behalf of themselves and all current and former delivery drivers (or those in comparable roles with different titles) who worked and/or performed services for Strategic Delivery Solutions, LLC delivering pharmaceutical products to pharmacies and other locations in New York and/or New Jersey between September 2013 and the present. (the "FLSA Collective").  This is an appropriate collective or representative action under 29 U.S.C. § 216(b).

92.     Plaintiffs Alulema and Tacoaman and the FLSA Collective Plaintiffs are similarly situated in that they are all subject to Defendants' common plan or practice of designating them as independent contractors (when in fact their work and the extent of control SDS exerted over them rendered them employees), failing to pay them overtime compensation, requiring them to provide and maintain their own vehicles and fuel, and making unlawful deductions from their paychecks.

***Rule 23 Class Allegations***

93.     Plaintiffs Alulema and Tacoaman bring the state law causes of action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all persons who work or have worked for SDS as drivers, couriers or delivery drivers (or in comparable roles with different titles) in New York state between the date that is six years before the date this Complaint is filed and the date of final judgment in this matter (the "Class").

94.     The persons in the Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is not known to Plaintiffs Alulema and Tacoaman, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

95.     Upon information and belief, the size of the Class is at least 100 workers.

96.     Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

97.     The state law causes of action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

(a) whether Defendants employed Plaintiffs Alulema and Tacoaman and the Class Members under the New York Labor Law ("NYLL");

(b) whether Defendants violated New York Labor Law ("NYLL"), Articles 6 and 19, and the supporting New York State Department of Labor regulations;

(c) whether Defendants refused to pay Plaintiffs Alulema and Tacoaman and the Class members overtime pay for hours worked in excess of 40 hours per workweek;

(d) whether Defendants failed to pay Plaintiffs Alulema and Tacoaman and the Class members at least the state-mandated minimum wage for every hour that they worked;

(e) whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs Alulema and Tacoaman and the Class members, and other records required by the NYLL;

(f) whether it was Defendants' policy or practice to make unlawful deductions from the wages of Plaintiffs Alulema and Tacoaman and the Class;

(g) whether it was Defendants' policy or practice to fail to furnish Plaintiffs Alulema and Tacoaman and the Class with an accurate statement of wages, hours worked, rates paid,

and gross wages as required by the NYLL;

(h) whether Defendants' policy of failing to pay workers in accordance with New York law was instituted willfully or with reckless disregard of the law; and

(i) the nature and extent of class-wide injury and the measure of damages for those injuries.

98.    Plaintiffs Alulema and Tacoaman's claims are typical of the claims of the Class.

99.    Plaintiffs Alulema and Tacoaman and the members of the Class work or have worked for Defendants and have been subjected to their policy and pattern or practice of misclassifying them as independent contractors and failing to pay overtime wages for hours worked in excess of 40 hours per week.

100.    Plaintiffs Alulema and Tacoaman and the members of the Class have been subject to Defendants' policy and pattern or practice of failing to pay them overtime and making unlawful deductions to their pay.

101.    Plaintiffs Alulema and Tacoaman and the Class members enjoy the same statutory rights under the NYLL to be paid for all hours worked, and to be paid overtime wages.

102.    Plaintiffs Alulema and Tacoaman and the members of the Class all have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

103.    Plaintiffs Alulema and Tacoaman and the members of the Class all have been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns.

104.    Defendants acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief with respect to the Class appropriate.

105.    Plaintiffs Alulema and Tacoaman will fairly and adequately represent and protect

the interests of the Class.

106.    Plaintiffs Alulema and Tacoaman understand that, as the class representatives, they assume a fiduciary responsibility to the Class to represent its interests fairly and adequately.

107.    Plaintiffs Alulema and Tacoaman recognize that as the class representatives, they must represent and consider the interests of the Class just as they would represent and consider their own interests.

108.    Plaintiffs Alulema and Tacoaman understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor they own interests over those of the Class.

109.    Plaintiffs Alulema and Tacoaman recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Class.

110.    Plaintiffs Alulema and Tacoaman understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

111.    Plaintiffs Alulema and Tacoaman have retained counsel competent and experienced in complex class action employment litigation.

112.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

113.    The members of the Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.

13

114.    Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.

115.    In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## FACTS

116.    Original Named Plaintiffs, FLSA Collective Plaintiffs, Plaintiffs Alulema and Tacoaman, and the putative Class Members share common job duties – making deliveries for SDS's customers.

117.    Defendants designated Original Named Plaintiffs, FLSA Collective Plaintiffs, Plaintiffs Alulema and Tacoaman, and the putative Class Members (collectively, "drivers") as independent contractors.

118.    The decision to classify these drivers as independent contractors was a central company policy and did not vary on a person-by-person basis.

119.    Defendants pay drivers a flat rate for some delivery routes and a per-stop rate for other routes.

120.    Defendants require each driver to sign an "Independent Vendor Agreement for Transportation Services" ("Vendor Agreement"), which designates him or her as an independent contractor or "Vendor."

121.    Plaintiffs Alulema and Tacoaman are uncertain as to whether they signed such an agreement.

122.    Defendants exercise comprehensive control over the manner, means, details and methods by which drivers perform services for Defendants.

14

123.    Defendants require drivers to be at a designated location to pick up items for delivery at a fixed time.

124.    Defendants require drivers to adhere to a particular delivery schedule and arrive at each stop on the route by a particular time.

125.    Defendants use GPS technology to track drivers on their routes and admonished them for running behind schedule.

126.    Defendants have taken routes away from drivers who declined to accept an assignment and threatened such employees with termination.

127.    Defendants require drivers to take turns being "on call" for specific weekend shifts.

128.    Defendants specified the equipment drivers had to furnish and maintain and required them to rent such equipment from SDS.

129.    Defendants also specified the vehicles that Plaintiffs Alulema and Tacoaman had to furnish and maintain to carry about their deliveries.

130.    Defendants specified minimum levels of automobile insurance drivers were required to carry.

131.    Defendants required drivers to wear SDS logo uniforms and specified the color of shoes and pants to be worn with the uniforms.

132.    Defendants required drivers to seek permission to assign their routes to substitute drivers while on vacation and frequently denied such requests.

133.    Drivers were not in an independently established trade, occupation, profession or business.

134.    Drivers were not in business for themselves, but rather depended on Defendants' business for the opportunity to render services to the long-term customers of Defendants.

135.    Defendants directed drivers to register an independent business as a condition of employment and set a deadline for employees to do so.

136.    Defendants directed Plaintiffs Alulema and Tacoaman to register as independent businesses.

137.    None of the "independent businesses" owned by Original Named Plaintiffs, and, upon information and belief, few if any of the "independent businesses" owned by FLSA Collective Plaintiffs and members of the NYLL putative class existed prior to the owner's affiliation with SDS.

138.    Drivers had no opportunity for profit or loss without Defendants.

139.    Drivers could not deal directly with Defendants' customers to offer their delivery services.

140.    Drivers were required to work for Defendants to provide this service.

141.    Drivers' relationship with Defendants was neither temporary nor sporadic.

142.    Upon information and belief, Defendants did not record the amount of hours spent by drivers performing deliveries.

143.    Original Named Plaintiffs and, upon information and belief, the Collective Members and Class members, worked full-time.

144.    Plaintiffs Alulema and Tacoaman worked full-time.

145.    Drivers frequently work in excess of forty (40) hours per workweek.

146.    Defendants have unlawfully failed to pay drivers one-and-one-half times their regular rate of pay for hours that they worked in excess of forty (40) per workweek.

147.    Defendants deduct the cost of workers' compensation insurance from drivers' paychecks.

16

148.    Drivers are not reimbursed for maintaining their vehicles, for most of their gasoline expenses or for the purchases of their scanners.

149.    Defendants require drivers to use a specialized scanner, which they are required to rent from SDS and are not permitted to purchase.

150.    Defendants deduct rental fees for the scanners from the paychecks of drivers.

151.    Defendants deduct administrative fees, "waiver deductions", "paperwork fees", and other unlawful deductions from the paychecks of drivers.

152.    Defendants' manager Cesar Mateo requires SDS's drivers to pay him to obtain and keep their routes.  For example, Mateo has regularly required Plaintiffs Zambrano and Riveros to pay him between $100 and $300 per week to keep their routes.

153.    Defendants do not provide drivers with the notices required by NYLL § 195.

154.    Defendants' violations have been willful and intentional in that they have known all along that Original Named Plaintiffs, Plaintiffs Alulema and Tacoaman, and other drivers, couriers and delivery drivers were employees, worked more than forty hours per week, and the requirements of the law.

### FIRST CAUSE OF ACTION
**FLSA Overtime Violations, 29 U.S.C. §§ 201 *et seq.***
**(On behalf of Plaintiffs Alulema and Tacoaman and the FLSA Collective Plaintiffs)**

155.    Plaintiffs Alulema and Tacoaman re-allege and incorporate by reference the previous paragraphs as if they were set forth again herein.

156.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint.

157.    At all times relevant, Plaintiffs Alulema and Tacoaman and the FLSA Collective Plaintiffs were employed by an entity engaged in commerce and/or the production or sale of goods

for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a), and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

158.    At all times relevant, Plaintiffs Alulema and Tacoaman and the FLSA Collective Plaintiffs were or have been employees within the meaning of 29 U.S.C. §§ 203(e), (m) and 206(a).

159.    At all times relevant, Defendants have been employers of Plaintiffs Alulema and Tacoaman and the FLSA Collective Plaintiffs, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

160.    Defendants have failed to pay Plaintiffs Alulema and Tacoaman and the FLSA Collective Plaintiffs overtime wages for hours that they worked in excess of 40 hours in a workweek.

161.    Based on the foregoing, Defendants' conduct in this regard was a willful violation of the Fair Labor Standards Act and entitles Plaintiffs Alulema and Tacoaman and all other similarly situated drivers, couriers, and delivery drivers (or those in comparable roles with different titles) who opted into this litigation to compensation for all overtime hours worked, liquidated damages, attorneys' fees and court costs.

## SECOND CAUSE OF ACTION
### New York State Overtime Violations, N.Y. Lab. L. §§ 650 *et seq.*,
### N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2
### (On behalf of Plaintiffs Alulema and Tacoaman and the Class)

162.    Plaintiffs Alulema and Tacoaman reallege and incorporate by reference all allegations in all preceding paragraphs.

163.    At all relevant times, Defendants have been, and continue to be, employers of Plaintiffs Alulema and Tacoaman and the Class members, and Plaintiffs Alulema and Tacoaman and the Class members have been employees of Defendants, within the meaning of the NYLL §§

190, 651(5), 652 and supporting New York State Department of Labor ("NYSDOL") regulations.

164.    Plaintiffs Alulema and Tacoaman and the Class members were and are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked under the NYLL and supporting regulations.

165.    Defendants have failed to pay Plaintiffs Alulema and Tacoaman and the Class members overtime wages for hours that they worked in excess of 40 hours in a workweek.

166.    Through their knowing and intentional failure to pay Plaintiffs Alulema and Tacoaman and the members of the Class overtime for hours worked in excess of 40 in a workweek, Defendants have willfully violated the NYLL Article 19, §§ 650 *et seq*., and supporting NYSDOL regulations.

167.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs Alulema and Tacoaman and the Class members have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendants in an amount to be established at trial, liquidated damages, prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

**THIRD CAUSE OF ACTION**
**New York Notice Violations, NYLL §§ 195, 198**
**(On behalf of Plaintiffs Alulema and Tacoaman and the Class)**

168.    Plaintiffs Alulema and Tacoaman reallege and incorporate by reference all allegations in all preceding paragraphs.

169.    Defendants did not provide Plaintiffs Alulema and Tacoaman and the Class members with the notices required by NYLL § 195.

170.    As a result of Defendants' unlawful conduct, Plaintiffs Alulema and Tacoaman and the Class members are entitled to an award of damages pursuant to NYLL § 198, in amount to be

determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

**FOURTH CAUSE OF ACTION**
**New York Unlawful Deductions and**
**Untimely Payment of Wages, NYLL §§ 191, 193**
**(On behalf of Plaintiffs Alulema and Tacoaman and the Class)**

171.    Plaintiffs Alulema and Tacoaman reallege and incorporate by reference all allegations in all preceding paragraphs.

172.    Defendants have willfully reduced the wages of Plaintiffs Alulema and Tacoaman, and the members of the Class by making unlawful deductions from their wages.

173.    In addition, Defendants have required Plaintiffs Alulema and Tacoaman and the Class to incur expenses for Defendants' benefit without reimbursement.  The required and unreimbursed expenses incurred by Plaintiffs Alulema and Tacoaman and the members of the Class for the benefit of Defendants were unlawful deductions from the wages of Plaintiffs Alulema and Tacoaman and the Class members, in violation of NYLL Article 6, § 193.

174.    Defendants willfully failed to pay Plaintiffs Alulema and Tacoaman and the Class all compensation owed them in a timely manner, in violation of NYLL § 191.

175.    Due to these violations, Plaintiffs Alulema and Tacoaman and the members of the Class are entitled to recover from Defendants deductions from their wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**New York State Minimum Wage Violations**
**(On behalf of Plaintiffs Alulema and Tacoaman and the Class)**

176.    Plaintiffs Alulema and Tacoaman reallege and incorporate by reference all allegations in all preceding paragraphs.

177.    At all relevant times, Defendants have been, and continue to be, employers of Plaintiffs Alulema and Tacoaman and employers of the Class members, and Plaintiffs Alulema and Tacoaman and Class members have been employees of Defendants, within the meaning of the NYLL and its attendant regulations.

178.    Defendants have willfully failed to pay Plaintiffs Alulema and Tacoaman and the Class members at least the state-mandated minimum wage per hour for every hour that they worked, in violation of the New York Labor Law § 650 *et seq.* and its attendant regulations.

179.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs Alulema and Tacoaman and the Class members have sustained damages, including unpaid minimum wages, in an amount to be established at trial, liquidated damages, prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

**SIXTH CAUSE OF ACTION**
**New Jersey Wage & Hour Law Violations, N.J.S.A. 34:11-56a et seq.**
**(Minimum Wage and Overtime)**
**(On behalf of Plaintiffs Alulema and Tacoaman and the New Jersey Plaintiffs)**

180.    At all relevant times, Plaintiffs Alulema, Tacoaman, and the 318 individuals listed in Exhibit 1 to this Second Amended Complaint (the "New Jersey Plaintiffs") were employed by Defendants within the meaning of the New Jersey Wage & Hour Law ("NJWHL").

181.    Defendants willfully violated the rights of Plaintiffs Alulema, Tacoaman, and the New Jersey Plaintiffs by unlawfully treating them as independent contractors and (i) failing to pay them overtime compensation at rates not less than one and one-half their regular rate of pay for each hour worked in excess of forty hours in a work week, and (ii) failing to pay them at least the legally mandated state minimum wage for every hour worked.

182.    As a result of Defendants' violations of the NJWHL, Plaintiffs Alulema,

Tacoaman, and the New Jersey Plaintiffs have suffered damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment and post judgment interest, and reasonable attorneys' fees and costs pursuant to the NJWHL.

<strong><u>SEVENTH CAUSE OF ACTION</u></strong><br>
<strong>New Jersey Wage Payment Law Violations, N.J.S.A. 34:11-4.4 et seq.</strong><br>
<strong>(Illegal Deductions)</strong><br>
<strong>(On behalf of Plaintiffs Alulema and Tacoaman and the New Jersey Plaintiffs)</strong>

183.    At all relevant times, Plaintiffs Alulema, Tacoaman, and the New Jersey Plaintiffs were employed by Defendants within the meaning of the New Jersey Wage Payment Law ("NJWPL").

184.    Under the New Jersey Wage Payment Law, no employer may withhold or divert any portion of an employee's wages. N.J.S.A. 34:11-4.4 et seq.

185.    Defendants illegally misappropriated, withheld, and diverted portions the wages of Plaintiffs Alulema, Tacoaman, and the New Jersey Plaintiffs.

186.    As a result of Defendants' violations of the NJWPL, Plaintiffs Alulema, Tacoaman, and the New Jersey Plaintiffs have suffered damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment and post judgment interest, and reasonable attorneys' fees and costs pursuant to the NJWPL.

<strong><u>DEMAND FOR RELIEF</u></strong>

WHEREFORE,    Original Named Plaintiffs, Plaintiffs Alulema and Tacoaman, the FLSA Collective Plaintiffs, and the New Jersey Plaintiffs pray for relief as follows:

a.    Designation of this action as a collective action pursuant to the FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

22

b.    Certification of the New York Labor Law claims in this action as a class action pursuant to Federal Rule of Civil Procedure 23;

c.    Designation of Plaintiffs Alulema and Tacoaman as Class Representatives;

d.    A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

e.    An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

f.    Penalties available under applicable law;

g.    Restitution;

h.    Pre-Judgment and Post-Judgment interest, as provided by law;

i.    Costs of action incurred herein, including expert fees;

j.    Attorneys' fees including fees pursuant to 29 U.S.C. § 216,  N.Y. Lab. L. § 663, N.J. Wage & Hour Law and Wage Payment Law, and other applicable statutes; and

k.    Such other injunctive and equitable relief as the Court may deem just and proper.


## JURY DEMAND

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to a jury trial.


Dated: January 27, 2025
       New York, NY

                                        (As to original Complaint)

                                        **JOSEPH & KIRSCHENBAUM LLP**
                                        D. Maimon Kirschenbaum
                                        Denise A. Schulman

23

32 Broadway, Suite 601
New York, NY 10004
Telephone: (212) 688-5640
Facsimile: (212) 688-2548

*Attorneys for the Original Named Plaintiffs*

(As to Second Amended Complaint)

**MAKE THE ROAD NEW YORK**

Jose Cristobal Gutierrez
David Orkin
Nathalia Varela
92-10 Roosevelt Avenue
Jackson Heights, NY 11372
(718) 565-8500
Cristobal.Gutierrez@maketheroadny.org
David.Orkin@maketheroadny.org
Nathalia.Varela@maketheroadny.org

**KAKALEC LAW PLLC**

Patricia Kakalec
195 Montague Street, 14th Floor
Brooklyn, NY 11201
(212) 705-8730
Patricia@KakalecLaw.com

**KATZ BANKS KUMIN LLP**

/s/ Hugh Baran
Hugh Baran
Dana Bolger
111 Broadway, Suite 1702
New York, NY 10006
(646) 759-4501
Baran@KatzBanks.com
Bolger@KatzBanks.com

*Attorneys for Plaintiffs Blanca Alulema and Maria
Tacoaman, the FLSA Collective Plaintiffs, the
Proposed Class, and the New Jersey Plaintiffs*

24