KATZ BANKS KUMIN

**Hugh Baran, Partner**
**Phone: 646-759-4501**
**Email: baran@katzbanks.com**

July 21, 2026

**Via ECF**
Hon. Edgardo Ramos, United States District Judge
United States District Court for the Southern District of New York
40 Foley Square, New York, NY 10007

**Re: *Zambrano, et al. v. Strategic Delivery Solutions, et al.*, No. 15-cv-8410 (ER)**

Dear Judge Ramos:

Katz Banks Kumin LLP, along with Kakalec Law PLLC and Make the Road New York, represents Plaintiffs Blanca Alulema and Maria Tacoaman, the FLSA Collective, and the Proposed New York Class in the above-referenced action. We write to: (1) briefly respond to Defendants' letter, ECF No. 364, claiming that a fulsome production of closing documents somehow exceeds this Court's prior orders; and (2) concisely set forth our position as to the portions of Defendant SDS's Friday letter, ECF No. 362, that raised numerous discovery disputes. The Court has scheduled a conference on these matters for August 11, 2026 at 11:30 a.m. ECF No. 367.

***On SDS's Further Opposition Concerning Closing Documents, ECF No. 364***

Plaintiffs explained in our last letter, ECF No. 363, why the belatedly-produced document is insufficient: it is almost entirely redacted and incomprehensible as redacted. Defendants' counsel insists that Plaintiffs have enough unredacted content to accept her client's explanation of the relationship of the parties, but that explanation has shifted several times—and begs many questions.[1] Plaintiffs maintain their position that the redactions made, particularly absent any corresponding privilege log, render the belatedly-produced document non-responsive and incomprehensible on its face.

While Plaintiffs would ordinarily be open to receiving a less-redacted document, SDS's shifting explanations in this discovery process about acquisition by DHL, ongoing failure to produce a privilege log in this matter, and position that every one of the redacted paragraphs contains "highly confidential and proprietary information" make it difficult to for Plaintiffs to trust that any document produced with redactions would provide all information relevant to "the relationship that was established as between DHL and SDS as a result of that transaction." Tr. of Apr. 24, 2026 Hrg. at 47:12-13 (attached as Ex. 1 to Pls.' 7/6/26 Ltr., ECF No. 360-1).

For this reason, to the extent that the Court credits SDS's claims about the confidential and propriety nature of the information in question, Plaintiffs would propose that Your Honor order SDS to submit the fully unredacted copy of the Stock Purchase Agreement for *in camera* review

[1] Defendants' counsel strangely claims that Plaintiffs have "failed to obtain support for their erroneous contention that DHL must be joined as a defendant for recoverability purposes." That is not so, as outlined in our previous letters concerning joinder, and our Rule 25(c) motion, which the Court permitted us to make and is forthcoming. Nevertheless, to the extent Plaintiffs have "failed to obtain" further support, it is largely due to SDS's two-month refusal to produce the closing documents, and their belated production of an almost entirely redacted document.

by either Your Honor or the assigned Magistrate Judge Jennifer E. Willis. This procedure is commonly used by courts in this District to resolve difficult disputes about redactions. *See, e.g.*, *In re AutoHop Litig.*, No. 12-CV-4155 (LTS) (KNF), 2014 WL 6455749, at *9 (S.D.N.Y. Nov. 4, 2014) ("Given that the parties disagree about whether the material redacted is relevant, CBS must produce the unredacted documents to the Court for an *in camera* review."); *Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373 (SAS) (JLC), 2010 WL 3034244, at *2 (S.D.N.Y. July 28, 2010) (ordering *in camera* review "[t]o facilitate a thorough determination of the issues raised in the instant discovery dispute") (citing *In re Grand Jury Subpoenas*, 318 F.3d 379, 386 (2d Cir. 2003) ("*[I]n camera* review 'is a practice both long-standing and routine in cases involving claims of privilege.'")); *see also N.Y. Times Co. v. Gonzalez*, 459 F.3d 160, 171 (2d Cir. 2006) (noting that concerns regarding legal privileges "can be fully accommodated by the appropriate district court's *in camera* supervision of redactions [of information] properly shown to be irrelevant.").

Defendants are also wrong that Plaintiffs seek something beyond what the Court ordered. The Court ordered the production of "the closing documents," which would shed light on whether "the relationship between DHL and SDS such as it may exist today . . . may affect the ability of the plaintiffs to ultimately recover." Tr. of Apr. 24, 2026 Hrg. at 48:2-5 (Ex. 1 to Pls.' 7/6/26 Ltr.). The mostly-redacted document produced earlier this week does not shed light on that issue. Moreover, the closing did not occur until October 31, 2025. It is therefore highly likely—and indeed, Defendants do not deny in their letter—that additional closing-related documents exist beyond the September contract produced. A document agreed to nearly two months prior to the closing of the transaction seems unlikely to be the only responsive "closing document." Accordingly, Defendants must provide the full "closing documents" requested.

***"Deficiencies" Claimed by Defendants***

First, Plaintiffs are in the process of obtaining Sample Members' bank statements and tax transcripts from third parties (numerous retail banks and the IRS) and have already produced some of those records. This has, as discussed at the last conference, required significant labor on the part of our firms' legal teams to obtain documents that are, as previously explained, not in the Sample Plaintiffs' custody or possession, or, in some cases, even in their control. Nevertheless, our firms are working in good faith to obtain those documents that are available to Plaintiffs.

With respect to the requested PPP loan and loan forgiveness applications, which Defendants explicitly requested for the first time in May 2026, Plaintiffs disagree that they should be required to produce them. Any information on those applications would be (1) duplicative of information SDS already has in its possession and (2) not proportional to the needs of the case, given the small amount of additional information, if any, the applications themselves are likely to provide, weighed against the burden of searching for those documents. Even according to Defendants, these applications would provide only representations about Sample Plaintiffs' "business status and the nature of their income," ECF No. 362 at 3, which would be duplicative of information contained in Openforce and/or SCI settlement statements listing the pay sent by SDS to Sample Plaintiffs, Sample Plaintiffs' tax documents, and other documents relating to the Sample

KATZ BANKS KUMIN



Plaintiffs' income. Since the applications likely were submitted through an online portal or by a third-party lender or accountant, Plaintiffs also are unlikely to have the applications in their custody or possession.

With respect to bank statements, Plaintiffs' counsel's offices are in touch with dozens of banks—some of which are seeking notarized letters personally submitted by our clients to obtain records—and producing the documents received in response on an ongoing basis. Many of these records, because of their age, no longer are maintained by the banks, and Plaintiffs have provided Defendants with letters from Sample Plaintiffs' banks memorializing this.

With respect to tax transcripts, the process of obtaining these has not been the "15 minute" procedure claimed by Ms. Blanchfield during the last conference. One of our firms' paralegals, for example, recently spent over two hours on the phone with a sample plaintiff in an effort to obtain his tax transcripts on the IRS website. The multi-factor authentication process to obtain these documents was extremely burdensome and confusing for this plaintiff —requiring phone, facial recognition, and scans of identification.[2] A firm attorney met in person with another sample plaintiff for over an hour in similar efforts to obtain such documents; in this case, requesting the documents was time-consuming because the sample plaintiff did not possess the three documents that may provide more rapid verification of identity to access online IRS records.

Further, with respect to the claimed deficiency of the *type* of transcript, Plaintiffs would note that the IRS website Ms. Blanchfield cites only permits users to obtain a "Tax Return Transcript" for the past three years. Many of the years at issue in the requests were before that period and are, accordingly, not available online. That is why, for several individuals, Plaintiffs have produced only Wage and Income Transcripts. For other individuals, our offices are in the process of mailing requests to the IRS in an attempt to obtain older transcripts than are available online (generally, only 10 years of Wage and Income Transcripts are available online; most Sample Members worked before 2016). It is not obvious from the IRS website and forms, however, that the IRS will even produce older transcripts.

It remains Plaintiffs' position that the Court should relieve Plaintiffs of the undue burden of obtaining all these transcripts and order Defendants to stop hamstringing the discovery process by claiming they cannot possibly pick sample members for further deposition until they receive these documents. Nevertheless, Plaintiffs will continue their good-faith efforts to obtain all Court-ordered tax documents and bank statements from third parties, but the timelines proposed by Defendants for doing so are unrealistic given the number of third-party entities involved and the time required by our staff to attempt to obtain documents.

---

[2] Most of our clients do not have an ID,me account to get their tax transcripts and are not technologically savvy. To create such an account, we have to find a time to meet with the Sample Plaintiff, for them to be in front of a computer, create an account that needs to be verified through face-recognition in their phone, scan an ID, and obtain proof of address. Then, certain transcripts are available. Transcripts not available need to be requested via regular mail. This process is very time-consuming. *See generally I*nternal Revenue Service, *Transcript services for individuals – FAQs*, https://www.irs.gov/individuals/transcript-services-for-individuals-faqs.

With respect to 1099s: those sample members with these documents in their possession have, to our understanding, produced them. If there are specific individuals whom Defendants have reason to believe did in fact issue 1099s but have not produced such documents, they should identify such persons.

Finally, as to certifications, Plaintiffs maintain their position that only those Sample Plaintiffs who have produced no documents whatsoever are obligated to provide them. This is consistent with the Court's Order—and Defendants' request—at the December 19, 2025, hearing:

> MS. BLANCHFIELD: There were a couple other mentioned in my letter. One of them was, *for the individuals who stated that they don't have any documents*, we are requesting——and we have requested but plaintiffs' counsel refuses to provide——certifications from the sample plaintiffs themselves stating they don't have any documents.
>
> THE COURT: Absolutely. Those should be turned over.

Tr. of Dec. 19, 2025 Hrg. 22:7-13 (emphasis added) (relevant pages from transcript cited herein attached as Ex. 1). Plaintiffs have already produced eight detailed certifications outlining document search efforts from those Sample Members who had no responsive documents in their custody, possession, or control. No further certifications for plaintiffs who have produced documents should be required.

Despite having been ordered to provide numerous certifications relating to Plaintiffs' discovery requests, *see, e.g.*, Tr. of Dec. 19, 2025 Hrg. 23:7-19 (document requests generally); 46:1-11 (request for employee handbooks); 52:8-25 (request for complete list of area managers and dispatchers); 53:4-15 (requests for identities of individuals with information concerning SDS's business dealings with pharmacy customers); 56:1-14 (request for documents received from third parties), Defendants have not produced a single certification of the type that they now insist Sample Plaintiffs provide, other than relating to Defendant Mike Ruccio's health status. A different standard should not apply to the Sample Plaintiffs and Defendants.

***Sample Plaintiffs to Be Dismissed***

With respect to Defendants' proposed Order, Plaintiffs provided Defendants with a form of order very similar to the one now being proposed on February 5, 2026. Plaintiffs' counsel explained at the time that Plaintiffs did not *consent* to the individuals' dismissal, but would not object to the order being entered. Defendants have now filed that proposed Order, 5 months later.

Named Plaintiffs Alulema and Tacoaman again do not object to the entry of the proposed Order, except as to Plaintiffs Fabian and Francisco Falconi, who are in the process of searching for responsive documents. Fabian Falconi also recently provided an interrogatory response, which has been produced to Defendants. Fabian and Francisco Falconi's names (Nos. 14 and 15) should be struck from Exhibit B, the Proposed Order before it is entered.

KATZ BANKS KUMIN



***Defendants Have Failed to Cure Numerous Deficiencies to Date***

Defendants' posturing as though they are in full compliance with this Court's discovery orders while Plaintiffs have purportedly done nothing to cure deficiencies, *see, e.g.*, ECF No. 364 at 1 n.*, is spurious at best. Defendants have, *inter alia*: failed to produce a number of documents relevant to the instant litigation, and failed to provide their position to Plaintiffs' proposed ESI protocol or conduct any search of ESI. Rather, Defendants have insisted for more than six months that they are "working on it." Plaintiffs have, in contrast, made more than 30 rolling productions since the start of discovery, including three since the April 24 hearing and as recently as July 2, 2026. Defendants' ongoing delay and failure to clarify whether they have produced all responsive documents in their custody, possession, or control has prevented Plaintiffs from moving to compel production of outstanding documents and inordinately delayed the conduct of discovery here.

Defendants have stated repeatedly that they have produced "thousands of pages of documents." While true, this figure obscures the small amount of useful information contained in those pages, most of which are repetitive: drivers' licenses, insurances, ledgers, acknowledgments and agreements, and background checks for SDS drivers. These documents prove what Plaintiffs have stated all along: that all drivers were treated in an effectively uniform way by Defendants regardless of their SDS-assigned status as "masters," "subcontractors," or "independent contractors." Though the volume of these documents may appear impressive, they reveal little about Defendants' business practices or policies—all of which are contained in the more substantive documents that inexplicably have yet to be turned over.

In light of the Court's guidance at the last hearing and to avoid burdening this Court's docket with letters similar to Defendants' ECF No. 362, Plaintiffs have endeavored to resolve as many of these disputes through meets and confers as possible, and Plaintiffs still await Defendants' position on many issues they claim to still be looking into.[3] Plaintiffs will continue to do so, only raising issues to Your Honor if necessary.

Finally, Defendants have produced only two fact witnesses (and refused to produce a third fact witness) for deposition. This is plainly disproportionate to the eight deponents Plaintiffs have produced to date. Plaintiffs respectfully request that the Court order Defendants to provide all of the noticed witnesses' availability for the next two months for Plaintiffs' outstanding depositions no later than August 14, 2026.

We thank the Court for its continued attention to this matter.

---

[3] During the parties' most recent meet and confer on those disputes on May 26, 2026, Defendants' counsel stated that she had to follow up with her client regarding at least eight of the 17 outstanding requests. She also stated she would review Plaintiffs' proposed ESI protocol, and Plaintiffs re-sent that document for her review shortly after the conference call. Counsel has not to date provided an update on the outstanding document requests or Defendants' position on the ESI protocol.

KATZ BANKS KUMIN



Respectfully submitted,

/s/ Hugh Baran
Hugh Baran
*Counsel for Plaintiffs Alulema and Tacoaman, the FLSA Collective, and the Proposed New York Class*

cc: All counsel by ECF